Cynthia L. Ducey
Delaney Wiles, Inc.
1007 West 3rd Avenue, Suite 400
Anchorage, Alaska 99501
(907) 279-3581
Fax  (907) 277-1331
cld@delaneywiles.com
Attorney for defendant Ilisagvik College


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BOBBI J. WADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. A05-086 CV (TMB) |
| v. | ) |
| | ) |
| ILISAGVIK COLLEGE, NORTH SLOPE | ) **MEMORANDUM IN SUPPORT OF** |
| BOROUGH, JOHN TUTHILL, individually | ) **MOTION TO COMPEL CONTINUED** |
| and PAMELA TAYLOR, individually ) | **DEPOSITION OF PLAINTIFF** |
| | ) |
| Defendants. | ) |
| _____ | ) |

**INTRODUCTION**

Defendants Ilisagvik College, John Tuthill, and Pamela Taylor, by and through counsel, hereby

move the Court for an order compelling plaintiff to appear for a continued deposition.  The Court should

grant the motion because: (1) defendants have not been able to question plaintiff regarding several of

plaintiff's claims or plaintiff's alleged damages; (2) defendants' progress was impeded during plaintiff's

deposition by plaintiff's lack of memory and equivocal testimony; (3) this is a very fact-intensive case

dating back several years and involving several thousand documents; (4) plaintiff has not produced

documents responsive to defendants' discovery requests, and questioning about those documents will be necessary once the documents are produced; and (5) there are multiple defendants in this litigation, including the North Slope Borough, which has not yet had an opportunity to depose the plaintiff. Defendants request that the Court allow defendants to question plaintiff for as much time as is needed for defendants to examine plaintiff on her various claims and alleged damages. Discovery currently is set to close on August 15, 2006, but defendants have requested an additional 90 days. *See* Defendants' Response to Plaintiff's Motion for Extension of Time for Discovery, dated May 30, 2006.

## FACTS

This suit arises out of plaintiff's employment with Ilisagvik College from 2000-2004 as an Assistant Professor. Plaintiff filed suit alleging: Count 1, violation of Family and Medical Leave Act; Count 2, violation of 42 U.S.C. § 1983, Due Process; Count 3, violation of covenant of good faith and fair dealing; Count 4, violation of Age Discrimination in Employment Act of 1967 and the Older Workers Benefit Protection Act of 1990; Count 5, violation of AS 18.80.220, Age Discrimination; Count 6, violation of public policy; Count 7, violation of Alaska Whistleblower Act, AS 39.90.100; Count 8, intentional interference with contract; Count 9, intentional infliction of emotional and mental distress. *See* Complaint, pp. 10, 11, 12, 13, 14, 15. On September 19, 2005, Judge Sedwick dismissed Counts 3, 6, and 8. *See* Court's Order From Chambers Re: Motion at Docket 5, dated September 19, 2005. Plaintiff has sued four separate defendants: Ilisagvik College, the North Slope Borough, John Tuthill and Pam Taylor. Plaintiff has alleged nine separate claims, each with their own unique elements of proof and defenses.

Defendants served Plaintiff with discovery requests on October 14, 2005. The discovery

requests included a request for production of plaintiff's medical records for 15 years, her tax returns,

documents relating to prior lawsuits or administrative claims she was involved in, and documents

supporting her damage claim, including her claim that she was forced to withdraw retirement monies.

*See* Exhibit A, Request For Production Nos. 1, 3, 6, 7, 9, 10, 18, 19, 21, and 22, dated October 14,

2005; Exhibit B, plaintiff's initial disclosures, dated September 30, 2005, at 3.   In addition, defendants

requested that plaintiff identify her medical providers for the last 15 years.  *See* Exhibit A, interrogatories

1-3.    Despite requests to the plaintiff to produce medical records and identify providers prior to the

deposition, on the date of the deposition only 163 pages of records had been produced.  *See* Exhibit C,

plaintiff's supplemental disclosures prior to deposition, dated March 13, 2006, at 1.   Plaintiff failed to

identify medical providers or to disclose that she has used four different last names in the past.   *See*

Exhibit D, plaintiff's responses to interrogatories 1-3, dated November 14, 2005.   In addition, prior to

the deposition plaintiff had produced only 15 pages of miscellaneous IRS documents[1] and 5 pages of

computer printouts from the state PERS system, which gave no information about any alleged

withdrawals.  *See* Exhibit B, at 9.   Prior to plaintiff's deposition, although plaintiff identified 7 lawsuits[2]

or administrative proceedings she was previously involved in, she produced only 18 pages of documents

regarding lawsuits or administrative proceedings, 14 pages of which were simply a lawsuit brought by

Ford Motor Credit against plaintiff.   *See* Exhibit D at 8; Exhibit E, plaintiff's First Supplemental

---

[1] Although plaintiff states in her Initial Disclosures that she disclosed 465 pages of documents including "tax records for 2000, 2002, 2003," this is highly misleading because the only tax documents disclosed were plaintiff's W-2 and W-4 forms from 2000, 2002, and 2003.  Plaintiff has never disclosed complete copies of her tax returns from 1990 to the present as requested by defendants.  *See* Exhibit A, defendants' Request For Production No. 7, at 10.  The 465 pages of documents referenced in plaintiff's initial disclosures instead were personnel records plaintiff had received from Ilisagvik College on February 22, 2004, including W-2 forms, W-4 forms, insurance documents, payroll documents, leave requests and faculty and student evaluations of plaintiff.

[2] In her response to Interrogatory No. 7, plaintiff failed to identify the EEOC complaint that she filed against Ilisagvik College.  *See* Exhibit D, at 8, 14.

Jerry Bolivar - Wade memo motion compel continued depo

Responses to First Discovery Requests, dated December 9, 2005, at 2-3.

