(12) credits during the other semester. Such an arrangement requires the written permission of the Division Director and Academic Dean.

*College Service.* In addition to the teaching component, faculty are expected to perform service to and on behalf of the College. College service includes student advising, participating in College committees, curriculum development, program coordination and supervision, committee or project leadership, approved community service, special projects or scholarly activity. College service must comport with the College's mission, goals and timelines. Teaching additional credits does not fulfill the College service requirement.

*Additional Credit Load.* Faculty who accept instructional workloads in excess of thirty (30) credits per academic year must receive prior written approval of the Division Director and Academic Dean. Any excess credit loads or adjustments to a fifteen (15) credit semester must receive prior written approval by the Division Director and Academic Dean. Faculty shall not exceed six (6) additional credit loads per academic year. Faculty shall receive compensation for excess credit loads at the completion of the academic year at a rate of $1,500 per credit in addition to his/her regular salary. Faculty shall not receive compensation should the excess credit load class be cancelled.

*Course Assignments.* The instructional Division Director makes assignments with input from the faculty member prior to the start of each semester. All assignments require approval from the Academic Dean. Courses that meet student program requirements receive the highest priority.

*Class Cancellation.* Faculty are expected to recruit students to enroll in their classes as necessary. Classes that do not reach minimum enrollments as determined by the Division Director and Academic Dean may be cancelled. Should an assigned class be cancelled, faculty are expected to complete equivalent hours through curriculum development, online course development or other special projects as agreed upon by the Division Director and Academic Dean. Faculty shall not receive additional compensation for a cancelled class that would be part of that faculty member's excess credit load.

*Evaluation.* Faculty members shall be evaluated in accordance with Trustee policy.

*Professional Development.* Faculty are obligated to remain current in their field and are expected to participate in professional growth activities including, but not limited to, course work, professional association activities, vocational internships or scholarly activities in the faculty member's discipline. Professional development shall be supported by the College based upon availability of funds and in accordance with Trustee policy.

EXHIBIT AB
PAGE 060

2

20216
Wade v. Ilisagvik College

Exhibit ___11___
Page _6_ of _6_

**Bobbi J. Wade**
3705 Arctic Blvd., PMB 1155
Anchorage, Alaska 99503

Phone:  907-279-7280
Cell:     615-631-1706
E-mail:  akbwade2@aol.com

29 June 2000

Human Relations Department
ILISAGVIK COLLEGE
P.O. Box 749
Barrow, Alaska  99723

Dear Review Committee:

Please accept this letter as an application for either one of the two positions advertised:
(1) Assistant Professor/Instructor of Information and Office Technology, or (2) Assistant
Professor /Instructor of Business Management. I am also sending other pertinent
information for your perusal. If you need two sets of attached credentials, or any other
information, please advise, and they will be sent to you post- haste.

As you can tell from the resume', I have previously taught Office Management and also
Technical Communications. Then, too, many courses in English. My education consists
of many post-graduate courses, and, at the present, I am enrolled in a doctoral program,
which will end with a major in English and a minor in Educational Leadership. Added to
the above, I have several years' experience teaching in colleges and universities.

I lived in Barrow several years ago and would enjoy living there again; consequently, my
adaption to your climate would not be a factor to be considered.

Thank you for your time, attention, and concern.

Sincerely,

*Bobbi J. Wade*

Bobbi J. Wade
Instructor

20217
Wade  v. Ilisagvik College

Exhibit  12
Page  1  of  6

*Bobbi J. (Underwood) Wade*

3705 Arctic Blvd, PMB 1155
Anchorage, Alaska 99503
Phone: 907-279-7280 * Cell: 615-631-1706 * Email: akbwade2@aol.com

## Synopsis of Past Performance

### Education and Certificates

Presently enrolled in a Ph.D. program in English and Educational Leadership
Master's degree in Educational Leadership + 55 Graduate Hrs. which includes:

| | |
|---|---|
| 1. Educational Administration | 4. Reconstruction Theory |
| 2. Finance & Budget | 5. Human Relations in Education |
| 3. School Law | 6. Curriculum Theory |

7. Qualified as an Educational Specialist for the Tennessee State
   Department of Education

### Achievements and Experience

*University of Alaska Anchorage*                     January 1998 - December 1999
*Anchorage, Alaska*

Annual contract as Professor of Technical Communications. Duties included:

| | |
|---|---|
| 1. Ethical & legal Considerations | 5. Integrating Design, Graphics |
| 2. Multiculturalism & Collaboration | 6. Drafting Documents |
| 3. Electronic Communication Tools | 7. Writing Formal Reports |
| 4. Determining purpose & Strategy | 8. Drafting Manuals |

*teaching?*
*2 yrs.*

*Anchorage School District*                         September 1995 - 1996
*Anchorage, Alaska 99504*

Served as a Principal Intern in coordination with the Anchorage School District.
This work included coordinating, planning, budgeting, organizing, and
implementing State and Federal funding due to innovative programs. Programs
such as Restructuring, Curriculum Review and implementation, Site-Based
Management, Core Curriculum, Integrated Assessment System, and Curriculum
Initiative Cost Summaries, etc. All programs were developed to meet the needs
of students from diverse, socioeconomic, and cultural backgrounds. Other specific
duties were:

*Equiv. exp.*
*1 yr.*

1. Administered a budget-control ledger for teacher/staff expenditures
2. Interviewed, assessed, & hired personnel
3. Coordinated & compiled ASD reports in student performance
4. Supervision of student & discipline reports
5. Organized & implemented staff meetings

EXHIBIT AB
PAGE 062

20218
Wade v. Ilisagvik College

Exhibit 12
Page 2 of 6

Wade 2

6. Assessed criteria for meeting goals & objectives
7. Coordinated and compiled state & Federal accreditation standards
8. Other duties required by the administration of the ASD & UAA

*Elmendorf Air Force Base*                    May 1996 - August 1997          *part time*
*Anchorage, Alaska*

Annual contract to instruct and coordinate classes for adults and youth who were
military personnel, spouses, and family.  The classes were held at the
Development Skills Center on the Base for off-hours from work or school
for recreational purposes. The contract consisted of organizing, scheduling,
planning, budgeting, and implementation of classes.

