Response to the Grievance of Ms. Bobbi Wade

From:      John Tuthill  *[signature]*
           Dean of Instruction
           Ilisagvik College

Date:      March 2, 2004


Response to *"Violation #1: Age Discrimination"*

In November 2003, I hired Tim Carlson to teach BUS 105C and Aimee Valenti to teach BUSC 109C because the originally-scheduled instructor, Bobbi Wade was going to be absent for at least the first two weeks of instruction due to her medical leave. When Bobbi Wade initially requested the medical leave, she suggested that we delay the start of BUS 105C and BUS 109C from November 17/18 to December 1/2, so that she could teach the courses on a more intensive schedule upon her return from leave. This schedule change would have compressed BUS 105C into a total of six class meetings; BUS 109C into a total of five. I made the determination that such an intensive schedule was not in the best interests of the students, so I looked for other alternatives, identifying and recruiting two adjunct instructors who had the requisite content knowledge and teaching experience. The ages of these instructors had absolutely nothing to do with my decision.

Ms. Wade argues that the hiring of these two adjunct instructors was "restricting my position as Lead Instructor for the Business Management programs." She presents "Exhibit 2" a memorandum by Stan Scott, Acting Dean, dated February 10, 2002, indicating that she "is the lead faculty for Business Management programs. She will work with the Admin. Assistant for Academics and with the Director of Academics for scheduling and teaching assignments and for the hiring of Adjunct faculty...." The expression "work with" does not imply that Ms. Wade had or has sole responsibility or authority for scheduling, teaching assignments, and the hiring of adjuncts. This document is superseded by her present contract (Response Exhibit A), signed by Ms. Wade on May 5, 2003, which says nothing about any assignment as "Lead Instructor," nor anything about any responsibilities regarding scheduling, teaching assignments, or the hiring of adjunct faculty.

Chris Low was hired in August 2003 to fill an additional full-time position in the Business/IT program. His position was new, and an addition to our full-time faculty. Contrary to Ms. Wade's contention, Dr. Low in no way "has begun and will replace" Ms. Wade in her position. He has, in fact, taught courses in an entirely new program, the North Slope Borough Skills Academy, and additional College courses that Ms. Wade had not requested to teach in her proposed schedules. Ms. Wade contends that the hiring of Dr. Low is evidence of age discrimination against her. She does not point out that Dr. Low is himself hardly a "younger faculty member." He is 61 years of age.

Date: 5-4-06  Exhibit: 50
Witness: Taylor
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

100058

Exhibit 4
Page 1 of 15

EXHIBIT AK
Page 1 of 15

*Response to the Grievance of Ms. Bobbi Wade, page 2....*

In its January 2004 meeting, the College Board of Trustees approved the hiring of an additional, new, full-time member of the Business Program faculty. The new position is separate from Ms. Wade's position and has separate funding. This new position has nothing to do with the decision not to renew Ms. Wade.

The decision not to renew Ms. Wade's contract was in no way based on the costs associated with extending her contract or her vesting in a pension plan, nor is it certain that the College will save money by recruiting a new instructor to fill her position.

Ms. Wade presents no evidence or pattern of age discrimination against her in the actions I have undertaken as Dean of Instruction.

Response to *Violation #2: "A Vindictive and malfeasance act of Retaliation by John Tuthill, Dean of Instruction."*

The College hired Aimee Valenti to teach a total of 11 credits of instruction in Spring Semester 2004, including BUS 109. Ms. Wade had recommended another instructor to teach BUS 109, but in my estimation Ms. Valenti had superior credentials to teach that course, specifically a master's degree in English and prior experience teaching the course. While adjunct instructors do not usually teach more than 7.5 credits of instruction in a given semester, there is precedent and College policy to support occasionally increasing their instructional load beyond that amount. The decision to retain Ms. Valenti in Spring Semester 2004 was taken before and independently of the decision not to renew Ms. Wade's contract.

Ms. Valenti is also teaching an ESL course, at my request. I did ask the Director of the ABE Center for permission to use special ESL teaching materials for that course. I never attempted to "confiscate" these materials, as my correspondence on the issue in Ms. Wade's "Exhibit 8" makes clear. At the direction of the President of Ilisagvik College, I ordered new copies of the ESL teaching materials for use in this course when I was advised by the State of Alaska ABE Director that the College could not use materials purchased with ABE funds for non-ABE programs and courses. This issue has absolutely nothing to do with my decision not to renew Ms. Wade.

