Tuthill, at 119. The FMLA does not require an employee to be reinstated into a class that she has not started teaching prior to when the leave began, and was not scheduled to be taught until after the leave began. Further, it is undisputed Wade continued to teach the semester-long courses she was scheduled to teach. Because the contracts were not signed, assigning other instructors did not violate 29 U.S.C. § 2614. The motion for summary judgment should be granted on this basis.

Alternatively, the sum of damages owed regarding reinstatement is $4,500. Wade's human resources expert, Debra English, testified that Wade suffered damages of $4,500 as a result of losing three credits of added duty pay. Exh. AA, English, at 193. Ilisagvik College could have satisfied its obligation to Wade by simply paying her $4,500. *Id.* at 194. The court is requested to limit Wade's FMLA compensatory damages, if any, to $4,500.

### C.    The Interference Claim Should Be Dismissed Since Wade Was Not Denied The Benefits Of FMLA.

Wade alleges defendants interfered with her FMLA rights because they refused to grant requested protected leave, failed to tell Wade her FMLA rights, failed to reinstate her after she returned from leave, interfered with her right to take leave, and refused to accept a written complaint regarding the violation of her FMLA rights. Complaint, ¶ 41. However, because Wade received the intended benefits of the FMLA from the College and was not prejudiced by the College's actions, she cannot establish the fifth element of her prima facie claim, i.e., that her employer denied her the benefits to which she was entitled under the FMLA. *Price*, 132 F.Supp.2d at 1297. Therefore, the court should grant summary judgment and dismiss her FMLA interference claim. *Celotex*, 477 U.S. at 322-23.

A technical violation of the FMLA, such as failure to designate leave as FMLA leave or failure to give notice of the FMLA to the employee, does not violate FMLA where the employee receives its intended benefits. *Ragsdale*, 535 U.S. at 89. 29 U.S.C. § 2617 requires an employee to prove the employer interfered with, restrained, or denied her exercise of FMLA rights. *Id.* However, "[e]ven then, § 2617 provides no relief unless the employee has been prejudiced by the

violation. . . The remedy is tailored to the harm suffered." *Id.* (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 292-93 (2002)).

Other courts have reached the same result. In *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 17 F.Supp.2d 271, 275 (S.D.N.Y.1998), *aff'd*, 183 F.3d 155, 162 (2nd Cir.1999), the court held that even if the employer failed to provide the plaintiff with the proper information relating to his rights under the FMLA, the employer did not interfere with those rights and was not subject to the penalty of liquidated damages.[10]

As set out above it is undisputed the College properly delayed or denied her leave requests until receipt of Dr. Snyder's November 5th note. *See* discussion above at pp. 23-28. Thus, she was not prejudiced by any interference with or refusal to grant her leave. *Ragsdale*, 535 U.S. at 89. Wade has not established that she was prejudiced by the College's failure to designate her leave as FMLA leave after she returned from leave. Indeed, all of the days she requested were granted. Exh. KK, 11/4/03 Leave Request. Wade continued to receive her health insurance benefits, and was reinstated to the classes that were still ongoing when she left. *See* discussion above at pp. 28-30; Exh. AF, Wade Earning Statements. Wade has not shown she was prejudiced by failure to reinstate her to classes she did not sign a contract to teach.

It is undisputed that the College accepted Wade's December 11 "Formal Grievance." On December 19, Wade met with Dr. Tuthill and Taylor regarding the grievance. Exh. C, Wade V. IV, at 751. Wade's claim that Taylor refused to accept her December 19 "Complaint" is without merit because she has no evidence to support her allegation, and the College retained a copy of her "Complaint." *Id.* at 753. Thus, Wade has not established that she was prejudiced by the College's "refusal" to accept her grievance.

---

[10] *See also LaCoparra, LaCoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 220-22 (S.D.N.Y.1997); *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir.2001); *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 565 (D.S.C.1997); *Summers v. Middleton & Reutlinger, P.S.C.*, 214 F.Supp.2d 751, 757 (W.D.Ky.2002); *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1056-57 (D.Ariz. 2003); *Jeremy v. Northwest Ohio Development Center*, 33 F.Supp.2d 635, 639 (N.D.Ohio 1999); *Geromanos v. Columbia University*, 322 F.Supp.2d 420, 430-31 (S.D.N.Y. 2004).

:ELANEY WILES, INC.
107 WEST 3RD AVENUE
SUITE 400
iCHORAGE, ALASKA
(907) 279-3581

Nor has Wade shown that she was prejudiced by any alleged failure of the College to give her special notice of FMLA. The FMLA does not give an employee a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's attempt to exercise a substantive FMLA right. *Sarno*, 183 F.3d at 162. Wade received the Handbook and its updates which fully describe FMLA. Exh. C, Wade V. I, at 194-96; Exh. I, Handbook, at 5-7. The College's leave form states on its face that FMLA leave and Extended Illness Leave require a copy of doctor's verification that the leave is medically necessary. Exh. BB, 10/2/03 Leave Request. It is undisputed an FMLA posting was in the hallway outside of the human resources office and Wade looked at this bulletin board. Exh. C, Wade V. I, at 81-82. Taylor described job benefits to Wade in an orientation meeting. *Id.* at 66-67. As a matter of law, the College provided notice of the FMLA to Wade. *Kaylor v. Fannin Reg'l Hosp., Inc.*, 946 F.Supp. 988, 999 (N.D.Ga.1996); *Sarno*, 183 F.3d at 161. Any alleged lack of FMLA notice had no effect on Wade's exercise of her FMLA rights. Accordingly, the evidence in the record requires a finding that the College gave proper notice of the FMLA's benefits to Wade and there was no prejudice.

