1                    IN THE UNITED DISTRICT COURT

2                    FOR THE DISTRICT OF ALASKA

3    BOBBI WADE,                          )
                                          )
4              Plaintiff,                 )
                                          )
5    vs.                                  )
                                          )
6    ILISAGVIK COLLEGE; NORTH SLOPE,      )
     BOROUGH; JOHN TUTHILL,               )
7    individually; and PAMELA TAYLOR,     )
     individually,                        )
                                          )    Case No. 3:05-cv-086-TMB
8              Defendants.                )
                                          )
9    _____

10                VIDEOTAPED DEPOSITION OF PAM TAYLOR
                          May 4, 2006

11   APPEARANCES:

12        FOR THE PLAINTIFF:      MS. LINDA J. JOHNSON
                                  Clapp Peterson & Stowers
13                                711 H Street, Suite 620
                                  Anchorage, Alaska 99501
14                                (907) 272-9272

15        FOR THE DEFENDANT
          NORTH SLOPE BOROUGH:    MR. PETER C. GAMACHE
16                                Attorney at Law
                                  405 West 36th Avenue
17                                  Suite 201
                                  Anchorage, Alaska 99503
18                                (907)  563-6969

19        FOR THE DEFENDANTS
          ILISAGVIK COLLEGE,
20        PAMELA TAYLOR and
          JOHN TUTHILL:           MS. CYNTHIA L. DUCEY
21                                Delaney, Wiles, Hayes, Gerety,
                                    Ellis & Young, Inc.
22                                1007 West Third Avenue
                                    Suite 400
23                                Anchorage, Alaska 99501
                                  (907)  279-3581
24
          ALSO PRESENT:          MS. BOBBI WADE
25
                          *   *   *   *

**LIZ D'AMOUR & ASSOCIATES, INC.**
*330 Wendell Street, Suite A*
*Fairbanks, Alaska 99701*
*(907) 452-3678*

RECEIVED BY:
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
Date Rec'd/Initials: 6/8/06
                     ATO-K6
Distribution:_____

EXHIBIT 8
PAGE 1 OF 7

1    remember just talking to John, but not knowing exactly

2    the timing in terms of that other e-mail.  I just

3    trying -- I was trying to make it easier for all of us

4    if I could just sort of tie all this in, but it wasn't

5    con- -- I don't see the connection necessarily either

6    way.  I just remember talking to John about it.

7  Q   Okay.  And what did you talk about?

8  A   I said, well, I -- we still need appointment dates and

9    we still need to see whether this can be awaited,

10   delayed a little or not.  I mean, it's -- it's still

11   pretty vague.

12 Q   Why did you think it was vague?

13 A   Because we were looking for appointment dates for one

14   thing.

15 Q   Okay.

16 A   Which is part of our process for medical -- extended

17   medical leave.

18 Q   When somebody says that they recommend that someone

19   sees a specialist, would that -- is that normally

20   local?

21 A   What do you mean?

22 Q   Do you have local specialists?

23 A   No, not at all.  Everything has to go off slope.

24 Q   Okay.

25 A   Again, it could have been a specialist for anything.

EXHIBIT 8
PAGE 2 OF 7

1      doctor's certification as such, some kind of a doctor's

2      note that would say that.

3  Q     At this time when she took the November leave, did you

4      give her a form and tell her to have a doctor fill it

5      out?

6  A     No.  Because, again, I did not have an indication there

7      was a serious medical condition.

8  Q     Okay.

9            MS. JOHNSON:  And ask that this document be

10  marked 37.

11               (Deposition Exhibit 37 marked)

12            MS. DUCEY:  Are you on 36, Linda?  My.....

13            MS. JOHNSON:  I'm marking 37.

14            MS. DUCEY:  Was that -- did you -- I'm sorry.

15  A     This is -- last one 36?

16            MS. DUCEY:  I'm behind.  Never mind.  You're

17  absolutely right and I'm one behind.

