# Naomi Ruby

**From:**      Sara Rahn Gamboa
**Sent:**      Thursday, November 13, 2003 1:37 PM
**To:**        Naomi Ruby
**Subject:** RE: Bobbi Wade

Before you process her check next week in payroll, I need to talk with Diana – she mentioned that two credits were not going to be paid and we would be paying her less than what we currently have on the contract.   Thanks,

~~~~~~~~~~~~~~~~~~
Sara Rahn-Gamboa
Accounting Supervisor
Ilisagvik College
PO Box 749, Barrow, AK  99723
Phone: 907.852.1829   Fax: 907.852.2652
E-mail: sara.rahn@ilisagvik.cc
          -----Original Message-----
          **From:** Naomi Ruby
          **Sent:** Thursday, November 13, 2003 1:33 PM
          **To:** Sara Rahn Gamboa
          **Subject:** FW: Bobbi Wade

          FYI

          Naomi Ruby
          Temp. HR / Accounting Clerk
          Ilisagvik College
          P.O. Box 749
          Barrow, AK  99723
          (907) 852-1837
          -----Original Message-----
          **From:** Mae Haimes
          **Sent:** Thursday, November 13, 2003 1:28 PM
          **To:** Naomi Ruby
          **Subject:** Bobbi Wade

          Hi Naomi!  Bobbi Wade had already turned in her final grades for OT 104, 801 – Filing and Records Management.  She should therefore be paid her contract for this course. Thanks!

          *Mae Lorenz Amistoso Haimes*
          *Program Assistant-Registrar & Admissions*
          *Ilisagvik College*
          *Phone: 907-852-1771*
          *Fax: 907-852-1784*

EXHIBIT  22
PAGE  *1*  OF  *4*

**200112**

11/13/2003

# Iḷisaġvik College

PO Box 749
Barrow, Alaska 99723

## BIWEEKLY EMPLOYEE EXEMPTION REPORT

Employee ID: WADO1
Employee Name: Betts Wolf
Position: O 5001

Pay Period Ending: 11|14|03
SSN: 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
Hire Date: 8|01|2000
Default Dept: 101202

| Description | SAT 11/1 | SUN | MON | TUE | WED | THU | FRI | SAT | SUN | MON | TUE | WED 11/12 | THU 11/13 | FRI 11/14 | TOTAL | ACCOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Prsnl Leave | | | | | | | | | | | | 7.5 | 7.5 | 7.5 | 22.5 | |
| Unpaid Leave | | | | | | | | | | | | | | | | |
| Ext Med Leave | | | | | | | | | | | | | | | | |
| Family Lv Unpaid | | | | | | | | | | | | | | | | |
| Jury Duty | | | | | | | | | | | | | | | | |
| Public Svc | | | | | | | | | | | | | | | | |
| Military | | | | | | | | | | | | | | | | |
| Subsistence Unpd | | | | | | | | | | | | | | | | |
| Faculty Sick Leave | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | 22.5 | |

Employee Signature _WM Sra Betts Wolf_

Supervisor Approval _[signature]_

EXHIBIT 22
PAGE 2 OF 4

200106

Added Duties Contract

# PURCHASING DEPARTMENT

**PHONE:  (907) 852-3333    FAX:  (907) 852-2652**

| REQUEST NO. | DATE | PAGE |
|---|---|---|
| | 10/24/2003 | 1 of 1 |

# ADDED DUTIES CONTRACT REQUEST

**V E N D O R**

*Bobbi Wade*

**S H I P  T O**

**ILISAGVIK COLLEGE**

| | |
|---|---|
| REQUESTED BY: | **D Kennedy** |
| DEPARTMENT: | **Instruction** |
| VENDOR CONTACT: | **Bobbi** |
| VENDOR PHONE: | **852-1731** |
| VENDOR FAX: | **852-1828** |

JUSTIFICATION:

*104 2HRS*

*105*

*105*

| | | | Term of Agreement | Course # |
|---|---|---|---|---|
| ACCOUNT CODE: | | 10-001-1202-51101 | *Fall 2003* | BUS 105 A,B & BUS 109 A & OT 104 |

| ITEM | QTY. | DESCRIPTION | Fixed Rate Compensation | EXTENDED PRICE |
|---|---|---|---|---|
| 1 | 1 | *BUS 105 Business Math Module A* | 1500 | 1500 |
| | 1 | *BUS 105 Business Math Module B* | 1500 | 1500 |
| 2 | 1 | *BUS109 Business English Module A* | 1500 | |
| 3 | 2 | *OT 104 Filing and Recordkeeping* | 1500 | |
| 4 | 3 | *Development of BlackBoard courses BUS 100, BUS 154 & BUS 233* | 1500 | 4500 |

* Bobbi TAUGHT 2 CREDITS less than normal Schedule (12 Credits)

PAYment Should be 2 credits less

11/14/03

| | | Grand Total |
|---|---|---|
| | | 12000 |

| | | |
|---|---|---|
| Director/Division Manager's approval (under $2,500) | | Date |
| Dean's Approval (over $2,500) | | Date  10-27-03 |
| Dea   Administration & Finance Approval | | Date  11/0/03 |

EXHIBIT   22
PAGE   3   OF   4

Purchase.xlt

200107

Added Duties Contract

# PURCHASING DEPARTMENT

**PHONE:** (907) 852-3333    **FAX:** (907) 852-2652

| | REQUEST NO. | DATE | PAGE |
