Linda J. Johnson
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, AK 99501-3454
(907) 272-9272
(907) 272-9586 fax
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

BOBBI WADE,

               Plaintiff,

v.

ILISAGVIK COLLEGE; NORTH SLOPE
BOROUGH; JOHN TUTHILL,
individually; and PAMELA TAYLOR,
individually,

               Defendants.      Case No. 3:05-cv-086-TMB

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON FMLA

Plaintiff Bobbi Wade moves for partial summary judgment to establish liability on her claim of violation of Family and Medical Leave Act (FMLA) rights, against defendants Ilisagvik College, John Tuthill and Pamela Taylor. Defendants violated Bobbi Wade's FMLA rights by:

- Failing to provide notice of FMLA rights;
- Repeatedly refusing to grant her medical leave requests;
- Requiring her to schedule her medical leave during December break and otherwise discouraging her from taking medical leave;

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 1 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

- Refusing to fully reinstate her to her former duties and all classes or a position that is "virtually equivalent" because she took medical leave;
- Refusing to renew her contract based even in part on her having taken FMLA leave or filed a grievance; and
- Retaliating against her because she opposed unlawful practices.

There are at least three Ninth Circuit cases directly on point in this case, including: *Bachelder v America West Airlines, Inc.,* 259 F.3d 1112, 1130 (9th Cir. 2001); *Xin Liu v Amway Corp.,* 347 F.3d 1125, 1135 (9th Cir. 2003); and *Bailey v. Southwest Gas Co.,* 275 F.3d 1181 (9th Cir. 2002).

There are no genuine issues of material fact to prevent a determination of liability as a matter of law that Defendants violated Plaintiff's FMLA rights. Summary judgment should be granted.

## I. STANDARD FOR A RULING OF LAW

Summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The only genuine factual issues that can stand in the way of summary judgment are those that "may *reasonably* be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (emphasis added). *See Acosta v. City and County of San Francisco,* 83 F.3d 1143, 1145 (9th Cir. 1996) ("Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion."), disagreed with by 352 F.Supp.2d 1028, 1034 on other grounds. A party may not rely on some remote or theoretical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v.*

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 2 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial," *Id.*, and summary judgment is required.

Under the summary judgment standard, the court should enter summary judgment on liability for Ms. Wade.

## II. MS. WADE WAS ENTITLED TO FMLA PROTECTION.

The Family and Medical Leave Act (FMLA) entitles an eligible[1] employee to take reasonable leave for medical purposes. 29 U.S.C. §2601(b)(2). The FMLA ensures job security for employees who must be absent from work because of their own illness or to care for sick family members. 29 U.S.C. §2612. The dual purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. §2601(b)(1), (2). The FMLA was enacted to respond to the "'serious problem with the discretionary nature of family leave'" that occurs "when 'the authority to grant leave and to arrange the length of that leave rests with individual supervisors.'" *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 732 (2003) quoting HR Rep. 103-8, pt. 2, pp. 10-11 (1993). The FMLA prevents an individual from having to choose between her livelihood and treatment for her serious health condition. *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002) citing *Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 676 (8th Cir. 2000).

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 3 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave. 29 U.S.C. §§2612(a), 2614(a). Implementing this objective, Congress made it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. §2615(a)(1). Employers cannot use the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. §825.220(c). An employer may not retaliate against an employee for exercising her rights under the FMLA. 29 U.S.C. §2615(a)(2).

## III. THERE IS NO DISPUTE OF MATERIAL FACT, AND LIABILITY SHOULD BE DETERMINED AS A MATTER OF LAW.

### A. As A Matter of Law, Ms. Wade Had A Serious Health Condition.

### 1. The Standard To Prove A Serious Health Condition.

The FMLA allows an eligible employee to take up to 12 weeks for a "serious health condition that makes the employee unable to perform the functions of the position". 29 U.S.C. §2612 (a)(1)(D). The definition of "unable to perform the functions of the position" is:

> An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment.

29 C.F.R. §825.115.

1 There is no factual dispute that Ms. Wade is eligible for FMLA leave according to 29 U.S.C. §2611.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 4 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

A serious health condition may exist when two or more medical conditions occur at the same time. See e.g. *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir. 1997), holding that the specific reasons that a person needs health care treatment may be combined.

