Any of the leave requests was sufficient to establish that Ms. Wade's leave should have been designated as FMLA.  As a matter of law the characterization as personal leave harmed Ms. Wade.   It was a violation and summary judgment should be granted.

### 3. Ms. Wade Did Work With the Defendants To Schedule Leave.

Ms. Wade worked with Defendants to find a time that suited them and her students needs.   Regardless, Defendants insisted that the only convenient time was 70 days hence, during Christmas break.

When the leave is foreseeable, the federal statutes require that Ms. Wade make a "reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider . . ." 29 U.S.C. §2612(e)(A).  The statute only allows the employer to delay FMLA leave for 30 days if sufficient notice is not provided, but only if the need for leave is foreseeable. 29 U.S.C. §2612(e)(2)(B), and 29 C.F.R. §825.304(a).  Notably, the regulation does NOT say that an employer may delay the leave interminably or deny the leave.

Ms. Wade tried several times to work with Defendants to suit their operational needs.  At first, she scheduled her leave and re-scheduled her classes. Ex. 20.   When Defendants refused to allow her to reschedule her classes, she attempted to re-schedule her leave.  Ex. 21, e-mail to Taylor and Ex. 18, e-mail to Tuthill.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 26 of 50

Ms. Wade's attempts were all "reasonable" attempts, assuming that her leave was foreseeable. Defendants shot down each and every attempt, making no positive statements about when in the next 30 days she could take leave.

## D.    DEFENDANTS WERE REQUIRED TO PROVIDE NOTICE OF FMLA RIGHTS IN WRITING

It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the FMLA. *Bachelder* at 1130. Once the employee gives enough notice to an employer for the employer to be aware that the requested absence may qualify for FMLA protection, it is incumbent upon the employer to "inquire further". 29 C.F.R. §825.302(c). It is incumbent upon the employer to properly identify the employee's FMLA leave. *Xin Liu*, 347 F.3d at 1134.

In the effort to determine whether the leave is FMLA qualifying, an employer must notify the employee in writing of his/her rights detailing the "specific expectations and obligations of the employee and explaining any consequence of a failure to meeting these obligations." 29 C.F.R. §825.301(b).[3] The FMLA's implementing regulations require that an employer provide notice "within a reasonable time after notice of the need for leave is given by the employee-within one or two business days if feasible," *id.* § 825.301(c). If the employer fails to provide adequate and timely notice, it "may not take action against an employee for

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

---

3 The written notice is in addition to any posted notice or notice in an employee handbook, indicated by the word "also" in 29 C.F.R. §825.301(b).

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 27 of 50

failure to comply with any provision required to be set forth in the notice." *Id.* §825.301(f).

The College violated Bobbi Wade's rights when it failed to provide her with a written request for medical certification. It violated her rights again when it failed to notify her in writing of the consequences of failing to provide proper certification.

Because Defendants failed to provide the proper notice of rights, Defendants were precluded from taking any action against Ms. Wade and should have granted her leave request based upon the documentation she provided. The College violated Bobbi Wade's rights when it actually denied Bobbi Wade's request because she did not provide the "proper" certification even though it had not given her the required written notices. 29 C.F.R. §825.301(1).

"It is the employer's responsibility to determine when the FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu v. Amway Corporation*, 347 F.3d 1125 1134 (9th Cir. 2003), citing *Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002).

Compounding the notice problem was Ms. Taylor's refusal to help an employee as required by the FMLA. Taylor stated that she "rarely" saw FMLA cases. Ms. Taylor's common practice was not to engage an employee in conversation about their health condition. Ex. 8, Taylor Depo. at 64. Taylor did not just hand out notification unless an employee said that the "right words". *Id.* at 156. Contrary to the FMLA, Taylor expected the employee to state that they had a

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 28 of 50

"serious health condition" in order for her to provide a notice of rights. *Id.* Taylor thereby set up a scenario wherein no employee could obtain FMLA leave. Taylor stated that she rarely encountered a serious health condition situation. *Id.* at 258. It is no wonder, since no employee could guess what words were necessary in order to obtain FMLA leave.

It is undisputed that defendants did not ever tell Ms. Wade her FMLA rights, did not tell her that her leave might qualify for FMLA protection, nor did they tell her what might happen if she failed to provide them with the proper medical certification. Pam Taylor stated that she never provided notice of FMLA rights. As a matter of law, Defendants violated Ms. Wade's rights.

