Linda J. Johnson
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, AK 99501-3454
(907) 272-9272
(907) 272-9586 fax
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BOBBI WADE,<br><br>               Plaintiff,<br><br>v.<br><br>ILISAGVIK COLLEGE; JOHN TUTHILL, individually; and PAMELA TAYLOR, individually,<br><br>               Defendants. | Case No. 3:05-cv-086-TMB |

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Bobbi Wade opposes the motion for summary judgment filed by Defendants Ilisagvik College, John Tuthill and Pamela Taylor. When deciding summary judgment, the court is required to construe the facts stated by Defendants in the light most favorable to Ms. Wade. *Genzler v. Longanbach,* 410 F.3d 630, 637 (9th Cir. 2005). Defendants ask the court to construe all facts in their favor in order to find for the Defendants. The court cannot enter summary judgment because Defendants cannot prove that there is no genuine issue of material fact on Plaintiff's claims of violation of FMLA, Whistleblower, & 42 U.S.C. §1983 for Due Process and FMLA, and punitive damages. The motion must be denied.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 1 of 43

# I. MATERIAL FACTS ASSERTED BY DEFENDANTS ARE NOT UNDISPUTED, AND WHEN THE COURT DRAWS REASONABLE INFERENCES OF FACT IN FAVOR OF PLAINTIFF, DEFENDANTS' MOTION MUST BE DENIED.

Defendants refer to facts as "undisputed" but have no basis upon which do to so. Defendants use the word "undisputed" 32 times in their brief. Defendants' use of the term undisputed means that Defendants want the court should draw the inferences in their favor. This would be improper.

For example, Defendants allege that: "It is undisputed that the College accepted Wade's December 11 'Formal Grievance.'" Memorandum at 31. This is untrue. In an e-mail to Ms. Wade, Taylor stated:

> <u>Status of Written Complaint [dated 12/11/03]</u>
> As per the Grievance qualification criteria outlined in the Employee Handbook [pp.46-47], your written complaint does not qualify as a Grievance because it failed to
> a.) Specify which College policies have allegedly been violated.
> b.) Specify any requested remedy(ies.)

Ex. 1, set out as originally written. Taylor also states: "I explained to you this morning why a Grievance situation does not currently exist." *Id*. Therefore it is disputed that the College accepted Ms. Wade's December 11, 2003 formal grievance; in fact, the College denied the grievance.

Given the space limitation of this brief, Ms. Wade cannot take the time to prove that all 32 uses of the term "undisputed" are incorrect. But based on the unreliability of the Defendants use of the term, the court should not accept Defendants' characterization in any context. Plaintiff therefore denies all of the Defendants' facts as stated by them, unless specifically noted otherwise. All inferences from facts stated by Defendants must be drawn in Ms. Wade's favor. When that is done, the court cannot grant summary judgment.

## II. THE FMLA CLAIMS SHOULD NOT BE DISMISSED.

Defendants use an improper standard for proof of interference with a claim of the Family and Medical Leave Act. Defendants cite to a 2001 district court case

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 2 of 43

from Oregon, which relies upon a case from New York for their test. See Memo at 19.

The Ninth Circuit has clearly stated that the standard is: (1) the employee attempted to exercise her rights under the Act; (2) her employer subsequently engaged in activity that tends to chill the exercise of her rights; and (3) her employer's activity was motivated by the exercise of her rights. *See Bachelder v America West Airlines, Inc.*, 259 F.3d 1112, 1124-26 (9th Cir. 2001). The Ninth Circuit recently affirmed this test in an unpublished opinion: *Rexwinkel v. Parsons*, 162 Fed.Appx. 698 (9th Cir. 2006). This is the test that should be applied.

### A. Ms. Wade Gave Proper Notice of Intent To Take Leave.

It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act. *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001). In order to obtain leave under the FMLA, a qualified employee must first give an employer notice of her intent to take leave. 29 U.S.C. §§2612, 2629; 29 C.F.R. §825.303. The notice, however, does not need to be in any particular format, nor particularly detailed. The notice only has to notify an employer of circumstances <u>suggesting</u> that the FMLA might apply. *Bachelder v America West Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001). The employee does not need to mention the FMLA by name. 29 C.F.R. §825.303.

