

April 8, 2004

Bobbi Wade, Assistant Professor
Ilisagvik College                                          *Hand Delivered*

    RE:   *Step 3 Grievance Meeting*

Dear Ms. Wade:

    I have had an opportunity to review your letter to me (dated March 30, 2004) and the procedural aspects of the grievance filed by you on February 29, 2004. On consideration of all the circumstances, Ilisagvik College agrees to waive the timeline for accepting your appeal for determination at the Step 3 level of the grievance procedure. I designate Dr. Patrick O'Rourke as the hearing officer for your appeal.

    In accepting your appeal, I note that a Step 2 meeting did not occur, and the Step 2 decision was based on written documentation submitted with your grievance. In order to provide you with a full chance to be heard on the matter of your grievance, Ilisagvik College offers you the opportunity to present your Step 3 appeal in a face-to-face meeting in front of the hearing officer. I have scheduled a meeting for this purpose on **Friday, April 16, 2004, at 1:30 p.m. in the Dr. Albert Conference Hall.**

    The meeting will be closed door. Each side will have approximately 20 minutes to make their presentation and introduce any additional documentary argument or evidence. This is not a due process hearing, so there will be no witnesses or cross-examination, although the hearing officer may ask questions of each party. After the hearing officer completes his questioning, each party may present a five-minute summary. Either side may tape record the meeting, at their expense.

    You have the right to be represented by a person of your choosing at the meeting. If you choose to exercise this right and be represented, either in person or telephonically, please inform me, in writing, that you will be represented and by whom, no later than close of business on Monday, April 12th.

Date: 5406   Exhibit 58
Witness: Taylor
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

**100118**



P.O. Box 749  BARROW, ALASKA 99723   907-852-3333   FAX 907-852-2729
*SERVING THE RESIDENTS OF THE NORTH SLOPE*

EXHIBIT __24__
PAGE __1__ OF __2__

Exhibit __17__
Page __1__ of __2__

April 8, 2004
Page 2

If you would prefer to waive the face-to-face meeting and have Dr. O'Rourke decide your grievance based solely on the written documentation submitted thus far, please inform me, in writing, also no later than close of business on Monday, April 12, 2004.

Any objection to the appointment of Dr. O'Rourke as hearing officer should be addressed to me and received by my office no later than close of business on Monday, April 12, 2004. Any objection must be in writing, and state the reason(s) for the objection, and include any pertinent supporting documentation.

Please contact me with any further questions.

Sincerely,

Edna Ahgeak MacLean, Ph.D.
President

cc:    Dr. Patrick J. O'Rourke
       Dr. John Tuthill

**100119**

EXHIBIT 24
PAGE 2 OF 2

Exhibit 17
Page 2 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| BOBBI WADE, | |
| --- | --- |
| Plaintiff, | |
| v. | |
| ILISAGVIK COLLEGE; NORTH SLOPE BOROUGH; JOHN TUTHILL, individually; and PAMELA TAYLOR, individually, | |
| Defendants. | Case No. A05-086 CV (JWS) |

**TRANSCRIPT OF GRIEVANCE HEARING**

**June 24, 2004**

**<u>Appearances</u>**

| | |
| --- | --- |
| **Hearing Officer** | **Patrick O'Rourke** |
| **Employee** | **Bobbi Wade** |
| **Counsel for Employee** | **Ted Stepovich (telephonic)** |
| **Employer** | **John Tuthill, Ilisagvik College** |
| **Counsel for Employer** | **Cheryl McKay** |

EXHIBIT __25__

PAGE __1__ OF __3__

**Ms. Wade:** No. At this time I choose not to.

**MR. O'ROURKE:** Okay, I just wanted to make sure that you got plenty of opportunity to elaborate on your grievance…..

**Ms. Wade:** Yes

**MR. O'ROURKE:** ……..in any way that you would choose here….

**Ms. Wade:** I've stated everything that I care to state in my grievance.

**MR. O'ROURKE:** And you have nothing further to add to that?

**Ms. Wade:** No. Not at this time.

**MR. O'ROURKE:** This is………..I do want to remind both parties….

**Ms. Wade:** Um, hm

**MR. O'ROURKE:** ………this is the last time (laugh)……for anything to be stated internally.

**Ms. Wade:** Yes.

**Ms. McKay:** Yes, I understand.

**MR. O'ROURKE:** Ah, and…………

**Mr. Stepovich:** One……….This is Ted Stepovich.

**MR. O'ROURKE:** Yes?

**Mr. Stepovich:** One concern I have in regards to Bobbi addressing these issues is the fact that there are a number of documents that have been presented to the hearing office which are asked to be considered as evidence in this matter and they're being presented to Bobbi today for the first time and it puts her at a disadvantage, in that, obviously she has not had an opportunity to go through these exhibits and there may be issues in there when she gets an opportunity to go through that she'd want to address. At this point there's….

**MR. O'ROURKE:** I……..

**Mr. Stepovich:** ……….no way to tell.

**MR. O'ROURKE:** I acknowledge that. Although having read the Administration's documents about an hour before the meeting I would say that there's some representation of them are fairly accurate to what is contained in the written file, and so both you and Ms. Wade had the opportunity to sit through that as well and if there were any litigating circumstances that anyone wanted to address regarding those issues I would be happy to hear them.