At the time of the deposition, defendants had disclosed 5864 pages of discovery. *See* Exhibit F, defendant's Responses to Plaintiff's Third Discovery Requests to Defendant Ilisagvik College, dated April 24, 2006, at 3. Plaintiff had disclosed 1150 pages of discovery, leading to a total of 7014 pages. *See* Exhibit C at 1; Exhibit G plaintiff's Sixth Supplemental Responses to First Discovery Requests, dated March 9, 2006, at 2.

Included in discovery were numerous e-mails prepared by or received by the plaintiff, or Dr. Tuthill or Ms. Taylor that may be relevant to plaintiff's FMLA claims, § 1983 claims, age discrimination claims, whistle blowing claims, and retaliation claims. Also included in the e-mails are numerous e-mails from students complaining about plaintiff, Dr. Tuthill's follow-up inquiries regarding some of them and the plaintiff's response. The documents include multiple leave requests and e-mails regarding same, numerous complaints or grievances plaintiff wrote, the college's response, a transcript of a Step III grievance hearing, e-mails concerning late reporting of grades, the grade reports themselves, documentation leading to a change of course grades and courses plaintiff taught, all of which could be relevant to plaintiff's claims or the defenses in the case.

Prior to the deposition defendants had virtually no facts about plaintiff's alleged serious health condition, including plaintiff's alleged need for leave before the school semester ended. *See* 29 U.S.C. 2612(e)(2) (the employee shall make a reasonable effort to schedule the treatment so as not to disrupt unduly with the employer's operations when the necessity for medical leave is foreseeable). *See also* Exhibit H, plaintiff's faculty appointment letter for 2003-04, dated May 1, 2003, Attachment A, at 4 (twelve days of personal leave allowed per contract year when taking it does not unduly interfere with

the delivery of Ilisagvik's program of instruction). Defendants specifically reserved their right to depose plaintiff further when it became apparent prior to plaintiff's deposition that plaintiff has not produced all of the medical records she is required to produce under Civil Rule 26(a). *See* Exhibit I, Joint Report To Court On Discovery Status, ¶ 5, dated April 25, 2006.

At plaintiff's deposition, defendants learned that plaintiff admitted that she did not have a serious health condition when she made her first three leave requests in the fall of 2003, that no doctor told her that she could not wait until December to have her medical treatment, and that plaintiff failed to comply with the simple requirement of obtaining a doctor's note stating that her medical treatment could not wait until the semester break, when she could have the treatment without conflict with her regular teaching duties, probably because she knew the first three requests no doctor would so state. *See* Exhibit J, Excerpts of Transcript of Deposition of Bobbi Wade, Volume I, May 1, 2006, at 268-69, 272-73, 278-79. Defendants also determined that she did not report her students' grades in a timely fashion, which resulted in a "grading fiasco" because many students were subsequently allowed to take courses which they technically were not qualified to take because they had failed the underlying course. *See* Exh. J at 209-14; Exhibit K, Excerpts of Transcript of Deposition of Bobbi Wade, Volume II, May 5, 2006, at 349.

With respect to the FMLA claim, at the deposition much time was needed to determine the facts about plaintiff's need for medical treatment in the Fall 2003, the reasons if any treatment could not wait until the end of the semester, what provider, if any, had concluded that plaintiff had a serious health condition, and when the serious health condition arose, how many leave requests were prepared or submitted by the plaintiff, to whom they were submitted, when, and conversations she had with Ilisagvik

employees regarding these requests, the plaintiff's medical condition at the time of submission, and the need for immediate treatment. In the first session of her deposition which occurred on May 1, 2006, she claimed forgetfulness or lack of knowledge at least 60 times. *See* Exhibit J, at 8, 20, 22, 37, 85, 96, 97, 98, 100, 111, 112, 113, 114, 115, 116, 121, 124, 127, 128, 130, 131, 133, 135, 138, 140, 144, 147, 152, 155, 164, 183, 184, 189, 190, 191, 197, 204, 213, 217, 221, 222, 223, 227, 230, 231, 232, 241, 242, 244, 248, 251, 255, 264, 265, 269, 270, 273, 274, 275, 278. As the deposition progressed, plaintiff began to state "I don't know" or "I don't recall" with greater and greater frequency. She could not recall if she made any attempts to see a dermatologist between June 2002 and when the College's semester began in 2003. Exh. K at 327. Plaintiff stated that she would have to "give that some thought" as to what certain damages were as alleged in her complaint. *Id.* at 338.

Plaintiff was combative at times. She debated the meaning of the phrase "as soon as possible." She refused to acknowledge her signature on her employment contract for 2003-2004 and stated that she had never previously seen the last two pages to deposition exhibit 12, even though her signature was on the document. Exh. J at 96-99. Plaintiff denied that that her contractual terms regarding personal and sick leave changed from year to year, despite documentary evidence showing just that. *Id.* at 100-02. She refused to confirm what was shown on an exhibit (i.e., that she had 6 days of personal leave) until she was requested to read deposition exhibit 16. *Id.* at 111-12. Plaintiff refused repeatedly to state when she was first informed that the patch of skin removed from her shoulder had a carcinoma. Exh. K at 307-09.

Because one of defendants' defenses to plaintiff's FMLA claims is that her contract was non-renewed because she did not possess the proper qualifications for her position at the College,

defendants questioned her extensively about her educational background and employment history.  Exh. J at 9-62.  Plaintiff apparently did not prepare in advance of her deposition by reviewing very many documents.  *Id*. at 6.  Consequently, she read multiple documents during the deposition, apparently for the first time.  *Id*. at 69, 74, 96, 97, 115, 195.