*Anchorage Academy One*                       May 1997 - Present             *10 dues. exp.*
*Anchorage, Alaska*

Successfully completed a feasibility study for establishing a private
school in Anchorage, Alaska, based on supervision as a proactive process.
All criteria was met concerning local, State, and Federal regulations and
laws, which are required by the Alaska State Department of Education.
This work was done in coordination with the Alaska SBA, PTAC, and an
official of a local bank.  Funds were approved for this project guaranteed
by the Small Business Administration.

Organized and implemented a feasibility study for incorporating
educational services and training as part of the curriculum for
*Anchorage Academy One* by means of procurement of contracts, which
pertain to analysis, grants, contracts, development, technology,
coordination, administration, consultation, and educational training.
The project was successfully orientated into the business with the
coordination of the PTAC, which is an affiliate of the University of
Alaska Anchorage.

*Arctic Sivunmun Ilisagvik College*           September 1992 - May 1993      *part time ?*
*Barrow, Alaska*

Fulfilled an annual contract to instruct Office Management, and Records
and Database Management, which included Distance Education to other
remote sites within the North Slope Borough of Alaska. Duties included:

1. Distance Education by electronic and audio technology.
2. Classroom instruction in electronic database technology.

Wade 3

3. Evaluated and assessed student achievement.
4. Met university requirements in student placement.
5. Monitored and fulfilled the requirement for a Federal Grant funded for the North Slope Borough libraries.
6. Served as Assistant Librarian in absence of Librarian.

*Enterprise State Jr. College*                    More than 5 years
*Enterprise, Alabama*

part time ?

Contracted to teach Methods of Written Communications to the military personnel and spouses at *Ft. Rucker Helicopter Training Center, Ft. Rucker, Alabama.* These classes consisted of adult students who were on active duty and pursuing higher educational goals. Other duties were:

1. Coordinated student schedules to coincide with military duties.
2. Coordinated group and individual courses of study.
3. Evaluated and assessed students.
4. Recommended and approved student placement in ongoing programs of higher education.
5. Counseled and consulted with students in personal and school problems.

*Tennessee State University*                    More than 5 years
*Nashville, Tennessee*

Annual contract to instruct Developmental Studies, and Methods of Written Communications. Duties consisted of:

1. Preparation of a Scope and Sequence program composed of course outline and projects to be completed for evaluation.
2. Lecturing and monitoring oral and written reports.
3. Scheduled conferences, and counseled students on school related problems.
4. Assessed and evaluated student progress to recommend placement for ongoing higher education.

*Jackson County School Board*                    More than 5 years
*Marianna, Florida*

Continuing contract as an English Instructor and Media Specialist. Some of the duties consisted of:

1. Chairperson of the English Department.

EXHIBIT AB
PAGE 064

20220
Wade v. Ilisagvik College

Exhibit 12
Page 4 of 10

Wade 4

2. Senior sponsor and counselor.
3. Coordinated and wrote curriculum guides.
4. Coordinated, outlined, and planned a Scope and Sequence program on a county-wide basis.
5. Counseled seniors in educational and career development in obtaining scholarships, grants, etc. to institutions of higher learning.
6. Assessment and evaluation of student performance.
7. Instructor in the Adult Education program provided for adults to obtain a high school diploma.
8. Coordinated and implemented a summer recreation program in arts and crafts in coordination the Adult Education program on a county-wide bases.
9. Media Specialist.
10. Supervisor of Media Center which included administrative duties; budget-control ledger, etc.
11. Coordinated and supervised workshops for county-wide class-room teachers on the use of audio and video equipment in the in the classroom.
12. Supervised and scheduled a staff of twelve employees.

Also, served periodically on the Superintendent's staff on a collaborative basis in writing State Accreditation Standards, proposals for Federal Grants, and Curriculum Guides on a county-wide basis for the purpose of meeting goals and objectives to meet the requirements of the Florida State Department of Education.

*Agricultural Stabilization and Conservation Service, USDA*
*Marianna, Florida*                                 More than 5 years

Served six years as an Agricultural Conservation Program specialist, who administers specified commodity and related land-use programs. These programs and projects included:

1. Disaster and Emergency Assistance
2. Conservation Reserve Programs
3. Commodity Credit Corporation
4. Rural Clean Water Program
5. Emergency Conservation Program
6. Water Bank Program
7. Soil Bank Program
8. Forestry Incentives Program and others

Exhibit 12
Page 5 of 6

Wade 5

Also, aided farmers and ranchers carry out programs in cooperation with other Federal and State agencies and organizations. Administered programs through a network of State and county offices. Administered programs prescribed by the Federal Emergency Management Agency as a result of a Presidential declaration of disaster or an emergency. Assessed and solved conservation problems, and completed projects in conservation and environmental protection practices through cost-sharing and exchange of technical expertise. Controlled and dispersed a multi-million dollar budget annually, which was audited annually by Federal officials.

## Personal Honors and Additional Information

1. Who's Who in American Colleges and Universities.
2. Dean's List, President's List
3. Kappa Delta Pi Honor Society
4. Graduated Magna Cum Laude
5. Computer Skills
6. Excellent Public Relations Skills

## References

Dr. Kate Sandberg, Chair
University of Alaska Anchorage
Anchorage, Alaska 99508
Phone: (907) 786-4368
E-mail: msandberg@aol.com

Frank Randazzo, Principal
Northwood Elementary School
Anchorage, Alaska 99503
Phone: (907) 248-0100
Email: Randazzo_Frank@
    msmail.asd.k12

Wilson Brodgen, Manager
U.S. Department of Agriculture
Marianna, Florida 32447-6166
Phone: ( 850) 526-2610

Bob Matheny, CCAS
University of Tennessee
Nashville, Tennessee 37219
Phone: (615) 532-8885
E-mail: matheny@utk.edu

Vanessa Langston
University of Tennessee
Nashville, Tennessee 37219
Phone: (615) 532-8657
E-mail: langston@utk.edu