*Response to the Grievance of Ms. Bobbi Wade, page 3....*

Ms. Wade complains that Ms. Valenti "was slandering my name around the college." As evidence, she presents her "Exhibit 4" and "Exhibit 6." "Exhibit 4" contains allegations by Ms. Wade concerning Ms. Valenti in a document dated 11 December 2003. Ms. Wade's allegations are just that – allegations; they are not evidence of "slander" on the part of Ms. Valenti. "Exhibit 6" consists of copies of e-mails concerning student registrations in BUS 109 and ENGL 100 in Spring Semester 2004. I see no evidence of any "slander" on the part of Ms. Valenti in these messages. The 2003-2004 Ilisagvik College Course Catalog, page 74 (Response Exhibit B) lists the prerequisites for BUS 109 as "placement test, or completion of English 070, permission of instructor." Ms. Valenti, as the course instructor, has the right to use her professional judgment to waive course prerequisites, or not to waive course prerequisites, for any student seeking to take BUS 109.

I know of no "hoax" set up by Aimee Valenti, Jay St. Vincent, and myself regarding Carlon Whiskey's registration in English 100. I do not know who signed Ms. Whiskey's registration form, though it was certainly not "illegal." As Ms. Wade herself points out in an e-mail dated February 10, 2004 (Response Exhibit C): "I have approximately 60+ active advisees, which is well beyond the capacity of one person to serve properly. Consequently, a host of people help to register the students namely, Jaime, Brad, and others (which I appreciate very much)." It is also entirely appropriate for Ms. Whiskey to take English 100 as an important foundation to her future college study.

Ms. Wade surmises that the decision not to renew her contract was made to protect Ms. Valenti for my purposes and personal gain. She presents no evidence to that effect. In reality, my decision to retain the services of Ms. Valenti had nothing to do with my decision not to renew the contract of Ms. Wade. Ms. Valenti is in no way a substitute for or replacement of Ms. Wade. With the exception of BUS 109, the two instructors operate in different departments and programs.

**Response to *"Violation #3: Debasement and Defamation to use as justification for non renewal of contract."***

I did not "reprimand" Ms, Wade for student withdrawals from her courses in Fall Semester 2003 in my e-mail of January 15, 2004 (presented in Ms. Wade's "Exhibit 12") or at any other time. I pointed out a problem to her, and indicated actions that should be taken to address the problem.

100060

Exhibit 4
Page 3 of 15

*Response to the Grievance of Ms. Bobbi Wade, page 4....*

I did not "reprimand" Ms. Wade in my e-mail of January 20, 2004 (presented in Ms. Wade's "Exhibit 12") or at any other time regarding her request to teach individual study courses for her grand-daughter, Amy Underwood. I also did not accuse her of favoritism toward her grand-daughter. In my e-mail of January 20, 2004, I said only that "we must avoid any *appearance* of favoritism or other improprieties by giving special treatment" to students who are also close relatives of their instructor.

My request to the Registrar's Office for a copy of Ms. Underwood's transcripts was by no means a "debasement" of Ms. Wade or an invasion of Ms. Underwood's privacy. I needed the information in order to evaluate the appropriateness of the request for individual study.

Ms. Wade presents no evidence of "debasement and defamation" against her in the actions I have undertaken as Dean of Instruction.

In all of my actions about which Ms. Wade complains, I have been attempting in good faith to follow institutional best practices and to provide high quality instruction to our students:

1) I hired two adjunct instructors to teach BUS 105C and BUS 109C only because Ms. Wade herself needed to take a medical leave during instructional time in our academic semester;

2) I recruited one new faculty member for the Business program and secured budget approval for a second;

3) I hired an adjunct instructor to teach basic English courses at our institution this semester, including BUS 109, which Ms. Wade herself had asked not to teach;

4) I advised an instructor (Ms. Wade) of teaching practices that could make her Blackboard courses more effective for our students; and

5) I recommended a reasonable alternate plan for Ms. Wade's grand-daughter to complete her education at Ilisagvik College in a way that would avoid any appearance of favoritism.