Therefore, Wade cannot establish the fifth element of her prima facie claim, i.e., that her employer denied her the benefits to which she was entitled under the FMLA. *Price*, 132 F.Supp.2d at 1297. Therefore, the court should grant summary judgment and dismiss her FMLA interference claim. *Celotex*, 477 U.S. at 322-23. Wade's human resources expert testified Wade suffered no monetary damages as a result of failure to immediately designate her leave as FMLA leave. Exh. AA, English at 192. Thus she incurred zero damages for her FMLA interference claim as it relates to the College's failure to designate her leave as FMLA leave.

### D.    The Special Notice Provisions Do Not Apply.

Courts have noted that the special notice provisions set out in the Department of Labor regulations are highly ambiguous and may not be valid. *Ragsdale*, 535 U.S. at 88; *Sarno*, 183 F.3d at 161. 29 C.F.R. § 825.208 requires employers to designate leave as FMLA leave and to give notice to the employee of the designation. The Eight Circuit and the Eleventh Circuit have

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 32 of 50

found § 825.208 to be invalid and unenforceable because the regulation is contrary to the statute. *Roberson v. Cendant Travel Serv., Inc.*, 252 F.Supp.2d 573, 577 (M.D.Tenn.2002)(citing *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 937 (8th Cir.2000); *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir.1999)). "Thus, while § 825.208 has not been explicitly struck down by the Supreme Court, its status is tenuous at best." *Id.*

Further, if an employee gives insufficient or no notice of a serious health condition, the written notice required by § 825.301(c) does not apply. *Sanders v. May Dept. Stores Co.*, 315 F.3d 940, 945 (8th Cir.2003). Here Wade did not give notice of her serious health condition to the College. *See* above, at 22-23. Taylor did not give special notice of FMLA to Wade because there was no indication that Wade's medical condition qualified for FMLA leave. *See* above, at 25-26. Wade did not present medical certification of her need for leave until November 5, 2003. Exh. C, Wade V. I, at 276-77. The regulation does not require special notice of FMLA when the employee requests leave, only when the employer designates it as FMLA leave. Wade's expert Debra English agreed with this statement. Exh. AA, English, at 45, 74-75. Because Wade did not properly notify her employer of her need for leave, the College had no obligation to comply with 29 C.F.R. § 825.301(c). *Sanders*, 315 F.3d at 945.

### E.    Alternatively Wade's Damages Should Be Limited To Actual Damages Because The College Acted In Good Faith.

Plaintiff "seeks liquidated damages and reasonable attorney fees as provided by the FMLA statute." Complaint, ¶ 43. An employer who violates the Act is liable for liquidated damages, unless it can prove that it undertook in good faith the conduct that violated the Act and that it had reasonable grounds for believing that its action was not a violation of the Act. *Bachelder*, 259 F.3d at 1130 (citing 29 U.S.C. § 2617(a)(1)(A)(iii)).

Good faith requires that an employer first take active steps to ascertain the law and then move to comply with the law. *Thorson v. Geminin, Inc.*, 96 F.Supp.2d 882, 891 (N.D.Iowa 1999)(citing *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 33 of 50

Cir.1997). The *Thorson* court found that an award of liquidated damages was inappropriate because the employer made an active effort to learn the law and comply with it. *Id.*

Here it is undisputed that Ilisagvik College acted in accordance with the advice of its general counsel, Cheryl McKay. On October 8, Dr. Tuthill and Taylor consulted with McKay regarding Wade's leave request. Exh. D, Tuthill, at 25; Exh. FF, Landye Bennett Invoice, at 2. Dr. Tuthill had several conversations with McKay over the next month regarding Wade's leave requests. Exh. D, Tuthill, at 25. Dr. Tuthill's reliance on legal advice given by McKay was evidence of a good faith attempt to comply with the law. Exh. AA, English, at 197-98. If an employer attempts to comply with the law, but makes a mistake in carrying that out, that does not constitute bad faith. *Id.* at 20. Moreover, Dr. Tuthill acted in good faith by approving the most generous leave request by Wade and this negates evidence of interference with an employee's FMLA rights. *Id.* at 190. Taylor did not act with an illegal motive. *Id.* at 294. There is no standard human resources "Bible" that any human resources professional can refer to when they have questions about FMLA. *Id.* at 361. Until an employer learns through dealing with the FMLA, it is possible, even after consulting a lawyer, for an employee to make a mistake. *Id.* at 39. The employee would not be acting in bad faith by making such a mistake. *Id.* By seeking the advice of counsel, defendants made an even greater effort to ascertain and comply with the law than the employer in *Thorson*, who did not seek the advice of counsel. *Thorson*, 96 F.Supp.2d at 891. The College, Dr. Tuthill and Taylor had reasonable grounds for believing their actions were not a violation of the Act because they acted on the advice of counsel. *Id.* As a matter of law, the College, Dr. Tuthill and Taylor acted in good faith. *Bachelder*, 259 F.3d at 1130. Therefore, the court should rule that if the College violated the FMLA, her damages are limited to actual damages and interest.