18  A     Almost fell.

19  Q     This is 37.

20            MR. GAMACHE:  37.

21  Q     Okay.  Did you ever receive this document?

22  A     I don't recall seeing this document.

23  Q     Is this document anywhere in Bobbi Wade's medical file?

24  A     I don't recall.

25  Q     What -- and you would not have placed this in her

EXHIBIT 8
PAGE 2 OF 7

1    what we know happened or didn't happen.

2   Q    Right.   But we have a note and I just wondered.....

3   A    Yeah.

4   Q    .....if this was presented to you, would it be your

5        practice to give somebody an FMLA form?

6   A    Again, it would have to be dependent on -- on a lot of

7        factors.   And I -- I don't want to even have to say

8        what I would have and not have done.

9   Q    Okay.

10  A    This is looking back.

11  Q    You would agree that the employee would not have to ask

12       you for family medical leave.   Is that correct?

13  A    Yes.   That would be expecting them to be a lawyer by

14       doing so.

15  Q    Do you ask follow-up questions when somebody says they

16       need to go off slope and get medical treatment?

17  A    Not necessarily.   And I don't.   I try to honor their

18       privacy.

19            MS. JOHNSON:   Would you ask her to mark that

20  exhibit 33?

21                           (Deposition Exhibit 33 marked)

22  Q    I'll give you your copy in a minute.

23  A    Oh, okay.   I figured that would.....

24            MS. DUCEY:   You can look at that if you want.

25  A    Okay.   There we go.   I've got the one with the sticker.

**LIZ D'AMOUR & ASSOCIATES, INC.**
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678

EXHIBIT 8
PAGE 4 OF 7

258

| | | |
|---|---|---|
| 1 | Q | When you say, I don't recall, it leads me to think that |
| 2 | | you would need something to help you refresh your |
| 3 | | memory. |
| 4 | A | Certainly.  I would be willing to take a look at |
| 5 | | something if you have it. |
| 6 | Q | Okay. |
| 7 | A | No, I don't have anything in my memory.  I -- I see |
| 8 | | daily all types of leave requests for years -- for |
| 9 | | eight years worth of -- I couldn't remember offhand. |
| 10 | Q | How often do you actually designate leave as family |
| 11 | | medical leave? |
| 12 | A | Not often.  It depends -- like I said, it's usually |
| 13 | | it -- for just treatment off slope.  It doesn't define |
| 14 | | it.  It's usually extended medical leave.  Very rarely |
| 15 | | do we have FMLA situations. |
| 16 | Q | Okay.  If Bobbi Wade had been designated as using |
| 17 | | family medical leave where would I find a document like |
| 18 | | that? |
| 19 | A | It would be in her medical records, I would expect, not |
| 20 | | to be confused with her personal record -- personnel |
| 21 | | record her..... |
| 22 | Q | You would not have put it in a personnel record? |
| 23 | A | Oh, absolutely not.  No.  I'm very careful with keeping |
| 24 | | records separate and locked up and..... |
| 25 | Q | If someone comes back from family medical leave and |

**LIZ D'AMOUR & ASSOCIATES, INC.**
*330 Wendell Street, Suite A*
*Fairbanks, Alaska 99701*
*(907) 452-3678*

EXHIBIT ___9___
PAGE ___5___ OF ___7___

262

1  A     Again, it would depend on the type of employee.

2        Depends on the type of circumstance.

3  Q     Is there a basic minimum for faculty for credit hours?

4        Is there an expectation that a faculty member will have

5        a certain number of credit hours that they teach?

6              MS. DUCEY:   Objection to foundation.

7  A     Again, it would depend on the calendar -- the contract

8        year.   Each contract year is a little different.

9  Q     Okay.

10 A     I -- I don't remember if that would be it from year to

11       year.

12 Q     Would I look at the contract to det- -- make that

13       determination?

14 A     That would help, yes.

15 Q     Okay.   So for example, if there were 12 hours that were

16       required for a full-time professor.....

17 A     Uh-huh.

18 Q     .....if somebody came back from family medical leave

19       would you expect that they would be given back 12

20       credit hours to teach?