|---|---|---|---|
| | | 10/24/2003 | 1 of 1 |

# ADDED DUTIES CONTRACT REQUEST

**V E N D O R**

*Bobbi Wade*

**S H I P   T O**

**ILISAGVIK COLLEGE**

REQUESTED BY: **D Kennedy**
DEPARTMENT: **Instruction**
VENDOR CONTACT: **Bobbi**
VENDOR PHONE: **852-1731**
VENDOR FAX: **852-1828**

JUSTIFICATION:

| | | Term of Agreement | Course #<br>BUS 105 A,B & BUS 109 A & OT 104 |
|---|---|---|---|
| **ACCOUNT CODE:** | *10-001-1202-51101* | *Fall 2003* | |

| ITEM | QTY. | DESCRIPTION | Fixed Rate Compensation | EXTENDED PRICE |
|---|---|---|---|---|
| 1 | 1 | *BUS 105 Business Math Module A* | 1500 | 1500 |
| | 1 | *BUS 105 Business Math Module B* | 1500 | 1500 |
| 2 | 1 | *BUS109 Business English Module A* | 1500 | 1500 |
| 3 | 2 | *OT 104 Filing and Recordkeeping* | 1500 | 3000 |
| 4 | 3 | *Development of BlackBoard courses BUS 100, BUS 154 & BUS 233* | 1500 | 4500 |

*Bobbi Taught 2 credits less than normal schedule (12 credits)*

*Payment should be 2 credits less*

*[signature] 11/14/03*

| | | Grand Total |
|---|---|---|
| | | 12000 |

| Director/Division Manager's approval (under $2,500) | Date |
|---|---|
| | |

| Dean's Approval (over $2,500) | Date |
|---|---|
| [signature] | 10-27-03 |

| Dean Administration & Finance Approval | Date |
|---|---|
| [signature] | 11/3/03 |

EXHIBIT __22__
PAGE __4__ OF __4__

Purchase.xlt

200111

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BOBBI J. WADE,                          )
                                        )
            Plaintiff,                  )
                                        )       Case No. A05-086 CV (JWS)
v.                                      )
                                        )
ILISAGVIK COLLEGE, NORTH SLOPE          )
BOROUGH, JOHN TUTHILL, individually     )
and PAMELA TAYLOR, individually         )
                                        )
            Defendants.                 )
_____)

## RESPONSE TO PLAINTIFF'S FIRST DISCOVERY REQUEST TO DEFENDANT ILISAGVIK COLLEGE

Defendant, Ilisagvik College, by and through counsel, Delaney, Wiles, herein responds to

plaintiff's first discovery request to Ilisagvik College as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Please state the number of full-time and part-time

employees at Ilisagvik during the 2003-2004 school year.

**RESPONSE**:  Objection, not relevant nor reasonably calculated to lead to discoverable

information.  Without waiving the foregoing, 124 full-time employees and 116 part-time

employees.

**INTERROGATORY NO. 2:**  Please describe the services that Dr. Patrick J. O'Rourke

provided to Ilisagvik College for the last five years, including, but not limited to, consulting

DELANEY, WILES,
HAYES, GERETY,
LLIS & YOUNG, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

1

EXHIBIT 23
PAGE 1 OF 2

**RESPONSE**: Objection to vague and ambiguous discovery requests regarding complaint. It is admitted that plaintiff submitted document number 21386-21391A. The remaining allegations are denied.

**REQUEST FOR ADMISSION NO. 3:** Please admit that Ms. Wade references being seen for a "Mose Treatment" in her December 11, 2003 complaint.

**RESPONSE**: It is admitted that the document speaks for itself and mentions "Mose Procedure" at page 5 without any explanation. The remaining allegations in request for admission 3 are denied.

**REQUEST FOR ADMISSION NO. 4:** Please admit that two classes assigned to Ms. Wade to teach during the fall semester 2003 were transferred to other teachers during her leave in November 2003.

**RESPONSE**: It is admitted that two of the classes Ms. Wade taught were module classes of only four weeks duration. For the period of time Ms. Wade was absent due to leave she would miss 40% of the classes, a situation that had never occurred before. Accordingly, because 40% of the class meetings would be missed by her, these two classes only were reassigned. Her classes in Business 100, Business 105, Business 154 and Business 233, as well as any other additional classes she picked up before the end of the semester in 2003 were not reassigned. The remaining allegations are denied.

ELANEY, WILES,
IAYES, GERETY,
JS & YOUNG, INC.