The law defines serious health condition as an "illness, injury, impairment, or physical or mental condition" that involves inpatient care or continuing treatment by a health care provider.    29 U.S.C. §2611(11).  Bobbi Wade qualifies under this definition based on her continuing medical treatment from a health care provider.

Regulations further refine the FMLA definition, requiring proof of incapacity. Ms. Wade's medical issues made her unable to work for "more than three consecutive calendar days." 29 C.F.R. §825.114(a).  The employee must show:

> (i) A period of incapacity (i.e., inability to work attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider

29 C.F.R. § 825.114(a)(2).    In short, the regulations require that the employee prove that she can't perform her job functions for more than three consecutive days and that she received medical treatment two or more times.  For FMLA purposes, "treatment includes <u>examination</u> to determine if a serious health condition exists and <u>evaluation</u> of the condition." 29 C.F.R. 825.114(b), emphasis added.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
<u>Wade v. Ilisaqvik</u>, Case No. 3:05-cv-086-TMB
Page 5 of 50

After the initial three-day period of incapacity, the employee does not have to show that she could not perform any work at all, but only that she could not perform her job functions, and she continued to receive treatment for her illness.

**2. Facts Specific To Ms. Wade's Serious Health Condition.**

Bobbi Wade was an associate professor of Business Management at Ilisagvik College, in Barrow, from September 2000 until June 2004, constituting 4 school years.

During the fall of 2003, she presented three doctor's notes stating that she needed medical care.   August 2003 Ms. Wade consulted Doctor Church in Tennessee, who wrote a note dated August 7, 2003 stating that:

> . . . I have requested that she return <u>as soon as possible</u> for further <u>medical workup</u> with possible <u>surgical treatment</u>.

Ex. 1, Dr. Church note dated Thursday, Aug. 7, 2003, emphasis added.   The specific reasons Dr. Church wanted Ms. Wade to return for testing related to her high blood pressure, her stomach problems, and a problem with her left foot. Ex. 2, Wade deposition at 119 and 143.   Ms. Wade therefore had three separate medical problems at the same time that combined to require medical treatment. However, Ms. Wade's employment contract required that she return to Barrow and be prepared to work a week and a half later on Monday, August 18, 2007. Ex. 3. Therefore, despite her medical issues, Ms. Wade returned to Alaska to begin her teaching duties.   Ms. Wade registered her students, scheduled her classes,

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 6 of 50

designed her courses and "got everything in order" before asking for time off for her own medical leave. Ex. 2, Wade Depo. at 162.

After she had her classes in order Fall 2003, Ms. Wade asked for leave, as memorialized in a document dated October 2, 2003. Ex. 4. She requested time off using a form provided by the College. *Id.* Her supervisor, John Tuthill, acknowledged Ms. Wade's request for time off was medically related in an e-mail addressed to her on October 3, 2003. Ex. 5. The e-mail denied Ms. Wade's leave despite the August 7, 2003 doctor's note unless and until she obtained a medical opinion that Ms. Wade "require[d] immediate medical treatment". *Id.*

Although she disagreed with the requirement for another medical opinion, Ms. Wade consulted the medical clinic in Barrow on October 6, 2003 regarding her need for medical leave. At that time she complained of a patch of skin on her shoulder. Ex. 6. Dr. Snyder wrote a note dated October 6, 2003:

> Bobbi Wade was seen at this hospital today for outpatient treatment. I agree and recommend that she see a specialist for multiple medical problems.

Ex. 7, emphasis added. Ms. Wade needed the care of a specialist for the multiple medical problems identified by Dr. Church. *Id.* Pam Taylor, the College's Human Resources Director, knew that referral to a medical specialist meant leaving Barrow for medical treatment.

> Q: Do you have local specialists?
> A: No, not at all. Everything has to go off slope.