**E.    FAILURE TO PROPERLY REINSTATE MS. WADE WAS A VIOLATION.**

Bobbi Wade was not properly reinstated to her position when she returned from FMLA protected leave.

Ms. Wade was scheduled to teach Business English Module C and Business Math Module C starting in November 2003 as part of her regular duty teaching credits. Ex. 22. But because Ms. Wade went on FMLA leave, John Tuthill replaced Ms. Wade with other instructors in each of those classes and refused to reinstate Ms. Wade to those classes when she returned from FMLA leave. Adding to the problem and because Ms. Wade was replaced, the College found that Ms. Wade had not met her contractual amount of hours, and penalized her by refusing to pay for extra duty classes that she had already performed. *Id.* at 3.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 29 of 50

**1.    The Law Requires Reinstatement To A "Virtually Equivalent" Position.**

The FMLA entitles employees who have returned from family medical leave to be reinstated to the position they held before leave, or to a position with "equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. §2614(a)(1)(A) and (B).  An employee is entitled to the same rights, benefits and position of employment that she would have been entitled to had the employee not taken the leave.  §2614(a)(3)(B).

29 C.F.R. § 825.215 answers the question "What is an equivalent position?"

> (a) An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority. . . .

*Id.* emphasis added.

An employee's right to job restoration applies even if the employer has found a replacement for the employee during her leave:

> (a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions or employment. <u>An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.</u> *See also* § 825.106(e) for the obligations of joint employers.

29 C.F.R. § 825.214(a) emphasis added.

Memorandum In Support of Plaintiff's MPSJ On FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 30 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## 2. As a Matter of Law, Ms. Wade Was Not Properly Reinstated To Her Position.

Ms. Wade was required to teach a total of 12 hours, and accepted "added duty" contracts.[4] Ex. 12, 22.  During the fall 2003 school semester, Ms. Wade was engaged to teach 17 credit hours, including four classes that were "on-line" computer classes (referred to as Blackboard courses) and to teach in-class courses.   The classroom courses were "modular", taught in 3-parts over one semester.

The classes termed Business English 109 C and Business Math 105 C were part of Ms. Wade's regular 12 hour classes.  Ex.   22. Several of Ms. Wade's courses had already finished prior to her November 2003 leave.  Those were extra duty classes that were ready to be paid.  *Id.*

During the fall 2003 semester, Bobbi Wade was on medical leave from November 12, 2003 until November 26, 2003. Ex.  13.  She was on leave for 11 work days, but was only absent for about 8 classes, because the classes did not meet every day.  Because Ms. Wade would not be present for two of her in-class courses while she was away from Barrow, John Tuthill hired two other teachers for just her two in-class courses: Business English, Module C and Business Math, Module C.  Ex. 14, Tuthill Depo. at 36-37. These were Ms. Wade's only remaining in-class courses.

---

[4] Ms. Wade accepted extra classes during many of the semesters she taught at the College.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 31 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ms. Wade was scheduled and expected to teach the module classes. John Tuthill confirmed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C. That was the plan at that time." Ex. 14, Tuthill Depo. at 187. "But for her leave [Ms. Wade] would have been teaching Module C." *Id.*

When Ms. Wade returned from leave, John Tuthill refused to reinstate Ms. Wade to teach her regular courses, Business English, Module C and Business Math, Module C. Defendants admit that they did not place Ms. Wade back into the two Module C courses. Ex. 23, Answer to Request for Admission No. 4, First Discovery Request To Defendant Ilisagvik College. The rationale for not reinstating Ms. Wade to the classes was: in one class she would have missed three out of eight classes and in the other, she would have missed four out of ten classes. *Id.* Tuthill stated the reason he did not reinstate Ms. Wade was:

> In my professional judgment, I felt that having the students miss between 37.5 and 40 percent of the class meetings or having to reschedule that number of class meetings in a very tight semester was not in the students' best interests.

Ex. 14. Tuthill Depo. at 37.

The Human Resources director, Pamela Taylor stated that she believed that so long as an employee was employed at the same wage and benefit level, the employee could be required to perform any work that fit the employee's qualifications. Ex. 8, Taylor Depo. at 262-263. However, Ms. Wade was not reinstated without loss of benefits.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 32 of 50

In fact, Ms. Wade was not paid $3000 that was owed to her. The College and Tuthill decided that because Ms. Wade did not teach her scheduled 12 hours of courses, that they would withhold payment from two extra duty contracts that she had already performed. Ex. 22. Rather than paying Ms. Wade for the extra duty classes, the College applied the extra duty credits as part of her 12 regular duty hours.