Defendants agree that Ms. Wade asked for medical leave the last week of September 2003 and assume for the resolution of the motion[1] that Ms. Wade presented the note from Dr. Church. Memo at 10. Defendants also agree that Ms. Wade obtained a follow up medical note from Dr. Snyder in Barrow, but they argue about its clarity. Memo at 11. Defendants do not dispute that Ms. Wade presented the second doctor's note.

---

[1] To assume otherwise would not only be contrary to the evidence, but would also not construe the evidence in the light most favorable to Ms. Wade.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 3 of 43

With the submission of two doctors notes,[2] Ms. Wade clearly gave sufficient information to "reasonably apprise [an employer] of the employee's request to take time off for a serious health condition." *Mora v. Chem-Tronics, Inc.,* 16 F.Supp.2d 1192 (S.D.Cal. 1998) – see Defendants' Memo at 20.[3] Notice of leave does not need to be elaborate. In fact, *Mora* found that: "Defendant's argument that as a matter of law a mere statement that a family member is ill does not provide sufficient notice to the employer that the employee's absence is FMLA or CFRA qualifying is erroneous. " *Mora,* 16 F.Supp.2d at 1210. Indeed, Ms. Wade's submission of two doctor's notes went above and beyond the actions upheld by the very cases that Defendants rely upon. The cases that Defendants rely upon do not support their arguments that Ms. Wade's notice of leave was inadequate.

Defendants argue that Ms. Wade should have given 30 days advance notice because the medical leave was "foreseeable" and that her failure to do so invalidates her notice of need for medical leave. Defendants merge the legal arguments on notice with the legal arguments on foreseeable leave. The two are separate and distinct. Compare 29 U.S.C. §§2612, 2629; 29 C.F.R. §825.303 (laws discussing notice) and 29 U.S.C. §2612(e)(2)(B), and 29 C.F.R. §825.304(a). The differences in the two do not justify summary judgment for Defendants.

Sufficient notice was given. Defendants were required to ascertain whether medical leave was requested and then grant the leave within the next 30 days, if the notice was for foreseeable leave. 29 C.F.R. §825.304. Instead, they just denied it. The jury should determine whether Defendants actions were proper.

---

[2] It is of no consequence that Ms. Wade checked personal leave on her form. Defendants were on notice that her leave might qualify under FMLA. That is all that is required from Ms. Wade.

[3] *Mora* stated: "Generally, whether the notice is adequate is a question of fact. *See, e.g., Hopson v. Quitman County Hosp. & Nursing Home, Inc.,* 126 F.3d 635 (5th Cir. 1997) ("[s]uch determinations are question of fact and better left to the jury with its traditional function of assessing human behavior and expectations")." 16 F.Supp.2d at 1209.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 4 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

### 1. Defendants Did Not Properly Invoke A Right To Certification.

Defendants argue that it was Ms. Wade's sua sponte obligation to submit a medical certification prior to leave. Defendants assert that it is "undisputed" that she was required to provide the certification 30 days prior to her leave, but did not do so. Memo at 23.[4] The assertion is an incorrect interpretation of the law. Defendants did not make a proper request for certification.

As set forth above, it takes very little for an employee to establish proper notice of a need and intent to take medical leave under the FMLA, which then triggers the employer's duty to inquire further, if necessary. In contrast, certification comes after notice. 29 C.F.R. §305(a) gives an employer the right to request a certification from a medical provider, but the employer must give notice of the requirement each time a certification is required. The law makes it clear that in order to invoke FMLA, the employee is not required to voluntarily provide certification; instead certification is an option that employers may invoke.

Additionally, 29 C.F.R. §305(d) makes it clear that the burden is on the employer:

> At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency

Defendants never required certification. Instead, Defendants required that Ms. Wade obtain "written notification from a licensed physician ... to the effect that your medical treatment cannot wait until the December break ..." Ex. 5, December 9, 2003 e-mail. Notably, the regulation does not allow an employer to verify

---

[4] On page 23 of their Memo, Defendants again improperly use the word "undisputed." They claim that it is "undisputed Wade cannot prove . . . that she gave proper notice of her intention to take leave." *Id.* The statement ignores the two doctors' notes, Tuthill's own e-mail communication about "medical leave", the phone call that Defendants Tuthill and Taylor made to the College's attorney inquiring about FMLA, etc.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 5 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

whether their medical leave can wait. Defendants' request for notification was not a request for certification and did not tell Ms. Wade what would happen if she did not provide it. Therefore, Defendants did not invoke their right to certification and were not entitled to deny her leave based on their failure to properly request a certification.