EXHIBIT _25_
PAGE _2_ OF _3_ Page 19

**Ms. McKay:** Um, I would, I would just clarify that the vast majority of these 35 documents are either from Ms. Wade's personnel file, which she has a copy of, they are E-mails directly between Ms. Wade and the Dean of Instruction. There are, or are, copies of internal college policies which she also has a copy of. The documents that have been not shared with her were the confidential student reports from the retention officer, the compilation of faculty ages, which was prepared for this hearing, and a copy of Dean Tuthhill's notes that he prepared in preparation for his meeting with President McLain summarizing those reasons. There may be odd, other documents in there that are directly from students but I'd submit that the majority of the documents have already been seen in one form or another.

**MR. O'ROURKE:** A question to the Administration. You indicated that, I think it was in exhibit, um..........well it's ah.....Exhibit 29, I believe, and possibly 30-Sonya Abu's....um.....concerns that were raised with Dean Tuthhill. Is that a correct classification?

**Ms. McKay:** Yes.

**MR. O'ROURKE:** Could you tell me how those came to be?-How was it that Sonya Abu.......

**Ms. McKay:** Do you want to.....

**Tuthhill:** Sure............

**Ms. McKay:** .........handle that issue.

**Tuthhill:** Throughout the semester I would drop in, informally, to Sonya's office from time to time, off and on for a weekly basis and simply ask, "How are things going?" "How are the students doing?" "Are there any problems that I should be aware of?" And in October she began to report increasing numbers of (inaudible) students in Ms. Wade's classes. I asked her to keep me informed and (inaudible) weekly reports.

**MR. O'ROURKE:** Did she provide you with information on problems in any other classes?

**Tuthhill:** Yes she did.

**MR. O'ROURKE:** Other faculty?

**Tuthhill:** Yes she did

**MR. O'ROURKE:** And did you invite that same....

**Tuthhill:** Yes I did

**MR. O'ROURKE:** .....from her? (clearing throat)............(long pause; pages rustling).....I then have no further questions, I think for either party and ... .I want to give you, (laughing) one last opportunity Bobbi to address anything that you heard here.

**Ms. Wade:** No, I don't have anything that I want to address at this time.

EXHIBIT _25_ Page 20
PAGE _3_ OF _3_



| | | |
|---|---|---|
| J. DAVID BENNETT, P C.† | KARNA R. GUSTAFSON‡ | CYNTHIA M. COOPER |
| DAVID L BLOUNT, P C.* | ROBERT B HOPKINS, P.C.* | CHERYL L. MCKAY |
| PHILIP BLUMSTEIN, P C | ROBERT H. HUME, JR., INC† | DAIN PAULSON* |
| DAVID S CASE, P C | JODEE K KELLY^ | KYLE SCIUCHETTI‡ |
| MITCHEL R COHEN, P.C.* | THOMAS M. LANDYE, P C.* | CINDY THOMAS |
| STUART K. COHEN, P.C.* | JEFFREY S MUTNICK, P C.* | J D WILLIAMS* |
| JAMES S CRANE, P C † | GLEN PRICE, P.C. | |
| KIM DUNN, P.C | P STEPHEN RUSSELL III, P C.* | *OREGON STATE BARS |
| DAVID N GOULDER, P.C * | THANE W. TIENSON, P C ‡ | †ALASKA AND OREGON STATE BARS |
| | RICHARD S YUGLER‡ | ‡WASHINGTON AND OREGON STATE BARS |
| | | ^IDAHO AND OREGON STATE BARS |
| | | ALL OTHERS ALASKA STATE BAR ONLY |

July 6, 2004

<u>VIA COURIER</u>

Ted Stepovich
Law Office of Ted Stepovich
841 I Street
Anchorage, AK 99501

    Re:   Ilisagvik College/Bobbi J. Wade
    Our File No.: 01737.015

Dear Mr. Stepovich:

    Enclosed is the administration's binder for the Faculty Grievance Hearing on June 24, 2004, along with a Notice of Errata.

    Please give me a call with any questions.

                Very truly yours,

                LANDYE BENNETT BLUMSTEIN LLP

                Cheryl McKay

Enclosure:   Binder
              Notice

EXHIBIT __26__
PAGE _1_ OF _3_
          25153
Wade v. Ilisagvik

M:\CLIENTS\01737 Ilisagvik College\015 Bobbie Wade Grievance\Ltr T Stepovich re exh-err 7-6-04 doc



Alaska:  701 West Eighth Ave., Suite 1200  •  Anchorage, Alaska 99501  •  Tel: 907.276-5152  •  Fax: 907.276-8433
Oregon:  3500 Wells Fargo Center  •  1300 S.W. Fifth Ave.  •  Portland, Oregon 97201  •  Tel: 503 224-4100  •  Fax: 503 224-4133

# ILISAGVIK COLLEGE

## Before Hearing Officer Dr. Patrick J. O'Rourke

In re:                           )
                                 )
    BOBBI J. WADE                )
                                 )
Informal Hearing                 )
_____  )

## NOTICE OF ERRATA

This Notice of Errata is provided to Hearing Officer O'Rourke and the parties following the informal hearing held on June 24, 2004 in Barrow, Alaska on the matter of the non-retention of Bobbi J. Wade ("Wade"). At the hearing, Ms. Wade objected to Exhibit 17 from the Ilisagvik College Administration (the "Administration" or the "College"). Exhibit 17 (copy attached) is a letter to Wade from Edna Ahgeak MacLean, Ph.D., President of Ilisagvik College, dated April 8, 2004. The letter waives the timeline for accepting Wade's appeal for resolution at Step 3 of the College's Grievance Procedure, designates a hearing officer and sets forth the procedures for the informal hearing. On the record at the informal hearing, Wade objected to the exhibit, stating that she had not seen the document prior to the hearing and that she was surprised that she would have an opportunity to provide oral testimony at the hearing.