Defendants spent substantial amounts of time questioning her about student complaints regarding the plaintiff compiled by Ilisagvik College employee Sonya Abu.  *See generally* Exh. K at 342-407. Plaintiff did not advise her students to take the proper classes.  *Id*. at 346.  She admitted that she did not have a consistent policy regarding late homework.  *Id*. at 355-58, 379-80.  Plaintiff refused to admit that she had a low success rate with her students even though the success rate calculated by Dr. Tuthill for plaintiff's classes was only 23 percent.  *Id*. at 365, 375-76.  Plaintiff canceled a test because she thought somebody stole her textbook which contained the test answers.  *Id*. at 386-88.  Plaintiff acknowledge that she arranged her syllabus so as to proceed through the course textbook out of order. *Id*. at 397-400.  Defense counsel asked plaintiff about the ethical problems inherent with plaintiff teaching her granddaughter for at least 23 credits at Ilisagvik College, some of which were independent studies.  *Id*. at 413-20.  Plaintiff claimed that her granddaughter lived in Barrow while she took those classes.  *Id*. at 414.  Plaintiff later admitted that her granddaughter moved to Tennessee in 2002 and continued to take Ilisagvik College classes taught by plaintiff, including independent studies courses, through January 2004.  *Id*. at 417-19.  Plaintiff did not concede that there was any appearance of favoritism in teaching her granddaughter so many classes.  *Id*. at 420-21.  Dr. Tuthill saw an appearance of conflict and distraction from her teaching duties.  Further, plaintiff's granddaughter received tuition waivers for her Ilisagvik College courses.  *Id*. at 421-22.

In addition plaintiff frequently changed her testimony about events, conversations and documents during the course of the deposition, thus necessitating re-opening a subject that had already been inquired into to determine the plaintiff's true position.  Plaintiff also recounted numerous conversations she had with various Ilisagvik personnel including Dr. Tuthill and Ms. Taylor, Sonya Abu, and others.  *See* Exhibit J, at 168, 172-219, 225, 231-69, 271-79; Exhibit K at 342-44; 357-85.

Plaintiff testified that she agreed on October 3, 2003 to wait until December to get medical treatment.  *See* Exhibit K at 292.  She denied that she had inaccurately told Dr. Snyder that her sick leave had been denied when in fact she had agreed to delay her medical treatment.  *Id.* at 296.  She claimed that Dr. Tuthill denied her sick leave request verbally and that he "vehemently" yelled at her in his office.  *Id.*  She could not recall if Dr. Tuthill had withdrawn his request for medical certification from plaintiff's doctor, which stated that plaintiff needed immediate medical treatment.  *Id.*  at 297.  She conceded that she did not feel unable to work in between her medical appointments in Tennessee in November 2003, and in fact she did work in between those appointments.  *Id.* at 315.  All of this testimony took considerable time and to secure.

Defendants deposed plaintiff on May 1, 2006, for 6 hours excluding breaks.  *See* Exhibit J, at 3, 279.   The parties agreed that defendants could depose plaintiff further on May 5, 2006.  *See* Affidavit of Cynthia L. Ducey.  The continued deposition on May 5, 2006, lasted for  2.9 hours, excluding breaks, for a combined total of 8.9 hours.  *See* Exhibit K at 286, 429.  The defendants gave notice for at least the second time to plaintiff that her deposition would have to be continued, on the basis that a medical bill had not been produced by plaintiff to defendants which plaintiff claims was not paid by her health insurance.  Exh. K at 340-41.  After the May 5, 2006, continued deposition,

defendants orally requested additional time to depose plaintiff further, and plaintiff's counsel denied the request.  Defendants now seek court intervention for additional deposition time necessary for a fair examination of the plaintiff.

**ARGUMENT**

**A.    Civil Rule 30 Permits Additional Deposition Time If Necessary For A Fair Examination Of The Deponent.**

Rule 30 of the Federal Rules of Civil Procedure provides that "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." Fed.R.Civ.P. 30(d)(2).  Further, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." *Id.* (emphasis added); *see also Laplante v. Estano*, 226 F.R.D. 439 (D.Conn.2005) (same).  "Obviously, the Court will allow more than seven hours 'if needed for a fair examination of the plaintiff.'"  *Malec v. Trustees of Boston College*, 208 F.R.D. 23, 24 (D.Mass.2002) (citing Fed.R.Civ.P. 30(d)(2)).  As the Court of Federal Claims has noted, "[t]he seven-hour presumptive limit provided by this Rule is of relatively recent vintage, stemming from the 2000 amendments to Fed.R.Civ.P. 30(d)(2)."  *Independence Park Apartments v. United States*, 59 Fed.Cl. 765, 769 (Fed.Cl.2004).

Extra time "must" be given under the Rule where good cause is shown, RCFC 30(d)(2) (second sentence), and the Court has discretion to determine how much time is reasonable under the circumstances and whether a deposition may extend over more than one day.  *See* Fed.R.Civ.P. 30(d)(2) advisory committee's note (2000 amend.) ("The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent.).

Memorandum in Support of Motion to Compel Continued Deposition of Plaintiff – 117437
*Wade v. Ilisagvik College, et. al.*, Case No. 3:05-cv-086-TMB                                Page 9 of 27

Jerry Bolivar - Wade memo motion compel continued depo | Page 10

*Id.* RCFC 30(d)(2) is a duplicate of its counterpart in Fed.R.Civ.P. 30(d)(2). The seven hour limit is not a hard and fast rule, but rather is only a guide, as some courts have noted.

> Further, the 2000 Advisory Committee notes to Rule 30(d) clearly state that only the time taken for the actual deposition, not breaks, counts toward the 7 hours, and that for good cause shown, the court should enlarge the time limit. Moreover, the notes state that the 7 hour time limit is merely a guide and that parties should work together to determine a fair time limit: "It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court . . . . Preoccupation with timing is to be avoided.*"* (emphasis added). Finally, Rule 30(d)(3) provides for sanctions to be assessed if the court finds a party or deponent has impeded, delayed, or frustrated the deposition process.

*Condit v. Dunne*, 225 F.R.D. 100, 112-13 (S.D.N.Y.2004) (emphasis in original).