Mike Taylor
PTAC
University of Alaska Anchorage
Anchorage, Alaska 99508
Phone: (907) 274-7232
E-mail: angmt1@uaa.alaska.edu

EXHIBIT AB
PAGE 066

20222
Wade v. Ilisagvik College

Exhibit 12
Page 6 of 6

# *Receipt & Acknowledgment*
## *of*
## *Iḷisaġvik College*
## *Employee Handbook Insert*
## *[Revision: Effective 2/1/02]*

*My signature below acknowledges that I received a copy of the revisions to Iḷisaġvik College's Employee Handbook. I understand that their effective date is February 1, 2002, and I acknowledge that I have read these revisions and am responsible for knowing and complying with their contents.*

Bobbi J. Wade
_____
**Employee Name (Print)**

Bobbi J. Wade
_____
**Employee Signature**

1/10/02
_____
**Date**

**Supervisor:** Please return this <u>original</u>, signed, and dated form to the Human Resources Office for placement in the employee's personnel file.

20223
Wade v. Ilisagvik College

Exhibit 13
Page 1 of 3

**EXHIBIT AB
PAGE 067**

# Receipt & Acknowledgment
## of
# Ilisaġvik College
# Employee Handbook

My signature below acknowledges that I received a copy of Ilisaġvik College's ("College") Employee Handbook. I acknowledge that I have read the Handbook and that I am responsible for knowing and complying with its contents. I understand that the Handbook and its policies are not a contract or an offer to enter into a contract. I further acknowledge that:

1.  Ilisaġvik College reserves the right to modify, revoke, suspend, terminate or change any plans, policies or procedures, in whole or in part, at any time with or without notice.

2.  Ilisaġvik College expressly revokes and rescinds any and all prior personnel policy and procedures manuals and handbooks.

3.  Upon termination of my employment with the College, I will return this Handbook to my Supervisor.

*Bobbi J. Wade*

**Employee Name (Print)**

*Bobbi J. Wade*

Employee Signature

*9/21/01*

Date

Supervisor: Please return this _original_, signed, and dated form to the Human Resources Office for placement in the employee's personnel file.

---

20224
Wade v. Ilisagvik College



Ilisaġvik College Employee Handbook - Approved: 9/7/01

**EXHIBIT AB**
**PAGE 068**

Exhibit 13
Page 2 of 3

# Receipt & Acknowledgment
## of
## Iḷisaġvik College Employee Handbook

My signature below acknowledges that I received this Iḷisaġvik College Employee Handbook on _8/22/00_ . My signature below also authorizes Iḷisaġvik College to release information regarding my job performance in good faith to prospective employers upon request.

I understand that I am responsible for reading and complying with the contents of this Handbook. I also understand that when I terminate employment with the College, I will return the Handbook to my supervisor.

_Bobbie J. Wade_
Employee Signature

_August 22, 2000_
Date

Supervisor: Please return a copy of the signed form to the College Human Resources Office for placement in the employee's personnel file.



Iḷisaġvik College Employee Handbook

20225
Wade v. Ilisagvik College

**EXHIBIT AB
PAGE 069**

Exhibit 13
Page 3 of 3

-----Original Message-----
**From:** Bobbi Wade
**Sent:** Friday, March 05, 2004 4:39 PM
**To:** John Van Hoesen
**Subject:** RE: Informal Step 2 Meeting Re: Tape Recording

John,

In response to your memo, the action in the meeting room is not described as accurate. But, I will agree to what you have said as acceptable except the last paragraph of your memo. I did not refuse to meet without the meeting being tape recorded. I agreed to meet without the tape recorder if you would sign a statement that you refused me the right to use a tape recorder. You said, "Yes, I will type it up right now," and out the door you went. I expected the meeting to proceed as planned.

Nevertheless, it is agreeable with me if we continue with the process as you have indicated in the last paragraph of your memo, upon the conditions that it is understood that I was prepared to meet at 1:00 pm today, and I am still prepared to proceed with Step 2.

Please respond with a confirmation that the next procedure is a written response to the Grievance within five (5) working days after the Step 2 meeting, and then I have the right to proceed to Step 3, if necessay.

Thanks,
Bobbi Wade

-----Original Message-----
**From:** John Van Hoesen
**Sent:** Fri 3/5/2004 3:39 PM
**To:** Bobbi Wade
**Cc:**
**Subject:** Informal Step 2 Meeting Re: Tape Recording

Bobbi:
Please see the attached in response to your request.

Thanks,
John Van Hoesen
John Van Hoesen, CFO
Ilisagvik College
P. O. Box 749
Barrow, Alaska 99723
907-852-1833 Fax 907-852-1831
john.vanhoesen@ilisagvik.cc

[text of attachment follows]

Exhibit 14
Page 1 of 2

# Ilisagvik College

March 5, 2004, 3:30pm

Memo To:    Bobbi Wade, Assistant Professor of Business Management

From:    John Van Hoesen, Chief Financial Officer

Re:    Informal Step 2 Meeting
       1:00pm at Tutoring Center

This memo serves to confirm our conversation this afternoon regarding procedures for the Step 2 meeting of your grievance, which was assigned to me by the President of the College and scheduled for 1:00pm today in the College Tutoring Center.

Upon entering the room, I asked if you would be having an attorney present at the meeting. You said no. I then asked you if you would be tape recording the meeting, and you said yes. I responded that I would not agree to the meeting being tape recorded, and said that if you insisted on tape recording the meeting that we would not hold the meeting. You responded that your attorney said you had a right to tape record the meeting, and that your right extended to not disclosing to anyone at the meeting that you were tape recording it. I again said that I would not agree to the meeting being tape recorded, and left the room to inform the other participants that no meeting would be held.

I returned a few minutes later with Pamela Taylor, Director of Human Resources, to re-confirm to you that no meeting would be held, and said that I would prepare my response to the grievance based on the material that I had already received. You requested that I confirm to you, in writing, that the College declined to tape record this meeting, and would no agree to allow you to tape record the meeting.