None of these actions was unusual or inappropriate under the circumstances, and they do not support allegations of "age discrimination," "a vindictive and malfeasance act of retaliation," or "debasement and defamation."

Response Exhibit A

100062

Exhibit 4
Page 5 of 15



Faculty Appointment Letter for 2003-2004

May 1, 2003

Ms. Bobbi J. Wade
Iḷisaġvik College
P. O. Box 749
Barrow, Alaska 99723

Dear Ms. Wade:

On behalf of Iḷisaġvik College, I am pleased to offer you employment for the next fiscal year (2003 - 2004). The following terms and conditions apply to your appointment.

| | |
|---|---|
| Title: | Assistant Professor |
| Nature of Proposed Duties: | Provide instruction and college service in your field of expertise equivalent to 30 credit hours of teaching and 7 credit hours of College service over the course of the Fall, Spring and Summer terms. Typically, this will be the equivalent of 12 credit hours of teaching and 3 credit hours of College service in the Fall and Spring respectively, and 6 credit hours of teaching and 1 credit hour of College service in the Summer. To accommodate individual program needs, variations in the division of this workload among the semesters may be made by the Dean of Instruction with the concurrence of the President. Faculty are expected to assist with the recruitment, retention and mentoring of students and to participate in the various committee structures established to encourage faculty participation in the guidance of the institution. |
| Term: | July 1, 2003 through June 30, 2004. Following summer leave, you will be expected to report for work on Monday, August 18, 2003. It is understood by both the College and yourself that teaching positions at Ilisagvik College are untenured and one may not acquire tenured status by reason of this appointment. |
| Annual Salary: | $75,477.00, payable in equal bi-weekly installments based on 260 days of service per contract year. This is a professional, exempt position and as such does not carry any entitlement to overtime pay or additional compensation for any work performed on weekends, holidays, outside of normal working hours, or days in excess of 260 days of service per year. |

100063

P.O. BOX 749   BARROW, ALASKA 99723   907-852-3333   FAX 907-852-2729
SERVING THE RESIDENTS OF THE NORTH SLOPE

Exhibit 4
Page 6 of 15

The terms and conditions of your employment with Iḷisaġvik College are in accordance with this letter of appointment including Attachment A, the Iḷisaġvik College Employee Handbook and the Policy and

Regulations of the Board of Trustees as they exist today and as they may be duly amended from time to time. Of course, all employees are also expected to abide by state and federal law.

This letter of employment with its references encompassed herein constitutes the full and complete contract agreement between yourself and Iḷisaġvik College. Any other oral agreement between the parties shall be null and void. This contract shall be modified only in writing.

If you accept the above conditions of your employment with Iḷisaġvik College, please sign where indicated below and return the original to my office within twenty (20) days. Please retain a copy for your records. I am looking forward to your contributions this coming year.

Sincerely,

*Edna A. MacLean*

Edna Ahgeak MacLean, President
Iḷisaġvik College

I accept the above terms, conditions and provisions of the employment offered in this appointment and its attachment A.

*Bobbi J. Wade*          5/5/03
Signature                Date

Cc: Office of Human Resources

100064

Attachment A

## Iḷisaġvik College Faculty Appointments
## 2003 - 2004

Iḷisaġvik College recognizes its faculty as integral to the fulfillment of its mission to provide quality education and training to students. Toward this end, faculty are expected to be involved in academic and student life at Iḷisaġvik College by serving as a resource for students both inside and outside of the classroom.

*Academic Year* - The College's academic year consists of two full semesters (fall and spring) and one summer session (from May through the end of June). Specific dates and a College calendar are published by College administration. If deemed necessary and appropriate by the Dean of Instruction in consultation with the faculty member, certain programs may be scheduled at other times during the calendar year to better meet the needs of students. If such modifications occur, an addendum to this contract shall be made in writing.

*Teaching* - The teaching component of the workload is satisfied by teaching an assigned number of credit-hour courses, or by delivering a program of non-traditional or client-based programs. Equivalent assignments may be granted in one (1) credit increments, not to exceed three (3) credits per semester unless waived in writing by the Dean of Instruction. Equivalent assignments may include individual or independent course studies or client-based programs, individual lab instruction and other instructional functions. Faculty are expected to be available to students outside of classroom hours, and shall post and maintain at least 10 office hours per week at times scheduled for the convenience of the students.