> **F.   The FMLA Claims Against Dr. Tuthill and Pamela Taylor Should Be Dismissed Because They Were Public Officials.**

Although the FMLA permits individual liability claims against employers, the Sixth Circuit has held that the FMLA precludes individual liability claims asserted against public

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 34 of 50

agency employers. 29 U.S.C. § 2611(4)(A); *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003). A public official is a manager of a public agency.[11] *Id.* (collecting cases). A public agency is "a person engaged in commerce or in an industry or activity affecting commerce." 29 U.S.C. § 2611(4)(B). In *Mitchell*, 343 F.3d at 832, the court concluded the FMLA's text and structure reveal that the FMLA does not impose individual liability on public agency employers. Three factors supported the court's conclusion. *Id.*

> First, Section 2611(4)(A), segregates the provision imposing individual liability from the public agency provision." Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

*Id.* Additionally, the plain text of the statute supports the conclusion and was in accord with the Department of Labor regulations. *Id.* Second, the example of individual liability provided in the regulations applies to a private corporate employer, thus demonstrating an intent to limit such liability to the private sector. *Id.* (citing 29 C.F.R. § 825.104(d)). Finally, the Sixth Circuit had never extended individual liability to public employees under the FLSA. *Id.*

It is undisputed that Ilisagvik College was established by North Slope Borough Municipal Code 8.02.020 as a public, non-profit corporation. Exh. C, Wade V. IV, at 992-93; Exh. A, Manual, at 2. It is undisputed that the College offered distance delivery courses to students outside of Alaska and allowed its students to reside in a dormitory, and the students paid money to the College for the courses and to reside in the dormitory. Exh. C, Wade V. IV, at 793; *Id.*, Wade V. II, at 371-73, 422; Exh. B, Abu, at 95-96. The educational business of a college and the purchase of supplies for its dormitory both affect interstate commerce. *United States v. Sherlin*, 67 F.3d 1208, 1213 (6th Cir.1995). Ilisagvik College is a public agency because it engages in commerce. 29 U.S.C. § 2611(4)(B). Dr. Tuthill and Taylor were public officials sued in their

3LANEY WILES, INC.
107 WEST 3RD AVENUE
SUITE 400
1CHORAGE, ALASKA
(907) 279-3581

---

[11] Courts use the terms "public agency employer" and "public official" interchangeably in the context of the FMLA. *See Mitchell*, 343 F.3d at 828; *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir.1999).

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 35 of 50

individual capacity by Wade. Complaint, ¶ 5. Therefore, under a textual analysis of the FMLA, the court should dismiss the FMLA claims against Dr. Tuthill and Taylor.

In addition, public officials sued in their individual capacity are not "employers" subject to individual liability under the Fair Labor Standards Act, 29 U.S.C. § 203(d). *Wascura*, 169 F.3d at 686 (citation omitted). "'Employer' is defined identically in the FMLA and FLSA." *Id.* Therefore, public officials sued in their individual capacity are not "employers" subject to individual liability under the FMLA. *Id.* The FMLA employs a number of definitions from the FLSA, as stated in 29 U.S.C. § 2611(3) and 29 U.S.C. § 2611(4)(A)(iii). *Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir.2004). Further, the FMLA joint employment regulation mirrors the wording of the FLSA joint employment regulations. *Id.* (citations omitted).

The limitation on individual liability under the FMLA is consistent with other federal labor laws, including Title VII, the ADEA, and the ADA, which do not provide for individual capacity suits. *Wascura*, 169 F.3d at 685 (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir.1995); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996)). The liability schemes under Title VII and the ADEA both limit civil liability to the employer. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied*, 510 U.S. 1109 (1994). Title VII limits liability to employers with fifteen or more employees and the ADEA limits liability to employers with twenty or more employees, partly because Congress did not wish to burden small entities with the costs associate with litigating discrimination claims. *Id.* Therefore, "it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* Likewise, the FMLA limits liability to employees with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). Congress obviously did not intend to allow civil liability against individual employees under the FMLA. For the foregoing reasons, Dr. Tuthill and Taylor are not "employers" subject to individual liability under the FMLA, and should be dismissed from all Count I FMLA claims. *Wascura*, 169 F.3d at 686; *cf. Miller*, 991 F.2d at 587.

**G.    The FMLA Does Not Provide For Punitive Damages.**

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 36 of 50

The FMLA only provides for compensatory damages. The FMLA does not provide for punitive damages. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.6 (9th Cir.2003)(citing 29 U.S.C. § 2617(a)). Therefore, Wade's FMLA claims cannot sustain punitive damages. The court should dismiss any claim of punitive damages on Wade's FMLA interference or discrimination claims.

### H.    Wade Has Failed To State A Prima Facie Case Of FMLA Discrimination Since She Was Not Qualified For Her Position.

In order to establish a prima facie case of FMLA discrimination, the *McDonnell Douglas* burden shifting test applies.[12]    Thus, the plaintiff must establish a prima facie case of discrimination as follows: 1) she exercised rights protected under the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir.2004)(citing *McDonnell Douglas*, 411 U.S. 792 (1973)). The burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection. *McDonnell Douglas*, 411 U.S. at 802. If the defendant can express a legitimate nondiscriminatory reason for the rejection, the burden then shifts back to the plaintiff to produce evidence that the reason articulated by the employer is a pretext for the retaliatory reason. *Id.* at 804. At all times throughout, the plaintiff carries the ultimate burden of persuasion. *King*, 166 F.3d at 892.

### 1.    Wade Was Not Qualified.

---

[12] The Ninth Circuit has never considered an FMLA discrimination claim, and thus it has explicitly reserved judgment on whether the *McDonnell Douglas* analysis would apply in an anti-discrimination action under 29 U.S.C. § 2615(a)(2). *Xin Liu*, 347 F.3d at 1136 n.10 (citing *Bachelder*, 259 F.3d at 1125). However, the Ninth Circuit would apply the *McDonnell Douglas* analysis to an FMLA discrimination claim since it is clearly the overwhelming majority view. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998); *Sista v. CDC Ixis North America*, 445 F.3d 161, 176 (2d Cir.2006); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir.2001); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir.2005); *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir.2006); *King v. Preferred Technical Group*, 166 F.3d 887, 891-92 (7th Cir.1999); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051-52 (8th Cir.2006); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir.2007); *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006); *Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1367 (D.C. Cir.2000).