21 A     Or some other type of project to maintain their -- you

22       know, to be -- go back to work with, certainly.   Some

23       other kind of activity could be given to them as well

24       without loss of benefits.

25 Q     Okay.   So long as they're employed back at the college,



EXHIBIT ___8___

PAGE _14_ OF _7_

263

| | | |
|---|---|---|
| 1 | | it wouldn't matter what they were doing as long as they |
| 2 | | got the same..... |
| 3 | A | No, it would have to be something similar to faculty |
| 4 | | type of activities.  They could be advising students. |
| 5 | | They could be doing a lot of things, but, yes, course |
| 6 | | hours could be one of those things.  Again, it would |
| 7 | | depend on the instruction office's needs; how the |
| 8 | | students are adjusting to the different instructors. |
| 9 | | There's a lot of factors there that -- that really |
| 10 | | would have to require the educational expertise and |
| 11 | | fairness of John Tuthill to make that decision on this |
| 12 | | case. |
| 13 | Q | Before we went on break, we were almost to the hearing. |
| 14 | A | Oh, I'm sorry. |
| 15 | Q | And I'm trying -- no, no.  It's not your fault.  I'm |
| 16 | | trying to sort of..... |
| 17 | A | That's right.  You -- you decided to go on -- off |
| 18 | | record. |
| 19 | Q | .....work through this linearly.  So we got to the |
| 20 | | appeal; the appeal had been reinstated by Edna. |
| 21 | A | Yes, ma'am. |
| 22 | Q | And the appeal went forward; O'Rourke had been |
| 23 | | appointed as the hearing officer.  What happened next? |
| 24 | A | Then the hearing took place. |
| 25 | Q | Okay.  What sort of involvement did you have in the |

EXHIBIT___8___
PAGE__7_ OF__7_

BOBBI WADE vs. ILISAGVIK COLLEGE, et al          DEPOSITION OF CHERYL L. McKAY
CASE NO. A05-086 CV (JWS)                              FEBRUARY 8, 2006

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BOBBI WADE,                        )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )
                                   )
ILISAGVIK COLLEGE, NORTH SLOPE     )
BOROUGH, JOHN TUTHILL,             )
individually; and                  )
PAMELA TAYLOR, individually,       )
                                   )
        Defendants.                )   Case No. A05-086 CV (JWS)
_____    )

DEPOSITION OF CHERYL L. McKAY
February 8, 2006

APPEARANCES:

        FOR THE PLAINTIFF:              MS. LINDA J. JOHNSON
                                        Clapp, Peterson, Van Flein,
                                         Tiemessen & Thorsness, LLC
                                        Attorneys at Law
                                        711 H Street
                                        Suite 620
                                        Anchorage, Alaska  99501
                                        (907) 272-9272

        FOR THE DEFENDANTS
         ILISAGVIK COLLEGE,
         JOHN TUTHILL and
         PAMELA TAYLOR:                 MS. CYNTHIA L. DUCEY
                                        Delaney, Wiles, Hayes,
                                         Gerety, Ellis & Young
                                        Attorneys at Law
                                        1007 West Third Avenue
                                        Suite 400
                                        Anchorage, Alaska 99501
                                        (907) 279-3581

EXHIBIT 9
PAGE 1 OF 3

METRO COURT REPORTING
907.276.3876  745 West 4th Avenue, Suite 425, Anchorage, Alaska 99501metro@gci.net
4bfe6509-3fe0-44d3-a6dd-c66c2bee2d7f

BOBBI WADE vs. ILISAGVIK COLLEGE, et al          DEPOSITION OF CHERYL L. McKAY
CASE NO. A05-086 CV (JWS)                        FEBRUARY 8, 2006

Page 15

1   distinction without a difference, if she's not going to

2   answer, I'll just recommend that you not answer and then you

3   can decide whether you want to follow my advice or not.....

4   A       All right.

5               MS. DUCEY:  .....just as with any witness and,

6   you know, there is no such concept as a complete waiver, we've

7   voluntarily given a partial waiver and she's not going to

8   waive the privilege any further than the full course -- the

9   full scope of whatever's related to the advice she rendered in

10  the fall 2003 related to Ms. Wade's leave.