SUITE 400
07 WEST 3RD AVENUE
CHORAGE, ALASKA
(907) 279-3581

19

EXHIBIT 23
PAGE 2 OF 2



# Memorandum

**Date:** December 19, 2003

**To:** Bobbi Wade, John Tuthill, and Pam Taylor

**From:** Diana Kennedy

**RE:** Meeting to address Bobbi's complaints

---

Pam explained how the meeting would be conducted and that everything said would be confidential.

Bobbi began by questioning why two of her added duty contracts were broken after the duties were fulfilled.

John said the contracts were not pay because the 12 credit teaching load had not been met because Bobbi had to take medical leave. The added duties had to be adjusted by two credits.

Bobbi asked why she couldn't have just been paid in the Fall and her schedule adjusted for Spring, or postpone the start of the two classes until she returned on December 1st.

John said he didn't think it was in the best interest of the students to postpone the start of the two classes. He found two willing and capable instructor to teach the classes at the scheduled times.

Bobbi said it was in the worst interest of the students to hire adjunct instructors for these classes.

Pam said these were two different issues.

Bobbi feels she has been discriminated against by John because she is over 40. She feels this is the case because she feels she is not being consulted when important decisions are being made concerning the Business programs, for example canceling courses. Another example is that two adjuncts were hired that were younger than 40 to teach the two class mentioned above.

John reminded Bobbi that the schedule for the fall semester had obligated her to teach an unreasonable number of credits and the decision to cancel the class was done to help ease the burden and that Diana had called and told her that the class was going to be canceled.

20343
Wade v. Ilisagvik College

Date: 5-4-06   Exhibit: 44
Witness: Taylor
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

EXHIBIT 24
PAGE 1 OF 2



# Memorandum

John said his decision to hire the two adjuncts had nothing to do with age. They were available to teach the classes at the scheduled times and were qualified.

Bobbi asked why James Smith was removed from the schedule and Aimee was added without consulting her.

John said this was done when she was on medical leave and he had consulted Courtneay as the Department Chair.

Bobbi said she wanted to find someone else because she didn't want Aimee teaching any of her Business courses. Bobbi heard Aimee say insulting things about her to the students. Bobbi said she wrote Aimee a memo offering to help her but Aimee got upset and said that she would take her directions from the Dean.

John said that Aimee told him she had gone to Bobbi before she left for medical leave and asked for guidance. Bobbi was in class and told Aimee to leave.

Bobbi said the students were in the middle of the final test and told Aimee that she couldn't talk to her at that time but didn't tell her to leave.

John agreed that it wasn't good timing.

Bobbi said Aimee was teaching over the students' heads. Bobbi knows her students capabilities and does a lot of tutoring on the side.

20344

Wade v. Ilisagvik College

EXHIBIT ___24___

PAGE ___2__ OF __2__

DATE:   11 December 2003

TO:     Dr. Edna MacClean, President, Ilisagvik College
        John Tuthill, Dean of Instruction
        Pam Taylor, Director of HR
        Courtneay Bartholomew, Chair, BMIT Division

FROM:   Bobbi J Wade, Assistant Professor of Business Management

SUBJ:   Formal Grievance

## PURPOSE

To provide information concerning a chain of events that I feel are unethical procedures toward me and the adjuncts whom have been teaching courses in my programs for the last 3.5 years. These events were demeaning to my reputation and integrity as Lead instructor for the business management programs, and some of the events were in violation of my contracts.

## INTRODUCTION

Since I left for summer break last June, 2003, a series of occurrences have taken place to show a lack of consideration for me and my position as a faculty member, and they are still ongoing.  In fact, I have been totally left out of things and ignored as an instructor even when I requested participation.  Several important factors have taken place that were/are damaging to my programs, and have caused deterioration to my classes and confusion to my students. Just today, I witnessed a slander to my personal integrity by an adjunct instructor, which is defamation to my character, because it took place in the presence of my students. Then, too, other than the unfairness and lack of consideration, several items in my contracts have been in violation by the Dean of Instruction. I will discuss the chain of events at which they seemed to begin <u>and are still ongoing</u>. Last Thursday, December 4, 2003, (demeaning conduct by an adjunct). Friday, December 5, (was told that two of my extra-duty contracts were voided by the Dean), and Wednesday, December 10, (two adjuncts told me they were going to resign), which would be a devastation to the Business Management programs and is very embarrassing to me. Also, it is becoming an embarrassing issue to one of the adjuncts at her full time position.  On Friday, December 5, I went to Pam Taylor and spoke with her concerning the unethical conduct of the adjunct as well as other items. She advised me to arrange a meeting with the Dean in her presence and in the presence of Diana Kennedy. I requested this meeting, but the Dean advised me that he needed to know why I wanted to meet. This letter is a formal statement to inform the Dean and all concerned what my grievances are and why I wanted the meeting. <u>To prevent further damage to the reputation of the college, it needs to be addressed in a timely</u>

Date: 5-4-06   Exhibit 38
Witness: Taylor
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

100197   25
EXHIBIT
PAGE 1 OF 6

manner. Ethics is the number one factor that is taught in all business courses, and if we do not practice what we teach, then how can we teach it to others?