Ex. 8, Taylor Deposition, at 111.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 7 of 50

Defendants Tuthill and Taylor consulted with their attorney who told them they were entitled to obtain a medical certification.  Ex. 9, McKay Deposition at 18. But, after receiving the two doctor's notes, John Tuthill still insisted that Ms. Wade provide more medical information, asking via an e-mail dated October 9, 2003 for "written notification from a licensed physician … to the effect that your medical treatment cannot wait until the December break …"  Ex. 10.  His e-mail states he will not begin to "process the request for medical leave" until he gets another doctor's note.  *Id.*

By that e-mail, John Tuthill again denied the request for medical leave and this time discouraged Ms. Wade from taking leave.  Tuthill did not ask for "medical certification" as his attorney told him to.  At this point, Ms. Wade was forced to choose between her job and her personal health needs.  She chose her job.  Ex. 10.

October 24, 2003, Ms. Wade again went to see a doctor at the Barrow medical clinic, this time for medical attention for a "spot on her shoulder".  Ex.2, Wade deposition at 227-228.  The diagnosis came back as malignant.  *Id.*  Dr. Snyder wrote another note dated November 5, 2003 that stated Ms. Wade required follow up treatment for a medical condition that "cannot be addressed here" and that the medical attention needed to "occur in a somewhat urgent time frame".  Ex. 11.

Dr. Snyder told Ms. Wade that she needed a follow-up visit with a dermatologist.  Dr. Snyder agreed that the visit "was going to have to happen

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 8 of 50

outside of Barrow too" because "we could not say that the borders were or the margins were clear." Ex. 12, Snyder Deposition at 65-66. Dr. Snyder did not know of any dermatologist in Anchorage and therefore was unable to give Ms. Wade a referral. *Id.* at 53-54. Dr. Snyder thought it was reasonable for a patient to return to a familiar area for medical treatment if she was unable to receive a referral. *Id.* at 76.

In response to her diagnosis of cancer, Bobbi Wade again requested leave, which was approved on November 6, 2003. Ex. 13. Tuthill believed that the note provided the information he had requested "all along". Ex. 14, Tuthill Depo at 221. The leave dates requested were November 12 through November 26, 2003. Ms. Wade was to return to work after Thanksgiving, on Monday December 1, 2003.

Because Dr. Snyder did not know any doctor in Anchorage to refer Ms. Wade to, Ms. Wade traveled to Tennessee and consulted with her general practice physician, Dr. Church, on November 12, 2003. Ex. 15. She then consulted with Dr. Delozier on November 18, 2003, and saw him again for a surgical procedure for the follow up for her skin cancer on November 19, 2003. Ex. 16, Delozier Deposition at 7-8. Dr. Delozier released Ms. Wade back to work as of November 26, 2003. *Id.* at 18.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 9 of 50

### 3. Ms. Wade Established A Serious Health Condition.

Ms. Wade has established that she had a serious health condition as of August 7, 2003 when Dr. Church asked her to return for a combination of multiple medical issues, including testing and possible surgery. Ms. Wade received on-going medical treatment, starting in August 2003 when Ms. Wade consulted with her Tennessee doctor, Dr. Church. The doctor visit in August was the first of many on-going medical visits.

### a. Ms. Wade was treated two or more times.

October 6, 2003, the Barrow clinic visit affirmed Ms. Wade's need to see a medical specialist relating to the original medical issues that Dr. Church saw her for and for the complaint of the patch on her shoulder. The clinic stated that Ms. Wade needed to see a specialist, which could only occur "off slope", or outside the borders of the North Slope Borough. That October 6, 2003 visit was the second examination in which a doctor expressed a need for medical treatment.

Ms. Wade was seen again in the Barrow clinic for her cancerous patch on October 24, 2003. When the Barrow clinic immediately referred Ms. Wade off-slope for follow up treatment for her cancer diagnosis, Ms. Wade had already seen a doctor three times. The three doctor notes individually, and together, create a sufficient medical opinion that Ms. Wade needed medical treatment outside of Barrow. Ms. Wade's medical condition required her to travel "off slope" for treatment. The need to travel required her to be away from her classes. Therefore

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 10 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ms. Wade was unable to work for more than three consecutive calendar days. 29 C.F.R. §825.114(a)(2)

In Tennessee in November 2003, Ms. Wade consulted her general practice doctor, Dr. Church, and her specialist, Dr. Delozier, on at least three separate occasions for the cancer follow up. This pattern of on-going medical treatment was certainly sufficient to establish that Ms. Wade received continuing medical treatment "two or more times by a health care provider". See 29 C.F.R. §825.114(a)(2)(i)(A), (B).