Further proof of the violation is memorialized by Tuthill's assistant in notes she took during a meeting on December 19, 2003 when Tuthill told Ms. Wade that her 12 hours were not met "because Bobbi had to take medical leave." Ex. 24. Therefore, clearly, Ms. Wade was penalized $3000 for taking FMLA leave and was not properly reinstated because she took medical leave.

Ms. Wade was not properly reinstated to her position. Defendants should have placed Ms. Wade back into the two classrooms that she expected to teach. At the very least, the Defendants should have placed Ms. Wade back into equivalent courses and paid her accordingly. Defendants used Ms. Wade's FMLA leave as a negative factor and penalized her. Defendants refused to pay the $3000 owed to her for extra duty contracts that she'd already performed. She was **not** reinstated to a virtually identical position with no loss of pay or benefits.

As a matter of law, this court must find that failure to reinstate Ms. Wade constituted a violation of the FMLA statute and regulations. There are no exceptions to reinstatement that apply to Ms. Wade. Defendants' rationale for their failure to reinstate and pay Ms. Wade is a per se violation of the federal law.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 33 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

**F. DEFENDANTS RETALIATED AND DISCRIMINATED AGAINST MS. WADE AND TERMINATED HER FOR USING FMLA PROTECTED ACTIVITY. USING FMLA PROTECTED LEAVE AS A NEGATIVE FACTOR IN THE DECISION NOT TO RENEW WADE'S CONTRACT WAS PROHIBITED.**

Ms. Wade was terminated for taking FMLA protected leave, and for opposing Defendants failure to follow the law and properly reinstate her. Her leave was used as a negative factor against her when John Tuthill decided to terminate her. The violations of the FMLA can be determined as a matter of law.

There are two theories available under the FMLA, which are embodied in 29 U.S.C. §2615(a)(1) and (2):

(a) Interference with rights
(1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

Defendants can be held liable under either or both of these theories.

**1. Defendants Interfered With Ms. Wade's Leave by: Denying her leave; Discouraging her from using leave; Refusing to properly reinstate her; and by Using her leave as a factor in terminating her employment.**

*Xin Liu v Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003) held that DOL regulations clearly state that an employer interferes with an employee's rights under FMLA by "refusing to authorize FMLA leave" and "discouraging an employee from using such leave." 29 C.F.R. § 825.220. It acknowledged that any violation of the FMLA itself or of the DOL regulations constitutes interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b).

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 34 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

In both *Bachelder* and in *Liu*, the Ninth Circuit has set forth the proper standard upon which to judge an interference with FMLA rights claim is (1) she took FMLA-protected leave; (2) she suffered adverse employment actions; and (3) the adverse actions were causally related to her FMLA leave.

**a. Ms. Wade took FMLA-protected leave.**

As shown above, from November 12, 2003 until her return to work on December 1, 2003, Ms. Wade was on medical leave that should have been protected by the FMLA. Ms. Wade took FMLA protected medical leave to attend to her skin cancer.

**b. Ms. Wade suffered adverse employment actions.**

Ms. Wade suffered multiple adverse employment actions. First, Defendants refused to properly reinstate her and penalized her for taking medical leave by refusing to pay her $3000 for extra duty contracts that she had already worked.

Then, after she protested the refusal to properly reinstate her, John Tuthill terminated Ms. Wade's contract. Thus, Ms. Wade suffered several adverse employment actions.

**c. The Adverse Action Was Causally Related To Ms. Wade's FMLA leave. Temporal Proximity, along with Other Proof, Satisfies Ms. Wade's Burden.**

**(1)  Temporal Proximity is Strong.**

An employee can establish a causal link between her protected activity and the adverse employment action through "the timing of the two events." *Eliserio v. United Steelworkers of America, Local 310,* 398 F.3d 1071, 1079 (8th Cir. 2005).

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 35 of 50

"A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." *Smith v. Allen Health System, Inc,* 302 F.3d 827, 832 (8th Cir. 2002). Cases where courts have determined that temporal proximity alone was sufficient to create an inference of the causal link "have uniformly held that the temporal proximity must be 'very close.' " *Wallace v. Sparks Health Sys.,* 415 F.3d 853, 859 (8th Cir. 2005).