The court should not grant summary judgment on Defendants' failure to properly request certification.

### 2. Foreseeable Leave Does Not Allow An Employer To Deny Leave.

When medical leave is foreseeable, the federal statutes require that Ms. Wade make a "reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider . . ." 29 U.S.C. §2612(e)(A). The statute only allows the employer to delay FMLA leave for 30 days if sufficient notice is not provided, but only if the need for leave is foreseeable. 29 U.S.C. §2612(e)(2)(B), and 29 C.F.R. §825.304(a). Notably, the law does NOT say that an employer may delay the leave interminably or deny the leave based on its foreseeability. The law does not allow an employer to require an employee to prove their leave can't wait until it's more convenient for the employer. (See below.) If an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave. 29 C.F.R. §825.304(a).

Even if the court determines that the leave was foreseeable, the regulations do not allow an employer to simply deny the leave. They must choose one of the two options set forth in 29 C.F.R. §825.304(a), neither of which is deny the leave.

Ms. Wade gave notice during the last week of September that she needed medical leave. As acknowledged by Defendants, Ms. Wade asked for leave 18 days in advance. Memo at 10. If the medical leave was considered foreseeable, Defendants should have, but did not, tell Ms. Wade that she could obtain leave in

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 6 of 43

30 days. Their failure to do so was a violation of the FMLA and no summary judgment should be granted to Defendants.

### b. College Violated The FMLA By Forcing Ms. Wade To Prove Her Leave Could Not Wait Until Christmas break, 2 months away.

John Tuthill acknowledged Ms. Wade's request for time off was medically related in an e-mail addressed to her on October 3, 2003, but denied Ms. Wade's leave unless and until she obtained a medical opinion that Ms. Wade "require[d] immediate medical treatment". Ex. 3. Tuthill did not refer to a medical certification, instead he put a burden upon Ms. Wade to establish that her medical could not wait.[5]

Then, despite receiving another doctor's note dated October 6, 2003, John Tuthill wrote to Ms. Wade on October 9, 2003 and told her that:

> If you are planning to take the medical leave later this month, I need <u>written notification from a licensed physician</u>, preferably by fax and as soon as possible to the effect that <u>your medical treatment cannot wait until the December break, when you could have the treatment without conflict with your regular teaching duties</u>. As soon as I have received such a notification, I can begin to process the request for medical leave.

Ex. 2, emphasis added. Tuthill's requests are **not** for medical certification, as that term is used in the FMLA laws and regulations. See argument above. Instead, Tuthill required Ms. Wade to prove that she <u>can't</u> wait for medical treatment. Defendants' insistence (not merely a suggestion) that Ms. Wade provide proof that her leave could not wait until the December break constituted interference with her federal rights.

Why would Tuthill do this? His motivation is clear from Defendants' brief. Defendants state that Tuthill was attempting to change the amount of contractual leave time that professors were granted at Ilisagvik College, because as an administrator he had never encountered so much available leave. Memo at 5. He

---

[5] Plaintiffs cite to Bobbi Wade's deposition testimony as proof of the requirement for certification, but all the testimony states is that she received the e-mail.

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 7 of 43

wanted his professors to only take a day or two leave, despite their contractual rights. *Id.* Therefore, when Ms. Wade asked for medical leave, Tuthill was intent upon denying her leave request, so as to fit her into his new mold, despite her legal, and not just contractual right to take leave.[6]

29 U.S.C. §2615(a) (1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of" any right provided by the FMLA. 29 C.F.R. §825.220(b) states that interference includes "discouraging an employee" from taking FMLA leave. An employee may bring a claim of FMLA interference "for actions that could 'chill' [the] desire to take FMLA leave." *Sherrod v. Philadelphia Gas Works*, 57 Fed.Appx. 68, 73 n. 6 (3d Cir. 2003). Other courts have found interference when an employer merely asks an employee to delay their FMLA leave. See *Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F.Supp.2d 255 (D.N.J. 2001); *Williams v. Shenango, Inc.*, 986 F.Supp. 309, 313 (W.D.Pa. 1997); *Butler v. IntraCare Hospital North, et al.*, 2006 WL 2868942 *4 (S.D.Tex. Oct. 4, 2006); *Grosso v. Federal Exp. Corp.*, 467 F.Supp.2d 449, 465 (E.D.Pa. 2006).