Exhibit 17 contains a typed designation that the letter was hand delivered to Wade. The document does not contain a signed acknowledgement of receipt or any other confirmation that the letter was, in fact, personally delivered to Wade. The College can

EXHIBIT ___24___
PAGE _2_ OF _3_            25151

Notice of Errata                                Page 1        Wade v. Ilisagvik

find no verification that Exhibit 17 was delivered to Wade personally or by courier. Accordingly, the Administration concedes that Exhibit 17 was not hand delivered to Wade as indicated on the face of the document.

However, even if Exhibit 17 was not hand delivered to Wade, the record contains numerous references to the June 24 meeting as a "informal hearing." (See Administration's Exhibit 18, 19 and 20.)  It is reasonable to deduce from these references and the grievance procedure that an informal hearing would involve oral presentation by the parties.  Further Ms. Wade is entitled only to an opportunity to be heard on the matter of her nonretention.  She was provided that opportunity.

That being said, the Ilisagvik College Administration has no objection to allowing Ms. Wade a limited period of time to submit additional documentary evidence or a telephonic opportunity for oral presentation in response to the Administration's materials and oral presentation.

DATED this 30th day of June, 2004, at Anchorage, Alaska.

_____
Cheryl L. McKay
Attorney for Ilisagvik College Administration

Address:      Landye Bennett Blumstein LLP
              701 W. Eighth Avenue, Suite 1200
              Anchorage, AK  99501
              cherylm@lbblawyers.com

M:\Clients\01737  Ilisagvik College\015 Bobbie Wade Grievance\Notice of Errata.v2 doc

EXHIBIT  24
PAGE  3  OF  3
Notice of Errata

25152
Wade v. Ilisagvik
Page 2

# ILISAGVIK COLLEGE

## Step 3 Grievance Hearing and Decision
## In the Matter of Bobbi Wade vs. Ilisagvik College
### Re: Non Retention of Services for 2004/2005

## Introduction

This matter came before Patrick J. O'Rourke (Step 3 Hearing Officer) on June 24, 2004 at 1:30 p.m. in the main building of the NARL campus. Bobbi Wade appeared in person and was represented by Ted Stepovich who was connected by teleconference from his offices in Anchorage, Alaska. Ilisagvik College was represented by John Tuthill, Dean of Instruction and Cheryl L. McKay, attorney for Ilisagvik College.

Both parties were given the opportunity to present information relevant to their positions both orally and in writing. The hearing officer received Ms. Wade's written materials on Monday, June 21, 2004 and the College's written materials the morning of Thursday, June 24, 2004. Both packets of materials were read in advance of the hearing and again, following the close of the hearing.

Ms. Wade declined to make an oral presentation, stating that she did not know she would be asked to do so and that she had put forward the entire facts of her case in the written materials she submitted. She did agree to answer questions.

Cheryl McKay made the oral presentation for the Administration of the College and both she and Dean Tuthill answered questions put to them by the Hearing officer.

The proceedings were tape recorded, copies of which are available to either party at cost. The permanent tapes reside with the Ilisagvik College Human Resource Director, Pam Taylor.

Both parties were informed that, as this was Step 3 of the grievance process at Ilisagvik College, this would exhaust the internal remedies available.

EXHIBIT _27_
PAGE _1_ OF _7_

20912
Wade v. Ilisagvik College

Date: _5-4-06_ Exhibit: _60_
Witness: _Taylor_
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.

## FINDINGS

The following are my findings based on the oral and written presentations, the questioning which followed and review of Ilisagvik College Personnel policies.

1. Bobbi Wade is completing her fourth year (4th) as a faculty member at Ilisagvik College.

2. Ms. Wade's most current employment contract was for the period July 1, 2003 through June 30, 2004 and carries the following statement: *"faculty are not tenured and have no expectation of continued employment."*

3. Ilisagvik College does not have "tenure" for faculty and the Employee Handbook (p. 49) notes: *"Faculty are not tenured and have no expectation of continued employment."* (Policy 7.05)

4. Faculty in their third and subsequent year of employment who will not be rehired for the next year are required by Board of Trustees policy to be notified by February 1.

5. In response to a question by the Hearing officer, Ms. Wade acknowledges the preceding terms of her employment.

6. On January 28, 2004, Bobbi Wade received a Personnel Action form signed by John Tuthill, Pamela Taylor, John Van Hoesen and Edna A. MacLean indicating her contract would not be renewed for the year, 2004/2005.

7. Had Ms. Wade been rehired for the year, 2004/2005, she would have been able to vest in the Public Employee Retirement system (PERS). Her not being rehired has resulted in her not being able to vest.

8. By letter dated February 28, 2004 Ms. Wade initiated a grievance against this action by Ilisagvik College, alleging wrongful termination based upon the following reasons:

   a.  Age Discrimination.

   b.  Vindictiveness and retaliation by John Tuthill, Dean of Instruction.

   c.  Debasement and Defamation as justification for non renewal of contract.