A party seeking a court order to extend the examination must show "good cause" to justify such an order." *Boston Scientific Corp. v. Cordis Corp.*, No. 02-CV-1474 JW, 2004 WL 1945643, at *2 (N.D.Cal. September 1, 2004) (citing *Cardenas v. The Prudential Insurance Co. of America*, 2003 WL 21302960, at *2 (D.Minn.2003)). "Considerations relevant to the granting of an extension of time include the need for additional time for full exploration of the theories upon which the witness relies, or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Id.* (citations omitted).

According to the Advisory Committee, factors which warrant an extension of time for a deposition include: (1) whether the examination will cover events occurring over a long period of time; (2) if the witness will be questioned about numerous or lengthy documents and the witness has not read the documents in advance, thereby prolonging the deposition; (3) if the examination reveals that documents have been requested but not produced; and (4) in multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided.

*See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.).

A party generally should not seek additional time for a deposition before the deposition is taken. Rather, the better practice is for the deposition to go forward to determine how much can be covered in the seven hours. If additional time is needed, counsel then should attempt to stipulate to the extension of time. The parties should seek court intervention for additional time only when such a stipulation cannot be reached.

7 James W. Moore, Moore's Federal Practice § 30.45, at 30-77 (3d ed. 2006) (citing *Malec*, 208 F.R.D. at 24 (magistrate judge denied defendant's motion for leave to extend deposition, which was filed before deposition commenced, and instructed parties to proceed with deposition and, if needed, attempt to reach stipulation, before approaching court for more time)).

Courts have frequently ordered additional time for depositions beyond the 7 hour time limit, particularly in employment cases which tend to be fact intensive. *See Condit*, 225 F.R.D. at 112-13; *Laplante*, 226 F.R.D. at 441; *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 522 (S.D.Fla.2002); *Independence Park*, 59 Fed.Cl. at 769; *New Colt Holding Corp. v. RJG Holdings of Fla., Inc.*, No. 02-173, 2003 WL 22326978, at *1 (D.Conn. March 27, 2003); *Keck v. Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *1 (S.D.N.Y.1997); *Grill v. Costco Wholesale Corp.*, No. C03-2450RSM, 2004 WL 2314639, at *1 (W.D.Wash. October 7, 2004); *Boston Scientific Corp. v. Cordis Corp.*, No. 02-CV-1474 JW, 2004 WL 1945643, at *3 (N.D.Cal. September 1, 2004); *Moore v. CVS Corp.*, No. 7:04CV054, 2005 WL 581357, at *4 (W.D.Va. March 11, 2005); *Raymond v. Ameritech Corp.*, No. 03-4509, 2004 WL 1381134, at *2-3 (N.D.Ill. May 7, 2004); *cf. Armstrong v. Hussman Corp.,* 163 F.R.D. 299, 301-03 (E.D.Mo.1995); *cf. Frazier v. Southeastern Pennsylvania Transportation Authority,* 161 F.R.D. 309, 314-17 (E.D.Pa.1995); *cf. Hayden v. Acadian Gas Pipeline System,* No. Civ. A. 96-3612,

Jerry Bolivar - Wade memo motion compel continued depo                                    Page 12

1997 WL 180380, at *6 (E.D.La. April 10, 1997); *cf. Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 692 (D.Kan.1996); *cf. Hurley v. JARC Builders, Inc.,* 164 F.R.D. 39, 40 (E.D.Pa.1995).

In *Raymond*, the plaintiff moved to limit her continued deposition to three hours, after the magistrate judge's order set no time limit for plaintiff's deposition. 2004 WL 1381134, at *2. The continued deposition was ordered because in discovery the defendant learned that the plaintiff and her husband had $60,000 in credit card debt from their gambling, that prior to her layoff she had three mortgages and borrowed $30,000 from her sister, and that the plaintiff and her husband declared bankruptcy. *Id.* at *1. The defendant also learned that the plaintiff sought counseling from a social worker and indicated that she "was struggling with her husband's debilitating neurological condition and financial problems associated with her lack of income, the bankruptcy, and her debts due in part to gambling." *Id.* The magistrate judge allowed the continued deposition to cover certain areas, including the plaintiff's medical records which indicated that the plaintiff reported emotional stress, inquiries about stressors that may have an impact on her emotional state, production of one year's worth of the plaintiff's credit cards records for the purposes of determining whether her emotional distress was caused by her and her husband's gambling debts, and inquiring at her deposition regarding her employment after her layoff for the purpose of mitigation. *Id.*

The district court noted that the magistrate judge stated during a hearing

"As long as the attorney is not asking repetitive questions or has become abusive in nature, I'm not going to give anybody a time limitation." (1/15/04 Hr'g Tr. At 27-38.) He went on to say: "If there's unruly conduct with respect to the deposition, Im available to issue any order that's necessary. If the inquiry is fundamentally fair, there is no abusive discovery, burdensome discovery, it's not repetitious, it's going into relevant matters, then the deposition has to go forward.

Jerry Bolivar - Wade memo motion compel continued depo

*Id.*

The district court held that due to the potentially wide range of issues as to which the plaintiff had yet to be deposed, the magistrate judge's denial of a time limitation was not clearly erroneous or contrary to law. *Id.* at *3. Further, if the defendant's inquiries at the continued deposition became abusive, burdensome, or repetitious, the magistrate judge would entertain objections if such an occasion arose, which is the appropriate way to treat such issues. *Id.*

Here, defendants deposed plaintiff on May 1, 2006, for 6 hours excluding breaks. The parties agreed that defendants could depose plaintiff further on May 5, 2006. The continued deposition on May 5, 2006, lasted for 2.9 hours, for a total of 8.9 hours. After the May 5, 2006, continued deposition, defendants orally requested additional time to depose plaintiff further, and plaintiff's counsel denied the request. Defendants now seek court intervention for additional deposition time necessary for a fair examination of the plaintiff. Defendants have acted in accordance with the suggested procedure set forth in Moore's Federal Practice and *Malec*.