The purpose of the college's grievance process is to resolve issues on the most informal level. The informal nature of the supervisor-level meeting requires an atmosphere that encourages the persons involved to speak freely. In our experience, tape recording has a chilling effect on communications and hinders the informal resolution process.

The College understands your refusal to participate in the Step 2 meeting, unless tape recorded by you, to be a waiver of your right to a Step 2 level meeting. Accordingly, I will issue a written response to your grievance based on your written complaint and supporting materials. Please contact me with any questions.

EXHIBIT AB
PAGE 071

20227
Wade v. Ilisagvik College

Exhibit 14
Page 2 of 2

-----Original Message-----
**From:** Pam Taylor
**Sent:** Friday, April 02, 2004 9:54 PM
**To:** Bobbi Wade
**Subject:** Grievance Document

Dear Bobbi,
I wanted to stay late tonight in order to email to you the document that you chose  not to sign
yesterday as having received.  I will also mail the document to you via Certified Letter tomorrow
morning so that you receive an original copy.

Have a safe trip, Bobbi...
Sincerely,
Pam

Pamela Taylor - Director of Human Resources
Ilisagvik College
P.O. Box 749
Barrow, Alaska  99723
[907] 852-3936  FAX

[Attachment]

**EXHIBIT AB**
**PAGE 072**

20228
Wade  v. Ilisagvik College

Exhibit  15
Page  1  of  2

[Text of Attachment]

April 1, 2004

*Mailed via Certified Letter and delivered by electronic mail on 4/2/04*

Bobbi Wade, Assistant Professor
Ilisagvik College
RE:    *Cessation of Grievance Process*

Dear Ms. Wade:

This letter will confirm our conversation on March 30, 2004 with regard to the grievance filed by you on February 29, 2004.

On March 30, you brought me a document that you identified as your written appeal of the Step 2 decision issued by John Van Hoesen. I informed you that the five-day time period in which you could appeal the Step 2 decision had expired, and that your appeal was untimely. You did not leave the document with me.

You received the Step 2 written response on March 12, 2004. The College's Grievance Procedure states that any appeal must be filed within five (5) working days after receipt of the Step 2 response. This limitation is referred to in the Step 2 response, which instructs you to address any appeal to me, in accordance with the Grievance Procedure. I also informed you of the five-day deadline verbally when I delivered the Step 2 response to you on March 12th, and you told me that you understood.

Any appeal would have been due on or before March 19, 2004. The College has not agreed to extend any timelines for prosecuting this grievance, and does not agree to do so now.

Accordingly, Ilisagvik College respectfully declines to process your grievance further. Any further correspondence with respect to this matter may be directed to the President.

Sincerely,


Pamela Taylor
Director of Human Resources

## ACKNOWLEDGMENT OF RECEIPT

My signature below indicates only that I received this document on the date written.


---

BOBBI WADE                                    Date

EXHIBIT AB
PAGE 073

20229
Wade v. Ilisagvik College

Exhibit 15
Page 2 of 2

30 March 2004

Dr. Edna MacClean, President
Ilisagvik College
Barrow, Alaska 99723

Dear Dr. MacClean:                                Re: Grievance

On February 29, 2004, I submitted a formal grievance to Pam Taylor, Human Resource Director of Ilisagvik College. I followed the Grievance Procedure according to the Board of Trustees Employee Handbook. And according to the Employee Handbook, the Grievance Procedure indicates that since the grievance concerns my supervisor, Step #2 should have gone to the next highest level of authority. Step #3 was to have gone to even a higher level. I first filed this complaint in December, 2003, and then filed again on February 29, 2004. I have gone through several steps in order to follow the rules, but it is still standing in the same place without being given proper attention. And now, it seems that Pam is trying to cancel it out altogether.

We proceeded with Step 2, and I received a response to my complaints in the grievance from CFO John Van Hoesen on March 12, which ended Step 2 of the procedure. Pam brought it over to my office, and I signed a receipt of it. I then stated to Pam that I had five days to file an Appeal, which would be by March 19, and she remarked, "If you want to file an appeal."

Then Pam immediately told me, "We will have to put this procedure on hold, because I am leaving town this weekend and won't return until March 29." I was perturbed and reminded her that the five days would expire while she was away. She again told me that it couldn't be helped—that everything would just have to wait until she returned. I asked her if we could legally do that, and she said assured me that we could. She also told me that Sara Rahn Gamboa would have signature authority while she was gone. I then suggested that I hand Sara a copy of my Appeal. She assured me that that was not necessary, because we could just resume the process upon her return. **I wrote the appeal, however, and had it ready on March 19.** I have an indication on my computer under "Properties" that verifies the Appeal was printed on March 19, 2004 for the first time, and was ready for Ms. Taylor's perusal. Mr. Van Hoesen stated in his response in Step 2 that the Appeal was to have been addressed to Pam Taylor. If it was to have been given to someone other than Ms. Taylor, then I, too, should have had that in writing.

Today, March 30, 2004, upon Pam's return to her office, I made an appointment to see her, and upon my arrival, I handed her a copy of my Appeal and told her I was ready to resume with the procedure as she instructed we would do. She handed the Appeal back to me and said, "I cannot accept this because it is late." I was dumbfounded at her response. When I reminded her of her commitment to me to "put the procedure on hold until her return" she began to yell at me that I was wrong—that she had told me differently. I have been very meticulous in following the correct procedure in this grievance, and I don't believe that I am dense enough to have missed a deadline unless I was instructed to take a different action. The Appeal is behind regular schedule because of Pam's actions, not mine.

---



P.O. Box 749  Barrow, Alaska 99723  907-852-3333  Fax 907-852-2729
*Serving the Residents of the North Slope*

EXHIBIT AB
PAGE 074

20230
Wade  v. Ilisagvik College

Exhibit  16
Page  1  of  2

The discrimination and harassment that I have suffered since the beginning of the school year, and now the frustration from trying to take the proper action has caused me a lot of stress leading to medical problems. I have constantly been under medical care and have statements from the local doctors stating that I need attention from a specialist outside the state. But, I have put my own medical attention on hold because of this grievance procedure. Now, Ms. Taylor's actions will hinder the medical attention I need even further, unless things proceed as she told me they would.