Distance Delivery Course Preparation - The following may be applied towards faculty workload, upon approval by the Dean of Instruction, with involvement of the instructor:

- A faculty member who teaches a pre-written course (i.e. a "Canned" course) will receive the equivalent of one credit hour per three credit hours at a one to three ratio.
- A faculty member who develops and teaches a plan for an on-line course (i.e. a "From Scratch" course) will receive the equivalent of three credit hours per three credit hours at a one to one ratio.

*College Service* - As part of their professional duties, faculty are expected engage in college service. Such service activities may be assigned by the department head or the Dean following consultation with the faculty member and shall assist the College to fulfill its mission and goals. Activities include, but are not limited to: student advising, recruiting, participating in College committees, curriculum development, distance delivery technology, program coordination and supervision, grant and proposal development and reporting, accreditation support, committee or project leadership, community service, special projects or scholarly activity.

*Additional Workload* - Workloads are reviewed on a case-by-case basis by the Department Head and the Dean of Instruction in consultation with the instructor. Necessary work assignments in excess of normal workload may be eligible for additional compensation, pursuant to the terms of a written agreement between Iḷisaġvik College and the instructor. Such determinations shall be made by the Dean of Instruction subject to the approval of the President.

*Class Cancellation* - Instructors are encouraged to recruit students to enroll in their classes. A minimum enrollment of five (5) students is required per class, unless as otherwise determined by the Dean of Instruction. If a class does not meet the minimum enrollment, the Dean of Instruction shall, with the involvement of the instructor and Department Head, determine whether the class will be cancelled or under what circumstances the class will be taught. Should an assigned class be cancelled, instructors shall complete alternate faculty activities through curriculum development, online course development, or other special faculty projects as assigned by the Dean of Instruction. Instructors shall not receive additional compensation for a cancelled class that would be part of that instructor's excess credit load.

*Class Coverage* - Faculty needing class coverage must inform the Department Head one week prior to the class needing coverage. The faculty member will work with the Department Head to arrange coverage for the class. The class coverage agreement must be agreed upon between the faculty member and the Department Head and approved by the Dean of Instruction.

*Student Recruitment, Retention, and Mentoring.* - Faculty are encouraged to help part time students to identify their personal potential and career goals and to assist them to pursue program-active status. Faculty are also encouraged to accompany the recruiter on village recruitment tours. Faculty will participate in a half-day training session on mentoring students and class completion procedures involving referrals to other college resources.

*Professional Development* - Faculty are expected to remain current in their fields and to participate in professional growth activities including, but not limited to, course work, professional association activities, vocational internships or scholarly activities in the instructor's discipline. Professional development shall be supported by the College based upon availability of funds, with written approval of the Dean of Instruction, and in accordance with Board of Trustees Policies.

*Benefits.* - Faculty are eligible for benefits provided by the College, according to the policies and procedures set forth in the Employee Handbook. Current benefits include retirement contributions, health, dental, vision and life insurance, and the following paid leaves:

*Personal and Sick Leave* - Twelve days of personal leave per (contract) year are allowed when taking it does not unduly interfere with the delivery of the College's program of instruction. Leave must be approved in advance by the faculty member's department head and Dean of Instruction except in the event of an emergency situation. Personal leave has no cash value and may not be accrued from year to year.

*Winter Holiday Leave* – You are eligible to receive ten (10) days of paid time off, which includes two (2) paid holidays and eight (8) days of paid time off, during the Winter Holiday period scheduled from December 22, 2003 through January 5, 2004. Paid Winter Holiday leave does not have cash value, does not accrue, and is forfeited if not used during the term of your contract.

*Leave Without Pay* - Unexcused time off, or time off where no paid leave is available, shall be taken as leave without pay and deducted at the instructor's per diem salary rate, subject to the policies and procedures contained in the Employee Handbook.

*Drug Testing and Substance Abuse* - You understand and agree to comply with the College's drug testing and substance abuse policy. Failure to take or pass the drug screening as provided in the policy may result in termination of employment.