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

It is undisputed that Wade signed a series of one-year contracts with the College, and that there was no possibility of tenure. Exh. C, Wade V. I, at 90-99. The Employee Handbook states that Ilisagvik College faculty were "not tenured, and have no expectation of continued employment." Exh. I, Handbook, at 12. It is undisputed that Wade was not qualified for her position. Wade was an assistant professor of business management at the College. Exh. C, Wade V. I, at 41. Wade's job description states that her position required a master's degree in business management, information technology or a related field. Exh. H, 2003 Contract, at 6. Further, she was required to have a working knowledge and minimum of two years' teaching experience beyond formal education in the appropriate field. Id.; Exh. I, Handbook, at 13.

The College was required to follow the accreditation standards promulgated by the Northwest Commission on Colleges and Universities and therefore its instructors had to be properly qualified for the positions they held. Exh. G, NWCCU Website Documents, at 1. The College faculty was required to be "professionally qualified,""representative of each field or program in which [the College] offers major work," and a competent faculty. Id. at 4, 6.

It is undisputed that Wade never received a degree in business, business management, information technology, finance, economics, mathematics, or statistics. Exh. C, Wade V. I, at 60. Instead Wade held a bachelor's degree in secondary education with a minor in English and a master's degree in art education. Id. at 55-56; Exh. F, Wade Transcripts, at 5. Prior to teaching at the College, Wade never taught any business courses, apart from Business English. Exh. C, Wade V. I, at 60-61. In fact, Wade initially applied for an office technology position with Ilisagvik College because she "felt more comfortable applying for that job." Id. at 46. Wade's transcripts from MTSU, UAA, and Troy State University contain all of her post-high school classes that she completed, other than library science at Auburn University. Id. at 57-58; Exh. F, Wade Transcripts. Wade took a course in Public School Finance while obtaining a principal's certificate. Exh. F, Wade Transcripts, at 2. Wade took no post secondary business classes or advanced business classes. Exh. C, Wade V. I, at 42, 58.

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

It is undisputed that Dr. Tuthill, the dean of instruction, had the qualifications to determine whether an instructor was qualified to teach certain courses at the College. Exh. D, Tuthill, at 58. Dr. Tuthill recognized early on that Wade was not qualified to teach business courses. On his first day as dean, he reviewed the faculty's personnel files. *Id.* at 14-15. At the latest, he became aware of Wade's lack of qualifications by August 2003, before he met Wade. *Id.* at 54, 56. Because the College had recently become a fully accredited institution, it was required to have appropriately qualified instructors. *Id.* at 56-58. Dr. Tuthill was aware that Wade's "education was in English, that her graduate degree was in educational administration, and that these degrees were not directly connected to much of the content area of what she was teaching at the College." *Id.* at 56.

At the College, Wade taught courses that included accounting, marketing, finance, and economics. *Id.* at 60; Exh. AG, Wade's Added Duty Contracts, Course Schedules and Syllabi.[13] Dr. Tuthill determined Wade was not qualified to teach business courses at the College because she had not taken advanced courses in finance, marketing, economics, business management, and organizational behavior. Exh. D, Tuthill, at 105. Ideally, a business instructor has a Master's in Business Administration (M.B.A.) degree, and has taken graduate courses in each of those fields. *Id.* at 106. "[A]t the community college level, it is appropriate for an instructor to have a master's degree in the field in which they are teaching, or a closely related field." *Id.* at 57. As dean of instruction, Dr. Tuthill was entitled to set standards for the faculty. *Id.* at 56, 58. Wade did not have a master's degree in business management or information technology, or a "related field." Exh. C, Wade V. I, at 46, 60; Exh. H, 2003 Contract, at 6. Wade never received a degree in business, finance, economics, mathematics, or statistics. Exh. C, Wade V. I, at 60. It is undisputed that Dr. Tuthill determined that she did not have a degree in a related field. Thus,

---

[13] Specifically, Wade taught: Economic History of the North Slope in 2001; Introduction to Business, Principles of Accounting, Principles of Economics, Introduction to Organizational Management, and Financial Management in 2002; Personal Finance, Principles of Marketing, Principles of Economics, and Financial Management in 2003. Exh. AG, Wade Contracts and Schedules, at 1-2, 5, 9-11, 13-14, 16-17.

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 39 of 50

Wade cannot meet the basic qualification requirements for her position according to her job description. Exh. H, 2003 Contract, at 6.

Further, she was required to have a working knowledge and a minimum of two years teaching experience beyond formal education in the appropriate field. *Id.*; Exh. I, Handbook, at 13. Wade admitted she had no experience teaching any business classes, other than Business English, before she began teaching at the College. Exh. C, Wade V. I, at 60-61. Because Wade cannot establish that: (1) she held a master's degree in business management or information technology or a related field; ***and*** (2) she had a working knowledge and a minimum of two years' teaching experience beyond formal education in the appropriate field, Wade has failed to meet her burden of proof that she was qualified for her position. Exh. H, 2003 Contract, at 6. Wade's conclusory allegations, standing alone, are insufficient to prevent summary judgment. *Newman v. County of Orange*, 457 F.3d 991, 995 (9th Cir.2006).[14] The motion should be granted on the discrimination claim since Wade cannot establish a critical element of her prima facie claim for FMLA discrimination on which she will bear the burden of proof on trial. *Celotex*, 477 U.S. at 322-23; *McDonnell Douglas*, 411 U.S. at 802; *Potenza*, 365 F.3d at 168.