11              MS. JOHNSON:  Ready to go?

12  A       I'm ready.

13              MS. JOHNSON:  Okay.

14  Q       (By Ms. Johnson)  Were you consulted in September of

15          2003 about a request for leave from Bobbi Wade from

16          her employment?

17  A       I believe not, no.

18  Q       Okay.  Were you ever consulted about a request for

19          leave for medical reasons for Bobbi Wade?

20  A       Yes.

21  Q       And when were you first consulted?

22  A       It was in the first week of October, 2003.

23              MR. G:  2000 and?

24  A       3.                              EXHIBIT   9

25  Q       And who contacted you?           PAGE  2  OF  3

METRO COURT REPORTING
907.276.3876  745 West 4th Avenue, Suite 425, Anchorage, Alaska 99501 metro@gci.net
4bfe6509-3fe0-44d3-a6dd-c66c2bee2d7f

BOBBI WADE vs. ILISAGVIK COLLEGE, et al          DEPOSITION OF CHERYL L. McKAY
CASE NO. A05-086 CV (JWS)                        FEBRUARY 8, 2006

Page 18

1     the classes.  Whether they were aware of any

2     circumstances of the personal leave request, whether

3     it was an emergency or anything like that.  They

4     informed me that it was a personal leave request that

5     they -- and they didn't have any documentation other

6     than that.

7   Q   Did they tell you that they had a doctor's note that

8     was attached to the leave request?

9   A   I -- I don't think so, no.

10   Q   So they didn't send you a copy of the leave request or

11     a copy of the doctor's note or anything like that?

12   A   I don't recall seeing any of those documents at the

13     time of that phone call.

14   Q   And at the time, they didn't tell you that it was

15     medically related?

16   A   You know, I actually don't remember.  I remember

17     discussing it as a personal leave request and then I

18     remember discussing if it was for medical records,

19     whether it was going to be eligible for family and

20     medical leave, and the process for determining whether

21     it would be.

22   Q   Okay.  And what was that process?

23   A   Whether they were aware whether there was a serious

24     health condition that would trigger the family medical

25     leave protections.

EXHIBIT 9
PAGE 3 OF 3

METRO COURT REPORTING
907.276.3876  745 West 4th Avenue, Suite 425, Anchorage, Alaska 99501 metro@gci.net

4bfe6509-3fe0-44d3-a6dd-c66c2bee2d7f

## John Tuthill

| | |
|---|---|
| **From:** | Bobbi Wade [bobbi.wade@ilisagvik.cc] |
| **Sent:** | Thursday, October 09, 2003 1:02 PM |
| **To:** | John Tuthill |
| **Subject:** | RE: Medical leave request |

John, I turned that request in to Pam day before yesterday. I attached a statement from my doctor in TN, and then I went to the Dr. here in Barrow on Monday evening and she reinforced the opinion by a written note, which I feel is sufficient for obtaining leave. But, since I can't change the schedule of the Modules B for Business Math and Business English, I really don't want to leave my students at this point. They are good classes and I don't want to upset them in any way. My medical problem needs attention as soon as possible, but it not a matter of life or death. So, leaving everything until the holidays looks like the most feasible thing right now. Thanks,


-----Original Message-----
**From:** John Tuthill
**Sent:** Thursday, October 09, 2003 12:39 PM
**To:** Bobbi Wade
**Subject:** Medical leave request

Bobbi --

If you are planning to take the medical leave later this month, I need a written notification from a licensed physician, preferably by fax and as soon as possible, to the effect that your medical treatment cannot wait until the December break, when you could have the treatment without conflict with your regular teaching duties. As soon as I have received such a notification, I can begin to process the request for a medical leave.