## SUMMARY

### 1. Scheduling:

In June, 2003, before I left on summer break, I did all the preparation for the fall semester that was required of the faculty. This included making out a detailed teaching schedule along with a list of required text books. Not only did I make out my own schedule, but the schedules for all the adjuncts who would teach courses in the programs. It took a lot of hours and concentration to complete the schedule, but it was done in a timely manner and turned in to the Dean of Instruction's office.

While I was away for the summer break, my schedule was totally rearranged with several added extra duty courses. The rearrangement was done without any consultation with me and in my absence. When I reported for work on August 18, my schedule was such that it was almost beyond reason. I had 31 new advisees, plus the 30 that I was already advising, making a total of 61 altogether. I had six classes beginning at the same time, because of the scheduling, with a total of 87 students. More were added on later. This is almost unheard of, because faculty members usually stagger the classes in order for the teaching load not to be a burden to the instructor. Then, too, the Blackboard classes had to be designed before the students could begin the courses. This is very time consuming and requires a lot of concentration and has to be done before the classes begin.

This problem could have been eased when one of my classes was cancelled. But, again, I was not consulted and the class was cancelled leaving the same schedule with all classes being taught at the same time. If I had been included in the decision, I could have rearranged the schedule to shift the class load to a little more balanced situation. Again, no consideration at all was given to me, or the load I was carrying. Also, it was in violation of my contract, which states that if a class is cancelled, it will be in consultation with the instructor prior to cancellation.

I requested leave to take care of a medical problem. I had Module C of both Bus Math and Bus English to complete, because both courses are three credit hours of study, but I had scheduled each of them in three phases, Modules A, B, and C. I made a schedule for myself to teach Module C of both Bus Math and Bus English upon my return from leave (11 days), which the students in both classes agreed was satisfactory with them. The change in dates would have not been confusing to the students nor damaging to my classes. It would have been a smooth inclusion. Dean Tuthill totally ignored my schedule, which left my students in a state of confusion, because he hired other instructors in my absence to teach the third phase of the two classes that I was in the process of teaching. Again, this was done with no consultation with me. Also, he knew that my leave request was only for 11 days,

EXHIBIT 25
PAGE 2 OF 4

which three class meeting would be held in my absence with the original schedule. Why was I not allowed the privilege of getting someone to substitute in my absence, and resume teaching the classes upon my return if he wanted to keep the original, and not adhere to my revised one? Others have taken leave. Did the Dean replace them while they were gone by hiring instructors to take their place, or did they make arrangements for their duties to be taken care of while they were gone, and then resume the duties when they returned, as is the usual procedure.

Then, too, the Business 109C teacher the Dean hired (Amiee Valante) to take over the class is an outside adjunct who has totally aborted my class syllabus, textbook, and teaching plans. The students were in a state of confusion upon my return and are being told that the teaching materials that have been previously used are wrong and they will no longer be used—that she is totally rewriting the course, and she is using a syllabus for Business 100. This is an insult to my reputation as an instructor and defamation to my character. It has always been my understanding that an adjunct will teach a course under the direction and plans of the Lead instructor of the department, and will use the teaching materials that are provided. All adjuncts have adhered to this policy until now. Now, it seems that this particular adjunct has taken over with all authority in my program and classes with no regards to my position. Plus, making remarks to the class that is demeaning to me and my status as a full time faculty member with four years of service. Up until now, I have always had the privilege of screening and hiring the adjuncts for my programs—all of a sudden that privilege has been taken away from me without due process. The adjunct instructor that has been teaching Bus 109 has for the past 3.5 years has been replaced without cause or provocation, which is a very unethical procedure and damaging to the reputation of the college, because she is a very upstanding citizen of the community. Also, the Bus Math 105 adjunct instructor was taken off the spring roster and replaced without notification. He, too, has been teaching Bus Math for the past two years, and is also a fine citizen of the community. Another upstanding citizen and leader in the community, was taken off the fall schedule without notice. This is not an ethical way to work with people of the community, and I am strongly opposed to it. These adjuncts who are being replaced are long standing citizens of the community and it has helped to build a good rapport of the college with the community. These same adjuncts will be around for a long time to come, when the temporary ones will be gone at any time.

UPDATE: Today, 12/4/03, I asked the adjunct for Bus English 109C (Amiee) if she was following my syllabus and using the textbook the students have purchased. Her attitude was very belligerent and demeaning to me when she told me, "I do not have to use your plans or your book because the Dean and I have discussed it and we have agreed that the proper materials are not being taught in Business English. Then she stated, "We will meet with the Dean and he will straighten you out." I have always had the opinion that an ethical Dean would support the faculty unless he/she had reason not to. Because of his actions, my reputation with the college as Lead Instructor of the Business Management programs has been slandered, without reason or provocation from me. I have always been a very fair and ethical person.

EXHIBIT 25
PAGE 3 OF 6

**100199**

<u>and I abide by the rules.</u>  I think my service to the college for the past soon-to-be four years speaks for itself.