### b. Ms. Wade was unable to perform the functions of her job for three or more days because she was required to travel off slope.

The FMLA requirement that an employee be unable to perform the functions of her job were fulfilled when Ms. Wade was required to leave the North Slope where her job located in order to obtain medical treatment. 29 CFR §825.115 provides that: "An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment."

No matter where Ms. Wade traveled to get treatment, she was unable to perform her job functions, because she was unable to remain in the location where her job was located. As a matter of law, travel off the North Slope at the direction of a doctor constitutes incapacity. As shown above, the travel to Tennessee to obtain medical treatment forced Ms. Wade to be away from her job and thus she fulfilled the incapacity requirement.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 11 of 50

Because Ms. Wade needed to consult with specialists away from the North Slope, she was unable to work or perform other regular daily activities for more than three consecutive calendar days.   The regulations state: "Treatment for purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. . . ." 29 C.F.R. §825.114(b).  Ms. Wade was required to leave the city in which she was employed to see a specialist.  She did not have the option of remaining near her employment, as even Ms. Taylor acknowledges.  Ex. 8, Taylor Depo, at 111.  As a matter of law, Ms. Wade has established that she had a serious health condition.

**4.  Because Defendants Failed To Notify Ms. Wade of Her Rights, They Waived the Right to Challenge that She Had A Serious Health Condition.**

By approving leave without advising Ms. Wade of her FMLA rights and what might happen if she did not present the proper certification, Defendants waived the right to challenge whether Ms. Wade had a serious health condition.  An employer may not assert incompleteness of a medical certification as grounds for disciplining an employee where the employer never notified the employee of the problem or gave her an opportunity to cure it.[2]

---

[2] It is simple for an employer to provide the employee with the DOL "Certification of Health Care Provider" found at **http://www.dol.gov/esa/regs/compliance.** Ms. Taylor stated that she was familiar with the DOL form, but did not provide it to Ms. Wade. Ex. 8, Taylor Deposition at 156. If the Defendants had provided the form, Ms. Wade would have known to obtain the information.  Ms. Wade should not be penalized for Defendants' failure to use the approved form.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 12 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Pursuant to 29 C.F.R. §825.305(d), if Defendants found Ms. Wade's medical certification incomplete, they had a duty to advise her of that fact and to provide her a reasonable opportunity to cure any such deficiency in the certification. Instead, Defendants allowed Ms. Wade to take leave in November 2003 without telling her they disagreed with her medical certification. *Sorrell v. Rinker Materials Corp*, 395 F.3d 332 (6th Cir. 2005) (""under the right circumstances, an employer may be equitably estopped from challenging an employee's entitlement to such leave."); *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880 (7th Cir. 2005), *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (Under the FMLA, "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave."). *Miller v. AT & T Corp.*, 250 F.3d 820, 836 (4th Cir. 2001); *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, 359 (5th Cir. 2006) ("Accordingly, an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment") *Sims v. Alameda-Contra Costa Transit District*, 2 F.Supp.2d 1253 (N.D.Cal. 1998) (holding that although the employee's medical certification was incomplete because it failed to certify that his serious health

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 13 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

condition lasted the full duration of his absence from work, the employer waived its right to argue that the employee did not suffer from a serious health condition by failing to notify the employee of the problem or to afford him the opportunity to cure it).

The facts are undisputed: Defendants agree that they did not give Ms. Wade notice of her FMLA rights. See below. Defendants agree also that they allowed Ms. Wade to take medical leave in November 2003 without further medical documentation. Finally, Tuthill agreed that the medical note provided the information he had requested "all along". Ex. 14, Tuthill Depo at 221.