The Ninth Circuit has adopted temporal proximity as proof of a causal link, especially when the link is very close. *Xin Liu v Amway Corp.,* 347 F.3d 1125 (9th Cir. 2003) agreed that "the proximity in time between the leave and her termination also provides supporting evidence of a connection between the two events." *Id.* at 1137. In *Liu,* the supervisor evaluated the employee while she was still on leave. Although the employee had always received exceptional evaluations in the past, the supervisor gave her much lower ratings, especially on the subjective portion of the evaluation. The proximity between the employee's protected activity and the poor evaluation, which ultimately led to her termination, was suspect.

Claims other than the FMLA have been established by temporal proximity alone. See *Thomas v. City of Beaverton,* 379 F.3d 802, 812 (9th Cir. 2004) (Arn established that he was terminated **two months** after he filed his complaint with DFEH. This temporal proximity alone is sufficient to establish a genuine issue of material fact as to whether a causal link exists.); *See Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred **less than three months** after the

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 36 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

protected activity); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731-32 (9th Cir.

1986) (concluding that there was adequate evidence of a causal link where the

retaliatory action occurred **less than two months** after the protected activity);

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (The causal

link between a protected activity and the alleged retaliatory action "can be inferred

from timing alone" when there is a close proximity between the two. "We have

recognized previously that, in some cases, causation can be inferred from timing

alone where an adverse employment action follows on the heels of protected

activity.); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493,

507 (9th Cir. 2000) (noting that causation can be inferred from timing alone.

## (2)  The Events Created a Close Temporal Proximity.

Upon return from her medical leave, Ms. Wade was not properly reinstated

to her position, as state above.  She returned on December 1, 2003. Ms. Wade

opposed the College's refusal to reinstate her to her classes and for depriving her

of $3000 that was rightfully hers.  Ms. Wade filed a grievance directed at John

Tuthill, her supervisor, on December 11, 2003 complaining about the treatment.

Ex. 25.  The grievance angered John Tuthill, as evidenced in the notes taken by his

assistant at a meeting between Tuthill and Ms. Wade on December 19, 2003.  Ex.

24.

Then, on January 28, 2004, despite her prior good evaluations (see above),

Tuthill signed a non-renewal form, terminating Ms. Wade's employment at the

College.  Ex. 26.  Finally, on January 30, 2004 John Tuthill informed Bobbi Wade

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 37 of 50

that he was not going to renew her contract for the next year.  Ex. __ (ex. 109).

The time between filing a grievance and her termination was approximately 1½

months. The time between returning from FMLA leave was slightly less than 2

months.  Therefore, timing between the protected activity and the adverse action in

this action is very close, and within the timeframes recognized by the Ninth Circuit.

The following timeline illustrates the close temporal proximity of the actions

take by defendants to Ms. Wade's use of medical leave and her grievance on the

failure to reinstate her:

| | |
|---|---|
| December 1, 2003 | Ms. Wade's first day at work after medical leave. |
| December 11, 2003 | Ms. Wade filed grievance about failure to reinstate. |
| December 19, 2003 | Ms. Wade and Tuthill meet about the grievance. |
| Dec 20 - Jan 5, 2004 | Christmas break (See Ex. 3 at 4 ) . |
| January 15, 2004 | First time Tuthill addresses Blackboard courses. |
| January 20, 2004 | First time Tuthill addresses "favoritism". |
| January 28, 2004 | Tuthill signs non-renewal of contract. |

Less than two months after Ms. Wade returned from exercising what should

have been protected medical leave and just over one month after filing a grievance

that protested defendants' failure to reinstate her to her position, John Tuthill

terminated Ms. Wade's contract.   There is no mistake: the temporal proximity

between the termination and the protected activity is so close that the court must

find that a causation is present.

### (3)  The Causes Cited For Ms. Wade's Termination Only Became An Issue After Her FMLA Leave.

At first, John Tuthill and Pam Taylor claimed that they were not required to

tell Ms. Wade why they terminated her.   But during an administrative hearing,

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 38 of 50

Defendants, for the first time, revealed the reasons Tuthill gave for terminating Ms. Wade. Ex. 28. The College submitted the list of reasons written by Tuthill which he drafted in January 2004 when he was considering whether to renew Ms. Wade's contract. Ex. 14, Tuthill Depo. at 92-93. The reasons were:

1. Ms. Wade was unqualified for the position.
2. Ms. Wade's teaching performance suffered, including
   a) student complaints; and
   b) a low success rate in her computer courses.
3. Ms. Wade refused to implement critique of her computer course.
4. Ms. Wade resisted Tuthill's choice of adjunct teachers.
5. Ms. Wade exhibited "poor professional judgment" when claiming her granddaughter as a dependent for a tuition waiver and in teaching her granddaughter's courses.