Defendants' actions had the very effect that the law was intended to prevent: Ms. Wade was forced to choose between her job and her medical needs. She chose her job. See October 9, 2003 e-mail, Ex. 2. The FMLA prevents an individual from having to choose between her livelihood and treatment for her serious health condition. *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002).

FMLA rights are to be exercised when an employee needs medical care, not when a supervisor determines that leave is "convenient". The FMLA was enacted to respond to the " 'serious problem with the discretionary nature of family leave' " that occurs "when 'the authority to grant leave and to arrange the length of that leave rests with individual supervisors.'" *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 538 U.S. 721 (2003). John Tuthill refused to authorize FMLA

---

[6] Tuthill's zeal to restrict leave also accounts for his anger after Ms. Wade did take medical leave to deal with her skin cancer.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 8 of 43

leave to Ms. Wade and discouraged her from using such leave by requiring yet another medical note and by requiring her to schedule her leave for the "December break" 70 days later, so that her leave would not conflict with her classes. Defendants' actions are prohibited by the FMLA. 29 C.F.R. §825.220. *Xin Liu v Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) held that "it follows that an employer had discouraged an employee from taking FMLA leave when his or her supervisor interferes with the length and dates of leave, including denying leave out right." *Id.* at 1134. The Ninth Circuit found "a clear interference" with the employee's right to take FMLA leave based on the supervisor's testimony that he believed that he had discretion on the matter of the leave and so refused to grant her extensions repeatedly, and he pressured the employee to reduce her leave time. *Liu*, at 1134.

Ms. Wade's supervisor continually pressured Ms. Wade to wait to seek medical treatment until the December break. This is not the same as requiring medical certification as allowable under 29 C.F.R. §825.305. John Tuthill required Ms. Wade to certify why she could not wait. Defendants violated Ms. Wade's FMLA rights. Their insistence that Ms. Wade prove that her leave could not wait constituted interference with her FMLA claim. The motion for summary judgment should be denied.

**c. Ms. Wade Was Intimidated Into Stating Her Leave Could Wait Until Christmas, She Did Not Withdraw Her Leave Request.**

Defendants violated Bobbi Wade's rights to FMLA leave when they denied her leave requests and demanded she schedule her leave at a time that did not "unduly interfere" with the College's business. Defendants freely admit that they required (not merely a suggestion) Ms. Wade to provide proof that her leave could not wait until the December break. Their actions were not only chilling, but constituted interference as a matter of law.

And in fact, Defendants' actions had the very effect that the law was intended to prevent: after Ms. Wade presented two doctors' notes that indicated that she needed medical leave but Defendants still insisted upon further

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 9 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

documentation to prove she could not wait until December for her medical attention, Ms. Wade was forced to choose between her job and her medical needs. Defendants rejected her second doctor's note, refused to allow her to adjust her teaching schedule, and demanded she prove that her leave could wait until the December break." She chose her job.

Defendants contend that Ms. Wade "withdrew" her leave request on October 9, 2003 and therefore Defendants had no further duty under the FMLA. Defendants' state that "A reasonable employer would have considered the October 9th e-mail as a withdrawal of her leave request." Memo at 12. Credibility determinations, weighing of evidence and drawing legitimate inferences from the facts are jury functions, and not proper during consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Therefore, the court cannot weigh the evidence to determine what a "reasonable employer" would have thought.

Nevertheless, the evidence is contrary to Defendants' assertion. During her 4 days of deposition which took 23 on-record hours, Ms. Wade consistently stated that she did not withdraw her leave request:

> Q. So you withdraw it as of --
> A. That's not a withdrawal.
> Q. Well, what is it, ma'am?
> A. I never said I was withdrawing my request.
> Q. Well, maybe it's --
> A. I was just going along with his idea and agreeing that it -- it would be better for me to wait until the Christmas holidays because he would not let me change my class schedule.