EXHIBIT___27___
PAGE_2_OF_7_

9.  On March 5, 2004, John Van Hoesen to whom the grievance was assigned by President MacLean scheduled a Step 2 meeting of the parties to try to bring about informal resolution of the complaint. This did not result in a satisfactory resolution and on March 12, 2004 Mr. Van Hoesen, after *"review of the facts, circumstances and all of the information submitted"*, found the complaints to be without merit and denied all forms of redress requested by Ms. Wade, thereby affirming the non retention.

10.  On March 30, 2004, Ms. Wade appealed the Step 2 decision to President MacLean. President MacLean allowed the appeal and scheduled the step 3 hearing.

11.  On June 21, 2004 Ms. Wade was offered a non faculty ABE/GED instructor position for the 2004/2005 academic year which would have allowed her to continue in the Public Employees Retirement System (PERS) and thereby, vesting for the purposes of retirement.

12.  Ms. Wade, at the hearing, indicated she had no intention of accepting that position.

13.  The Administration proffered the following reasons for Ms. Wade's non retention.

   a.  high number of student complaints.

   b.  Insufficient academic background for the area in which she teaches.

   c.  A low level of student success especially in Blackboard courses.

   d.  Poor professional judgement related to promising certain students Deferred grades when they were enrolled in courses taught by other instructors.

   e.  Failure to submit timely grades was harmful to some students who were not timely informed that they had not satisfied certain prerequisites for higher level courses.

EXHIBIT 27
PAGE 3 OF 7

## DISCUSSION

### Age Discrimination

Ms. Wade states that Aimee Valenti and Tim Carlson were hired to replace her by teaching two classes that she had previously been scheduled to teach. She also indicates that a younger faculty member, Chris Low, had already been hired and would replace her in her teaching position next year. Further, she alleges that the College would save money by replacing her with a younger person and eliminating any responsibility for contributing to her retirement.

The administration responded by noting that Aimee Valenti was a temporary hired last year and that Tim Carlson was a Math instructor, not Business Administration. The College also notes that Chris Low is 61 years of age and is scheduled to teach other courses. The administration testified that of the 14 faculty at the College, 12 are over the age of 40 and 10 of these are over the age of 50. Dean Tuthill does acknowledge that the College will be recruiting a replacement for Ms. Wade but that it will also have to pay into the Public Employees Retirement system for that individual, thus, does not see the savings Ms. Wade seems to feel is there.

Both parties acknowledge that a June 21, 2004 offer of employment was made to Ms. Wade which would have allowed her to continue in the Public Employment Retirement system (PERS) during 2004/2005.

In light of the exhibits and testimony presented by both Ms. Wade and the administration, there is insufficient evidence to draw the conclusion that age discrimination is at work.

### Vindictiveness and Retaliation

Ms. Wade indicated that she has had disagreement and conflict with a temporary instructor, Aimee Valenti, and that her complaints against Ms. Valenti caused problems for Dean Tuthill to use Ms. Valenti's teaching services and this, in part, led to Ms. Wade's non renewal of contract.

EXHIBIT _27_
PAGE _4_ OF _7_

A review of exhibits submitted by both Ms. Wade and the administration offers no proof of this accusation and Ms. Valenti's employment with Ilisagvik College was temporary in nature. She does not have a contract to teach for the College next year. It is noted that Ms. Valenti's teaching field is English as a Second Language and Ms. Wade's responsibilities have been in Business and Office Occupations. Thus, no link has been established that there is any relationship between Ms. Wade's complaints against Ms. Valenti's teaching for the College during the past year and Ms. Wade's non retention for the following year.

## Debasement and Defamation as Justification for Non Renewal

Ms. Wade's allegations in support of this claim are contained in her Exhibit 12. A review of these documents does not reveal any unreasonable actions on the part of the Dean and seem to fall within his responsibilities for assuring the quality and integrity of the College's instruction.

Conversely to Ms Wade's assertions, her Exhibit 12 actually seems to bolster the administrations assertions that it had non retained her services due to a number of reasons including insufficient success of the students in her classes. It is perfectly reasonable that the Dean of Instruction would look at this data for his faculty and take steps to try to bring about improvements.

The communications dated January 15, 2004 and January 20, 2004 are between the Dean and Ms. Wade and thus are private communications and cannot be considered Defamatory. While the Dean is direct in his communications with Ms. Wade, there is certainly nothing contained within them that a reasonable reading could construe as debasing.

Additionally, it is noted that in accordance with Board of Trustees, policy and contract terms, no justification for non retention is required.

## Student Complaints

The administration presented its Exhibit #29 citing communications between Sonya Abu, Student Retention Officer and Dean Tuthill which

EXHIBIT 27
PAGE 5 OF 7

show a series of complaints reaching Ms. Abu from students regarding Ms. Wade's classes. Ms. Wade offered nothing in response to this exhibit.

## Insufficient Educational Background for teaching area.

The administration notes that Ms. Wade's academic degrees and training are in the area of Education while she teaches in the Business administration program and thus, this is not strong enough preparation for the courses she is teaching. Ms. Wade seems to feel that her level of degree is what is important rather than the areas in which she has received coursework. While she might disagree with the administration's decision in this regard, it is up to the administration to set the standards for the institution.