**B.    The Motion Should Be Granted Because There Is Good Cause For More Time To Depose Plaintiff.**

"The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." *See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.). Defendants hereby show good cause for a court order extending plaintiff's deposition because: (1) defendants have not been able to question plaintiff regarding several of plaintiff's claims or plaintiff's alleged damages; (2) defendants' progress was impeded and delayed by plaintiff's lack of memory and equivocal testimony; (3) this is a very fact-intensive case dating back several years and involving several thousand documents; (4) plaintiff has not produced documents

responsive to defendants' discovery requests, and questioning about those documents will be necessary once the documents are produced; and (5) there are multiple defendants in this litigation including the North Slope Borough, which has not yet had an opportunity to depose the plaintiff.

1. **The Motion Should Be Granted Because Defendants Have Not Been Able To Question Plaintiff Regarding Several Of Plaintiff's Claims Or Plaintiff's Alleged Damages.**

In *Grill*, 2004 WL 2314639, the court found good cause for an order compelling the resumption of plaintiff's deposition for as much time as was necessary for defendants to complete their questioning because defendants were not able to question the plaintiff about her allegations of approximately 30 separate occasions of discrimination at five warehouses and it became apparent that not all relevant documents had been produced during the first six and half hours of deposition. *Id.* at *1; *see also Raymond*, 2004 WL 1381134, at *2-3 (magistrate judge's denial of a time limitation was not clearly erroneous or contrary to law in view of the potentially wide range of issues to which plaintiff had yet to be deposed, and in view of magistrate judge's willingness to entertain objections if inquiries at plaintiff's continued deposition become abusive, burdensome or repetitious).

Here, apart from some preliminary questioning about plaintiff's background and education, defendants spent much time on May 1, 2006, and the continued deposition on May 5, 2006, questioning plaintiff about the facts supporting her FMLA claims.  Plaintiff has alleged at least 40 separate incidents of discrimination against her by Ilisagvik College, John Tuthill, and Pamela Taylor. *See generally* Complaint.  Plaintiff has alleged a greater amount of alleged occurrences of discrimination than that alleged by the plaintiff in *Grill*.  *Grill*, 2004 WL 2314639, at *1.  Prior to the deposition defendants had virtually no facts about plaintiff's alleged serious health condition, including plaintiff's

alleged need for leave before the school semester ended.  *See* 29 U.S.C. 2612(e)(2) (the employee

shall make a reasonable effort to schedule the treatment so as not to disrupt unduly with the employer's

operations when the necessity for medical leave is foreseeable).  *See also* Exhibit H at 4 (twelve days of

personal leave allowed per contract year when taking it does not unduly interfere with the delivery of

Ilisagvik's program of instruction).

Defendants are entitled to fully question plaintiff about her six remaining claims and defendants'

potential defenses to those claims.  In order to establish a *prima facie* case of interference with

substantive FMLA rights, Wade must demonstrate the following: (1) she is an eligible employee; (2) the

College is an employer under the FMLA; (3) she was entitled to take leave; (4) she gave notice of her

intention to take leave; (5) and defendants denied her the benefits to which she was entitled under the

FMLA.  *Price v. Multnomah County*, 132 F.Supp.2d 1290, 1297 (D.Or.2001).  Defendants can

defend by proving that plaintiff was not denied any benefits to which she was entitled under the FMLA

because she did take medical leave in the fall of 2003 after she presented the necessary medical

certification.  Defendants may also establish that plaintiff did not have a serious health condition and/or

that she did not make a reasonable effort to take her medical leave which did not unduly interfere with

Ilisagvik College's program of instruction.  29 C.F.R. § 825.114(a); 29 U.S.C. § 2612(e)(2).  In order

to establish a *prima facie* case of discrimination against substantive FMLA rights, Wade must show: (1)

she availed herself of a protected right under the FMLA; (2) she was adversely affected by an

employment decision; and (3) there is a causal connection between the two actions.  *Washington v.

Fort James Operating Co.*, 110 F.Supp.2d 1325, 1330 (D.Or.2000).  Defendants can defend the

FMLA discrimination claim on the grounds that there is no causal connection between plaintiff's medical

leave in the fall of 2003 and Ilisagvik's non-renewal of her contract due to the lengthy time span between the two events.

Due to the length of time defendants' counsel had to spend questioning plaintiff about her FMLA claims, defendants were unable to question plaintiff about her age discrimination claims, her whistleblower claim, her § 1983 claim, or her claim for intentional infliction of emotional distress. To prove her ADEA claim, plaintiff must show that she: (1) is a member of the protected class; (2) was performing her job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Palmer v. United States*, 794 F.2d 534, 538 (9th Cir.1986) (quoting *Foster v. Arcata Associates, Inc.*, 722 F.2d 1453, 1458 (9th Cir.1985)). The analysis is similar for plaintiff's AS 18.80.220 claim. *See Haroldsen v. Omni Enterprises, Inc.*, 901 P.2d 426, 430 (Alaska 1995). The court then follows the three-part *McDonnell Douglas* analytic framework used in Title VII cases. First, plaintiff must establish a prima facie case of discrimination. If the plaintiff can show a prima facie case the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the employer meets this burden the plaintiff has the opportunity to prove by a preponderance of the evidence that the employer's stated reason for plaintiff's rejection was in fact a pretext for discrimination, and not the true reason for his discharge. *Palmer*, 794 F.2d at 537 (quoting and citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)); *Haroldsen*, 901 P.2d at 430. Defendants can defend on the age discrimination claims by showing that plaintiff was not replaced by a substantially younger employee, and that Ilisagvik College was not an "employer" under AS 18.80.220 because it is a non-profit educational corporation. *See* AS 18.80.300.