According to what Pam told me prior to her leave, she would review my Appeal upon her return to her office on March 30, then, I should have a response within 10 working days from that date. I told her at that time that I would wait to go on medical leave until she returned, and I would need to be gone at least two weeks, which would put me back on April 19, and that would be three working days beyond the ten day time limit. She assured me that we could extend the time until my return, and I would need to ask for an extension in writing. We are to that point, and now she is saying differently, which is certainly not the case. I have followed her instructions explicitly, and now I expect her to honor those instructions.

Consequently, due to the circumstances, I am formally submitting this Appeal to you with the request that you give it careful consideration.

Thank you for your time, attention, and concern.

Sincerely,

*Bobbi J. Wade*

Bobbi J. Wade
Prof. of Business Management

Up Date:

Edna, since you are out of the office April 1 and 2 and will not receive this letter until April 5. it will be April 19 before a 10 working day time period will be up, and I will be back in my office by that time. Would you please honor my request in a reply to the enclosed Appeal. Thank again for your time and thoughtfulness.

**EXHIBIT AB**
**PAGE 075**

20231
Wade v. Ilisagvik College

Exhibit 16
Page 2 of 2



April 8, 2004

Bobbi Wade, Assistant Professor                    *Hand Delivered*
Ilisagvik College

    RE:   *Step 3 Grievance Meeting*

Dear Ms. Wade:

    I have had an opportunity to review your letter to me (dated March 30, 2004) and the procedural aspects of the grievance filed by you on February 29, 2004. On consideration of all the circumstances, Ilisagvik College agrees to waive the timeline for accepting your appeal for determination at the Step 3 level of the grievance procedure. I designate Dr. Patrick O'Rourke as the hearing officer for your appeal.

    In accepting your appeal, I note that a Step 2 meeting did not occur, and the Step 2 decision was based on written documentation submitted with your grievance. In order to provide you with a full chance to be heard on the matter of your grievance, Ilisagvik College offers you the opportunity to present your Step 3 appeal in a face-to-face meeting in front of the hearing officer. I have scheduled a meeting for this purpose on **Friday, April 16, 2004, at 1:30 p.m. in the Dr. Albert Conference Hall.**

    The meeting will be closed door. Each side will have approximately 20 minutes to make their presentation and introduce any additional documentary argument or evidence. This is not a due process hearing, so there will be no witnesses or cross-examination, although the hearing officer may ask questions of each party. After the hearing officer completes his questioning, each party may present a five-minute summary. Either side may tape record the meeting, at their expense.

    You have the right to be represented by a person of your choosing at the meeting. If you choose to exercise this right and be represented, either in person or telephonically, please inform me, in writing, that you will be represented and by whom, no later than close of business on Monday, April 12th.

P.O. Box 749   Barrow, Alaska 99723   907-852-3333   Fax 907-852-2729
*Serving the Residents of the North Slope*

**EXHIBIT AB
PAGE 076**

20232
Wade  v. Ilisagvik College

Exhibit    17
Page    1   of   2

April 8, 2004
Page 2

If you would prefer to waive the face-to-face meeting and have Dr. O'Rourke decide your grievance based solely on the written documentation submitted thus far, please inform me, in writing, also no later than close of business on Monday, April 12, 2004.

Any objection to the appointment of Dr. O'Rourke as hearing officer should be addressed to me and received by my office no later than close of business on Monday, April 12, 2004. Any objection must be in writing, and state the reason(s) for the objection, and include any pertinent supporting documentation.

Please contact me with any further questions.

Sincerely,

Edna Ahgeak MacLean, Ph.D.
President

cc:    Dr. Patrick J. O'Rourke
       Dr. John Tuthill

**EXHIBIT AB**
**PAGE 077**

20233
Wade v. Ilisagvik College

Exhibit 17
Page 2 of 2

-----Original Message-----
**From:** Pam Taylor
**Sent:** Thursday, April 29, 2004 2:23 PM
**To:** Bobbi Wade
**Cc:** 'Pat O'Rourke'; Edna MacLean; Claudia Mongoyak
**Subject:** Step 3 Meeting Re-scheduled to May 10

Hi Bobbi,
This note is just to confirm that your Step 3 meeting on the matter of your grievance, previously rescheduled due to the continuation of your medical leave, is now scheduled for May 10 at 1:30 pm with Dr. Pat O'Rourke as the designated hearing officer. Please let me know if you have any questions regarding this stage of the process and I'll be happy to assist.

Hope you're doing well, Bobbi, and having a quick recovery!
Sincerely,
Pam

Pamela Taylor - Director of Human Resources
Ilisagvik College
P.O. Box 749
Barrow, Alaska 99723
[907] 852-3936 FAX

**EXHIBIT AB**
**PAGE 078**

20234
Wade v. Ilisagvik College

Exhibit _19_
Page _1_ of _1_

From: "Pat O'Rourke" <porourke@bendcable.com>
To: John Tuthill <john.tuthill@ilisagvik.cc> , Bobbi Wade
<bobbi.wade@ilisagvik.cc>
Subject: Grievance hearing schedule
Date: Thu, Apr 29, 2004, 2:55 PM

John, Bobbi,

   As you know we have tentatively scheduled the grievance hearing for May 10, 2004 at 1:30 pm in the afternoon. Although I will be in Alaska the week before that, I would still be making the trip to Barrow on the 9th solely to do this hearing. It would save the College money if I could do it in conjunction with my next regularly scheduled visit to Barrow which will be the week of June 21 through 25. If it were acceptable to both of you, we could schedule the hearing for Thursday, June 24 at 1:30 pm. The first three days I'll be tied up with the Board. However to do this, I would need to have the agreement of both of you. If either of you disagree, we will proceed with the May 10th date. However, I need to firm up plane reservations so if possible I would like to hear back from both of you today. Thank you.