*Other Employment* - You shall devote full time to your duties as a faculty member with the College and shall not accept any other employment or fee during the term of this Agreement without first obtaining the written consent of the Dean of Instruction and the President.

*Point of Hire* - The point of hire for this contract is Barrow, Alaska and you specifically waive all rights to return transportation as outlined in AS 23.10.375-.400.

*Payroll Deductions* - You authorize the College to make regular deductions from the Employee's paycheck for mandatory contributions to the State of Alaska Public Employees Retirement System (PERS) and as otherwise authorized or required by law and the terms of this contract or Employee Handbook.

*Termination.* This Agreement may be terminated on mutual consent, or by the College for cause in accordance with Trustees Policy and the Employee Handbook.

*Liquidated Damages.* It is expressly understood and agreed that you will receive full salary and benefits beginning July 1, 2003 and that you have no duty to report or job duties until August 15, 2003 (unless otherwise specified in an Addendum to this contract). If you resign effective prior to December 31, 2003, you shall be liable to the College as liquidated damages the amount of your salary for the time period of July 1 through August 15, 2003. If you resign effective January 1, 2004 through the expiration of this contract, or otherwise terminates this contract without consent of the College, you shall be liable for liquidated damages in the amount of $2,500. You agree that the liquidated damages set forth herein may be withheld from any amounts due and owing to you from the College, or otherwise collected in accordance with law.

*Final Paycheck.* The College may withhold the your final paycheck pending submission of summaries, student grades, statistics, documents, College property, or pending resolution of salary or compensation disputes. You waive the right to receive final payment within three (3) business days following termination or expiration of this Agreement as provided by AS 23.05.140. The College shall issue final payment within five (5) business days after verified submission or resolution of the foregoing.

*Effective Date.* This contract shall become effective only after it is signed by the President of the College, signed by faculty member, and returned to the College. This Agreement must be signed by Employee and returned to the College within twenty (20) calendar days of receipt or the Agreement is void.

*Interpretation and Venue.* This contract shall be interpreted according to the laws of the State of Alaska and shall not be construed against the drafter hereof. Venue for any action brought under this contract shall be Barrow, Alaska. In the event any provision of this contract is found by a court of competent jurisdiction to be invalid, such provision shall be stricken but the remainder of the contract shall remain in full force and effect.

100067

Exhibit 4
Page 10 of 15

# Response Exhibit B

100068

Exhibit 4
Page 11 of 15

**BUS 105     SPRING          1-3 CREDITS**
**BUSINESS MATH**
Review of basic math computation skills as they apply to various areas of business including retail applications, statistics and graphics. Designed to provide the skills necessary to make better business decisions.

Module A – 1 credit
Review of whole numbers
Module B – 1 credit
Develop skills in fractions and percents
Develop skills in business and consumer math
Module C – 1 credit
Develop skills in interest and discount
*Prerequisite: Current enrollment or completion of MATH 055B or above, or permission of instructor.*

**BUS 106     SPRING          1 CREDIT**
**TIME MANAGEMENT**
The concept and principles of time management applied for gaining control over events that shape our working lives: desk control, handling interruptions, meetings, and procrastination. Tools include schedules, contracts, computerized personal information managers, personal digital assistants, and other types of electronic time management aids for increasing productivity.

**BUS 109   FALL, SPRING, SUMMER   1-3 CREDITS**
**BUSINESS ENGLISH**
Develops skills in English fundamentals with emphasis on language usage. Intensive study on grammar, punctuations, capitalization, spelling, word usage, and sentence structure. Also, develops skills in writing business documents with emphasis on letters, memos, resumes, reports and manuscripts, and other business documents.