### 2.     **Alternatively Defendants Have Presented Legitimate And Non-discriminatory Reasons For The Non-renewal Of Wade's Contract, And Wade Has Not Shown Pretext.**

Wade had no evidence to support an inference of unlawful motive FMLA discrimination. She alleged that Dr. Tuthill and Taylor retaliated against her because she took FMLA leave. Exh. C, Wade V. III, at 685. However, there is no evidence that Dr. Tuthill and Taylor jointly agreed not to renew her contract because she exercised her FMLA rights. *Id.* at 686.

---

[14] Although the College may have acceded in prior years to her lack of qualifications, there is no evidence they agreed to intentionally relinquish their rights upon expiration of the contract term to have qualified professors, particularly after gaining accreditation. *In re United Marine Shipbuilding, Inc.*, 158 F.3d 997, 1001 (9th Cir.1998)(waiver is the intentional relinquishment of a known right); *Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003)(same). The College did not waive its right to review her qualifications on renewal of each year of her contract.

ELANEY WILES, INC.
007 WEST 3rd AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                                          Page 40 of 50

Even if Wade has established a prima facie case of FMLA discrimination, Ilisagvik College, Dr. Tuthill, and Taylor have articulated legitimate, non-discriminatory reasons for the non-renewal of Wade's contract. There were glaring reasons to not bring Wade back for the following year, which were enumerated in Dr. Tuthill's responses to Wade's December 11, 2003 "Formal Grievance" and her February 29, 2004 grievance, Dr. Tuthill's memorandum concerning Bobbi Wade, and during the Step 3 grievance hearing on June 24, 2004. Exh. AJ, Dr. Tuthill Response to December Grievance, at 3, 8; Exh. AK, Dr. Tuthill Response to February Grievance, at 2-4; Exh. RR, Dr. Tuthill Memorandum; Exh. YY, Step 3 Transcript, at 7-11, 15, 20; Exh. ZZ, Decision, at 3-7. There were a high number of student complaints regarding Wade's teaching. Exh. YY, Step 3 Transcript, at 15. Wade did not turn in her grades in on time, which caused grading problems for students at the end of the Fall 2003 semester. *Id.* The student success rate in her classes was deficient and declined to 23% in the Fall 2003 semester. *Id.* Wade's academic credentials did not meet the standard set by the College administration to fulfill the accreditation standards. *Id.* The College had recently obtained accreditation with the Northwest Commission of Colleges and Universities in 2002, and was now accountable to be a crediting body of the Commission. *Id.* at 9-10. The College administration was entitled to set standards for the faculty. Exh. D, Tuthill, at 56, 58. Finally, Wade showed poor professional judgment in advising students not to take Aimee Valenti's classes, in requesting approval to teach independent study classes to her granddaughter, and in helping Amy receive more than $2,000 in tuition waivers from the College. Exh. YY, Step 3 Transcript, at 15; Exh. R, Dr. Tuthill 1/20/04 E-mail, at 2.

While the College knew that Wade was not qualified before she engaged in protected activity by taking medical leave, the record shows that the bulk of the issues regarding Wade's performance became apparent after November 5, 2003. Dr. Tuthill learned over the Christmas holidays that Wade did not turn in her grades on time. Exh. D, Tuthill, at 34-35. In January 2004 Dr. Tuthill noted that Wade's student success rate was 23%. *Id.* at 93; Exh. RR, Dr. Tuthill Memorandum; Exh. R, Dr. Tuthill 1/15/04 E-mail, at 1. On January 20, Dr. Tuthill observed that

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 41 of 50

Wade had taught her granddaughter's last 23 credits at Ilisagvik College. Exh. R, Dr. Tuthill 1/20/04 E-mail, at 2. Therefore he rejected Wade's request for her granddaughter, Amy Conyer, to take an additional independent study course to be taught by Wade. *Id.* Further, Wade had claimed Conyer as a dependent, although Conyer lived in Tennessee. *Id.* Finally, on November 5, Sonya Abu wrote Dr. Tuthill a detailed memorandum describing student complaints against Wade. Exh. B, Abu, at 49-53; Exh. Q, Abu Memorandums, at 24-25. Because these issues concerning Wade's performance arose *after* Wade took her medical leave in November 2003, the College's decision to not renew Wade's contract on January 30, 2004, cannot be pretext.

Where the undisputed evidence presented on summary judgment shows that an employee was fired for a legitimate reason, such as excessive absenteeism, and his absenteeism had nothing to do with his worker's compensation claim, the employee's claim for retaliatory discharge should be dismissed on summary judgment. *Olson v. Teck Cominco Alaska, Inc.*, 144 P.3d 459, 464 (Alaska 2006). The undisputed evidence establishes that the College did not renew Wade's contract for several legitimate reasons, and those reasons did not have anything to do with her medical leave in the fall of 2003. Further, Wade has made no attempt to show that the legitimate, nondiscriminatory reasons articulated by Ilisagvik College for the non-renewal of Wade's contract were pretext. Because Wade has not produced evidence of pretext, the court should dismiss Wade's FMLA discrimination claim. *Stallings*, 447 F.3d at 1052.

### III. Count II Should Be Dismissed Because Wade Has Failed To State A Prima Facie Claim For Violation Of Due Process Under 42 U.S.C. § 1983.

#### A. Prima Facie § 1983 Claim.

In order to assert a § 1983 claim against an individual, Wade must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Alford v. Haner*, 333 F.3d 972, 975-76 (9th Cir.1999), *overruled on other grounds by Devenpeck v. Alford*, 543 U.S. 146 (2004). An individual may assert a personal immunity defense, such as qualified immunity, under such a claim. *Kentucky v. Graham*, 473 U.S. 159,

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

166-67 (1985).  In order to assert a claim against an entity such as Ilisagvik College, Wade must also demonstrate that an entity "policy" caused the alleged injury.  This burden will be met if she can demonstrate an established policy or a deliberate indifference to a protected right.  *Christie v. Iopa*, 176 F.3d 1231, 1235, 1240 (9th Cir. 1999).  Ilisagvik College may also be held liable if a final policymaker ratified another's actions.  *Id.* at 1238-39.  To establish ratification, Wade must demonstrate that the "authorized policymakers approve[d] a subordinate's decision ***and*** the basis for it," and there must be evidence of an affirmative approval of such acts.  *Id.* at 1239-40.