-- John
Dean of Instruction
Ilisagvik College

'IBIT _10_
E _1_ OF _2_

21394
Wade v. Ilisagvik College

3/22/2005

## John Tuthill

| | |
|---|---|
| **From:** | Bobbi Wade [bobbi.wade@ilisagvik.cc] |
| **Sent:** | Thursday, October 09, 2003 1:02 PM |
| **To:** | John Tuthill |
| **Subject:** | RE: Medical leave request |

John, I turned that request in to Pam day before yesterday. I attached a statement from my doctor in TN, and then I went to the Dr. here in Barrow on Monday evening and she reinforced the opinion by a written note, which I feel is sufficient for obtaining leave. But, since I can't change the schedule of the Modules B for Business Math and Business English, I really don't want to leave my students at this point. They are good classes and I don't want to upset them in any way. My medical problem needs attention as soon as possible, but it not a matter of life or death. So, leaving everything until the holidays looks like the most feasible thing right now. Thanks,


-----Original Message-----
**From:** John Tuthill
**Sent:** Thursday, October 09, 2003 12:39 PM
**To:** Bobbi Wade
**Subject:** Medical leave request

Bobbi --

If you are planning to take the medical leave later this month, I need a written notification from a licensed physician, preferably by fax and as soon as possible, to the effect that your medical treatment cannot wait until the December break, when you could have the treatment without conflict with your regular teaching duties. As soon as I have received such a notification, I can begin to process the request for a medical leave.

-- John
Dean of Instruction
Ilisagvik College

EXHIBIT 10
PAGE 2 OF 2

21394
Wade v. Ilisagvik College

3/22/2005



# Samuel Simmonds Memorial Hospital

1296 Agvik Street  PO Box 29  Barrow, AK 99723  Phone: (907) 852-4611  Fax: (907) 852-2163

Wednesday, November 05, 2003

To Whom It May Concern,

I am writing on behalf of Bobbi Wade, a patient of mine. Ms. Wade needs follow up for some medical conditions that cannot be addressed here. The follow up should occur in a somewhat urgent time frame. Thank you for your understanding.

Sincerely,

Michelle L. Snyder, DO
Staff Physician; Family Practice

Arctic Slope
Native Association, Limited

"Embracing the past. Looking towards the future. Together we can heal"

EXHIBIT ___11___
PAGE __1__ OF __1__

21360
Wade v. Ilisagvik College

1          IN THE UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF ALASKA

3                                    **CERTIFIED COPY**

4    --------------------------------X

5    BOBBI J. WADE,

6                                          CASE NO.
                    Plaintiff,             A05-086CV (TMN)

7    vs.

8    ILISAGVIK COLLEGE, NORTH SLOPE
     BURROUGH, JOHN TUTHILL, individually
9    and PAMELA TAYLOR, individually

10                    Defendants.
     --------------------------------X

11

12   DEPOSITION OF:            MICHELLE SNYDER, DO

13
     TAKEN:                    Pursuant to Notice
14                             Instance of Defendant

15
     DATE:                     August 29, 2006

16
     TIME:                     Commencing at 9:07 A.M.

17

18   PLACE:                    NW Family Medicine
                               4278 W. Linebaugh
19                             Tampa, FL

20
     BEFORE:                   JACKIE L. OSTROM
21                             Court Reporter and
                               Notary Public, State
22                             of Florida at Large

23   ATKINSON-BAKER, INC.          RECEIVED BY:
     COURT REPORTERS          Clapp, Peterson, Van Flein,
                              Tiemessen & Thorsness, LLC
24   (800) 288-3376          Date Rec'd/Initials: 11/28/06
     www.depo.com                        400-85
25   FILE NO.: A006DBB        Distribution:_____

                              EXHIBIT 12
                              PAGE / OF 6        1

1    Barrow?  How did that work?                          10:18:19

2        A    Um --

3        Q    That's actually for not, since we're dealing

4    with Ms. Wade here, for non-native patients.

5        A    I was going to ask you to clarify that.      10:18:28

6        Q    Yeah.

7        A    Yeah, it's pretty straightforward for the

8    natives?