## 3. Leave:

In late September, 2003, I applied for personal leave because I needed to go back to my family doctor for continuation of tests that I had begun in July while on summer break.  I took my leave request in to Dean Tuthill and talked with him about rearranging my schedule as not to interfere with my teaching duties. I had the classes rescheduled on the proper change form and had talked with my students. Every student in the class agreed it was a better schedule than the old one.  Dean Tuthill seemed agreeable and to think it was a workable schedule, but said he would need to look into it. I also presented him with a copy of a document from my doctor verifying that I needed the immediate follow-up.

In a couple of days, I went back into his office to inquire about my leave, he told me in a very abrupt attitude that he would not approve the change in the class schedule and, consequently, would not approve my leave, because it would interfere with my teaching schedule. The rescheduling of my classes was a very logical one and there was no reason it would not have worked. Yet, he would not allow me to use the rearranged schedule that would allow me to take the necessary leave time, and at the same time, keep the students content. Some of the students even decided to take a break while I was away, and we would all meet back to continue with the classes upon the specified date that I would return.

I was very disturbed by his lack of cooperation with me to work out a pressing problem, because I really needed the medical attention. I went to Pam Taylor and she advised me to fill out a request for medical leave along with verification from my doctor, which I did. But, this didn't satisfy Pam. She wanted more documentation from the doctor. Rather than try to obtain more documentation, I decided that I would go to the doctor here in Barrow and try to get by until the Christmas holidays, which was Dean Tuthills' suggestion. I told him that I would take his suggestion and wait until the Christmas holidays, and, in the meantime, took another 2 credit course to teach because there was no one to teach it. This was related that to Dean Tuthill in an email. By that, I thought he would approve time in December adjoining the holiday break for my seeing the doctor.

But, he denied that also, because I then applied for leave in December, and worked out an arrangement to have the classes completed by the time I took the leave days. But Dean Tuthill denied the request without even consulting with me about the arrangements I had worked out for my classes. He said I would have to stay on the job until Dec. 19. That, of course, would leave no time to see a doctor since most offices are closed the week of Christmas.

EXHIBIT 25

PAGE 4 OF 6

100200

But, again, due to tests results from the local medical clinic, I submitted another leave request to Dean Tuthill on Nov. 3, and he did not respond at all. He did not even give me the courtesy of replying. Then, I got a phone call from the doctor in Barrow informing me that I must see a specialist immediately, because the type of treatment I needed (a Mose Procedure) could not be done in Barrow, and could not be done in Anchorage. Only when I reached the point that was critical did he sign a leave request, and this was done when Pam Taylor informed him that he had no choice. Again, his denial of my leave request was in violation of my contract, because there was a reasonable plan to take care of my classes in my absence, and consequently, it would NOT have hindered my duties nor been in violation of my contract. It seemed he was trying to enforce his stated opinion of faculty leave time which was designated in a contract that was written and signed several months prior to his hire date.

4. Extra-duty contracts and pay:

For all the extra-duty units that were added to my schedule, I finally received the signed contracts from the Dean of Instruction. I signed the contracts and fulfilled the teaching and Blackboard designing duties that were required in the contracts. Dean Tuthill has voided two of the contracts for extra-duty pay without consultation with me. The teaching duties that were described in the contracts have been fulfilled. In other words, he has broken two extra-duty contract that had been fulfilled prior to his voiding them.

He contends that he took away two units of pay, because I am not teaching Module C of both Bus Math and Bus English. Those were my teaching duties, not contract units. Then, too, I would not have lost those teaching duties if the he had not taken them away from me without just cause. But, because he took away those two classes, he contends that I lack two units fulfilling the twelve hours required per semester. We have been told several times that if we don't fulfill the hours in one semester, we can make them up in another as long as we fulfill the required teaching units as prescribed by the end of the contract. I could have easily made up the two hours in the spring or summer semesters, and not had the two contracts broken. Again, no meeting with me to discuss the situation, just blatant unethical procedure and a violation of two signed and fulfilled contracts.

## CONCLUSION

All the above are questions that need addressing, because it seems that it began with the arrival of Pat O'Rourk as Interim Dean and spilled on over to Dean Tuthill---all began in my absence while on summer break and has continued up to the present. Everything and all changes are being made without any departmental meetings or consultations.

EXHIBIT 25
PAGE 5 OF 6
100201

I have worked very hard to build the Business Management programs at Ilisagvik College and have been given the academic freedom to do so up until the beginning of the fall semester, 2003. I have been told repeatedly, "You are the head of the business programs. You are the Lead Instructor." I have hired and mentored adjunct instructors, and they have fully cooperated with my leadership—until now. I have made schedule after schedule to accommodate students, tutored, advised, counseled, previewed and ordered textbooks and teaching materials for both my classes and adjunct classes; visited and accommodated village students to keep them interested and active. I have written programs, prepared courses, and written lesson plans to accommodate the demands of the work force people, and to meet the needs of the students who are older and need review courses in the basics—because I have lived in this environment long enough that I understand the needs. It doesn't happen overnight, it takes years of time to understand the culture and the lifestyle of the students and the community, and one does not begin by using unethical tactics on the people in the community who have lived and worked here for several years.