Defendants should not now be allowed to argue that Ms. Wade did provide adequate documentation of a medical condition that would qualify under the FMLA. Defendants deprived Ms. Wade of the opportunity to correct any defects in her leave documentation. When Ms. Wade turned in her third and final doctor's note, the College approved Ms. Wade's leave without requiring further documentation of her serious health condition and did not tell Ms. Wade her FMLA rights. Defendants should be estopped from now asserting that she did not have a serious health condition.

**B.    Ms. Wade Gave Proper Notice Of A Need For Medical Leave.**

**1. The Standard To Prove Notice.**

In order to obtain leave under the FMLA, a qualified employee must first give an employer notice of her intent to take leave. 29 U.S.C. §§2612, 2629, 29 C.F.R. §825.303. The notice, however, does not need to be in any particular format, nor

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 14 of 50

particularly detailed.  The notice only has to notify an employer of circumstances

<u>suggesting</u> that the FMLA might apply.  *Bachelder v America West Airlines, Inc.,*

259 F.3d 1112, 1130 (9th Cir. 2001).  The employee does not need to mention the

FMLA by name.  29 C.F.R. §825.303.  It is the employer's responsibility, not the

employee's, to determine whether a leave request is likely to be covered by the

Act.  *Bachelder*, at 1130; *Baily v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th

Cir. 2002); *Price v. City of Fort Wayne*, 117 F.3d 1022, 1025 (7th Cir. 1997) (a

request for leave for medical reasons, accompanied by a doctor's note requiring

her to take the time off, was sufficient notice to an employer). "[T]o invoke the

protection of the FMLA, an employee must provide notice and a qualifying reason

for requesting the leave." *Brohm v. JH Properties., Inc.,* 149 F.3d 517, 523 (6th Cir.

1998).  The College, Taylor and Tuthill, all refused to grant Bobbi Wade's leave

requests, even though she was entitled to the leave.

Bobbi Wade provided notice of her need with a doctor's note, just as in

*Bachelder*, where the employee provided two doctor's notes to her employer,

America West, regarding her absences in February 1996. The Ninth Circuit in that

case found that the company was placed on notice that the leave might be covered

by the FMLA, and *could have inquired further* to determine whether the absences

were likely to qualify for FMLA protection. *Id.* at 1131.

If the College did not have enough information to determine that Bobbi

Wade had a "serious health condition" it was required to inquire into the reasons

underlying the request.  Both Ms. Taylor and Mr. Tuthill stated that they did not

Memorandum In Support of Plaintiff's MPSJ On FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 15 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

want to know the nature of Ms. Wade's ailments, but they did not know if she had a serious health condition, so they would not give her time off. Again, this crated a Catch 22 for Ms. Wade. Defendants failed to inquire in order to obtain sufficient information. The willful refusal to inquire and refusal to inform her of her rights harmed Ms. Wade by preventing her from correcting any alleged gaps in her medical documents.

Ms. Wade provided proper notice. If her documentation was not sufficient, Defendants should have inquired. Their refusal to do so was a violation of the FMLA and should not weigh against Ms. Wade.

### 2. Defendants Were On Notice Three Separate Times Of Circumstances Suggesting The FMLA Might Apply.

Ms. Wade gave notice three separate times that her leave requests were sufficiently medically related to place the Defendants on notice that the FMLA might apply.

First, as established above, Dr. Church wrote a note in August 2003 expecting that Ms. Wade would be given leave to return to Tennessee "as soon as possible" for further medical workup and possible surgery. After the fall 2003 term began, Ms. Wade asked her supervisor, John Tuthill, for medical leave, as memorialized in a document dated October 2, 2003. Ex. 4. She requested time off from October 20-31, 2003. John Tuthill acknowledged Ms. Wade's request for time off was medically related in an e-mail addressed to her on October 3, 2003 which stated:

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 16 of 50

> Here's my understanding of where we stand <u>after all our conversations</u> <u>this week</u>. . . . My understanding further is that you will consult with your physicians here an in Tennessee to determine <u>if they feel that you</u> <u>require immediate medical treatment</u>, and that, depending on what they say, you may prepare a medical leave request so that you can receive any required treatment during the semester.