Ex. 28. The listed reasons were created after Ms. Wade exercised her FMLA rights and after she was not properly reinstated.

### (a)  Ms. Wade Had Been Qualified For The Job for 3 ½ Years.

Tuthill has maintained that his reason for terminating Ms. Wade were primarily based upon Ms. Wade's lack of qualification for the job because she did not have a Master's degree in Business. [5]  Ex. 14, Tuthill Depo. at 56-58. He agreed that there was no precise definition of the accreditation standard. *Id.* at 57. Despite that, Tuthill believed that Ms. Wade's qualifications did not meet the accreditation standards. *Id.* at 56. The decision was solely his. *Id.* at 58. This reason is pretextual.

---

[5]Ms. Wade had a Masters Degree in Educational Leadership. Ex. 29.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 39 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Dr. O'Rourke, the College's paid expert consultant on accreditation issues, was told prior to the termination that Tuthill thought Ms. Wade had competency and qualification issues. *Id*. at 52-53. O'Rourke had never before expressed any qualms about Ms. Wade's qualifications. In this instance, in reaction to Tuthill's statement, O'Rourke only said that he hoped Tuthill could find a way to reinstate Ms. Wade. *Id*. The College's expert did not have a problem with Ms. Wade's qualifications.

In the prior year, the College had obtained accreditation from the Northwest Commission on Colleges and Universities. President McLean stated that an accreditation team had come up to the Barrow college and looked at all of the professor's resumes. Ex. 30, McLean Deposition at 93-94. The accreditation team did not single out any person as unqualified, and indeed, passed Ms. Wade as well. *Id*. So the entity responsible for accreditation did not express any problem with Ms. Wade's qualifications when they had the chance.

Ms. Wade declared her qualifications when she first began teaching at Ilisagvik. She was hired for the position based upon those qualifications. Ms. Wade's qualifications did not diminish during the 3½ years she taught in Barrow.

In *Xin Liu v Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003), the court found it significant that the supervisor's subjective evaluation was the "central, if not sole, factor in her termination." *Id*. at 1136. The court warned:

> Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 40 of 50

such evaluations are particularly "susceptible of abuse and more likely to mask pretext."

*Id.* at 1136, citing *Weldon v. Kraft Inc.*, 896 F.2d 793, 798 (3rd Cir. 1990) and *Lujan v. Walters*, 813 F.2d 1051, 1057 (10th Cir. 1987).

In *Xin Lui*, the Ninth Court found a 19% drop in overall ratings to be significant and stated that the evaluation may have been tainted with the supervisor's attitude toward the employee's leave. *Id.* at 1137.

Although Ms. Wade had been hired and successfully taught for 3½ years with her qualifications, although the College's accreditation expert and the Northwest Commission on Colleges and Universities had no problem with her qualifications, suddenly Tuthill could no longer tolerate her lack of a master's degree in Business and claimed that her qualifications did not meet accreditation requirements. The only change in the 3½ years was that Ms. Wade insisted on medical leave, was not properly reinstated, and opposed that violation. Tuthill's justification that Ms. Wade was suddenly not qualified was a pretext to terminate her employment.

### (b) Ms. Wade's Performance Reviews Had Always Been Good.

For the first 3 ½ years that Ms. Wade taught at the College, her performance evaluations from her supervisor(s) were all very good. Ex. 14, Tuthill Depo at 237. Indeed, Ms. Wade's evaluations from the students she taught were also good. *Id.* These are not disputed facts. The only thing that changed between the last

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 41 of 50

evaluation that Ms. Wade received and her termination was that Ms. Wade took FMLA leave and was not properly reinstated.

### i The Student Complaints Were Immaterial.

Tuthill based part of his decision on student complaints against Ms. Wade. The vast majority of those complaints came from one student. Ex. 31, Sonya Abu Depo, redacted for student privacy pursuant to protective order at 18-21. The complaints were not just about Ms. Wade, but also about two other professors, neither of whom was terminated. Ex. 14, Tuthill Depo. at 126-128. Ms. Wade had the most students in the school. It is no surprise that she received the most complaints.