Ex. 4, Wade Depo. Vol. I at 260. Again in Wade Depo. Vol. II at 300, Ms. Wade stated in response to the same question that "I did not withdraw anything." Ex. 5.

In fact, the Ms. Wade agreed only after Tuthill had rejected her second doctor's note, refused to allow her to adjust her teaching schedule, and demanded she prove that her leave "cannot wait until the December break." E-mail at 2. Ms. Wade made a choice at this point. It was clear to her that if she took the medical

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 10 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

leave, her job would be in jeopardy; therefore, Ms. Wade chose her job. This was not a "withdrawal" but an acknowledgement of defeat.[7]

Defendants' assertion that Ms. Wade withdrew her leave request is contradicted by the facts. The motion should be denied.

### d. Defendants were not "entitled" to demand information from an employee to establish that a leave will not be "disruptive."

Defendants contend that they were "entitled" to demand information from Ms. Wade to establish that her medical leave would not be "disruptive." In support of that contention they cite to another jurisdiction's decision in *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1118 at n. 5 (6th Cir. 1997). The case <u>does not</u> support their argument. Instead *Bauer* states that for foreseeable leave, an employee is required "to consult with the employer in scheduling the leave so as to minimize any disruption to the employer's operations." *Id*. at n. 5. Despite Defendants' claim, the case does not "entitle" them to demand an employee prove that her medical leave will not be "disruptive." Defendants cannot rely solely on the isolated language they cite to support their failure to follow the FMLA.

### d. October 20th Leave Request Was Still Medical; the Request Demonstrates Ms. Wade's Intimidation Stemming From The October 9, 2003 E-mail from Tuthill Threatening To Not Approve Added Duty Contracts If Ms. Wade Took Medical Leave.

Defendants argue that they were under no obligation to view Ms. Wade's "October 20" leave request as anything other than a request for personal leave because Ms. Wade did not submit yet another doctor's note to support her need for medical leave.

First, there is no indication of when the leave request was made, only when Tuthill denied it, but it was close in time to her other requests for medical leave. Ex. 7, e-mail dated October 20, 2003.

---

[7] That Ms. Wade did not withdraw her request is further supported by the next e-mail she sent to Pam Taylor on October 14, 2003 asking about the status of her medical leave request. Ex. 6. Ms. Taylor's response was to throw Ms. Wade back to Tuthill, who had twice denied her medical leave. The response was disheartening.

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 11 of 43

Second, Tuthill characterizes the leave as "personal" in his e-mail, but in the past he has willfully refused to characterize Ms. Wade's medical leave request as FMLA, so it is possible he mischaracterized this request too. Even if the request was submitted as "personal" it came so quickly on the back of her other requests, within 11 days of Tuthill's last written communication on the topic, which Tuthill <u>should have</u> suspected that it was related to Ms. Wade's prior medical leave requests. The reasonable inference is that the request was probably for medical leave. A jury should decide.

Third, it should not surprise anyone if Ms. Wade purposely characterized her leave as personal, since on October 9, 2003, Tuthill threatened to withdraw her classes if she took medical leave. He stated:

> As for OT 104 – Filing and Record Management: if you want to take it on, you are more than welcome. . . . But I don't see how we can do that if you are expecting to go on medical leave later this month. If that is likely to happen, then I need to find a substitute instructor for your Business English and Business Math classes, and an alternate instructor for OT 104.

Ex. 8. This statement is a clear threat: don't go on medical leave or I will take your extra duty classes from you.[8] Therefore, in the face of such a threat, it was reasonable for Ms. Wade to characterize her leave as "personal."

Finally, as demonstrated above, the College never requested medical certification, and therefore withholding leave after the October 20th request was indeed still violative. There is no basis for the College to receive summary judgment on this issue.

### e. Nov. 3 And Nov. 4 2003 Leave Requests Were Approved But The Leave Was Not Designated FMLA Protected, As Required.

Ms. Wade agrees that Defendants granted her time off in November 2003. However, Defendants failed to properly designate the leave as FMLA, as required under federal law.