## A Low Level of Student Success in Ms. Wade's Courses

Exhibit #31 from the Administration showed concern from the Dean over a 23% success rate in Ms. Wade's Blackboard courses. Ms. Wade did not challenge this data.

## Poor professional judgement

Administration exhibit #32 was presented by the administration in support of its actions and was not countered by Ms. Wade.

## Failure to submit timely grades was harmful to some students

Administration Exhibit #30 was presented to substantiate this portion of its reasons for non retention. Ms. Wade offered nothing to suggest otherwise.

EXHIBIT 27
PAGE 6 OF 7

## CONCLUSION AND DECISION

Based on the written testimony and oral presentations at the Step 3 Hearing, I find as follows:

1. The actions taken by Ilisagvik College in non retaining Ms. Wade for the 2004/2005 year were in accordance with Ilisagvik College policies and no policies were violated. Notices were timely given and acknowledged.

2. The evidence submitted alleging age discrimination is insufficient to sustain the charge.

3. There is no substantive evidence presented to sustain the charge that Dean Tuthill acted in a vindictive and retaliatory fashion against Ms. Wade.

4. There is no evidence of debasement or defamation but rather an attempt by the Dean to bring about improvement with one of his instructors.

5. The reasons proffered by the administration in support of its decision to non retain Ms. Wade are uncontested and are substantive in nature. Thus, taken in their totality, they certainly appear to offer sufficient reasons for the action.

Accordingly, the decision to non retain Bobbi Wade is AFFIRMED. This is the final decision of the hearing officer on behalf of the parties.

By: _____

Patrick J. O'Rourke

Hearing Officer

July 6, 2004

EXHIBIT ___27___
PAGE __7_ OF _7_

Date: 8-1-06    Exhibit: 39
Witness: Taylor
Marci L. Lynch, Court Reporter
Liz D'Amour & Associates, Inc.
(907) 452-3678

Memo to:      Dr. Edna MacLean
cc:           Pam Taylor

Memo from:  John Tuthill

Date:         December 12, 2003

Subject:      Detailed Response to Bobbi Wade's "Formal Grievance"

The "Formal Grievance" document makes several specific allegations against me in my role as Dean of Instruction of the College. I take these allegations very seriously. Here is my response to each of them. In each case, I have left Bobbi's original in bold print, and my response follows in regular type.

The "Formal Grievance" states:

**"When I reported for work on August 18, my schedule was such that it was almost beyond reason. I had 31 new advisees, plus the 30 that I was already advising, making a total of 61 altogether. I had six classes beginning at the same time, because of the scheduling, with a total of 87 students. More were added on later. This is almost unheard of, because faculty members usually stagger the classes in order for the teaching load not to be a burden to the instructor. Then, too, the Blackboard classes had to be designed before the students could begin the courses. This is very time consuming and requires a lot of concentration and has to be done before the classes begin.**

**This problem could have been eased when one of my classes was cancelled. But, again, I was not consulted and the class was cancelled leaving the same schedule with all classes being taught at the same time. If I had been included in the decision, I could have rearranged the schedule to shift the class load to a little more balanced situation. Again, no consideration at all was given to me, or the load I was carrying. Also, it was in violation of my contract, which states that if a class is cancelled, it will be in consultation with the instructor prior to cancellation."**

I made the decision to cancel BUS 112 on September 3, 2003, at the very end of the late registration period. The class had an enrollment of four. I checked the program sheets for all four of the registered students, and discovered that none of them had to have the course that semester. I cancelled the course specifically to give Bobbi Wade some relief from her very heavy teaching load. The allegation that I cancelled the class without consultation with Bobbi Wade is untrue. Before the course was cancelled, Diana Kennedy telephoned Bobbi to tell her what we planned. Diana reported to me that Bobbi completely supported the course cancellation at that time, saying that it would be a help to her to have one less class to have to prepare.

EXHIBIT    28
PAGE  1  OF  8

21837
Wade v. Ilisagvik College

The "Formal Grievance" continues:

"I requested leave to take care of a medical problem. I had Module C of both Bus Math and Bus English to complete, because both courses are three credit hours of study, but I had scheduled each of them in three phases, Modules A, B, and C. I made a schedule for myself to teach Module C of both Bus Math and Bus English upon my return from leave (11 days), which the students in both classes agreed was satisfactory with them. The change in dates would have not been confusing to the students nor damaging to my classes. It would have been a smooth inclusion. Dean Tuthill totally ignored my schedule, which left my students in a state of confusion, because he hired other instructors in my absence to teach the third phase of the two classes that I was in the process of teaching. Again, this was done with no consultation with me. Also, he knew that my leave request was only for 11 days, which three class meeting would be held in my absence with the original schedule. Why was I not allowed the privilege of getting someone to substitute in my absence, and resume teaching the classes upon my return if he wanted to keep the original, and not adhere to my revised one? Others have taken leave. Did the Dean replace them while they were gone by hiring instructors to take their place, or did they make arrangements for their duties to be taken care of while they were gone, and then resume the duties when they returned, as is the usual procedure."