In order to assert a § 1983 claim against an individual, Wade must show the following:  (1) the conduct complained of was committed by a person acting under color of state law; and  (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Alford v. Haner*, 333 F.3d  972, 975-76 (9th Cir.1999), *overruled on other grounds* by *Devenpeck v. Alford*, 125 S.Ct. 588 (2004).  An individual may assert a personal immunity defense, such as qualified immunity, under such a claim.  *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). In order to assert a claim against an entity, Wade must also demonstrate that an entity "policy" caused the alleged injury. This burden will be met if she can demonstrate an established policy or a deliberate indifference to a protected right.  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  Defendants Tuthill and Taylor can assert qualified immunity if they can show that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 473 U.S 159, 165-66 (1985) (citations omitted).

To prove her whistleblowing claim, Wade will have to show that:  (1) she has engaged in protected activity; and (2) the activity was a "substantial" or "motivating factor" in her termination. *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001).  Defendants can defend against this claim by establishing that Wade reported to a public body on a matter of private concern. *See Methvin v. Bartholomew*, 971 P.2d 151, 155 (Alaska 1998).

The elements of plaintiff's claim for intentional infliction of emotional and mental distress are: (1) the conduct is extreme and outrageous; (2) the conduct is intentional or reckless; (3) the conduct causes emotional distress; and (4) the distress is severe.  *Lincoln*, 30 P.3d at 589.  Defendants can disprove the emotional distress claim by showing that plaintiff was distressed before the events alleged in her

Case 3:05-cv-00086-TMB    Document 49    Filed 06/16/2006    Page 18 of 28

complaint, and that any alleged emotional distress was caused by other causes, such as plaintiff's four failed marriages, her other law suits, plaintiff's financial troubles which began before the events alleged in her complaint, and plaintiff's antidepressant and sleep medications which predated the events alleged in her complaint. Plaintiff's emotional distress claim goes back to the beginning of her employment with Ilisagvik College in 2000. Defendants are entitled to question her about the facts underlying her emotional distress claim.

In addition, defendants were not able to adequately question plaintiff about her alleged damages. Plaintiff stated that she would have to "give that some thought" as to what certain damages were as alleged in her complaint. Exh. K at 338. Defendants should be allowed to fully explore plaintiff's theories upon which plaintiff relies. If the court allows plaintiff's continued deposition to go forward, plaintiff's counsel can object if defendants' inquiries become abusive, burdensome, or repetitious. *See Raymond*, 2004 WL 1381134, at *2-3.

> **2.    The Motion Should Be Granted Because Defendants' Progress Was Impeded During Plaintiff's Deposition By Plaintiff's Lack Of Memory And Equivocal Testimony.**

If the deponent impedes or delays the examination, the court must authorize extra time. *See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.). In *Laplante*, the court found that the plaintiff and his attorney were "recalcitrant and uncooperative in their refusal to answer questions that seek information which is clearly relevant, not privileged, not overly broad, and not unduly burdensome" during the plaintiff's deposition. *Laplante*, 226 F.R.D. at 441. The court ordered that the plaintiff avail himself to the defendant for a continued deposition. *Id.* In *New Colt*, 2003 WL 22326978, the court allowed a continued deposition to go forward in part because "the deponent's

hesitant responses to inquiries precluded a rapid exchange of questions and answers." *Id.* at *1.

Here, plaintiff's lack of memory and equivocal testimony impeded the examination of plaintiff. When questioned, plaintiff responded "I don't know" approximately sixty times during her deposition on May 1, 2006. As the deposition progressed, plaintiff began to state "I don't know" with greater and greater frequency. Plaintiff did not recall how many classes she taught during her first year at Ilisagvik College or during 2002 without review of the records. Exh. J at 82, 94-95. Plaintiff testified that she saw Dr. Church during the summer of 2003 for a urinary tract infection and high blood pressure. She couldn't recall if that was the first time she had been treated for high blood pressure. *Id.* at 117.

Plaintiff was combative at times. She debated the meaning of the phrase "as soon as possible." She refused to acknowledge her signature on her employment contract for 2003-2004 and stated that she had never previously seen the last two pages to deposition exhibit 12, even though her signature was on the document. *Id.* at 96-99. Plaintiff denied that that her contractual terms regarding personal and sick leave changed from year to year, despite documentary evidence showing just that. *Id.* at 100-02. She refused to confirm what was shown on an exhibit (that she had 6 days of personal leave) until she was requested to read deposition exhibit 16. *Id.* at 111-12.

Plaintiff frequently gave contradictory answers to questions posed by defendants' counsel during her deposition on May 1, 2006. For example, she testified that defendant Tuthill pressured her to teach a Filing and Record Management class despite the fact that her teaching load was "already very, very heavy." Exh. J at 226. Less than an hour later, she reversed herself and stated that in fact it was not John Tuthill but his assistant Diana Kennedy who had pressured plaintiff to teach the course. *Id.* at 263. As another example of plaintiff's contradictory testimony, plaintiff stated that she could identify

Memorandum in Support of Motion to Compel Continued Deposition of Plaintiff – 117437
*Wade v. Ilisagvik College, et. al.*, Case No. 3:05-cv-086-TMB          Page 19 of 27

deposition exhibit 25 (an email sent by John Tuthill to plaintiff) and that she was "very confused as to why he wrote this note to [plaintiff]." *Id.* at 248. However, plaintiff subsequently stated, "I really don't recall getting this -- this letter." *Id.* at 249.

Plaintiff testified that Dr. Church said she should have unspecified medical tests done as soon as possible, but she told Dr. Church that the medical tests would have to wait until a later date. *Id.* at 126. She testified that she knew when she had come to Alaska in August 2003 that Dr. Church had scheduled appointments for her in early October for testing with an orthopedist and with a doctor for her urinary tract infection, but then reversed herself and said that when she returned to Alaska she didn't know about those appointments set in early October and doesn't know how she received notice of those appointments. *Id.* at 127-28. She conceded that her need for an orthopedist and her urinary tract infection was not life threatening, nor did those problems incapacitate her. *Id.* at 128. Plaintiff then said that she did not know when or if Dr. Church had scheduled appointments for her. *Id.* Plaintiff made an appointment with a dermatologist named Dr. Gold but could not recall when she had scheduled the appointment for. *Id.* at 129. She testified that nothing had prevented her from making an appointment with a dermatologist during the summer when she was in Tennessee, and that her doctor had told her there was nothing urgent about the spot on her shoulder. *Id.* at 132. However, the spot on her shoulder allegedly became "angry" when she returned to Barrow, and she was anxious to get testing done. *Id.* at 132-33. She stated there was not enough time to get an appointment with another doctor referred by Dr. Church, but then could not state how much time that process would take. *Id.* at 133.