Pat O'Rourke

EXHIBIT AB
PAGE 079

20235
Wade v. Ilisagvik College

Exhibit        19
Page ___ of ___

-----Original Message-----
From: Pat O'Rourke [mailto:porourke@bendcable.com]
Sent: Friday, April 30, 2004 10:13 AM
To: Edna MacLean; John Tuthill; Bobbi Wade
Cc: Pam Taylor
Subject: Grievance hearing postponement

Edna,

   Assuming your concurrence, I am, as designated hearing officer, postponing the hearing of the grievance of Bobbi Wade against John Tuthill from Monday, May 10 at 1:30 pm to Thursday, June 24 at 1:30 pm.

Both John Tuthill and Bobbi Wade have sent their agreement to such a postponement. This will save the College money as my only business in Barrow on May 10 would have been the hearing.

   I would appreciate your officially noting your consent to this and notifying all parties.  Thank you.

Pat O'Rourke

## 7.05   FACULTY CONTRACTS

All faculty members shall be employed by Ilisagvik College pursuant to the terms of a written contract for a specified term of employment. This contract may be renewed from year to year, (at the College's discretion). Faculty are not tenured and have no expectation of continued employment except as indicated below. In cases of non renewal of employment, the College shall adhere to the following procedures, except in cases of financial exigency as declared by the Board of Trustees.

1. For faculty members in their *first year of employment* with the College, written notice of non-renewal of appointment shall be provided by May 1.

2. For faculty members in their *second year of employment* with the College, written notice of non-renewal of appointment shall be provided by April 1.

3. For faculty members in their *third and subsequent year of employment* with the College, written notice of non-renewal of appointment shall be provided by February 1.

Adopted: June 13, 1997
Revised: June 4, 1998
Revised: December 10, 1998
Revised: October 3, 2001
Revised: March 2003

20237
Wade v. Ilisagvik College
EXHIBIT AB
PAGE 081

Exhibit 21
Page 1 of 1        80

## Placement in Rank by Discipline

**Academic/Business** *
Humanities
Social Sciences
Natural Sciences
Business
Computer Information &
Business Systems
Mathematics
Office Systems
Accounting
English/Communications
Fine Arts
Education/ECE
Health Sciences
Human Services
Journalism
Justice
Social Work
Developmental Studies
Library Science
ESL

**Vocational/Technical** **
Automotive Technology
Aviation
Construction Trades
Diesel Technology
Emergency Medical Technology

Fire Science
Mechanics
Industrial Mechanics
Heavy Equipment Operations
Industrial Safety
Water/Wastewater
Welding Technology

**Cultural Studies** *
Alaska Native Language
Alaska Native Studies
Iñupiat Language
Iñupiat Cultural Studies
Iñupiat Language & Culture

\*    Rank is granted in one of the disciplines listed or in an appropriate sub- discipline (e.g., English, Mathematics, Biology, Iñupiat Language, etc.)

\*\*    Rank is granted in Vocational Trades.

## Affiliate Appointments

Individuals who are employed by agencies, colleges or universities that are not associated with Ilisaġvik College may be appointed as Affiliate Faculty to provide teaching or research activities for the College. Individuals holding affiliate appointments may be appointed to rank, but are not employees of Ilisaġvik College and are not eligible for compensation or benefits from the College.

## Contracts

All faculty members shall be employed by Ilisaġvik College pursuant to the terms of a written employment contract for a specified term of employment. The contract shall define professional responsibilities during the specified term of employment. The College reserves the right to transfer or reassign faculty in the best interests of the College.  Faculty are not tenured and have no expectation of continued employment.



Ilisagvik College Employee Handbook - Approved: 9/7/01          49

EXHIBIT AB
PAGE 082

20238
Wade v. Ilisagvik College

Exhibit _22_
Page _l_ of _l_

c.    In Cultural Studies, advanced degrees are not currently available in the disciplines listed and recognized expert status is the only way to recognize one's knowledge and abilities in this area. Recognized expert status is determined by the President and Dean of Instruction.

d.    In all cases, continuing advanced education is built into advancement in rank to encourage continuing education for all faculty.

## Placement in Rank by Discipline

**Academic/Business \***
Humanities
Social Sciences
Natural Sciences
Business
Computer Information & Business Systems
Mathematics
Office Systems
Accounting
English/Communications
Fine Arts
Education/ECE
Health Sciences
Human Services
Journalism
Justice
Social Work
Developmental Studies
Library Science
ESL

**Vocational/Technical \*\***
Automotive Technology
Aviation
Construction Trades
Diesel Technology
Emergency Medical Technology

Fire Science
Mechanics
Industrial Mechanics
Heavy Equipment Operations
Industrial Safety
Water/Wastewater
Welding Technology

**Cultural Studies \***
Alaska Native Language
Alaska Native Studies
Iñupiat Language
Iñupiat Cultural Studies
Iñupiat Language & Culture

\*  *Rank is granted in one of the disciplines listed or in an appropriate sub- discipline (e.g., English, Mathematics, Biology, Iñupiat Language, etc.)*
\*\*    *Rank is granted in Vocational Trades.*

**27.4    Affiliate Appointments.**   Individuals who are employed by agencies, colleges or universities that are not associated with Ilisagvik College may be appointed as Affiliate Faculty to provide teaching or research activities for the College. Individuals holding affiliate appointments may be appointed to rank, but are not employees of Ilisagvik College and are not eligible for compensation or benefits from the College.

**27.5    Employment Contracts.**   All faculty members are employed by Ilisagvik College pursuant to the terms of a written employment contract for a specified term of employment. The contract shall define professional responsibilities during the specified term of employment. The College reserves the right to transfer or reassign faculty in the best interests of the College.   Faculty are not tenured and have no expectation of continued employment.

**27.6    Promotion.**   The College provides Regular faculty an opportunity to be promoted to the next higher rank, based on a consistent, demonstrated record of exemplary and meritorious performance as shown in the prior three performance evaluations.  To be eligible for faculty promotion, an individual must be engaged in teaching or faculty duties at least 50% of the time.