Module A – 1 credit
Study on grammar skills
Module B – 1 credit
Study skills on the writing process
Module C – 1 credit
Study skills on writing business documents
*Prerequisite: Current enrollment requirement of placement test, or completion of English 070, permission of instructor.*

**BUS 110     FALL            3 CREDITS**
**PRINCIPLES OF ACCOUNTING I**
Accounting concepts and procedures for service businesses and for merchandising businesses owned by a single proprietor. Basic accounting principles including analyzing business transactions, T-accounts, journal entries, ledger accounts, posting and closing entries, accounts receivable and payable, payroll computations, and taxes. Includes record keeping, accounting requirements and the preparation of financial statements. Although tailored for the sole proprietor, this course will apply to all types of businesses.
*Prerequisite: MATH 058 or permission of the instructor.*

**BUS 111     SPRING          3 CREDITS**
**PRINCIPLES OF ACCOUNTING II**
Accounting concepts and procedures for businesses which are organized as partnerships or corporations and perform manufacturing operations. Accounting principles including notes payable and receivable, merchandise inventory, long-term bonds, statement analysis, corporate transactions, capital stock transactions, and property, plant and equipment. Activities emphasize financial transactions of partnerships and corporations, although the course will also apply to sole proprietorships.
*Prerequisite: BUS 110 or permission of the instructor.*

**BUS 112     FALL            3 CREDITS**
**PRINCIPLES OF ECONOMICS**
Introduction to basic economic concepts, including supply and demand, inflation, money and banking, interest rates, economic growth, price determination, equilibrium, consumerism, unemployment, and economic stability.
*Prerequisites: Completion or current enrollment in BUS 100 or permission of instructor.*

# Response Exhibit C

100070

Exhibit 4
Page 13 of 15

Exhibit 4
Page 13 of 15

John Tuthill

From: Diana Kennedy
Sent: Wednesday, February 18, 2004 5:16 PM
To: John Tuthill
Subject: FW: IT 110 Pre-requisites for all computer classes...


Diana Kennedy
Assistant to the Dean of Instruction
Ilisagvik College
Phone 907-852-1811
Fax 907-852-1822
-----Original Message-----
From: Bobbi Wade
Sent: Wednesday, February 18, 2004 4:26 PM
To: Dawn Robinson; Diana Perkett
Cc: Diana Kennedy
Subject: RE: IT 110 Pre-requisites for all computer classes...

Hi Dawn:
   As Lead Instructor of Business and Management programs, and assigned advisor of most of these students, I would like to respond to your question also. Ordinarily, it is the duty of the person who signs the Registration form, and who also has access to the student's file. But this is not always the case; I have approximately 60+ active advisees, which is well beyond the capacity of one person to serve properly. Consequently, a host of people help to register the students namely, Jaime, Brad, and others (which I appreciate very much). And, not having access to the student's file folder, the student's record might not get checked for prerequisites. Then, too, if you will notice, the prerequisite for most I T courses state: "Or the permission of the instructor. So, it is really up to the instructor who teaches the IT course to allow the student to take a higher IT course without having had IT 110. The first thing I do when I get a new class list is to check it to see if all students are eligible, if not, we withdraw them from the class. When I say "we" I mean myself and the adjuncts who are and have been for the last four years working under my tutelege.
   So, who's to say if it is anyone's "job." It is everyone's job, and we have all been overwhelmed with heavy loads of work, and doing one's job in an appropriate manner of job description, at this point, is a fantasy. It will be nice when there is sufficient staff and the advisees can be divided into workable loads, but until that time, let's don't start pointing fingers to people who might have caused the failure of a student. We are all in this together, and it seems to me that everyone is doing the best they can, and doing a good job under the circumstances (Overloaded). We will just keep working at it until we get it right!! Thanks for understanding,

   -----Original Message-----
   From: Dawn Robinson
   Sent: Wed 2/18/2004 11:30 AM
   To: Diana Perkett
   Cc: Diana Kennedy; Bobbi Wade
   Subject: IT 110 Pre-requisites for all computer classes...

   Hi Diana,
   I have been updating business management and administrative assistant program active students files and

3/2/2004

20185
Wade v. Ilisagvik College

Exhibit 4
Page 14 of 15

A LOT (more than 50%) of them have taken an IT 130 or IT 140 or other IT course before taking the pre-requisite IT 110 course-and most of them have been withdrawn or failed.

Who's job is it to make sure the students have those pre-requisite courses before they are registered and take the subsequent course? Please advise.

Thanks,

**Dawn Robinson**
Ilisagvik College Title III Grant & Academic Prog. Asst.
P. O. Box 749  Barrow, AK  99723
907-852-1816 phone
907-852-1739 fax
dawn.robinson@ilisagvik.cc