### B.    Because Wade Had No Constitutionally Protected Property Interest In Her Employment Her Section 1983 Claim Must Be Dismissed.

#### 1.    Wade Had No Constitutionally Protected Property Interest.

42 U.S.C. § 1983 requires a violation of either a federal statute or a constitutional right.  *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980).  Wade alleges that her due process rights were violated "by denying her access to a meaningful administrative appeal."  Complaint, ¶ 45.  Wade asserts the College deprived her of her right to discovery, informed her that no witnesses would be heard or cross examined, imposed a biased hearing officer and failed to follow its own policies and procedures.  *Id.*

A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993).

Wade does not allege any deprivation of her liberty interests.  Rather, Wade alleges she was deprived of a constitutionally protected property interest in her employment.  Complaint, ¶ 45.  However, she must first establish that she possess a "property interest" that is deserving of constitutional protection.  *Brewster v. Bd. of Educ. of the Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir.1998).  The United States Supreme Court has specifically held that a non-tenured assistant professor has no property interest in employment beyond the date his

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE. ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 43 of 50

employment would terminate by contract.  *Board of Regents v. Roth*, 408 U.S. 564, 578 (1972); *see also Mabey v. Regan*, 537 F.2d 1036, 1042 (9th Cir.1976); *see also Shatting v. Dillingham City Sch. Dist.*, 617 P.2d 9, 12 (Alaska 1980).  Under such circumstances, a hearing on the failure to rehire is unnecessary.  *Roth*, 408 U.S. at 578.  In the absence of a statutory or contractual right to renewal, a person employed under consecutive annual contracts can claim no property interest in the indefinite renewal of her contract.  *Brown v. Indep. Sch. Dist. No. I-06 of McCurtain County, Oklahoma*, 974 F.2d 1237, 1239 (10th Cir.1992)(citation omitted).  "The relationship between non-tenured faculty and the university is created by contract." *Zuelsdorf v. Univ. of Alaska, Fairbanks*, 794 P.2d 932, 934 (Alaska 1990).

It is undisputed that as an Ilisagvik College faculty member Wade was not tenured and had no expectation of continued employment.  Exh. H, 2003 Contract, at 1; Exh. VV, Step 2 Response, at 1; Exh. I, Handbook, at 12.  Any property interest that Wade had through her employment dissolved on the day that her contract expired, June 30, 2004.  Exh. H, 2003 Contract, at 1.  Wade's contract did not contain a right to renewal.  *Id.* at 1-7; *Brown*, 974 F.2d at 1239.  Wade's § 1983 claim for due process violation fails because she cannot establish that she possesses a property interest that is deserving of constitutional protection.  *Roth*, 408 U.S. at 578; *Mabey*, 537 F.2d at 1042; *Shatting*, 617 P.2d at 12.  Therefore, the College was not required to give Wade a hearing regarding the decision to non-retain her.  As a matter of law, the court should dismiss Count II because Wade had no constitutionally protected property interest.

### 2.    Wade Had A Contractual Right To Arbitration And Because She Waived That Right To Arbitration Her Due Process Claim Fails.

Alternatively, Wade had a contractual right to arbitration, and Wade waived her right to arbitration.  Wade's waiver of her contractual right to arbitration nullifies her due process claim.  *Zuelsdorf*, 794 P.2d at 934.  Wade's human resources expert Debra English agreed that Wade's contract contained all of the rights that accrued to both parties (Wade and the College) in the grievance procedure.  Exh. AA, English, at 200; Exh. H, 2003 Contract, at 2.  However, even if Wade could claim the grievance procedure was unfair, *see* Complaint ¶ 45, Wade still had an

opportunity to request formal arbitration under her contract with the College. Exh. H, 2003 Contract, at 2; Exh. I, Handbook, at 2. Thus, had Wade invoked her contractual right to arbitration, she would have had another level of review with an outsider acting as the arbitrator. Exh. AA, English, at 237. Wade waived her right to arbitration by failing to invoke it within ninety days of the termination of the employment relationship. *Id.* The arbitration would have been Wade's due process "hearing." *Id.* at 237-38. As a matter of law, because Wade had the opportunity to request arbitration, and waived her contractual right to arbitration, her § 1983 due process claim fails.

### 3.   Wade's Due Process Rights, If Any, Were Limited To The Contract.

Alternatively, Wade alleges her due process rights were violated because her Step 3 hearing was not conducted by a disinterested hearing officer, she had no discovery rights, the College informed her no witnesses would be heard, and the College failed to follow its own policies and procedures. Complaint, ¶ 45. However, any process she was due was limited to the procedural rights in the contract. *Halfhill v. Northeast Sch. Corp.*, 472 F.3d 496, 501 (7th Cir.2006). English agreed in the grievance process, the parties' rights are limited to the terms in Wade's contract. Exh. AA, English, at 201. English agreed that, as set out in the Employee Handbook, after step 3, the next step is binding arbitration before a neutral arbitrator. *Id.* at 237; Exh. I, Handbook, at 2. Thus, there was no requirement in the grievance procedure that the Step 3 hearing officer, Dr. Patrick O'Rourke, be a disinterested outsider and no right to discovery. Exh. AA, English, at 238. Thus, Wade's rights were limited to the Handbook grievance procedure. The section 1983 claim should be dismissed on this basis.