9        A    Yeah.  For the non-natives, um, I'm digging into

10   my memory here.  I honestly can't remember in they could    10:18:40

11   be referred to the Anchorage -- the native hospital or

12   not.  I believe we used other facilities so we had just --

13   we had specialists or there was another hospital in

14   Anchorage I think too that they would be referred to for

15   various things.                                       10:19:04

16       Q    Was, as a, I think you said you were a

17   locum tenens?

18       A    Uh-huh.

19       Q    And that's a temporary kind of travelling

20   doctor?                                               10:19:15

21       A    Yes.

22       Q    Physician?

23       A    Uh-huh.

24       Q    Okay.  Did you have a personal referral network

25   with physicians in Anchorage or Fairbanks?            10:19:19

EXHIBIT  12
PAGE  2  OF  6

53

| | | | |
|---|---|---|---|
| 1 | A | Me personally or just through the -- | 10:19:27 |
| 2 | Q | Yeah. | |
| 3 | A | No. | |
| 4 | Q | So it wasn't like -- you didn't have a | |
| 5 | dermatologist that you would personally call because you | | 10:19:30 |
| 6 | knew that person? | | |
| 7 | A | Right. | |
| 8 | Q | And the same thing, you didn't have an | |
| 9 | oncologist that you could -- | | |
| 10 | A | Uh-uh, no.  Just from a list from a book. | 10:19:40 |
| 11 | Q | Okay.  How about for orthopedic surgeons, is | |
| 12 | that the same answer? | | |
| 13 | A | Same thing. | |
| 14 | Q | Okay.  What's the -- what are the imaging | |
| 15 | capabilities there in Barrow? | | 10:20:00 |
| 16 | A | We had an x-ray machine. | |
| 17 | Q | Plain film? | |
| 18 | A | Plain film and three days a week we had | |
| 19 | ultrasound. | | |
| 20 | Q | So you didn't have CT? | 10:20:10 |
| 21 | A | No. | |
| 22 | Q | Or MRI? | |
| 23 | A | No. | |
| 24 | Q | Okay.  During the time that you were there was | |
| 25 | it unusual for residents of Barrow to travel outside the | | 10:20:23 |

EXHIBIT  12
PAGE  3  OF  6

54

1    somewhere else?                                              10:41:58

2        A    Uh-huh.

3        Q    Um, who would be the specialist that you would

4    send the patient to if they couldn't get control of gastro

5    reflux?                                                       10:42:12

6        A    Usually a gastroenterologist, yeah.

7        Q    Were there any of those in Barrow?

8        A    No.

9        Q    How about for the right hip pain?  Is that

10    something that you guys were able to workup there in         10:42:27

11    Barrow?

12            MS. DUCEY:  Objection to vague.

13    BY MR. TIEMESSEN:

14        Q    I'm using workup in a --

15        A    All we could do was an x-ray.                       10:42:34

16        Q    -- medical sense.

17        A    So if the usual things, the

18    antiinflammatories -- I don't ever know that we had

19    physical therapy up there.  I don't recall.  You know,

20    persistent right, persistent hip pain would eventually get   10:42:49

21    an MRI.

22        Q    And again, is an MRI something that you had in

23    Barrow?

24        A    No.

25        Q    I think we already talked about it, but a           10:43:02

EXHIBIT 12

PAGE 4 OF 6

65

1    follow-up with a dermatologist, that was going to have to    10:43:23

2    happen outside of Barrow too?

3        A    Yes.

4        Q    In the case of Ms. Wade with her particular path

5    report, would the follow-up with the dermatologist have    10:43:36

6    been more than just a second opinion?

7        A    Um, yes, because we could not -- we could not

8    say that the borders were or the margins were clear.

9        Q    Is that pretty much standard of care if you've

10    got unclear margins on a skin cancer like that to send it    10:44:02

11    to a dermatologist?

12       A    For me it is.

13       Q    And it was for you in October of 2003?

14       A    Definitely then, yes.

15   (Whereupon, a pause in the proceedings took place.)    10:44:17

16   BY MR. TIEMESSEN:

17       Q    You were talking a little bit about patients'

18   psychological reactions, their anxiety to this kind of

19   diagnosis.  Just again ball-parking, how many times in

20   your career have you had to tell patients that --    10:44:58

21   basically have the cancer talk with a patient?