I feel as if my classes are being taken away or rearranged without my knowledge or consultation in an unethical manner. Why? Why am I being demeaned as Lead Instructor of the Business Management programs after soon-to-be four years in this position? I feel I deserve an explanation.

The Business Management programs along with the Blackboard classes and other distant education facilities are one of the big factors in the college becoming accredited. Now, we need to maintain and continue to build, not degenerate. But, it soon will if this type of behavior continues to the citizens in the community. We need to work together as a team as we have done in the past to build the college and support the students and the community, and maintain the dignity that we have always had as a community college.

EXHIBIT 25
PAGE 4 OF 4

100202



**Ilisagvik College**
P.O. Box 749 • Barrow, Alaska 99723
☎ (907) 852-3333  Fax (907) 852-2729

**ILISAGVIK COLLEGE**

| **PERSONNEL ACTION FORM** | IMPLEMENTATION DATE  6 / 30 / 04 |
|---|---|

Name: **Bobbi Wade**     Employee I.D. _____

| **NEW ADDRESS** | Mailing Address | |
|---|---|---|
| | City, State, Zip | Social Security No. |
| | Telephone | Date of Birth |

| CHANGE | FROM | TO |
|---|---|---|
| JOB TITLE | Asst. Professor - Bus Mgmt | |
| ACCOUNT CODE | 10-001-1202 | |
| PAY RATE | | |

**EMPLOYMENT STATUS:**
____ REGULAR (Full-Time)
____ REGULAR (Part-Time)
____ TEMPORARY (Full-Time)
____ TEMPORARY (Part-Time)
____ WORK STUDY
____ ON-CALL
____ ROTATION
_X_ FACULTY (Select 1):
   _X_ Regular ____ Adjunct

**FLSA STATUS:**
_X_ EXEMPT (Salaried)
____ NON-EXEMPT (Hourly)

**REASON FOR CHANGE**

| | | |
|---|---|---|
| ____ HIRED | ____ MERIT (% increase: ____ ) | ____ REEVALUATION OF CURRENT JOB |
| ____ REHIRED | ____ EQUITY (% increase: ____ ) | ____ PROBATION PERIOD COMPLETED |
| ____ PROMOTION | ____ RESIGNATION | ____ RETURN FROM MEDICAL LEAVE (Requires attached Doctor's Release) |
| ____ DEMOTION | ____ RETIREMENT | |
| ____ TRANSFER | ____ LAYOFF | _X_ OTHER: Non renewal |
| | ____ TERMINATION | |

COMMENTS: _____
_____
_____

20059
Wade v. Ilisagvik College

Grants Administrator (If Grant Funded) / Financial Aid Advisor (If Work Study): _____ Date: _____
Department Director: _____ Date: 1-28-04
Human Resources Director: _____ Date: 1/28/04
Chief Financial Officer: _____ Date: 1/28/04
President: _____ Date: 1/28/04

**\* \* \* Do not inform the employee of any changes until all signatures have been obtained \* \* \***

Rev: 4/03
Boynton Printing

DISTRIBUTION:    White - Human Resources    Canary - Payroll    Pink - Department

EXHIBIT _26_
PAGE _1_ OF _1_



**ILISAGVIK**
C O L L E G E

January 30, 2004

Ms. Bobbi J. Wade
Assistant Professor of Business Management
Ilisagvik College
P. O. Box 749
Barrow, AK 99723

Dear Bobbi:

As you know, Ilisagvik College faculty contracts are issued for a period of only one year. The College "Employee Handbook" (page 49) states that "Faculty are not tenured and have no expectation of continued employment." According to the College Board of Trustees' Approved Policies (Section 7.05), "for faculty in their third and subsequent years of employment with the College, written notice of non-renewal of appointment shall be provided by February 1."

I write to inform you that Ilisagvik College will not offer you a contract for the Academic Year 2004-2005. Your contracted benefits now in force will cease on June 30, 2004, at the termination of the current contract. Until that time, your duties and responsibilities to the College remain as stipulated in your current contract.

The Human Resources Office will contact you regarding the delivery of your final paperwork, and will provide benefits information to you in advance of your last scheduled class date.

I appreciate your years of service to Ilisagvik College and wish you well in your future endeavors.

Sincerely,

John G. Tuthill
Dean of Instruction

EXHIBIT ___27___
PAGE _1_ OF _1_

P.O. Box 749   Barrow, Alaska 99723   907-852-3333   Fax 907-852-2729
*SERVING THE RESIDENTS OF THE NORTH SLOPE*

20353
Wade v. Ilisagvik College

*Issues Concerning Bobbi Wade*

1) Our accreditation standards require that "the institution employs professionally qualified faculty…." Bobbi's academic preparation is primarily in English and educational administration. She does not have a solid academic background in the academic business courses she teaches at our college.

2) Bobbi's teaching performance has been very disappointing this academic year. I have received numerous complaints from students who have found her unhelpful, and sometimes even insulting. The rate of student success in her Blackboard courses was especially low: only 10 of the 44 students enrolled in Bobbi's Blackboard courses received credit for their work last semester (a total of 23%). 25 of Bobbi's 44 Blackboard students (57%) received a grade of "W."