Ex. 5, emphasis added. Tuthill's acknowledgement of Ms. Wade's request for medical leave is by itself sufficient to establish that Defendant's had notice of a medical issue that suggested that the FMLA might apply. In fact, Defendants did know that the FMLA might apply to Ms. Wade's request, as demonstrated by the fact that they consulted their attorney regarding the application of the FMLA in early October 2003. Ex. 9, McKay Depo. at 15. ("Were you ever consulted about a request for leave for medical reasons for Bobbi Wade?" "A Yes." "Q And when were you first consulted?" "A It was in the first week of October, 2003.")

Nevertheless, Ms. Wade was denied medical leave despite Dr. Church's note. Therefore, at the request of Defendants, Ms. Wade went to the Barrow clinic and obtained a second note, dated October 6, 2003, which agreed with Dr. Church's diagnosis and recommended that Ms. Wade see a "specialist" for "multiple medical problems". Ex. 7. Defendants acknowledged receiving the second medical note along with the first on October 9, 2003 in an e-mail from Pam Taylor to John Tuthill. Ex. 17.

Despite having seen both the August 7, 2003 and October 6, 2003 doctor's notes, John Tuthill still wrote to Ms. Wade and told her that:

> If you are planning to take the medical leave later this month, I need written notification from a licensed physician, preferably by fax and as

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 17 of 50

soon as possible to the effect that <u>your medical treatment cannot wait until the December break, when you could have the treatment without conflict with your regular teaching duties</u>. As soon as I have received such a notification, I can begin to process the request for medical leave.

Ex. 5, emphasis added. The combination of the two notes was also sufficient notice of a need for medical leave that might be FMLA qualifying.

The third notice of need for medical leave came after Ms. Wade was diagnosed with skin cancer and needed follow up medical care that could not be addressed in Barrow.   See November 5, 2003 doctor's note at Ex. 11 and corresponding leave request on a form provided by the College at Ex. 13.   The November 2003 request was finally granted.   Defendants unquestionably had notice after the skin cancer diagnosis that the leave request was potentially FMLA qualifying.

As a matter of law, Ms. Wade's first notice of her need to take medical leave was sufficient to place Defendants on notice that her request was potentially FMLA qualifying.  According to *Bachelder v America West Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001), Ms. Wade's leave request, coupled with her doctor's notes placed her employer on notice because she told them of circumstances <u>suggesting</u> that the FMLA might apply, which is all that is required.  John Tuthill's October 3, 2003 e-mail confirms that he had notice of a medical leave request.  Likewise, the call the Defendants' attorney seeking advice on the application of the FMLA establishes as a matter of law that Defendants were on notice that the leave request by Ms. Wade was potentially FMLA qualifying.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 18 of 50

Bobbi Wade asked for medical leave in order to address her multiple medical problems. She was not required to tell her employer that she had a "serious health condition" in order to obtain medical leave. An employee need not expressly mention the FMLA by name when requesting leave, but rather must give the employer "enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1) ] has occurred." *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 724 (6th Cir. 2003). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition. *Price v. Fort Wayne*, 117 F.3d 1022 (7th Cir. 1996). The employee in *Price*, prior to actually taking leave, completed a City-provided leave request form identifying the cause of her leave as a "medical need" and attached a doctor's note excusing her from work for a three week period. *Id.* at 1025. The Seventh Circuit found this information sufficient to put the City on notice that this was a possible FMLA leave situation. *Id.*

Ms. Wade's two written leave requests were submitted on forms the college provided and each was accompanied by a doctor's note. Ms. Wade's documents were certainly sufficient to alert Defendants that the FMLA might apply. As a matter of law, Ms. Wade provided the College with proper notice of the need to take medical leave.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 19 of 50

**C.   Defendant's Refusal To Grant Medical Time Off In October 2003 Was An Interference With Ms. Wade's FMLA Rights.**

To establish an interference claim under the FMLA, Ms. Wade must show that: (1) she attempted to exercise her rights under the Act; (2) her employer subsequently engaged in activity that tends to chill the exercise of her rights; and (3) her employer's activity was motivated by the exercise of her rights.  *See Bachelder,* 259 F.3d at 1124-26.