The complaints consisted of minor issues. Tuthill stated that he would not have fired Ms. Wade for just the student complaints alone. Ex. 14, Tuthill Depo. at 228-230.

In reviewing the student complaints, Tuthill did not take Ms. Wade's prior good student evaluations into consideration. The policy manual promises regular faculty performance reviews annually. One policy addresses the standards to be applied for renewal of a faculty contract. Ex. 32 at 20562. "The purpose of an evaluation is to monitor employee performance and improvement." *Id*. The policy promises that *"Evaluations shall be considered in employment retention . . ."* *Id*.

The few complaints about Ms. Wade were insufficient to terminate her. Tuthill ignored the policy that required him to consider Ms. Wade's prior evaluations

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 42 of 50

in his decision whether to terminate her.  The student complaints were insignificant and a red herring.

### ii.     Low Success Rate Was Not Statistically Significant.

On January 15, 2004, for the first time ever, Ms. Wade was criticized for her "low" student success rates in her computer based classes.  Ex. 33  The e-mail in which John Tuthill delivered the criticism claimed that the overall success rate for computer based classes was 26%, but that Ms. Wade's success rate was only 23%.  *Id.*  Even John Tuthill had to agree that the difference in percentage was not statistically significant.  Ex. 14, Tuthill Depo. at 85-86.

The College published a very different success rate for Blackboard courses.  For the Fall of 2003, the College stated that the success rate for all the classes combined was 90.65% success rate.  Ex. 34.

Actually, there were only two Blackboard instructors in the Fall of 2003: Ms. Wade and Courtney Bartholomew.  Courtney Bartholomew was not terminated for his low student success rate (or the student complaints about him – see above).  In fact, there is no evidence that Mr. Bartholomew was even reprimanded for it as Ms. Wade was.  The success rate was nothing more than Tuthill's attempt to build a case for terminating Ms. Wade.  It is a pretextual reason.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 43 of 50

**(c) Tuthill Critiqued Ms. Wade's Computer Classes less Than 2 Weeks Before Terminating Her.**

On January 15, 2004, for the first time since she began teaching,[6] Tuthill critiqued Ms. Wade's use of the "Blackboard" system, which is the delivery platform for computer based classes. Ex. 33. In his list, Tuthill specifically stated:

> Bobbi has been resistant to changing her style of teaching on Blackboard. At the beginning of this semester, I have here a series of specific directions for what she needed to do differently in order to support our students better. She is doing some of what I directed; most she is not.

Ex. 28.

The statement, however, was not true. In fact, in the e-mail, Tuthill gave Ms. Wade three directions: two were direct orders; one was a "fairly strong urging." Ex. 14, Tuthill Depo at 71. But Tuthill agreed that Ms. Wade complied with the two direct orders. *Id.* at 94-95. He was not aware of whether Ms. Wade complied with the "urging". *Id.* at 95-96.

Given that the e-mail was written on January 15, 2004 and Tuthill signed the termination paperwork on January 28, 2004, there was only 2 weeks in which to comply with his orders, which he agreed she did. Therefore, this reason for her termination was simply false.

---

[6] The criticism of Ms. Wade's computer classes was the first time Tuthill or any Dean of Instruction had expressed any dissatisfaction with Ms. Wade. All her prior evaluations were above average.

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 44 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1

**(d) Ms. Wade Resisted Defendants' Violations Of the FMLA.**

2     Tuthill stated that Ms. Wade "resisted his efforts" to recruit and use adjunct

3   professor for Module C, Business English.  That was the class that Ms. Wade was

4   supposed to teach as part of her regular duties.  Her hostility[7] to Tuthill's failure to

5   properly reinstate her was based on her expectation that she would be legally and

6   properly reinstated under the FMLA.

7     The Module classes were given to other instructors when Ms. Wade went on

8   medical leave.  "But for" Ms. Wade's medical leave, John Tuthill agreed that Ms.

9
10   Wade would have been teaching the classes; they would not have been "other

11   instructor's classes."  Ex. 14, Tuthill Depo. at 187.

12     The reason stated was part and parcel of the ongoing violations.  Her protest

13   over the violations should not be accepted as a reason to terminate her.

14
**(e) Tuition Waivers Were Known and Accepted By the College.**
15

16     Tuthill used as a reason to terminate Ms. Wade the fact that she inquired

17   about independent study for her granddaughter and the fact that her granddaughter

18   obtained tuition waivers.