---

[8] Subsequently, Tuthill made good on this threat, refusing to reinstate Ms. Wade to the very classes he said he would strip from her if she took medical leave.

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 12 of 43

Defendants ask the court to excuse their failure to designate the medical leave as FMLA protected based on the fact that they granted the leave. But their failure had real life consequences. By not designating the medical leave as FMLA, Ms. Wade did not recognize that she was covered by federal law and entitled to protections. Defendants' failure to provide her this information further prevented Ms. Wade from obtaining any specific documentation from her doctor to support her claims. Defendants' failure to designate the leave as FMLA also prevented Ms. Wade from notifying her doctors that she was on protected leave. If she had, the doctors might have made more detailed notes in their charts about her treatment. If Ms. Wade was aware of her FMLA status, she could have researched her rights both before and after her leave and been able to articulate her needs more forcefully. Defendants deprived Ms. Wade of more than status, they deprived her of her rights. Defendants should not receive summary judgment on this issue.

### B. As A Matter Of Law, Ms. Wade Was Not Properly Reinstated.

Ms. Wade returned from medical leave and was not properly reinstated as required by the FMLA. Ms. Wade was scheduled to teach Business English Module C and Business Math Module C starting in November 2003 as part of her regular duty teaching credits. John Tuthill confirmed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C. That was the plan at that time." Ex. 9, Tuthill Depo. at 187. "But for her leave [Ms. Wade] would have been teaching Module C." *Id.* But because Ms. Wade took FMLA protected leave, John Tuthill replaced Ms. Wade with other instructors in each of those classes and refused to reinstate Ms. Wade to those classes when she returned from FMLA leave. Defendants compounded their violation by determining that Ms. Wade had not met her contractual amount of hours, and then further penalized her by refusing to pay for extra duty classes that she had already performed. Ex. 10 at 3. The egregiousness of the violations certainly prevents Defendants from obtaining summary judgment.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 13 of 43

### 1. The Law Requires Reinstatement To A "Virtually Equivalent" Position.

The FMLA entitles employees who have returned from family medical leave to be reinstated to the position they held before leave, or to a position with "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. §2614(a)(1)(A) and (B). An employee is entitled to the same rights, benefits and position of employment that she would have been entitled to had the employee not taken the leave. 29 U.S.C. §2614(a)(3)(B).

29 C.F.R. §825.215 answers the question "What is an equivalent position?"

> (a) An equivalent position is one that is <u>virtually identical</u> to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. . .

*Id*. emphasis added.

An employee's right to job restoration applies even if the employer has found a replacement for the employee during her leave. 29 C.F.R. §825.214(a) ("An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.")

### 2. As a Matter of Law, Ms. Wade Was Not Properly Reinstated To Her Position.

Ms. Wade was required to teach a total of 12 hours during the Fall semester. Ex. 11 Ms. Wade accepted "added duty" contracts and was therefore engaged to teach a total of 17 credit hours, including four classes that were "on-line" computer classes (referred to as Blackboard courses) and to teach in-class courses. The classroom courses were "modular", taught in 3-parts over one semester.

Business English 109 C and Business Math 105 C were part of Ms. Wade's regular 12 hour classes.[9] Ex. 10. Several of Ms. Wade's courses had already

---

[9] Defendants mistakenly argue that the courses were part of Ms. Wade's added duty contracts. Memo at 30. Their own documents prove that the classes were not added duty, but a part of her regular 12 hours. Ex. __.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 14 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

finished prior to her November 2003 leave. Those were extra duty classes that were ready to be paid. *Id.*

During the fall 2003 semester, Bobbi Wade was on medical leave from November 12, 2003 until November 26, 2003. Ex. 12. She was on leave for 11 work days, but was only absent for about 7 classes, because the classes did not meet every day. Because Ms. Wade would not be present for two of her in-class courses while she was away from Barrow, John Tuthill hired two other teachers for just her two in-class courses: Business English, Module C and Business Math, Module C. Ex. 9, Tuthill Depo. at 36-37. These were Ms. Wade's only remaining in-class courses.