When Bobbi Wade initially requested the medical leave, *(from November 17/18)* she suggested that we delay the start of BUS 105C and BUS 109C to December 1/2, so that she could teach the courses on a more ~~intensive~~ schedule upon her return from leave. This schedule change would have ~~meant~~ BUS 105C ~~would be compressed~~ into a total of six class meetings; BUS 109C into a total of five. In consultation with Sonya Abu, I made the determination that such an intensive schedule was not in the best interests of the students, so I looked for other alternatives. *who had been working with several of the students in these classes*

I did not believe I could appropriately use a temporary instructor in Bobbi's absence, and then ask her to finish the course herself upon her return. Her medical leave necessitated her missing four of the total of ten class meetings scheduled for BUS 105C, and three of the total of eight class meetings scheduled for BUS 109C. I thought it would be disruptive to the students to change instructors half way through a very short term.

I identified two very capable and experienced instructors – Tim Carlson for BUS 105C and Aimee Valenti for BUS 109C – who agreed to handle the courses for us, and we processed their contracts.

The allegation that I acted without consulting Bobbi Wade is untrue. I talked to her over the telephone at least twice concerning plans for BUS 105C and BUS 109C, and she was duly notified that I had found suitable adjuncts to take care of the classes.

EXHIBIT __28__
PAGE __2__ OF __8__

21838
Wade v. Ilisagvik College

The "Formal Grievance" states:

"Then, too, the Business 109C teacher the Dean hired (Amiee Valante) to take over the class is an outside adjunct who has totally aborted my class syllabus, textbook, and teaching plans. The students were in a state of confusion upon my return and are being told that the teaching materials that have been previously used are wrong and they will no longer be used—that she is totally rewriting the course, and she is using a syllabus for Business 100. <u>This is an insult to my reputation as an instructor and defamation to my character.</u> It has always been my understanding that an adjunct will teach a course under the direction and plans of the Lead instructor of the department, and will use the teaching materials that are provided. All adjuncts have adhered to this policy until now. Now, it seems that this particular adjunct has taken over with all authority in my program and classes with no regards to my position. Plus, making remarks to the class that is <u>demeaning to me and my status as a full time faculty member with four years of service.</u> Up until now, I have always had the privilege of screening and hiring the adjuncts for my programs---all of a sudden that privilege has been taken away from me without due process."

While I certainly appreciate the assistance of the full-time faculty in identifying and screening potential adjuncts, I do not believe it is the policy of Ilisagvik College to give to the faculty the responsibility for "hiring" those adjuncts. In this particular case, Bobbi Wade was preparing to go on an emergency medical leave and offered no assistance in identifying potential adjuncts for the course, so I took the responsibility of handling it myself.

When Aimee Valenti agreed to take on the BUS 109C course, she went to see Bobbi Wade to request information about how the course was set up and what she should do. Bobbi was in class and refused to meet with her, rather rudely, in Aimee's estimation, and did not offer a later meeting time. Bobbi did give course material to Diana before she left, and Diana forwarded the material to Aimee subsequently. Aimee discussed her teaching plans with me as the course progressed. She found that the students had done very little actual writing in BUS 109A and 109B. She felt, and I agreed, that it was important that BUS 109C give them actual writing experience, and she has taught the course accordingly, with my full approval and consent.

The "Formal Grievance" states:

"<u>The adjunct instructor that has been teaching Bus 109 has for the past 3.5 years has been replaced without cause or provocation,</u> which is a very unethical procedure and damaging to the reputation of the college, because she is a very upstanding citizen of the community. "

I do not understand what this means. No "adjunct instructor" was replaced in this instance. The originally-scheduled instructor was Bobbi Wade herself; because of her medical leave, she was replaced with Aimee Valenti, who had taught successfully for us in the past. We are using an adjunct instructor for an evening section of BUS 109C –

EXHIBIT _28_
PAGE _3_ OF _8_    21839
Wade v. Ilisagvik College

Marie Ellen Keeter, but she was not asked to do the day-time section because she has a full-time job during the day and was therefore unavailable.

The "Formal Grievance" states:

"Also, the Bus Math 105 adjunct instructor was taken off the spring roster and replaced without notification. He, too, has been teaching Bus Math for the past two years, and is also a fine citizen of the community. "

The draft Spring 2004 Schedule from the Business Department listed Noli Alcantara as the instructor for BUS 105. I replaced this adjunct instructor with our full-time mathematics instructor, Tim Carlson, in order to give Tim a full 12-credit teaching load for the spring semester. No disrespect was intended to Noli Alcantara, but it seemed to me that it made more sense to use our full-time instructor, at no additional cost to the institution, rather than paying an adjunct to teach the course in the Spring Semester.

Before I made this change, I sent Courtneay Bartholomew, the department head, a memo asking if the change was acceptable to the Business Department faculty, and he responded positively.

The "Formal Grievance" states:

"Another upstanding citizen and leader in the community, was taken off the fall schedule without notice. This is not an ethical way to work with people of the community, and I am strongly opposed to it."

The one Business Department adjunct I removed from the Fall 2003 Schedule had presented academic credentials that I had, ~~and have,~~ good reason to believe were fraudulent. I explained the reasoning for my decision to Bobbi Wade at the beginning of the Fall 2003 Semester, when the decision was made, and explained to her what additional information I needed to receive before I would be willing to hire that particular instructor. No such additional material has since been forthcoming.

The "Formal Grievance" states:

"In late September, 2003, I applied for personal leave because I needed to go back to my family doctor for continuation of tests that I had begun in July while on summer break. I took my leave request in to Dean Tuthill and talked with him about rearranging my schedule as not to interfere with my teaching duties. I had the classes rescheduled on the proper change form and had talked with my students. Every student in the class agreed it was a better schedule than the old one. Dean Tuthill seemed agreeable and to think it was a workable schedule, but said he would need to look into it. I also presented him with a copy of a document from my doctor verifying that I needed the immediate follow-up."