Plaintiff also gave confusing and contradictory testimony about a leave request she gave to Tuthill in the fall of 2003. She testified that she presented a leave request to Tuthill "and he turned

around and handed it back to [plaintiff]." *Id.* at 184.  The following exchange then occurred.

> Q.      All right.  Well, you don't know if this is the very leave request that you claim
>         that you had filled out at the day you met with Dr. Tuthill, do you?
>         Ms. JOHNSON:          Objection to the form of the question.
> A.      I didn't -- I didn't say I had this filled out the day I met with him.
> Q.      Ma'am, you told me that you gave him the leave request along with the note
>         from Dr. Church and that he handed them back to you.
> A.      Well, that's possible.  I don't recall exactly.
> Q.      Well, what happened?  Did you or didn't you?
> A.      It wasn't yesterday that it happened.  I don't know - -
> Q.      Okay.  Do you have - -
> A.      if I gave it to him that day or if I gave it to him the same day I took it to Pam on
>         October the 2nd.

*Id.* at 191.

Finally, plaintiff's counsel appeared to coach plaintiff at one point during her deposition.  *Id.* at 257-58.  Because plaintiff's lack of memory and equivocal testimony impeded and delayed defendants' examination of plaintiff, the court should grant defendants more time to fully explore plaintiff's claims upon which she relies.

> **3.      This Case Is Fact-Intensive, Covering Events Occurring Over A Long Period Of Time And Involving Several Thousand Documents.**

Factors which warrant an extension of time for a deposition include: (1) whether the examination will cover events occurring over a long period of time; and (2) if the witness will be questioned about numerous or lengthy documents and the witness has not read the documents in advance, thereby prolonging the deposition.  *See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.).  In *Dunkin' Donuts*, 206 F.R.D. at 522, the court noted that the plaintiffs sought information regarding the defendants' finances for the past seven years, and also intended to refer to approximately 10,000 pages of documents which had been produced to the plaintiffs.  The court ordered that a corporate

representative could be deposed for fourteen hours over two days.  *Id.*

The undersigned questioned plaintiff at her deposition about her employment at Ilisagvik College.  Plaintiff was employed by Ilisagvik College from 2000-2004.  *See* Complaint, at 2, 3, 8.  Due to the nature of plaintiff's FMLA claims, the undersigned had to question plaintiff extensively about the events which occurred in the fall and winter of 2003, and the spring of 2004 which related to plaintiff's multiple leave requests. *See* Exhibit J, at 168, 172-219, 225, 231-69, 271-79.  Additionally, to support defendants' defense that plaintiff's employment contract was non-renewed for a variety of legitimate reasons, including student complaints about her performance and students' ability to meet with plaintiff for counseling regarding their classes, the undersigned questioned plaintiff extensively on those subjects. Exh. K at 342-407.

Up to the date of plaintiff's deposition, 7014 pages of discovery were disclosed between the parties.  Certainly not all of these documents are directly relevant to plaintiff's claims against defendants, but the undersigned's three volume "deposition notebook" which she utilized heavily during plaintiff's deposition contained approximately 600 pages of documents.

The sheer amount of documents inherently slowed down the deposition process.  Plaintiff apparently did not prepare in advance of her deposition by reviewing very many documents.  *See* Exhibit J at 6.  Plaintiff often spent lengthy amounts of time reading documents marked as exhibits before the undersigned could question her about the exhibits.  *Id.* at 69, 74, 96, 115, 195.  Eventually the undersigned resorted to going "off the record" to save deposition time while plaintiff reviewed documents rather than staying "on the record" and burning deposition time.  Exh. J, at 97, 152.

In summary, this is a fact-intensive case covering events occurring over a lengthy period of time,

Case 3:05-cv-00086-TMB   Document 49   Filed 06/16/2006   Page 23 of 28

and because 5864 pages of discovery were disclosed between the parties before plaintiff's deposition. Therefore the court should defendants' motion to compel plaintiff's continued deposition to allow defendants to adequately explore plaintiff's claims which she relies upon.

### 4. The Motion Should Be Granted Because Plaintiff Failed To Produce Documents Responsive To Defendants' Discovery Requests Prior To The Deposition.

A court considering a party's request for an extension of time for a deposition should grant the request where the examination reveals that documents have been requested but not produced. *See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.). In *Grill*, 2004 WL 2314639, at *1, the court found good cause for an order compelling the resumption of plaintiff's deposition for as much time as was necessary for defendants to complete their questioning, in part because it became apparent during the deposition that not all relevant documents had been produced during the first six and half hours of deposition, and defendants needed to question the plaintiff about those documents during the remainder of her deposition. *See also Raymond*, 2004 WL 1381134, at *1 (inquiry into medical records permissible regarding emotional stress claim).

Here, defendants specifically reserved their right to depose plaintiff further when it became apparent prior to plaintiff's deposition that plaintiff has not produced all of the medical records she is required to produce under Civil Rule 26(a). *See* Exh. I, ¶ 5. Plaintiff must establish that she has a "serious health condition" or her FMLA claims must be dismissed. *See* 29 U.S.C. § 2612(a)(1)(D). Civil Rule 26(a)(1)(B) requires that plaintiff provide a copy or a description by category and location of all documents, data compilations, and tangible things that are in the possession, custody, or control of plaintiff that plaintiff may use to support her claims. Plaintiff did not provide any medical records with

her initial disclosures. *See generally* Exhibit B.