Ilisagvik College Employee Handbook – Approved: 5/12/04          47

EXHIBIT AB
PAGE 083

20239
Wade v. Ilisagvik College

Exhibit  23
Page  1  of  1

# GRIEVANCE PROCEDURE

It is the policy of Iḷisaġvik College to ensure that employees are treated fairly and equitably on matters affecting their employment. Regular and Rotation schedule, full-time and part-time, and Regular faculty employees of Iḷisaġvik College who believe they have not been treated fairly or equitably and have attempted to resolve their concerns with their immediate supervisors, may file a Grievance in accordance with the procedures set forth below. While temporary and adjunct employees are encouraged to bring work-related problems to their immediate supervisors, they are not eligible to file a Grievance.

## General Provisions

Employees are encouraged to resolve employment-related matters by discussing their concerns informally with their immediate supervisor. The purpose of the Grievance procedure is to secure at the lowest administrative level a fair, equitable and expeditious solution to a perceived problem. Grievances may be filed by employees to resolve disputes on matters affecting their employment, including claimed violations of Iḷisaġvik College policy. Notwithstanding, the amounts of an individual employee's compensation, reduction in force, lay-off or dismissal from employment are not grievable.

At any step of this process, timelines may be extended by written agreement of all parties involved. At any step in the Grievance procedure, except the informal discussion with the employee's immediate supervisor, the grievant has the right to be represented by a person of his or her own choosing.

## Process

### Step 1: Filing a Written Grievance
An employee must initiate the Grievance process no later than thirty (30) calendar days from the date that the employee knew or should have known of the alleged problem or violation. Within this timeframe, an aggrieved employee may submit a written Grievance to his/her immediate supervisor, setting forth with reasonable specificity the facts and circumstances as clearly as possible. All Grievances shall identify the provision(s) alleged to have been violated, shall state the specific redress sought, and shall be signed and dated by the employee. The Grievance must include all pertinent documentation.

### Step 2: Meeting With Supervisors
Within five (5) working days from the date a Grievance is filed, an informal meeting will be held with the grievant and the grievant's immediate supervisor. If circumstances warrant, the meeting shall include the grievant's second-level supervisor. The purpose of this meeting is to attempt to resolve the employee's



Iḷisagvik College Employee Handbook - Approved: 9/7/01

**EXHIBIT AB**
**PAGE 084**

20240
Wade v. Ilisagvik College

46  24
Page 1 of 2

concern(s). The supervisor(s) will provide the grievant with a written response to the Grievance within five (5) working days after the Step 2 meeting.

### Step 3: Appeal

If the grievant is not satisfied with the response from Step 2, he/she may file an Appeal with the Executive Vice President (or designee) within five (5) working days of the supervisor's response. The Appeal must be submitted in writing, and include the Step 2 response and all of the documentation required in Step 1. An Appeal will not be considered if it is not submitted in writing.

The Executive Vice President (or designee) shall review the Appeal and all supporting documentation. The Executive Vice President may request additional information from the parties. The Executive Vice President shall provide a final written decision to the parties within ten (10) working days after the Appeal is received.


Exhibit 47  24
Page 2 of 7

## 25. EMPLOYEE COMPLAINTS -- GRIEVANCES

**25.1 General.** Ilisagvik College strives to treat its employees fairly and equitably on matters affecting their employment. The purpose of the complaint and grievance process is to secure at the lowest administrative level a fair, equitable and speedy resolution to a perceived violation of a provision of this Handbook or Board of Trustees policies, or a provision contained in a written employment agreement.

**25.2 Eligibility to Use Grievance Process.** The grievance process may be used by all Regular and Rotation Schedule full-time employees, Regular part-time employees and Regular faculty employees. While temporary, probationary and adjunct faculty employees are encouraged to bring work-related issues to their immediate supervisor, they are not eligible to use the grievance process. The grievance process does not apply to the President, or where specified in a written employment contract. Complaints of unlawful discrimination may still be processed under Section 23 of this Handbook by employees who are otherwise not eligible to file grievances.

**25.3 Scope of Policy.** This procedure covers complaints about the individual employee's terms and conditions of employment, including violations or misapplication of personnel policies and other substantial policies of the College, as well as claims of unlawful discriminatory treatment. Objection to a lawful policy or practice adopted by the College shall not constitute grounds for complaint, unless the policy is being applied in an unlawful manner.

**25.4 Informal Resolution.** Employees are encouraged to try to resolve complaints as early as possible by direct, informal communication with their supervisor. Supervisors are responsible for handling complaints at the lowest level, whenever a sound resolution can be reached, consistent with College policies and business demands. Where the supervisor and the employee fail to resolve the matter, or when the employee believes the supervisor has committed an alleged unlawful action, crime or a serious violation of policy, the employee may bypass this step and initiate the formal Grievance procedure.

**25.5 Grievance Procedure.** A written complaint must be filed with the Human Resources Director within ten (10) working days after the action complained of, or, if the employee and supervisor have tried to resolve the problem informally, 10 working days after they fail to reach resolution.

25.5.1    Statement of grievance. The written complaint must state the problem clearly, and identify the policy violation(s) complained of. Where available, dates of the violation(s) should be stated. Employees must include copies of all pertinent documentation. Employees must identify the specific provisions of this Handbook, Board policy or the employment contract alleged to have been violated. Employees must state what relief they are seeking, as specifically as possible. The written complaint must be signed and dated by the employee.

25.5.2    Submission and review. The written complaint shall first be submitted to the Human Resources Director for review. Once the Human Resources Director determines the written complaint meets the grievance criteria, the document will then be forwarded by the Human Resources Director to the employee's supervisor. The supervisor reviewing the complaint shall make



20242
Wade v. Ilisagvik College
**EXHIBIT AB**
**PAGE 086**

Exhibit 25
Page 1 of 2

reasonable eff s to investigate the allegations made b e complainant and allow the complainant a reasonable opportunity to present evidence or argument. This may involve, but does not require, a hearing or other oral presentation. In his/her discretion, the supervisor may hold a meeting with the grievant, the Human Resources Director, and any other pertinent personnel to attempt to resolve the concerns. The supervisor shall issue a written response to the complainant within twenty (20) working days after receipt of the written statement of grievance. If the complaint is against an executive-level supervisor, the complaint shall be forwarded to another executive-level supervisor, as designated by the President.