### 4.   Wade Has Not Shown An Injury From The College Policy.

To sustain her due process claim against the College, Wade must show that the College's policy caused her alleged injury. *Christie*, 176 F.3d at 1235. Wade can meet this burden if she can demonstrate an established policy or a deliberate indifference to a protected right. *Id.*

Wade has not alleged nor established that her constitutional violation occurred pursuant to a longstanding practice or custom. Wade cannot meet her burden of proof because it is

ELANEY WILES, INC.
)07 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

undisputed that President Dr. Edna MacLean, was the College's final policymaker. Exh. AL, Deposition of Edna MacLean (MacLean), at 56-57. It is undisputed that Dr. MacLean did not have knowledge that Wade's non-retention was an alleged illegal act. *Id.* at 88-89. Wade has not shown that: (1) Dr. MacLean knew of an unconstitutional act by a subordinate, ***and*** (2) approved of the act. *Christie*, 176 F.3d at 1238-39. It is undisputed that Dr. MacLean did not take part in Wade's grievance process in the spring of 2004. Exh. AL, MacLean, at 85. It is undisputed that Dr. MacLean enlarged the time for Wade to appeal her grievance to Step 3 in order to be fair to Wade. *Id.* at 67. Therefore Wade cannot prove that Dr. MacLean engaged in deliberate indifference to the grievance procedure employed in Wade's grievance and the motion for summary judgment should be granted on the § 1983 claim.

### 5.     Wade's FMLA Claim Cannot Be The Basis For Her § 1983 Claim.

It is well established that Title VII discrimination claims cannot be the statutory basis for claims under 42 U.S.C. § 1983. *See Peters v. Lieuallen*, 746 F.2d 1390, 1393 (9th Cir.1984). Likewise, many courts have determined that an FMLA claim cannot be the statutory basis for a § 1983 claim because Congress provided comprehensive remedial measures that evince Congress' intent to foreclose the use of a § 1983 action.[15]   For the foregoing reasons, to the extent that Wade's § 1983 claim is based upon her FMLA claims, her § 1983 claim should be dismissed.

### C.     Dr. Tuthill And Taylor Had Qualified Immunity From § 1983 Claims.

Wade's claims against Dr. Tuthill and Taylor are personal-capacity suits in their individual capacities, rather than in an official-capacity. *Kentucky*, 473 U.S. at 165-66. In evaluating a claim of qualified immunity, the court must first determine whether the plaintiff has alleged facts which, if true, would constitute a deprivation of an established statutory or constitutional right. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir.2000); *Trigalet v.*

---

[15] *See Rosania v. Taco Bell of America, Inc.*, 303 F.Supp.2d 878, 881 (N.D.Ohio 2004); *Kilvitis v. County of Luzerne*, 52 F.Supp.2d 403, 419 (M.D.Pa.1999); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868, 894 (S.D.Ohio 1998); *Desrochers v. Hilton Hotels Corp.*, 28 F.Supp.2d 693, 695 (D.Mass.1998); *Jolliffe v. Mitchell*, 971 F.Supp. 1039, 1045 (W.D.Va.1997); *Clay v. City of Chicago, Dep't of Health*, No. 96-3684, 1996 WL 613164, at *2 (N.D.Ill. Oct. 22, 1996).

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE. ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 46 of 50

*Young*, 54 F.3d 645, 647 (10th Cir.1995). Only if this first requirement is met will the court proceed to the next step and apply an objective standard to determine whether "a reasonable public official would know that his or her *specific conduct* violated clearly established rights." *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir.2000)(emphasis in original). The law will be deemed clearly established if it is sufficiently developed and the contours of an asserted right have been sufficiently defined to place a reasonable official on notice that their conduct violates this law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir. 2000). Once the defendant raises this defense, it is the plaintiff's burden to demonstrate that both conditions are met. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). If the plaintiff fails to prove both conditions, the individual defendants are entitled to qualified immunity. *Trigalet*, 54 F.3d at 647.

Dr. Tuthill and Taylor are entitled to qualified immunity on the § 1983 claim. As demonstrated above, pp. 43-44, Wade had no constitutionally protected property interest. Wade must allege facts which, if true, would constitute a deprivation of an established statutory or constitutional right. *Huskey*, 204 F.3d at 899; *Trigalet*, 54 F.3d at 647. Wade cannot establish that there was an FMLA violation and therefore there is no proof that Dr. Tuthill and Taylor had knowledge that they deprived Wade's rights. *See* above at pp. 22-30. Based on the foregoing, Dr. Tuthill and Taylor have qualified immunity to Wade's § 1983 claim.

### D.     Wade Is Not Entitled To Punitive Damages.

Wade is not entitled to any award of punitive damages against Ilisagvik College because a municipality is immune from punitive damages under § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir.2003). Based on the foregoing, Dr. Tuthill and Taylor have qualified immunity to Wade's § 1983 claim. The court should rule that Wade is limited solely to compensatory damages for this claim.

### IV.    Count VII Should Be Dismissed Because Wade Has Failed To State A Prima Facie Claim Under The Alaska Whistleblower Act.

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

The Alaska Whistleblower Act, AS 39.90.100 *et seq.*, discourages and remedies retaliation against whistleblowers by authorizing them to bring civil actions. *City of Fairbanks v. Rice*, 20 P.3d 1097, 1105 (Alaska 2000). To establish a prima facie claim for violation of the Alaska Whistleblower Act, Wade must show that: (1) she has engaged in protected activity; and (2) the activity was a "substantial" or "motivating factor" in her termination. *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001).