22       A    Any cancer?

23       Q    And let's start with any cancer.

24       A    Any cancer, maybe 20, 30 times.

25       Q    Okay.  Um, and to your recollection did you have    10:45:15

EXHIBIT 12
PAGE 5 OF 6

66

1               RECROSS EXAMINATION                    11:00:38

2    BY MR. TIEMESSEN:

3        Q    Just a follow-up.  If I understand, you didn't

4    have anyone specifically in Anchorage to refer her to.

5    You couldn't say, okay, I want you to go see          11:00:49

6    Dr. So-and-so?

7        A    That's correct.

8        Q    Under that circumstance is that unusual for a

9    patient to want to go see a doctor or go to a medical

10   facility that they're familiar with?               11:01:08

11           MS. DUCEY:  Objection to speculation.

12           THE DEPONENT:  I can only speak on what I

13       would do personally.

14   BY MR. TIEMESSEN:

15       Q    What would you do personally?              11:01:17

16       A    I would rather -- I would want to go somewhere

17   that I'm familiar with.  If a doctor can't give me

18   assurance that who I'm going to is not competent or

19   they...

20       Q    Okay.  And let's talk a little bit about the  11:01:27

21   reality of Barrow and sometimes having to wait.  Is -- did

22   you have a time that you were in Barrow did you ever have

23   any other patients with cancer?

24       A    I don't recall.  Probably.  I don't recall.

25       Q    Um, is not patients that you diagnosed, just any  11:01:49

EXHIBIT 12
PAGE 6 OF 6

76



Ilisaġvik College
P.O. Box 749 • Barrow, Alaska 99723
☎ (907) 852-3333  Fax (907) 852-2729

# REQUEST FOR LEAVE

**Name:** Bobbi J. Wade

**Department:** Bus Mgt.    **Date of Request:** 11/4/03

**Number of Days or Hours** 11    **Begin:** Nov 12 8:30 (AM) PM    **End:** Nov. 26 5:00 AM (PM)

Month  Day  Hour       Month  Day  Hour

**Type of Leave Requested:** ☒ Personal PT  ☐ Public Service  ☐ Subsistence
☐ Military  ☐ Family Medical Leave  ☒ Extended Medical Leave
☐ Jury Duty  ☐ Leave Without Pay

Personal:

J
N   12 Personal    11 · x =
F      Days        7 · 5 =
E                  82 · 50 =
P

O

Coi

Sick Leave. Vacation, Subpoenaed Witness (Requires copy of subpoena)
of 10 days per calendar year: Unpaid Leave
of 15 days per calendar year (Requires copy of jury summons and that court
ided compensation be given to Ilisaġvik College.): Paid Leave
of 16.5 days per calendar year (Requires copy of orders): Paid Leave
of 12 weeks per calendar year (Requires copy of Doctor's verification): Unpaid Leave
y of Doctor's verification: Paid Leave
f 10 days per calendar year (Requires minimum 3 days prior approval. If honorarium
ed, Personal Leave must be taken or honorarium turned over to Ilisaġvik College.)
pe of leave not described above (Requires explanation below)

cave designated – once reQuired medical
documentation (ie appt schedule(s) and work Release) obtained,
leave will be adjusted to reflect appropriate Extended Medical leave
dates (PT)

**Employee Signature:** Bobbi J. Wade    **Date:** 11/4/03

**Payroll Verification of Hours Available:** _____  **Date:** _____

**Department Supervisor Approval:** _____  **Date:** 11/6/03

**Human Resources Approval:** Cornele Gay h  **Date:** 11/10/03
(Not Required for Personal Leaves)

EXHIBIT 13
PAGE 1 OF 1

21362
Wade v. Ilisagvik College

*** All Signatures Must be Obtained Prior to Leave Date. ***

White - Human Resources    Canary - Payroll    Pink - Employee    Golden - Department    9/14/99