3) Bobbi has been resistant to changing her style of teaching on Blackboard. At the beginning of the semester, I gave her a series of specific directions for what she needed to do differently in order to support our students better. She is doing some of what I directed; most she is not.

4) Bobbi is resisting my efforts to administer those programs which she considers "hers." While complaining of her heavy teaching load, she has opposed my efforts to recruit new adjunct instructors to pick up some of the load. She is openly hostile to the adjunct instructor who is currently teaching BUS 109 (Business English), even to the point of advising students not to take this or any class under this instructor.

5) She is showing poor professional judgment in other ways, such as her recent petition to teach two independent study courses for her grand-daughter, who lives in Tennessee, and whom Bobbi claims as a dependent for College tuition-waiver purposes. (Over $2000 in Ilisagvik tuition has been waived for this student in the past two years.)

EXHIBIT  28

PAGE  /  OF  /

20049
Wade v. Ilisagvik College

Date:
Witness:

# Bobbi J. (Underwood) Wade

3705 Arctic Blvd., PMB 1155
Anchorage, Alaska 99503
Phone: 907-279-7280 • Cell: 615-631-1706 • Email: akbwade2@aol.com

## Synopsis of Past Performance

### Education and Certificates

Presently enrolled in a Ph.D. program in English and Educational Leadership
Master's degree in Educational Leadership + 55 Graduate Hrs. which includes:

1. Educational Administration
2. Finance & Budget
3. School Law
4. Reconstruction Theory
5. Human Relations in Education
6. Curriculum Theory

7. Qualified as an Educational Specialist for the Tennessee State
   Department of Education

### Achievements and Experience

*University of Alaska Anchorage*                    January 1998 - December 1999
*Anchorage, Alaska*

Annual contract as Professor of Technical Communications. Duties included:

*teaching?*
*2yrs.*

1. Ethical & legal Considerations
2. Multiculturalism & Collaboration
3. Electronic Communication Tools
4. Determining purpose & Strategy
5. Integrating Design, Graphics
6. Drafting Documents
7. Writing Formal Reports
8. Drafting Manuals

*Anchorage School District*                         September 1995 - 1996
*Anchorage, Alaska 99504*

Served as a Principal Intern in coordination with the Anchorage School District.
This work included coordinating, planning, budgeting, organizing, and
implementing State and Federal funding due to innovative programs. Programs
such as Restructuring, Curriculum Review and implementation, Site-Based
Management, Core Curriculum, Integrated Assessment System, and Curriculum
Initiative Cost Summaries, etc. All programs were developed to meet the needs
of students from diverse, socioeconomic, and cultural backgrounds. Other specific
duties were:

*Equiv. exp.*
*1yr.*

1. Administered a budget-control ledger for teacher/staff expenditures
2. Interviewed, assessed, & hired personnel
3. Coordinated & compiled ASD reports in student performance
4. Supervision of student & discipline reports
5. Organized & implemented staff meetings

EXHIBIT __29__
PAGE __1__ OF __5__

EXHIBIT
**3**

Jun 30 00 01:12p    Wade,    907 279 7180    p.4

Wade 2

6. Assessed criteria for meeting goals & objectives
7. Coordinated and compiled state & Federal accreditation standards
8. Other duties required by the administration of the ASD & UAA

*Elmendorf Air Force Base*                    May 1996 - August 1997        *part time*
*Anchorage, Alaska*

Annual contract to instruct and coordinate classes for adults and youth who were
military personnel, spouses, and family.  The classes were held at the
Development Skills Center on the Base for off-hours from work or school
for recreational purposes. The contract consisted of organizing, scheduling,
planning, budgeting, and implementation of classes.

*Anchorage Academy One*                       May 1997 - Present           *10 dus. exp.*
*Anchorage, Alaska*

Successfully completed a feasibility study for establishing a private
school in Anchorage, Alaska, based on supervision as a proactive process.
All criteria was met concerning local, State, and Federal regulations and
laws, which are required by the Alaska State Department of Education.
This work was done in coordination with the Alaska SBA, PTAC, and an
official of a local bank.  Funds were approved for this project guaranteed
by the Small Business Administration.

Organized and implemented a feasibility study for incorporating
educational services and training as part of the curriculum for
*Anchorage Academy One* by means of procurement of contracts, which
pertain to analysis, grants, contracts, development, technology,
coordination, administration, consultation, and educational training.
The project was successfully orientated into the business with the
coordination of the PTAC, which is an affiliate of the University of
Alaska Anchorage.

*Arctic Sivunmun Ilisagvik College*          September 1992 - May 1993     *part time ?*
*Barrow, Alaska*

Fulfilled an annual contract to instruct Office Management, and Records
and Database Management, which included Distance Education to other
remote sites within the North Slope Borough of Alaska. Duties included:

1. Distance Education by electronic and audio technology.        EXHIBIT ___29___
2. Classroom instruction in electronic database technology.      PAGE _2_ OF _5_

Wade 3

3. Evaluated and assessed student achievement.
4. Met university requirements in student placement.
5. Monitored and fulfilled the requirement for a Federal Grant
   funded for the North Slope Borough libraries.