Defendants should have granted Ms. Wade's request for leave in October 2003.  Defendants insistence that Ms. Wade verify that her leave could not wait until the "December break" constituted unlawful interference with Ms. Wade's right to FMLA leave as a matter of law.  See Ex. 5.

29 U.S.C. § 2615(a) (1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of" any right provided by the FMLA. 29 C.F.R. §825.220(b) states that interference includes "discouraging an employee" from taking FMLA leave. See also *Stabbers v. Lowe's Home Centers, Inc.,* 320 F.Supp.2d 311, 330 (N.D.Cal. 2004).

An employee may bring a claim of FMLA interference "for actions that could 'chill' [the] desire to take FMLA leave."  *Sherrod v. Philadelphia Gas Works*, 57 Fed.Appx. 68, 73 n. 6 (3d Cir. 2003).  In *Shtab v. Greate Bay Hotel & Casino, Inc.,* 173 F.Supp.2d 255 (D.N.J. 2001), the plaintiff's employer asked the plaintiff to delay his FMLA leave until after the holiday weekend.  The court concluded that

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 20 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

"reasonable persons could conclude that [defendant's] request [that plaintiff delay his FMLA leave] 'chilled' Shtab's assertion of his rights under the FMLA."

In *Williams v. Shenango, Inc.,* 986 F.Supp. 309, 313 (W.D.Pa. 1997), the defendant denied plaintiff's request for one week of FMLA leave, but presented plaintiff with the option of taking FMLA leave on a different week.   The court concluded that defendant interfered with plaintiff's FMLA rights by suggesting that plaintiff take leave on a different week.   See also *Butler v. IntraCare Hospital North, et al.,* 2006 WL 2868942 *4 (S.D.Tex. Oct. 4, 2006) (genuine issue of material fact whether defendant discouraged plaintiff from taking FMLA leave by suggesting that plaintiff work from home rather than take FMLA leave*). Grosso v. Federal Exp. Corp.,* 467 F.Supp.2d 449, 465 (E.D.Pa. 2006) ("Specifically, the record presents a genuine issue whether defendant discouraged plaintiff from taking FMLA leave by encouraging plaintiff to pursue other options, such as placing plaintiff's father in a nursing home or obtaining in-home nursing care.")

**1. It Was A Violation To Force Ms. Wade To Prove Her Leave Could Not Wait Until December.**

Defendants violated Bobbi Wade's rights to FMLA leave when they denied her leave requests and demanded she schedule her leave at a time that did not "unduly interfere" with the College's business.     *Blohm v Dillard's, Inc.,* 95 F.Supp.2d 473, 478-9 (E.D.N.C. 2000), cited with approval in *Xin Liu v Amway Corp.,* 347 F.3d 1125, 1135 (9th Cir. 2003).   "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 21 of 50

leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA."   29 C.F.R. § 825.220(b).

Defendants' insistence (not merely a suggestion) that Ms. Wade provide proof that her leave could not wait until the December break was not only chilling, but constituted interference as a matter of law.   The violation is beyond the examples in any action wherein courts have found interference, and indeed it was egregious.

And in fact, Defendants' actions had the very effect that the law was intended to prevent: after Ms. Wade presented two doctors' notes that indicated that she needed medical leave but Defendants still insisted upon further documentation to prove she could not wait until December for her medical attention, Ms. Wade was forced to choose between her job and her medical needs. She chose her job.  See Ex. 10.

FMLA rights are to be exercised when an employee needs medical care, not when a supervisor determines that leave is "convenient".  The FMLA was enacted to respond to the " 'serious problem with the discretionary nature of family leave' " that occurs "when 'the authority to grant leave and to arrange the length of that leave rests with individual supervisors.'"  *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003).  The FMLA prevents an individual from having to choose between her livelihood and treatment for her serious health condition.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 22 of 50

1   *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002) citing

2   *Caldwell v. Holland of Texas, Inc.*, 208 F.3d 671, 676 (8th Cir. 2000).