19     It is undisputed that the College had no standards regarding when a tuition

20   waiver could be granted to a relative of a professor.  Ex. 35.  Tuthill himself

21   waiver could be granted to a relative of a professor.  Ex. 35.  Tuthill himself

22   checked with the registrar about Bobbi Wade's granddaughter, who confirmed that

23
_____
[7] In fact, the "hostility" toward the teacher was mutual.  Tuthill agreed that each was
24   rude to the other during December 2003.  Ex. 14, Tuthill Depo. at 116.  It does not
25   appear that the adjunct was terminated for her rudeness to Ms. Wade.
26

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 45 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

fact to him.  *Id*.  See also Ex. 14, Tuthill Depo. at 102.  The waivers had been applied for and granted by the College for multiple semesters.  See, e.g. Ex. 36. The issue was not a new one.

Ms. Wade had not violated any policy on tuition waivers.  But, Tuthill claimed that the tuition waivers, while not improper, were instead a "perception of conflict" and therefore unprofessional.  He claimed this knowing that the College had approved the waivers.  In deeming the tuition waivers unprofessional, Tuthill ignored the fact that the College had for years knowingly approved the tuition waivers.  In using the prior waivers against Ms. Wade, Tuthill knowingly punished her for actions that the College had always approved of.

Ms. Wade's request for her granddaughter to take an independent study and petition out of an IT class was just that: a request.  Ex. 37.  Ms. Wade went through proper channels for the request for her granddaughter.  Tuthill denied the request. Thereafter, Ms. Wade abided by Tuthill's decision.  She did not attempt to go forward with the petition without Tuthill's approval.

Tuthill deemed Ms. Wade's actions "poor professional judgment" and a "conflict of interest."  Ex. 33 at 2.  The accusation was hypocritical.  Tuthill's wife worked in the Registrar's office and was within his normal chain of command.  Ex. 14, Tuthill Depo. at 269-270.  This appears to be in conflict with the Board of Trustee Nepotism Rule.  Ex. 38, (policy 6.12).  Tuthill did not formally file any paperwork, but merely talked to the President about his wife's employment position.  Ex. 14, Tuthill Depo. at 269-270.  Likewise, it is undisputed that Pam

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 46 of 50

1   Taylor was allowed to hire her life partner as an adjunct teacher, despite the

2   nepotism policy.   There are numerous relatives working at Ilisagvik College who

3   appear to have conflicts of interest.  Ex. 31, Sonya Abu Depo. at 110-111.

4       Tuthill held Ms. Wade to a standard that he did not evenly apply.  He stated

5   that her professional judgment was poor in merely requesting that her

6   granddaughter obtain independent study and a tuition waiver, even though no

7   policy prohibited it.   However, he overlooked all the other conflicts that multiple-

8   relative employment caused despite the policy against it.  The standards only were

9   important when it came time to find reasons to fire Ms. Wade.   The reason is

10  important when it came time to find reasons to fire Ms. Wade.   The reason is

11  pretextual.

12              **(4)  Causation is Established As A Matter Of Law**

13      The reasons Tuthill gave for terminating Ms. Wade were created after Ms.

14  Wade exercised her FMLA rights and after she was not properly reinstated.

15  Tuthill's reasons do not withstand scrutiny.  Combined with the temporal proximity

16  to her protected activity, the termination was unlawful and was directly related to

17  her use of FMLA.  Summary judgment should be granted.

18

19  **G.   RETALIATION FOR USING FMLA AND PROTESTING FAILURE TO REINSTATE WAS A VIOLATION.**

20

21      Another equally viable theory is that defendants retaliated against Ms. Wade

22  for insisting upon use of FMLA protected medical leave during the school year and

23  then protesting the defendants failure to properly reinstate her to her job upon her

24  return.

25

26  Memorandum In Support of Plaintiff's MPSJ On FMLA
    Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
    Page 47 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

The Ninth Circuit has twice sidestepped the question of what test to apply to a retaliation claim for FMLA. See *Bachelder v. America West Airlines*, 259 F.3d 1112, 1125 n.11 (9th Cir. 2001) and *Xin Liu v Amway Corp.*, 347 F.3d 1125, 1136 n. 10 (9th Cir. 2003) ("This court has reserved judgment on whether the *McDonnell Douglas* analysis would be applicable in an anti-retaliation action under § 2615(a)(2)."). However, assuming that the Ninth Circuit will eventually adopt the test used in other circuit courts, Ms. Wade will apply the 3-part burden shifting approach.