Ms. Wade was scheduled and expected to teach the module classes. John Tuthill confirmed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C. That was the plan at that time." Ex. 9, Tuthill Depo. at 187. "But for her leave [Ms. Wade] would have been teaching Module C." *Id.* When Ms. Wade returned from leave, John Tuthill refused to reinstate Ms. Wade to teach her regular courses, Business English, Module C and Business Math, Module C. Defendants admit that they did not place Ms. Wade back into the two Module C courses. Ex. 13, Answer to Request for Admission No. 4, First Discovery Request To Defendant Ilisagvik College. The rationale for not reinstating Ms. Wade to the classes was: in one class she would have missed three out of eight classes and in the other, she would have missed four out of ten classes. *Id.*, and Ex. 9, Tuthill Depo. at 37.

Defendants decided that because Ms. Wade did not teach her scheduled 12 hours of courses, that they would withhold payment from two extra duty contracts that she had already performed. Ex. 10. Rather than paying Ms. Wade for the extra duty classes, the College applied the extra duty credits as part of her 12 regular duty hours. The differences between the position she should have had and the one she was reinstated to are not de minimus, intangible or unmeasurable, since the change was accompanied by a measurable loss in pay.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 15 of 43

Further proof of the violation is memorialized by Tuthill's assistant in notes she took during a meeting on December 19, 2003 when Tuthill told Ms. Wade that her 12 hours were not met "because Bobbi had to take medical leave." Ex. 14. Therefore, clearly, Ms. Wade was penalized $4500 for taking FMLA leave and was not properly reinstated because she took medical leave. No reasonable person can maintain that a loss of $4500 pay solely because Ms. Wade took medical leave was not a violation. As a matter of law, this court cannot grant summary judgment to Defendants on the issue of reinstatement

Further, it would be improper for the court to determine as a matter of law the amount of damages Ms. Wade is entitled to based on Defendants' violation. Defendants have not taken into account the diminishment of Ms. Wade's PERS retirement account for their failure to pay her the money to which she was entitled. $4500 is not the full amount of lost compensation and damages should be heard by a jury. Summary judgment for Defendants is improper.

### C. Ms. Wade's Interference Claim

Defendants summarize their arguments and claim that they are entitled to summary judgment on the interference claim. However, as noted above, Defendants refused to grant Ms. Wade leave, required that she prove her leave could not wait, failed to notify her that she was entitled to FMLA protection, and failed to properly reinstate her, all of which are interference claims. Ms. Wade has established more than enough evidence to proceed to a jury on her interference claim. Summary judgment for Defendants must be denied.

### D. Defendants Were Required To Provide Ms. Wade With Written Notice Of Her FMLA Rights, and They Did Not.

The College violated Bobbi Wade's rights when it failed to provide her with a written request for medical certification. It violated her rights again when it failed to notify her in writing of the consequences of failing to provide proper certification.

In the effort to determine whether the leave is FMLA qualifying, an employer must notify the employee in writing of his/her rights detailing the "specific

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 16 of 43

expectations and obligations of the employee and explaining any consequence of a failure to meeting these obligations." 29 C.F.R. §825.301(b). Written notice is in addition to any posted notice or notice in an employee handbook, indicated by the word "also" in 29 C.F.R. §825.301(b). The FMLA's implementing regulations require that an employer provide notice "within a reasonable time after notice of the need for leave is given by the employee-within one or two business days if feasible." 29 C.F.R. § 825.301(c). If the employer fails to provide adequate and timely notice, it "may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. §825.301(f).

Because Defendants failed to provide the proper notice of rights, Defendants were precluded from taking any action against Ms. Wade and should have granted her leave request based upon the documentation she provided. The College violated Bobbi Wade's rights when it actually denied Bobbi Wade's request because she did not provide the "proper" certification even though it had not given her the required written notices. 29 C.F.R. §825.301(1).

Compounding the notice problem was Ms. Taylor's refusal to help an employee as required by the FMLA. Taylor did not just hand out notification unless an employee said that the right words. Ex. 15 Taylor Depo. at 156. Contrary to the FMLA, Taylor expected the employee to affirmatively state that they had a "serious health condition" in order for her to provide a notice of rights. *Id.* Taylor thereby set up a scenario wherein only a very sophisticated employee could obtain FMLA leave.