EXHIBIT _28_

PAGE _4_ OF _8_

4

21840

Wade v. Ilisagvik College

In a couple of days, I went back into his office to inquire about my leave, he told me in a very abrupt attitude that he would not approve the change in the class schedule and, consequently, would not approve my leave, because it would interfere with my teaching schedule. The rescheduling of my classes was a very logical one and there was no reason it would not have worked. Yet, he would not allow me to use the rearranged schedule that would allow me to take the necessary leave time, and at the same time, keep the students content. Some of the students even decided to take a break while I was away, and we would all meet back to continue with the classes upon the specified date that I would return."

I rejected a total of at least three personal leave requests from Bobbi Wade during the course of the semester, on the grounds that her absence from instruction for an extended period of time would, in my estimation, "unduly interfere with the deliverance of instruction." My decision was based in part on concerns expressed to me and/or to Sonya Abu by students in her courses.

The "Formal Grievance" states:

"I was very disturbed by his lack of cooperation with me to work out a pressing problem, because I really needed the medical attention. I went to Pam Taylor and she advised me to fill out a request for medical leave along with verification from my doctor, which I did. But, this didn't satisfy Pam. She wanted more documentation from the doctor. Rather than try to obtain more documentation, I decided that I would go to the doctor here in Barrow and try to get by until the Christmas holidays, which was Dean Tuthills' suggestion. I told him that I would take his suggestion and wait until the Christmas holidays,and, in the meantime, took another 2 credit course to teach because there was no one to teach it. This was related that to Dean Tuthill in an email. By that, I thought he would approve time in December adjoining the holiday break for my seeing the doctor.

But, he denied that also, because I then applied for leave in December, and worked out an arrangement to have the classes completed by the time I took the leave days. But Dean Tuthill denied the request without even consulting with me about the arrangements I had worked out for my classes. He said I would have to stay on the job until Dec. 19. That, of course, would leave no time to see a doctor since most offices are closed the week of Christmas. "

I did reject Bobbi Wade's personal leave request that would have had her leave Barrow a week before the end of the semester. She told me that she had already changed the meeting schedule of her courses so that they would end early. I had received no course schedule change from Bobbi, and no change of her course meeting schedule had been approved by my office. In the absence of an approved schedule change, courses have to be met on the days and times originally scheduled, and students cannot be required to submit their work early.

EXHIBIT 28
PAGE 5 OF 8

21841
Wade v. Ilisagvik College

The "Formal Grievance" states:

"But, again, due to tests results from the local medical clinic, I submitted another leave request to Dean Tuthill on Nov. 3, and he did not respond at all. He did not even give me the courtesy of replying. Then, I got a phone call from the doctor in Barrow informing me that I must see a specialist immediately, because the type of treatment I needed (a Mose Procedure) could not be done in Barrow, and could not be done in Anchorage. Only when I reached the point that was critical did he sign a leave request, and this was done when Pam Taylor informed him that he had no choice."

I did approve Bobbi Wade's medical leave request as soon as she had presented me with the required medical documentation. The allegation that I approved the leave request only "when Pam Taylor informed" me that I "had no choice" is untrue. I approved the medical leave request as soon as I had the required medical documentation -- the medical documentation that I had been asking Bobbi to provide for the past month.
_previous_

The "Formal Grievance" states:

  Again, his denial of my leave request was in violation of my contract, because there was a reasonable plan to take care of my classes in my absence, and consequently, it would NOT have hindered my duties nor been in violation of my contract. It seemed he was trying to enforce his stated opinion of faculty leave time which was designated in a contract that was written and signed several months prior to his hire date."
_personal_
The College policy gives to the Dean of Instruction the responsibility of deciding when a faculty leave does, or does not, "unduly interfere with the delivery of instruction." No instructor has final authority to determine what is "a reasonable plan to take care of" classes.

The "Formal Grievance" states:

"For all the extra-duty units that were added to my schedule, I finally received the signed contracts from the Dean of Instruction. I signed the contracts and fulfilled the teaching and Blackboard designing duties that were required in the contracts. Dean Tuthill has voided two of the contracts for extra-duty pay without consultation with me. The teaching duties that were described in the contracts have been fulfilled. In other words, he has broken two extra-duty contract that had been fulfilled prior to his voiding them.

He contends that he took away two units of pay, because I am not teaching Module C of both Bus Math and Bus English. Those were my teaching duties, not contract units. Then, too, I would not have lost those teaching duties if the he had not taken them away from me without just cause. But, because he took away those two classes, he contends that I lack two units fulfilling the twelve hours required per semester.