Defendants served plaintiff with discovery requests regarding plaintiff's medical records. *See* Exhibit D, Interrogatory Nos. 1-3, Requests for Production Nos. 9, 10, 19, and 22, at 1-3, 14-15, 17, 18. Up to the date of plaintiff's deposition, plaintiff only produced 163 pages of medical records. The bulk of the medical records produced by plaintiff are dated 2003 to present, with the limited exception of roughly two dozen pages of medical records from Samuel Simmonds Hospital in Barrow. The Samuel Simmonds Hospital documents date back to 2000 generally, with a few pages dated 1992, 1990, and 1986.

Further, plaintiff has utilized at least four last names in her lifetime, and has resided at multiple addresses throughout Alaska and the southeast United States. *See generally* Exh. J at 4-51. Defendants could not reasonably be expected to recover medical records from all of plaintiff's medical providers for three reasons. First, defendants could not have identified plaintiff's medical providers or the various hospitals at which they are located. Second, plaintiff has not disclosed all of her medical providers to defendants. Finally, plaintiff did not disclose to defendants that she has gone by at least four different names until defendants discovered that fact very recently. Exh. J, at 50-51. Plaintiff also identified medical providers that she has seen since her employment with Ilisagvik College. *Id.* at 62-66. Therefore the Court should allow defendants to fully question plaintiff about her medical records at a continued deposition.

Similarly, Ilisagvik also requested that plaintiff produce records supporting her damages, including her claim that she was forced to withdraw retirement monies and her tax returns going back fifteen years. *See* Exh. A, Interrogatory No. 6, Request For Production Nos. 1, 3, 7, 18, 21, at 6-7,

Jerry Bolivar - Wade memo motion compel continued depo

12, 14, 17, 18.  To date, plaintiff has only produced 15 pages of miscellaneous IRS documents and 5 pages of PERS computer printouts which do not give any real information.  Defendant has not otherwise produced any documents supporting her calculation of damages.

Finally, defendants sought production of documents relating to lawsuits and administrative proceedings in which plaintiff was a plaintiff, claimant or witness in their October 14, 2005 discovery requests to plaintiff.  *See* Exh. A, Interrogatory No. 7, Request for Production No. 6, 8, 13, 14. Plaintiff has only produced approximately 18 pages of court or administrative proceeding documents, despite the fact that plaintiff by her own admission in discovery responses and in her deposition was involved in no less than seven lawsuits or administrative proceedings, with 14 of the 18 pages produced by plaintiff relating to one suit brought by Ford Motor Credit against plaintiff.  In summary, plaintiff clearly still owes defendants substantial amounts of written discovery.

**5.      There Are Multiple Parties In This Litigation.**

In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided.  *See* Fed.R.Civ.P. 30(d)(2) Advisory Committee Notes (2000 amend.).  In *New Colt*, 2003 WL 22326978, at *1, the court granted the defendant's motion for leave to continue the deposition of the plaintiff's expert for a period of up to four hours (after that expert had been deposed by a co-defendant for about six hours and by the moving defendant for about four hours) because the interests of two defendants were not necessarily consistent, and the advisory comments to Rule 30 note that extensions may be appropriate in multiparty cases.  *See also Moore,* 2005 WL 581357, at *4 (granting defendant's request for an additional three hours to conduct deposition of plaintiff because co-defendant had used 6 hours and 45 minutes of allotted seven

hours and had not left sufficient time for defendant to explore plaintiff's claims).

Here, counsel for defendants Ilisagvik College, John Tuthill and Pamela Taylor deposed plaintiff on May 1, 2006 and May 5, 2006. Counsel for the North Slope Borough, Peter Gamache, has not had the opportunity to depose plaintiff. Although the interests of Ilisagvik College, John Tuthill, and Pamela Taylor are fully aligned, plaintiff alleges numerous conversations with Tuthill and Taylor regarding leave, grievances, etc., that require explanation. Further, the interests of defendant North Slope Borough are certainly not aligned with the three defendants represented by Delaney Wiles. The claims by plaintiff that are sustainable among the defendants may be different and may require different lines of questioning. The court should compel plaintiff to appear for a continued deposition to allow the undersigned and Mr. Gamache to each have an opportunity to fully explore plaintiff's claims against their respective clients.

### CONCLUSION

In conclusion, the motion should be granted. Discovery currently is set to close on August 15, 2006, but defendants have requested an additional 90 days. *See* Defendants' Response to Plaintiff's Motion for Extension of Time for Discovery, dated May 30, 2006. Defendants have not been able to question plaintiff regarding several of plaintiff's claims or plaintiff's alleged damages. Defendants' progress was impeded during plaintiff's deposition by plaintiff's lack of memory and equivocal testimony. This is a very fact-intensive case dating back several years and involving several thousand documents. Plaintiff has not produced documents responsive to defendants' discovery requests, and questioning about those documents will be necessary once the documents are produced. Finally, there are multiple defendants in this litigation, including the North Slope Borough, which has not yet had an

opportunity to depose the plaintiff.

For the foregoing reasons, the Court should grant defendants' Motion To Compel Continued Deposition of Plaintiff, and as long as the questions are not repetitive or harassing, allow defendants to question plaintiff for as much time as is needed for defendants to examine plaintiff on her various claims and alleged damages.

Dated:__6-16-06_____        __s/ Cynthia L. Ducey_____
                                  Cynthia L. Ducey, ASBA # 8310161
                                  Delaney Wiles, Inc.
                                  1007 West 3rd Avenue, Suite 400
                                  Anchorage, AK 99501
                                  (907) 279-3581
                                  (907) 277-1331 Fax
                                  cld@delaneywiles.com

Certificate of service

I certify that a true and correct
copy of this documents has
been served by electronic service
on the 16th day of June, 2006 upon:

Linda Johnson

Peter Gamache

By:  Cynthia L. Ducey_____