25.5.3 __Appeal to executive-level supervisor.__ If the complaint is not resolved, it may be submitted, in writing to the employee's executive-level supervisor within five (5) working days after the supervisor's written response to the employee. The complaint must contain all pertinent documentation, including the documentation submitted with the complaint and the manager's written response. The executive-level supervisor may, but is not required to, request additional information. The executive-level supervisor shall issue a written response within ten (10) working days after receipt of the appeal complaint. The decision of the executive-level supervisor shall be final.

25.5.4 __Management options.__ Management may at any time institute an investigation, research documents, require the complainant or other individuals to answer questions and identify supporting evidence, or opt to submit the complaint to binding or non-binding arbitration or third party investigation.

25.5.5 __Records.__ All records of the complaint shall be maintained in a confidential file separate from the personnel file. At the conclusion of the complaint, a brief summary of the complaint and its resolution may be placed in the personnel file.

## 26.    ARBITRATION

At the College's option, any substantial employee dispute that relates to employee rights, including claims for additional compensation, retention, promotion, termination, and discipline, shall be referred to binding arbitration. Unless the College waives the Complaint procedure, the employee must process the dispute under the Complaint Procedure as a condition of binding arbitration. An employee may also request arbitration after completing the Complaint procedure, but such request shall not be binding on the College without its written consent. In the event that the College chooses not to refer the matter to arbitration, the employee would be free to pursue other remedies.

26.1    __Procedure.__ Unless otherwise agreed by the parties:

a.      the dispute shall be heard before a single arbitrator;

b.      the arbitrator shall be chosen from a list of qualified, experienced individuals selected by the American Arbitration Association (AAA);

c.      The arbitration shall proceed in accordance with the Labor/Employment Rules of the AAA.



20243
Wade v. Ilisagvik College

Exhibit _25_
Page _2_ of _2_

**EXHIBIT AB**
**PAGE 087**

Age Discrimination in Employment Act
29 U.S.C.A. § 623 [in relevant part]

## § 623. Prohibition of age discrimination

(a)    _Employer practices_.  It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

(d)    _Opposition to unlawful practices; participation in investigations, proceedings, or litigation_.  It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

(f)    _Lawful practices; age an occupational qualification; other reasonable factors...seniority system; ...discharge or discipline for good cause._  It shall not be unlawful for an employer...--

(1) to take any action otherwise prohibited under subsection (a)... of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age...;

(2) to take any action otherwise prohibited under subsection (a)... of this section--

(A) to observe the terms of a bona fide seniority system that is not intended to evade the purposes of this chapter...; or

(3) to discharge or otherwise discipline an individual for good cause.

---

**EXHIBIT AB**
**PAGE 088**

20244
Wade v. Ilisagvik College

Exhibit _26_
Page _1_ of _1_

§ 1625.7                                    29 CFR Ch. XIV (7-1-03 Edition)

section 4(f)(1) of the Act, they will be considered in conflict with and effectively superseded by the ADEA.

§ 1625.7  Differentiations based on reasonable factors other than age.

(a) Section 4(f)(1) of the Act provides that

* * * it shall not be unlawful for an employer, employment agency, or labor organization * * * to take any action otherwise prohibited under paragraphs (a), (b), (c), or (e) of this section * * * where the differentiation is based on reasonable factors other than age * * *.

(b) No precise and unequivocal determination can be made as to the scope of the phrase "differentiation based on reasonable factors other than age." Whether such differentiations exist must be decided on the basis of all the particular facts and circumstances surrounding each individual situation.

(c) When an employment practice uses age as a limiting criterion, the defense that the practice is justified by a reasonable factor other than age is unavailable.

(d) When an employment practice, including a test, is claimed as a basis for different treatment of employees or applicants for employment on the grounds that it is a "factor other than" age, and such a practice has an adverse impact on individuals within the protected age group, it can only be justified as a business necessity. Tests which are asserted as "reasonable factors other than age" will be scrutinized in accordance with the standards set forth at part 1607 of this title.

(e) When the exception of "a reasonable factor other than age" is raised against an individual claim of discriminatory treatment, the employer bears the burden of showing that the "reasonable factor other than age" exists factually.

(f) A differentiation based on the average cost of employing older employees as a group is unlawful except with respect to employee benefit plans which qualify for the section 4(f)(2) exception to the Act.

§ 1625.8  Bona fide seniority systems.

Section 4(f)(2) of the Act provides that

* * * It shall not be unlawful for an employer, employment agency, or labor organization * * * to observe the terms of a bona fide seniority system * * * which is not a subterfuge to evade the purposes of this Act except that no such seniority system * * * shall require or permit the involuntary retirement of any individual specified by section 12(a) of this Act because of the age of such individual. * * *

(a) Though a seniority system may be qualified by such factors as merit, capacity, or ability, any bona fide seniority system must be based on length of service as the primary criterion for the equitable allocation of available employment opportunities and prerogatives among younger and older workers.

(b) Adoption of a purported seniority system which gives those with longer service lesser rights, and results in discharge or less favored treatment to those within the protection of the Act, may, depending upon the circumstances, be a "subterfuge to evade the purposes" of the Act.

(c) Unless the essential terms and conditions of an alleged seniority system have been communicated to the affected employees and can be shown to be applied uniformly to all of those affected, regardless of age, it will not be considered a bona fide seniority system within the meaning of the Act.

(d) It should be noted that seniority systems which segregate, classify, or otherwise discriminate against individuals on the basis of race, color, religion, sex, or national origin, are prohibited under title VII of the Civil Rights Act of 1964, where that Act otherwise applies. The "bona fides" of such a system will be closely scrutinized to ensure that such a system is, in fact, bona fide under the ADEA.

[53 FR 15673, May 3, 1988]

§ 1625.9  Prohibition of involuntary retirement.

(a)(1) As originally enacted in 1967, section 4(f)(2) of the Act provided:

It shall not be unlawful * * * to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this Act, except that no such employee benefit plan shall excuse the failure to hire any individual * * *.

310

EXHIBIT AB
PAGE 089

20245
Wade  v. Ilisagvik College

Exhibit 27
Page 1 of 1