A "threshold requirement" is that the employee's speech addresses an issue of legitimate public concern, such as a "matter of political, social, or other concern to the community." *Methvin v. Bartholomew*, 971 P.2d 151, 155 (Alaska 1998)(citing *Wickwire v. State*, 725 P.2d 695, 700 (Alaska 1986)). Where the subject of an employee's speech involves "matters of personal concern" that are "mere extensions" of a dispute with a supervisor such speech is not of public importance. *Id.* (citing *Wickwire*, 725 P.2d at 701).

Wade alleges that she was terminated for reporting a discriminatory employment practice to Tuthill and Taylor. Complaint, ¶ 64. She claims that a discriminatory employment practice is a matter of public concern according to AS 39.90.140(3)(A). *Id.,* ¶ 65. AS 39.90.140(3)(A) states that a "matter of public concern" means a "violation of a state, federal, or municipal law, regulation, or ordinance." Wade admits that the discriminatory employment practice she reported was the grievance she submitted in December 2003. Exh. C, Wade V. III, at 676; Exh. QQ, December Grievance. She conceded that the grievance only pertained to her own personal employment situation. Exh. C, Wade V. III, at 677. It did not request a "system-wide" change in Ilisagvik College policy. *Id.* It was a matter of purely personal concern to her. *Id.* at 678.

Wade conceded that there was no evidence that would show Dr. Tuthill's motive in not renewing her contract because she reported on a matter of public concern. *Id.* at 679-80. She did not have any evidence that Dr. Tuthill's motive was to "get rid" of Wade because she filed the grievance. *Id.* at 681. Similarly, Wade did not have any evidence that would prove Taylor's motive in not renewing her contract because she reported on a matter of public concern or because she filed the grievance. *Id.* at 682. Wade did not have any evidence that Dr. Tuthill and

ELANEY WILES, INC.
007 WEST 3ᴿᴰ AVENUE
SUITE 400
ᴺCHORAGE, ALASKA
(907) 279-3581

Memorandum in Support of Motion for Summary Judgment
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 48 of 50

Taylor discussed terminating Wade because she filed the grievance. *Id.* at 683. Any reasons they had for "terminating" Wade were not joint reasons. *Id.* Wade's Whistleblower claim fails because her grievance did not address an issue of public concern. *Methvin*, 971 P.2d at 155.

Finally, Ilisagvik College has already established that Wade's contract was non-renewed for legitimate, non-discriminatory reasons, including her poor student success rate, multiple student complaints about Wade's teaching, and her lack of academic credentials sufficient to teach business courses. Exh. YY, Step 3 Transcript, at 15. Wade's contract was not terminated prematurely. The contract remained in effect through the end of its term. Exh. H, 2003 Contract. For the foregoing reasons, the court should dismiss Wade's Whistleblower claim.

Punitive damages are not available against a public employer under the Alaska Whistleblower Act. *Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1123 (Alaska 1997); *State v. Greenfield*, 950 P.2d 1128, 1129 (Alaska 1997). Because Ilisagvik College is a public, non-profit corporation, the court should dismiss Wade's punitive damages claim under the Alaska Whistleblower Act. Exh. A, Manual, at 2.

## CONCLUSION

In summary, the motion for summary judgment should be granted in its entirety in favor of all defendants based on the undisputed facts: 1) plaintiff cannot establish a prima facie case of FMLA interference, FMLA discrimination, a section 1983 violation, or a violation of the Alaska Whistleblower Act since: a) defendants applied FMLA properly; b) Wade was not qualified for her position; c) Wade violated her duty to give notice of foreseeable leave to her employer; d) Wade violated her duty to schedule her leave in the manner least disruptive to her employer; e) Wade received the full intended benefits of the FMLA and was not prejudiced; f) Wade had no constitutionally protected property interest in her employment as an untenured professor; and g) Wade's report of alleged discriminatory employment practice did not address an issue of legitimate public concern.

Alternatively, the court should grant partial summary judgment and should dismiss: 2) Wade's claim for FMLA discrimination because the College had legitimate, nondiscriminatory

:LANEY WILES, INC.
107 WEST 3RD AVENUE
SUITE 400
\CHORAGE, ALASKA
(907) 279-3581

reasons for its decision to not renew her contract; 3) the FMLA claims against Dr. Tuthill and Taylor because they were public officials; 4) the punitive damages claim against all defendants because they may not be awarded for an FMLA claim, because punitive damages may not be awarded against a municipality for a section 1983 claim, and because punitive damages may not be awarded against a public employer under the Alaska Whistleblower Act; 5) Wade's FMLA failure to reinstate claim because she did not teach the Module C classes; 6) Wade's section 1983 because she waived her right to arbitration; 7) Wade's section 1983 claim because her due process rights were limited to her contract; 8) her FMLA damages should be limited to compensatory damages of $4,500 because the College acted in good faith and upon the advice of counsel; 9) Wade has not shown that the College's legitimate, nondiscriminatory reasons for the non-renewal of her contract were pretextual; 10) Wade's section 1983 claim cannot be based on her FMLA claims; and 11) Dr. Tuthill and Taylor have qualified immunity to section 1983 claims.

DELANEY WILES, INC.
Attorneys for Defendants Ilisagvik College,
John Tuthill, and Pamela Taylor

Dated: _6-14-07_____

__s/Cynthia L. Ducey_____
Cynthia L. Ducey, ASBA # 8310161
Delaney Wiles, Inc.
1007 West 3rd Avenue, Suite 400
Anchorage, AK 99501
(907) 279-3581
(907) 277-1331 Fax
cld@delaneywiles.com

Certificate of service

I certify that a true and correct
copy of this document has
been served by electronic service
on the 14th day of June, 2007 upon:

Linda Johnson

By: Cynthia L. Ducey_____
131798

ELANEY WILES, INC.
107 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581