6. Served as Assistant Librarian in absence of Librarian.

*Enterprise State Jr. College*                    More than 5 years
*Enterprise, Alabama*

part-time?

Contracted to teach Methods of Written Communications to the military
personnel and spouses at *Ft. Rucker Helicopter Training Center, Ft.
Rucker, Alabama.* These classes consisted of adult students who were on
active duty and pursuing higher educational goals.  Other duties were:

1. Coordinated student schedules to coincide with military duties.
2. Coordinated group and individual courses of study.
3. Evaluated and assessed students.
4. Recommended and approved student placement in ongoing
   programs of higher education.
5. Counseled and consulted with students in personal and school
   problems.

*Tennessee State University*                    More than 5 years
*Nashville, Tennessee*

Annual contract to instruct Developmental Studies, and Methods of
Written Communications. Duties consisted of:

1. Preparation of a Scope and Sequence program composed of
   course outline and projects to be completed for evaluation.
2. Lecturing and monitoring oral and written reports.
3. Scheduled conferences, and counseled students on school
   related problems.
4. Assessed and evaluated student progress to recommend
   placement for ongoing higher education.

*Jackson County School Board*                    More than 5 years
*Marianna, Florida*

Continuing contract as an English Instructor and Media Specialist. Some
of the duties consisted of:

1. Chairperson of the English Department.

EXHIBIT ____29____
PAGE __3__ OF __5__

20379
Wade v. Ilisagvik College

**Wade 4**

2. Senior sponsor and counselor.
3. Coordinated and wrote curriculum guides.
4. Coordinated, outlined, and planned a Scope and Sequence program on a county-wide basis.
5. Counseled seniors in educational and career development in obtaining scholarships, grants, etc. to institutions of higher learning.
6. Assessment and evaluation of student performance.
7. Instructor in the Adult Education program provided for adults to obtain a high school diploma.
8. Coordinated and implemented a summer recreation program in arts and crafts in coordination the Adult Education program on a county-wide bases.
9. Media Specialist.
10. Supervisor of Media Center which included administrative duties; budget-control ledger, etc.
11. Coordinated and supervised workshops for county-wide classroom teachers on the use of audio and video equipment in the in the classroom.
12. Supervised and scheduled a staff of twelve employees.

Also, served periodically on the Superintendent's staff on a collaborative basis in writing State Accreditation Standards, proposals for Federal Grants, and Curriculum Guides on a county-wide basis for the purpose of meeting goals and objectives to meet the requirements of the Florida State Department of Education.

*Agricultural Stabilization and Conservation Service, USDA*
*Marianna, Florida*                    More than 5 years

Served six years as an Agricultural Conservation Program specialist, who administers specified commodity and related land-use programs. These programs and projects included:

1. Disaster and Emergency Assistance
2. Conservation Reserve Programs
3. Commodity Credit Corporation
4. Rural Clean Water Program
5. Emergency Conservation Program
6. Water Bank Program
7. Soil Bank Program
8. Forestry Incentives Program and others

EXHIBIT 29
PAGE 4 OF 5

20380
Wade v. Ilisagvik College

Wade 5

Also, aided farmers and ranchers carry out programs in cooperation with other Federal and State agencies and organizations. Administered programs through a network of State and county offices. Administered programs prescribed by the Federal Emergency Management Agency as a result of a Presidential declaration of disaster or an emergency. Assessed and solved conservation problems, and completed projects in conservation and environmental protection practices through cost-sharing and exchange of technical expertise. Controlled and dispersed a multi-million dollar budget annually, which was audited annually by Federal officials.

## Personal Honors and Additional Information

1. Who's Who in American Colleges and Universities.
2. Dean's List, President's List
3. Kappa Delta Pi Honor Society
4. Graduated Magna Cum Laude
5. Computer Skills
6. Excellent Public Relations Skills

## References

Dr. Kate Sandberg, Chair
University of Alaska Anchorage
Anchorage, Alaska 99508
Phone: (907) 786-4368
E-mail: msandberg@aol.com

Frank Randazzo, Principal
Northwood Elementary School
Anchorage, Alaska 99503
Phone: (907) 248-0100
Email: Randazzo_Frank@
       msmail.asd.k12

Wilson Brodgen, Manager
U.S. Department of Agriculture
Marianna, Florida 32447-6166
Phone: ( 850) 526-2610

Bob Matheny, CCAS
University of Tennessee
Nashville, Tennessee 37219
Phone: (615) 532-8885
E-mail: matheny@utk.edu

Vanessa Langston
University of Tennessee
Nashville, Tennessee 37219
Phone: (615) 532-8657
E-mail: langston@utk.edu

Mike Taylor
PTAC
University of Alaska Anchorage
Anchorage, Alaska 99508
Phone: (907) 274-7232
E-mail: angmt1@uaa.alaska.edu

EXHIBIT 29
PAGE 5 OF 5