3       *Liu v. Amway Corporation*, 347 F.3d 1125, 1135 (9th Cir. 2003) is a

4   controlling decision.  The Ninth Circuit reversed the summary judgment awarded to

5   the employer by the trial court.  The facts of that case are relevant.  Ms. Liu took

6   maternity leave for the birth of her child.  Her supervisor phoned her while she was

7   on leave and demanded a date she could return to work.  Eventually he transferred

8   Liu from pregnancy leave status to a personal leave of absence.  Her supervisor

9   denied her an extension of time on her return.  When layoffs in Liu's department

10  were imminent, Liu's supervisor called her in from leave for a performance

11  evaluation.  She received an overall score 19% less favorable than her score 6

12  months earlier.  Liu was then laid off.

13      John Tuthill refused to authorize FMLA leave to Ms. Wade and discouraged

14  her from using such leave by requiring yet another medical note and by requiring

15  her to schedule her leave for the "December break" 70 days later, so that her leave

16  would not conflict with her classes.  Each of Defendants' actions is prohibited by

17  the FMLA.  29 C.F.R. §825.220.  *Liu* held that "it follows that an employer had

18  discouraged an employee from taking FMLA leave when his or her supervisor

19  interferes with the length and dates of leave, including denying leave out right." *Id.*

20  at 1134.  The Ninth Circuit found "a clear interference" with the employee's right to

21  take FMLA leave based on the supervisor's testimony that he believed that he had

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 23 of 50

discretion on the matter of the leave and so refused to grant her extensions repeatedly, and he pressured the employee to reduce her leave time. *Liu*, at 1134.

Just as in *Liu*, Ms. Wade's supervisor continually pressured Ms. Wade to wait to seek medical treatment until the December break.    John Tuthill clearly believed that he had the right to require Ms. Wade to do so.

## 2. Mischaracterization of Leave As Personal Was A Violation.

The mischaracterization of Ms. Wade's FMLA leave as personal rather than FMLA qualifies as "interference" with her leave. *Liu*, 347 F.3d at 1135.  Defendants failed in their responsibility to assess Ms. Wade's entitlement to FMLA leave and therefore denied her a substantive right under FMLA.  *Id.*  An employer's refusal to authorize an employee's FMLA leave constitutes unlawful interference with the exercise of her FMLA rights.    Ultimately the failure to properly designate Ms. Wade's leave as FMLA contributed to the employer's failure to properly reinstate her.  This was a violation of her FMLA rights.  29 C.F.R. § 825.220(b).

The assessment that Ms. Wade's leave requests were "personal" subjected Ms. Wade to "the control and discretion of her supervisor in taking leave she had a statutory right to take."  *Liu*, 347 F.3d at 1135.  Had Ms. Wade's leave requests been appropriately characterized as FMLA, her supervisor, John Tuthill, would not have had the discretion to deny her leave.  *Id.*  Ms. Wade's contract authorized 12 days of personal leave, but required that the leave be scheduled so that it did not "unduly interfere" with the College's business.  Ex. 3 at 4.  Defendants applied the contractual leave requirements, not the FMLA requirements when they asked Ms.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 24 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Wade to prove her leave was necessary.  Defendant Tuthill believed that he had the right to protect the College by preventing leave that he deemed "unduly interfering" with the College's classes.  Defendants did not ever apply the FMLA standards for leave when assessing her medical leave request.  Instead, Defendants violated her rights by applying her personal leave standard in her contract.

Ms. Wade made another leave request via an e-mail dated October 20, 2003.  Ex. 18.  Tuthill again denied the request based on the personal leave standard in the contract, stating "to my mind" the leave would "unduly interfere" with the College's program of instruction.  *Id.*

John Tuthill acknowledges that he "rejected a total of at least three personal leave requests from Bobbi Wade during the course of the semester."  Ex. 19, December 12, 2003 at 5.  He said for each denial he relied on the standard in her contract.  *Id.*  Tuthill lumps all the leave requests together generally as personal leave, despite his knowledge that Ms. Wade asked for medical leave and despite his call to the College attorney inquiring about FMLA leave requirements.  The College designated the leave personal, but not FMLA.  Ex. 13.

John Tuthill confirmed he approved the November medical leave request because Bobbi Wade "presented me with the required medical documentation … that I had been asking Bobbi to provide for the [past] previous month".  Ex.  19, December 12, 2003 response at 6.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 25 of 50