Ms. Wade must establish in a retaliatory discharge case a *prima facie* case of retaliatory discharge. Then "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Finally, the burden shifts back to Ms. Wade to prove that the proffered reasons are pretext.

To establish a causal link between the employee's exercise of FMLA rights and her termination, the employee must prove "that an employer's 'retaliatory motive played a part in the adverse employment action.' " *Kipp v. Missouri Highway & Transportation Comm,* 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Sumner v. United States Postal Serv.,* 899 F.2d 203, 208-09 (2d Cir. 1990))."[E]vidence that gives rise to 'an inference of a retaliatory motive' on the part of the employer is sufficient to establish a causal link." *Id.* (quoting *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir. 1992); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 48 of 50

1989)). ). However, "[w]hile temporal proximity is sufficient to meet the low burden required to establish a *prima facie* case of retaliation in violation of the FMLA, it is not alone sufficient to establish that an employer's legitimate, non-discriminatory reason for discharge was a pretext." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)).

### 1. Ms. Wade Opposed Unlawful Practices and Was Terminated Therefore.

Where an employee is punished for opposing unlawful practices by the employer, the issue is one of retaliation. *Xin Liu v Amway Corp.*, 347 F.3d 1125, 1136 (9th Cir. 2003). Ms. Wade opposed the College's refusal to reinstate her to her classes and for depriving her of $3000 that was rightfully hers. Ms. Wade filed a grievance directed at John Tuthill, her supervisor, on December 11, 2003 complaining about the treatment. Ex. 25. The grievance angered John Tuthill, as evidenced in the notes taken by his assistant at a meeting between Tuthill and Ms. Wade on December 19, 2003. Ex. 24. Ms. Wade was punished for filing the grievance. She was terminated.

### 2. Defendants (Eventually) Proffered Reasons For Ms. Wade's Termination.

John Tuthill and Pam Taylor claimed at first that they were not required to tell Ms. Wade why they terminated her. But during an administrative hearing, Defendants revealed the reasons Tuthill gave for terminating Ms. Wade. Ex. 28. The College submitted the list of reasons written by Tuthill which he drafted in

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Memorandum In Support of Plaintiff's MPSJ On FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 49 of 50

1  January 2004 when he was considering whether to renew Ms. Wade's contract.

2  Ex. 14, Tuthill Depo. at 92-93.

3  ### 3. Defendants' Reasons Were All Pretextual.

4  As set forth above the reasons given by Defendants for Ms. Wade's

5  termination were all pretext.  Each was created after the fact to establish a false

6  reason to terminate Ms. Wade's employment with the College.  As a matter of law,

7  the court should find that the Defendants discriminated and retaliated against Ms.

8  Wade for using FMLA leave, for opposing illegal practices and for filing a grievance

9

10  thereon.  Liability should be imposed as a matter of law.

11  ## IV.  CONCLUSION.

12  Ms. Wade's FMLA rights were violated by Defendants.  As a matter of law,

13  Ms. Wade was denied medical leave, was not properly reinstated to her position,

14
    and then was terminated based upon her leave and the protest of her unlawful

15  treatment.  Liability for Ms. Wade should be granted as a matter of law.

16  DATED at Anchorage, Alaska this 15th day of June 2007.

17  CLAPP, PETERSON, VAN FLEIN,
    TIEMESSEN & THORNSESS, LLC

18  Attorneys for Plaintiff

19
    s/ Linda J. Johnson

20  CLAPP, PETERSON, VAN FLEIN,
    TIEMESSEN & THORSNESS LLC

21  711 H Street, Suite 620
    Anchorage, AK  99501-3454

22  Phone:  (907) 272-9631

23  Fax:  (907) 272-9586
    Direct email:  ljj@cplawak.com

24  Alaska Bar No. 8911070

25  <u>Certificate of Service</u>:  I hereby certify that on June 15, 2007, a copy of the foregoing Motion, Plaintiff's MPSJ FMLA Claim  and
    Notice of Submission of Exhibits were served electronically on Cynthia Ducey, Esq        s/ Linda S. Johnson

26  Memorandum In Support of Plaintiff's MPSJ On FMLA
    <u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
    Page 50 of 50

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586