It is undisputed that defendants did not ever tell Ms. Wade her FMLA rights, did not tell her that her leave might qualify for FMLA protection, nor did they tell her what might happen if she failed to provide them with the proper medical certification. Pam Taylor stated that she never provided notice of FMLA rights. As a matter of law, Defendants violated Ms. Wade's rights and Defendants are not entitled to summary judgment.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 17 of 43

### E. Defendants Have Not Proven The FMLA Definition Of Good Faith and Liquidated Damages Are Mandatory.

Defendants ask the court to determine that their actions were in good faith. However, they have focused their attention on one small aspect of the case only. Good faith is dependent on Defendants' overall actions, which were not in good faith.

The FMLA provides that a court **shall** award liquidated damages, doubling the amount of lost compensation plus interest, for violation of the FMLA. 29 U.S.C. §2617(a)(1)(A)(iii). The award is mandatory unless the employer can come forward to prove good faith and that they acted with reasonable grounds for their actions order to avoid liquidated damages. The employer has the burden of proof and must prove both independently. *Cooper v. Fulton County, Ga.*, 458 F.3d 1282 (11th Cir. 2006) ("In other words, if, as here, the employer subjectively acted in good faith but its conduct was objectively unreasonable, then it is not an abuse of discretion to award liquidated damages."). See also *Wilkerson v. Autozone, Inc.*, 152 Fed.Appx. 444, 450 (6th Cir. 2005) ("In the case at bar the jury did not find that AutoZone acted in good faith and with reasonable grounds for believing that it was not in violation of the statute. We are not persuaded that AutoZone succeeded in establishing its good faith as a matter of law.")

In fact, the Ninth Circuit has determined that actions like those taken by Defendants in this case are relevant in determining good faith. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.6 (9th Cir. 2003) stated:

> Further, the repeated interference with and mischaracterization of her FMLA leave will likely be relevant when determining liquidated damages should Liu prevail on her claim. See generally *Bachelder*, 259 F.3d at 1130 (explaining that an employer may be liable for liquidated damages, "unless it can prove that it undertook in good faith the conduct that violated the Act and that it had reasonable grounds for believing that [its action] was not a violation of the Act" (internal quotations omitted)). Liu's repeated leave requests and involvement of the Human Resources Department weigh against arguments of good faith by Amway.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 18 of 43

In this case, Defendants' repeated denial of Ms. Wade's medical leave and insistence upon her obtaining proof that her medical leave could not wait until Christmas is not good faith. Even if the court finds that Defendants subjectively acted in good faith, their conduct was objectively unreasonable and therefore cannot be "good faith" as used in the FMLA.

Defendants claim that they consulted an attorney and therefore their actions were in good faith, relying upon a very thin line of cases, none of which are Ninth Circuit cases nor even in a district court in a state under the Ninth Circuit's jurisdiction. In fact, the two cases cited by Defendants were published just after the FMLA was first established. The cases cited by Defendants require a two step process: 1) the employer take active steps to ascertain the law; and 2) the employer must move to comply with the law. **

In this case, Defendants can only prove that prior to denying Ms. Wade's leave in October, Taylor and Tuthill called their general counsel, Cheryl McKay, and asked her for advice. However, once they were told what to do by their attorney, neither defendant actually followed her advice. For example, McKay told them to reinstate Ms. Wade to a "reasonably equivalent" position. Ex. 16, McKay Depo. at 31. Defendants did not merely make a mistake in carrying out McKay's advice. Instead, they actively failed to abide by her advice.

Taylor stated that both she and Tuthill heard Ms. McKay's advice, and so Taylor did not discuss the details of Ms. Wade's reinstatement with Tuthill. Ex. 15, Taylor Depo. at 167-168. Therefore, Tuthill did not even consult with the Human Resources Director before refusing to fully reinstate Ms. Wade. There was no demonstration of good faith.

Worse, Taylor refused to process Ms. Wade's grievance regarding Defendants' failure to properly reinstate her. Ex. 1. This does not demonstrate good faith.

Even worse, Tuthill, with Taylor's approval, fired Ms. Wade a month and a half after she returned from medical leave, after he refused to properly reinstate

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 19 of 43