6

EXHIBIT  _28_
PAGE _6_ OF _8_
21842
Wade v. Ilisagvik College

We have been told several times that if we don't fulfill the hours in one semester, we can make them up in another as long as we fulfill the required teaching units as prescribed by the end of the contract. I could have easily made up the two hours in the spring or summer semesters, and not had the two contracts broken. <u>Again, no meeting with me to discuss the situation, just blatant unethical procedure and a violation of two signed and fulfilled contracts."</u>

Bobbi Wade's "extra duty" contract, offering her compensation for eight additional credits ~~of compensation~~ for the Fall 2003 Semester, was based on the assumption that she would teach the full 12-credit instructional load that had originally been scheduled for her, in addition to the overload. When I assigned other instructors to teach BUS 105C and BUS 109C, that reduced her total teaching load from 20 credits to 18 credits, and her overload pay was correspondingly reduced. That is the normal operating procedure at this institution. It is true that I could have paid her for eight credits of overload compensation this semester and then required that she teach two additional credits next semester to make up for the two-credit reduction in her base teaching load this semester. I did not feel that was appropriate. Since Bibbi had been complaining about her heavy teaching load all semester, I wanted to do everything possible to keep her teaching load at the standard level of 12 credits for next semester. The allegation that I broke her contract is not true. ~~She did not fulfill her contract~~ when her medical leave required our hiring other instructors to teach two courses which had been assigned to Bobbi. We made the necessary adjustments; that is all.

The "Formal Grievance" states:

"I have worked very hard to build the Business Management programs at Ilisagvik College and have been given the academic freedom to do so up until the beginning of the fall semester, 2003. I have been told repeatedly, "You are the head of the business programs. You are the Lead Instructor." I have hired and mentored adjunct instructors, and they have fully cooperated with my leadership---until now. I have made schedule after schedule to accommodate students, tutored, advised, counseled, previewed and ordered textbooks and teaching materials for both my classes and adjunct classes; visited and accommodated village students to keep them interested and active. I have written programs, prepared courses, and written lesson plans to accommodate the demands of the work force people, and to meet the needs of the students who are older and need review courses in the basics---because I have lived in this environment long enough that I understand the needs. It doesn't happen overnight, it takes years of time to understand the culture and the lifestyle of the students and the community, and one does not begin by using unethical tactics on the people in the community who have lived and worked here for several years.

"I feel as if my classes are being taken away or rearranged without my knowledge or consultation in an unethical manner. Why? Why am I being demeaned as Lead Instructor of the Business Management programs after soon-to-be four years in this position? I feel I deserve an explanation. "

21843

Wade v. Ilisagvik College

EXHIBIT *28*

PAGE *7* OF *8*

I cannot speak to Bobbi Wade's performance in the past. I can say that she has had a very difficult semester in Fall 2003, and her performance and behavior has not inspired my confidence. The Fall 2003 Schedule for Business and Office Technology courses has been problematic throughout the term. In some instances, courses were scheduled at times in which the adjunct instructors were not available; in other instances, courses were scheduled with no instructors identified or available. The schedule was not Bobbi's fault, but she also did not provide sufficient leadership to her programs to resolve those problems. During the semester, I have received numerous complaints about her teaching from students: that she is unresponsive, unhelpful, unavailable, insufficiently challenging. Much of Bobbi's energy this semester seems to have gone into her repeated requests for personal leave, and not instruction. I am deeply concerned that the education of her students has been severely impacted for the worse. I note, for example, that at the end of this semester, she has administratively withdrawn a total of 11 out of 15 students in her BUS 100 course; 10 out of 20 students in her BUS 154 course; 4 out of 9 students in her BUS 233 course. These administrative withdrawals were submitted to the Registrar's Office two and a half weeks after the November 17 deadline. This action, and related anecdotal evidence I have been hearing throughout the semester, suggests to me that her instructional courses have been largely ineffective this semester, I suspect because she has been distracted by personal issues. My attempts to discuss instructional concerns with Bobbi this semester have repeatedly been rebuffed. Whenever she has been informed of student complaints, her concern has always been to identify the specific student making the complaint – "Who said that?" – not to address the problem.

Under the circumstances, I have not been able to rely on Bobbi Wade during my tenure thus far as Dean of Instruction, notwithstanding any contributions that she may have made to Ilisagvik College in the past.

EXHIBIT _28_

PAGE _8_ OF _8_

21844

Wade v. Ilisagvik College

## Tialutrell McCormick

**From:**    Edna MacLean
**Sent:**    Friday, August 16, 2002 3:30 PM
**To:**     Bobbi Wade
**Subject:** RE: Request for Professional Development

Bobbi,
I really appreciate the dedication and care you put into your teaching and your students.   Please keep me informed of activities as I take a great deal of pleasure hearing about the progress of our students.  Edna

> -----Original Message-----
> **From:** Bobbi Wade
> **Sent:** Friday, August 16, 2002 3:22 PM
> **To:** Edna MacLean
> **Subject:** RE: Request for Professional Development
>
> Thank you, Edna, for the permission and approval.   I certainly need to visit in Pt. Hope, so I will include that also. It will be a highly beneficial trip to my present and new students. Thanks again.
> Bobbi

> > -----Original Message-----
> > **From:** Edna MacLean
> > **Sent:** Friday, August 16, 2002 3:04 PM
> > **To:** Bobbi Wade
> > **Cc:** Diana Kennedy
> > **Subject:** Request for Professional Development
> >
> > Dear Bobbi Wade,
> >
> > Your request for Professional Development is approved.  If the detour to Point Hope can be done before school starts then by all means visit your students.  Its always good to have the face to face contact with village based students.

Edna Ahgeak MacLean, Ph.D.
President
Ilisagvik College
Box 749
Barrow, Alaska 99723

907-852-1820

24634
Wade v. Ilisagvik

11/25/2005

EXHIBIT ___29___
PAGE __/__ OF __/__

8 7