Cynthia L. Ducey
Delaney Wiles, Inc.
1007 West 3rd Avenue, Suite 400
Anchorage, Alaska 99501
(907) 279-3581
Fax  (907) 277-1331
cld@delaneywiles.com
Attorney for defendants Ilisagvik College,
John Tuthill and Pamela Taylor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BOBBI J. WADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:05-cv-00086 (TMB) |
| v. ) | |
| ) | |
| ILISAGVIK COLLEGE, NORTH SLOPE ) | |
| BOROUGH, JOHN TUTHILL, individually ) | |
| and PAMELA TAYLOR, individually ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON FMLA**

**I. INTRODUCTION**

Defendants, Ilisagvik College, Dr. John Tuthill, and Pamela Taylor, ("Ilisagvik College"

or "the College"), oppose Wade's Motion For Partial Summary Judgment On FMLA.  Wade has

failed to meet her burden of proof that there is no genuine issue as to any material fact and that

Wade is entitled to judgment as a matter of law.    In summary, the motion should be denied

because: (1) Wade has failed in her burden of proving any combined medical condition was a

serious health condition before October 30; (2) Wade did not give proper notice of her need for

medical leave; (3) defendants acted in accordance with FMLA when they denied Wade's leave

LANEY WILES, INC.
07 WEST 3rd AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 1 of 48

requests in October 2003 and did not interfere with Wade's FMLA rights; (4) defendants did not interfere with Wade's leave or discriminate against her; (5) defendants did not retaliate against Wade; and (6) defendants did not fail to properly reinstate Wade when she returned from her leave.  The Court should therefore deny Wade's Motion For Partial Summary Judgment On FMLA.

## II. FACTS

Defendants have separately filed a Motion for Summary Judgment dated June 14, 2007.[1] *See* Docket 85.  To avoid repetition, defendants expressly incorporate herein the facts stated in defendants' Memorandum In Support Of Motion for Summary Judgment and the exhibits cited therein. *See* D.Ak. LR 10.1(h).

## III. ARGUMENT

I.    **Summary Judgment Standard.**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim . . . may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  All evidentiary inferences must be construed in favor of the non-moving party.  10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727,

---

[1] Ilisagvik College has submitted most of the exhibits it references in this opposition in support of Ilisagvik College's Motion for Summary Judgment.  Any new exhibits that are presented in this opposition and that were not referenced in Ilisagvik College's Motion for Summary Judgment are attached to this opposition.

:LANEY WILES, INC.
)07 WEST 3RD AVENUE
SUITE 400
ICHORAGE. ALASKA
(907) 279·3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 2 of 48

at 459 n.5 (3d ed. 1998). Bare assertions or unsupported conclusions are not facts sufficient to support a summary judgment. *Tovar v. United States Postal Service*, 3 F.3d 1271, 1279 (9th Cir.1993)(citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir.1993)). A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV.    Wade Has Not Met Her Burden Of Proving Any Combined Medical Condition Was A Serious Health Condition Before October 30.

Wade argues that she had a "serious health condition" as defined by the FMLA.[2]    *See* Memorandum In Support Of Plaintiff's Motion For Partial Summary Judgment On FMLA ("Wade Motion") at 4-14. Wade cannot sustain her burden of proving that any of her medical conditions, taken alone or in combination, created a serious health condition prior to her diagnosis of in situ squamous cell carcinoma. Instead, the undisputed facts establish that Wade did not have a serious health condition until October 30, 2003, when her in situ squamous cell carcinoma was diagnosed.

For FMLA purposes, a serious health condition is "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997)(citing 29 C.F.R. § 825.114). A condition that involves "continuing treatment by a health care provider" requires a period of

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
ICHORAGE, ALASKA
(907) 279-3581

---

[2] Defendants do not dispute that Wade was eligible for FMLA leave during the Fall 2003 semester.

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 3 of 48

incapacity of more than three consecutive calendar days,[3] and any subsequent treatment or period of incapacity relating to the same condition, that also involves treatment two or more times by a health care provider. *Id.* Several diagnoses, *if temporally linked*, no one of which rises alone to the level of a serious health condition, if taken together, can constitute a serious health condition. *Id.* at 1024-25 (emphasis added).

In *City of Fort Wayne* the court noted that "simply saying that multiple diagnoses can, together, give rise to a 'serious health condition' does not, however, resolve the issue. Just because they can does not mean they *do*." 117 F.3d at 1025 (emphasis in original). The court held that the employee had submitted enough evidence to withstand summary judgment because there was evidence that the employee was "on the edge of a break-down, both physically and mentally." *Id.* Because the evidence was unrebutted by appropriate medical testimony, there was a material question of fact for the trier-of-fact to decide if the employee's multiple diagnoses taken together created a serious health condition based on multiple and perhaps interrelated health issues. *Id.*

The Ninth Circuit has found that it is difficult to apply the reasoning of *City of Fort Wayne* where there is no competent evidence in the record to suggest that a plaintiff's son suffered from combined conditions that incapacitated him. *Marchisheck v. San Mateo County,* 199 F.3d 1068, 1076 (9th Cir.1999). The court further stated:

> Shaun received sporadic counseling beginning in 1991 and was assaulted in 1995, but there is nothing to suggest that Shaun ever was treated for a combination of physical and psychological symptoms, or that he was incapacitated by a combined condition. There is simply no basis in this record to conclude that Shaun's

---

[3] The statutory period of incapacity of "more than three consecutive calendar days" is more accurately stated as "four or more" days. *City of Fort Wayne,* 117 F.3d at 1025 (citing *Seidle v. Provident Mut. Life Ins. Co.,* 871 F.Supp. 238, 243-44 (E.D.Pa. 1994)).

DELANEY WILES, INC.
1007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

various behavioral and emotional problems ever "combined" with the passing physical effects of the assault to create a "serious health condition."

*Id.*

Thus, in order to establish a serious health condition based upon multiple diagnoses, Wade is required to prove by a preponderance of evidence that: (1) she was treated for a combination of symptoms, and (2) she was incapacitated by a combined condition. If the court applies *Marchisheck*, summary judgment should be denied on whether Wade had a serious health condition before October 30, 2003, since she has simply alleged in a conclusory fashion that there was a serious health condition for medical problems that occurred later in time.

**A.    Wade Cannot Establish That Her Multiple Health Conditions Combined To Constitute A Serious Health Condition As Of October 2nd.**

Wade's motion for summary judgment lumps three separate health conditions together, i.e., her high blood pressure, her stomach problems, and a problem with her left foot, as a combined serious health condition in August 2003.[4]  Wade Motion at 6.  However she provides no evidence that these conditions resulted in combined treatments or that they combined to incapacitate her.  *Marchisheck*, 199 F.3d at 1076.

Wade's requests for leave must be viewed through the lens of what was known to the College at the time Wade's leave requests were presented, not later.  Wade's motion improperly combines medical conditions in a conclusory manner with no medical support establishing a combination of symptoms causing incapacity and attempts to "bootstrap" later visits to health care providers, i.e., in late October and November in order to justify a serious health condition in early October.

---

[4] It is noteworthy that Wade does not claim that the patch on her shoulder was a serious health condition in August 2003.

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 5 of 48

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

For example, just because at some point Wade saw Dr. DeLozier three times in November 2003 does not mean that Wade had a serious health condition for her skin lesion in September or October. Wade Motion at 11. Likewise, the fact that Wade had to travel off Slope at some point in the Fall 2003, does not permit her to "bootstrap" in a need to travel in November to establish a serious health condition for an early October leave request. *Id.* at 11-12. The court must look at the information and the documented medical needs at the time Wade's leave requests were made and with the limited information that Wade provided as of late September and early October 2003.

Wade verbally requested leave the last week of September and followed this with a written request for "personal leave" dated October 2, 2003. As of the last week in September and October 2, when she submitted her initial leave request, Wade had seen Dr. Church, a Tennessee general practitioner, for: (1) an overactive bladder, with stress incontinence, requiring possible surgery; (2) progressive right hip pain; (3) thyroid problems requiring a blood test; (4) a medication consult for high blood pressure. Attached Exh. AN, Dr. Church 8/6/03 Chart Note. The plan was to draw blood, change her medications and obtain an office visit for her hip and she may have been considering bladder surgery. *Id.* Wade claims that she was seen for high blood pressure, stomach problems, a problem with her left foot, and a spot on her left shoulder. Exh. C, Wade V. I, at 119, 143.[5]   Her conclusory allegation that she was seen for these additional problems (the stomach problems, a problem with her left foot, and a spot on her left

---

[5]  Wade claims she registered her students and "got everything in order" before asking for leave. Wade Motion at 6-7. However, Wade admitted that she went back to Barrow after seeing Dr. Church in early August 2003 and failed to advise anyone at the College that she intended to leave her teaching duties during the semester. Exh. C, Wade V. I, at 159-60. It is undisputed that Wade did not make a leave request until late September. Exh. C, Wade V. I, at 162.

ELANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
ICHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 6 of 48

shoulder) without support cannot support summary judgment, particularly since the medical records show she was treated for these problems at other times. *See* attached Exh. AO, Dr. Church 11/12/03 Chart Note (right shoulder spot and high blood pressure); attached Exh. AP, Dr. Church 11/26/03 Chart Note (high blood pressure); attached Exh. AQ, Dr. Dexter 3/8/04 Field Trip Note (stomach problems); attached Exh. AR, Dr. Neuhaus 4/12/04 Chart Note (left foot). Conclusory allegations are not facts sufficient to support summary judgment. *Tovar*, 3 F.3d at 1279.

However, even if her conclusory claims of treatment for the skin patch and left foot and stomach problems were fully credited Wade has presented no evidence to establish that these problems combined to cause a serious health condition or that the symptoms actually combined to incapacitate her. Wade Motion at 6. The medical conditions do not, to a layperson, suggest such a combination that would prevent one from performing job duties. Indeed, Wade admits she could perform her job duties at that time and her health care provider agreed. Exh. C, Wade V. I, at 141-44, 160; Exh. DD, Snyder, at 17. Wade has presented no medical testimony that these medical conditions have a relation to each other or that the conditions, alone or in combination, prevented her from performing her job duties. Thus, her conclusory claim that the conditions have a relation to each other and combined to prevent her from performing job duties does not warrant summary judgment. *Tovar*, 3 F.3d at 1279.

In addition Wade was not treated again in the Fall, 2003 for some of the conditions Wade saw Dr. Church for on August 6 and thus as a matter of law those conditions could not be combined to cause a serious health condition at the time her leave requests were made. *Id.* There is no evidence that Wade ever followed up on her bladder problem; thus there was no continuing treatment and no serious health condition. Wade did not follow up on her thyroid

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

problem until January 21, 2004.  Attached Exh. AS, 1/21/04 Chart Note.  While Wade followed up on her right hip on October 24 with Dr. Snyder, it is undisputed that she was not incapacitated as a result of her hip.  Exh. DD, Snyder, at 15.

Wade claims she had a serious health condition since travel off the North Slope at the direction of a doctor constitutes incapacity.  She further alleges that an employee who is absent from work to obtain treatment is unable to perform her job junctions because she is unable to remain in the location where her job is located.  Wade Motion at 11 (citing 29 C.F.R. § 825.115).  However, incapacity due to travel is a fact specific inquiry that may or may not give rise to material issues of fact.  In any case involving a Barrow employee a court must analyze whether the treatment issue was satisfied, 29 C.F.R. §825.114(a)(2)(i)(a), and whether at the time the leave request arose, the employee required three or more days outside of Barrow for treatment.  29 C.F.R. §825.114(a)(2)(i).  A corollary issue that also would require resolution is if the days outside of Barrow were required solely for treatment or if there were multiple motives, as there certainly were in Wade's case.  An additional factor to determine if travel of more than 3 days was required is whether the employee made reasonable effort to lessen the amount of time she would be gone, but still needed 3 or more days.  If the undisputed facts are applied to 29 CFR § 825.115, summary judgment must be denied for any condition prior to October 30, 2003.  Wade Motion at 11-12; Exh. BB, Wade 10/2/03 Leave Request.

As support for her "travel" claim of incapacity, Wade proffers Taylor's testimony that there were no specialists in Barrow and travel was required outside of Barrow, Wade Motion at 7.  However, Wade never followed up on her bladder problem and she waited until January 21, 2004 to follow up on the thyroid issue.  Moreover, she treated in Barrow for high blood pressure on October 24, 2003, January 12, 2004, January 21, 2004, and January 27, 2004.  *Id.*; attached

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Exh. AT, Samuel Simmonds Hospital Records.    Additionally, a dermatologist visited Barrow regularly, and she has presented no medical testimony establishing that this care was inadequate as of her known medical condition on October 2. Exh. DD, Snyder, at 42; Exh. C, Wade V. III, at 486-87. Wade never attempted to have the traveling dermatologist look at the patch on her shoulder. *Id.*   She knew of the shoulder patch in June 2002 but did not take any action.

Wade admits as of October 2 she did not even require follow up treatment outside of Barrow. Exh. C, Wade V. I, at 141-44, 160. Her Barrow doctor, Michelle Snyder, agreed. Exh. DD, Snyder, at 17. Wade's motion, based only on conclusory allegations in the brief and contrary to the undisputed evidence,[6] that a need to travel outside of Barrow as of October 2, incapacitated her, must be denied. *Tovar*, 3 F.3d at 1279. Since she has failed to establish a single or combined medical condition that required more than three days' travel with treatment and therefore Wade did not have a "travel" incapacity and thus no serious health condition as of October 2. *Marchisheck*, 199 F.3d at 1076.

In addition, Wade told Taylor her leave was mixed personal and medical and her leave form says personal. Exh. C, Wade V. I, at 179; Exh. BB, Wade 10/2/03 Leave Request. Wade told Taylor she was going to take personal leave and while she was on personal leave she would go to appointments. Exh. E, Taylor, at 57-58. Wade's mixed personal and medical leave request was consistent with her past practice to get out of Barrow during the semester. For instance in the 2002-2003 academic year Wade spent 15 days out of Barrow. Exh. K, Request For Leave Dated 6/24/02; Exh. L, Request For Leave Dated 6/13/02; Exh. M, Request For Leave Dated

---

[6] There was no dispute that the plaintiff in *City of Fort Wayne* was incapacitated by a simultaneous combination of conditions (elevated blood pressure, hyperthyroidism, back pain, severe headaches, sinusitis, infected cyst, sore throat, swelling throat, coughing and feelings of stress and depression) or that she underwent continuing treatment. *Marchisheck*, 199 F.3d at 1075.

:LANEY WILES, INC.
:07 WEST 3RD AVENUE
SUITE 400
:CHORAGE. ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 9 of 48

5/2/03; Exh. N, Wade E-mail Dated 3/19/02; Exh. O, Wade E-mail Dated 11/7/02. Wade had a history of using personal leave combined with sick leave. Thus, she would leave Barrow and attend to personal matters while also scheduling medical visits. Exh. O, Wade E-mail Dated 11/7/02; Exh. C, Wade V. I, at 111-117. In fact it was not unusual for College employees to take personal leave and while on leave schedule appointments. Exh. E, Taylor, at 54, 62. Thus, even if some travel was required as of October 2, she has not established travel incapacitated her for 3 or more days solely due to medical reasons.

Indeed once on leave in November Wade was working in between appointments, she was able and willing to do so for all of her on line classes in between her appointments and she made no attempt to schedule these appointments in a way that would lessen her absence from school. Exh. C, Wade V. II, at 316-17. Included in her leave request was Thanksgiving dinner with her family. *Id.* at 321. Between November 3 and November 4 her request for leave increased from 6 days to 11 days without any medical documentation stating she needed to stay for treatment and this extension put her in Tennessee for the Thanksgiving weekend. *Compare* Exh. JJ, 11/3/03 Request For Leave; Exh. KK, 11/4/03 Request For Leave. November 26 was the day before Thanksgiving and December 2 was Tuesday of the following week. She saw Dr. Church on November 26 but there was nothing in the chart note showing further treatment was required or that she needed to be in Tennessee. At a minimum there is a question of fact about whether Wade's absence was medically related for the entire duration and whether she was performing her job duties. Wade had combined medical and personal leave in the past. *See* above, at 9-10.

**B.     Wade Cannot Establish That Her Multiple Health Conditions Combined To Constitute A Serious Health Condition As Of October 20.**

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

Between August 6 and October 20, 2003 Wade saw Dr. Snyder for two conditions she had been seen for a year before and did nothing about, an itchy skin lesion, and her right hip. Exh. W, 6/26/02 Chart Note; Exh. EE, 10/6/03 Chart Note.  Dr. Snyder gave her a note about follow up treatment but did not address one issue Dr. Tuthill asked a doctor to verify, whether leave could wait to a time when it would be non-disruptive.[7]    However, Wade did not need treatment for either of those two conditions before semester's end.    Attached Exh. AU, Dr. Snyder 10/6/03 Note; Exh. DD, Snyder, at 14-15.  Wade agreed that she was not incapacitated from performing her job duties and there was no need to travel. Exh. C, Wade V. I, at 252-54, 266.  Dr. Snyder would have offered to shave the skin patches.  Even though her notes do not state this, it was her standard practice to do so.  Exh. DD, Snyder, at 12-15.  Thus, as of October 20, 2003 there was no need to travel outside of Barrow for three days or more and Wade was not incapacitated because of a need to travel for treatment.  Wade's conclusory allegation now that the skin lesion and hip pain combined to constitute a serious health condition as of October 20, cannot form the basis for summary judgment. *Tovar*, 3 F.3d at 1279.   The undisputed facts show Wade did not have a serious health condition as of her October 20 leave request. *Marchisheck*, 199 F.3d at 1076.

**C.    Wade Cannot Establish That Her Multiple Health Conditions Combined To Constitute A Serious Health Condition Between October 20 and October 30.**

---

[7]  Wade claims that Dr. Tuthill denied her leave in early October.  Wade Motion at 7.  However, Wade's own Exhibit 5 reveals that Dr. Tuthill did not deny her leave at that time.  Instead he told Wade that as soon as she provided the information sought, that her physicians stated that she required immediate medical treatment, her leave would be approved. *See* Wade's Exh. 5, 10/3/03 Tuthill E-mail; Exh. CC, 10/3/03 Tuthill E-mail.

ᴵELANEY WILES, INC.
ᴼᴼ7 WEST 3ᴿᴰ AVENUE
SUITE 4OO
ᴺCHORAGE, ALASKA
(907) 279-3581

On October 24, 2003 Wade had the skin lesion shaved in an office procedure in Barrow that required no follow up.  Attached Exh. AT, 10/24/03 Chart Note, at 1-2.  Thus, Wade had two visits for the lesion.  However, there was no travel incapacitation as of October 24, 2003 because there was no need for follow up, and Wade was able to perform all of her job duties. Exh. DD, Snyder, at 27-30, 37; Exh. C, Wade V. I, at 253.  Between October 20 and October 30 there is no dispute that Wade could perform all of her job duties and she did not need to travel outside of Barrow for more than three days to receive treatment for any ongoing medical problem.  The motion for summary judgment should be denied on this basis.

**D.    Wade Cannot Establish That She Had A Serious Health Condition Prior To October 30.**

On October 30, 2003 the pathology report came back on the skin lesion as an in situ squamous cell carcinoma, and Wade believed she had been told she needed immediate treatment outside of Barrow.  Exh. C, Wade V. II, at 310.  Wade submitted new leave requests on November 3 and 4, but did not provide a doctor's note until November 5.  Exh. C, Wade V. I, at 267, 276-77; Exh. JJ, 11/3/03 Leave Request; Exh. KK, 11/4/03 Leave Request; Exh. LL, Snyder 11/5/03 Note.  The College approved her leave on the day the doctor's note was provided and within 48 hours of her new leave request, dated November 3.  Exh. C, Wade V. I, at 277-78.  It is undisputed the College acted reasonably in granting her new request within 48 hours of her November 3rd request.  Assuming Wade had a serious health condition as of October 30, 2003 the College granted her leave request and gave her paid leave for more than 10 days.  Exh. KK, 11/4/03 Leave Request.

As set out above, Wade has failed in her burden of proving with admissible evidence that there is no disputed issue of material fact regarding whether Wade had a serious health condition

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 12 of 48

prior to October 30 and whether any of her medical conditions combined to cause a serious health condition before that date. Fed. R. Civ. P. 56(c).  Summary judgment for Wade should be denied on this basis.  Alternatively, and for all of the reasons noted above, there is a disputed issue of fact regarding whether any medical condition taken alone or in combination constituted a serious health condition before October 30.  *Celotex*, 477 U.S. at 322.

**E.     The Special Notice Provisions Of The FMLA Regulations Were Not Required, Wade Was Not Prejudiced, And The Regulations Were Invalid.**

Wade claims that defendants approved leave without advising her of her FMLA rights and what might happen if she did not present the proper certification, thereby waiving the right to challenge whether she had a serious health condition.  Wade Motion at 12.  Wade further argues that defendants had a duty to advise her if they found her medical certification incomplete and to provide her an opportunity to cure the deficiency.  Wade Motion at 13-14.  Wade claims that an employer must give the employee written notice of her FMLA rights.  Wade Motion at 27-29.  However, Wade has not sustained her burden of proving an absence of material fact regarding notice, and under the circumstances they were not required.  Wade was not prejudiced from the failure to provide special notice of FMLA, she has no causally related damages, and the regulations requiring special notice are invalid.

29 C.F.R. § 825.301(a) requires FMLA information to be given to employees in a handbook if the employer has a handbook.  29 C.F.R. § 825.301(b) requires an employee to give "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations."  This notice must be given within a reasonable time (within one to two business days if feasible) after an employee gives notice of the need for leave.  29 C.F.R. § 825.301(c).  29 C.F.R. § 825.208(b)(1) requires

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 13 of 48

employers to designate leave as FMLA leave and to give notice to the employee of the designation within one to two business days of obtaining knowledge that the leave is being taken for an FMLA required reason.  An employer satisfies the employer notice requirements in 29 C.F.R. §§ 825.300-.301 where it posted a notice of the FMLA provisions in the break room, discussed the FMLA in its employee handbook, and discussed the FMLA during risk management sessions for employees.  *Kaylor v. Fannin Reg'l Hosp., Inc.*, 946 F.Supp. 988, 999 (N.D.Ga.1996).   29 C.F.R. § 825.301(c) does not require special notice of FMLA when the employee requests leave; notice is only required when the employer designates it as FMLA leave.  *Id.*; Exh. AA, English, at 45, 74-75.

It is undisputed an FMLA posting was in the hallway outside of the human resources office and Wade looked at this bulletin board.   Exh. C, Wade V. I, at 81-82.  Taylor described job benefits to Wade in an orientation meeting, which included orientation about FMLA.  *Id.* at 66-67.   Taylor had numerous conversations with Wade about the leave and Wade had opportunities to ask follow up questions about anything she did not understand.  At that point Wade and Taylor were friends. Exh. C, Wade V. IV, at 831.  Indeed, on October 2, 2003, Wade asked for a copy of the faculty handbook on leave, and Taylor called her to advise her there were no leave policies in the faculty handbook and instead she should refer to the employee handbook for leave policies. Exh. AV, Wade 10/1/03 E-mail; Exh. E, Taylor, at 66.  Wade had a copy of the employee handbook and all of its updates which fully describe FMLA.  Exh. C, Wade V. I, at 194-96; Exh. I, Handbook, at 5-7.  The College's leave forms filled out by Wade state on the face of the forms that FMLA leave and Extended Illness Leave require a copy of doctor's verification that the leave is medically necessary, and describe the FMLA.  Exh. BB, 10/2/03 Leave Request; Exh. JJ, Wade 11/3/03 Leave Request; Exh. KK, Wade 11/4/03 Leave Request.

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                                    Page 14 of 48

As a matter of law the College complied with the notice provisions. *Kaylor*, 946 F.Supp. at 999. Even if the regulation is valid, Wade's claims that she could not have known what her rights were are meritless.

Additionally, Taylor's October 2 phone conversation with Wade was substantial compliance with the regulation, which carries less weight than the FMLA statute. Exh. E, Taylor, at 66.

The special notice provision of § 825.208(b)(1) cannot be enforced since it is highly ambiguous and may not be valid. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88 (2002); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161 (2nd Cir.1999)(citing 29 C.F.R. § 825.301(a)(1), (a)(2), (b)(1)(i)-(viii), and (b)(2)). An employee may not sue the employer for failing to give special notice where the lack of notice had no effect on the employee's attempt to exercise a substantive FMLA right. *Sarno*, 183 F.3d at 162. The Supreme Court held that the categorical penalty imposed by 29 C.F.R. § 825.208 is contrary to the FMLA's remedial design. *Ragsdale*, 535 U.S. at 88. 29 C.F.R. § 825.700 is flawed because it relieves employees of the burden of proving any real impairment of their rights and resulting prejudice. *Id.* at 90. The Act itself does not require employers to give individualized notice. *Id.* at 92. The Eighth Circuit and the Eleventh Circuit have found § 825.208 to be invalid and unenforceable because the regulation is contrary to the statute under the same rationale stated by the *Ragsdale* court. *Roberson v. Cendant Travel Serv.*, Inc., 252 F.Supp.2d 573, 577 (M.D.Tenn.2002)(citing *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 937 (8th Cir.2000); *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir.1999)). "Thus, while § 825.208 has not been explicitly struck down by the Supreme Court, its status is tenuous at best."

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 15 of 48

*Roberson*, 252 F.Supp.2d at 577.  Consistent with other courts, this court should deny summary judgment and find § 825.208 to be invalid.

Wade claims it was not Taylor's "common practice" to engage an employee in a conversation about their health condition.  Wade Motion at 28.  However, Taylor was not asked about common, typical or general practices.  Instead she was asked if an employee needed to ask for FMLA leave before an FMLA notice was given and she said "not necessarily."  Exh. E, Taylor, at 64.  Taylor did not ask follow up questions in order to honor their privacy.  *Id.*  She did, however state that for FMLA leave to be granted the employee would have to tell them something in relation to their leave that might trigger a serious health condition.  *Id.* at 61.  Going off slope for medical appointments was common and often did not give rise to FMLA leave.  If an employee came with a doctor's note that said they had a serious health condition or if they told Taylor medical information that might give rise to a serious health condition then Taylor would wait to receive medical documentation regarding this.  She did not, however unnecessarily pry into employee's medical conditions.  *Id.* at 61-64.

Wade also misrepresents Taylor when she claims that Taylor would not provide FMLA notification unless an employee said the "right words."  Wade Motion at 28 (citing Taylor deposition at 156).  However, Taylor never said she would not give the form unless the "right words" are spoken.  Instead, and consistent with her previous testimony that Wade told her the leave was personal but that several medical appointments would occur while she was on leave, Taylor did not give Wade written notice of her FMLA rights because Wade never gave her any information that have triggered FMLA notice.  Exh. E, Taylor, at 155-56.  Instead Wade told her she wanted personal leave and was planning medical appointments while on personal leave.  There was never any medical documentation that there was a serious health condition and she

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 16 of 48

would be incapacitated by it. Wade also claims Taylor expected the employee to state they had a serious health condition. Wade Motion at 28-29. However, Taylor testified that if an employee came to her and said they have a serious health condition or they are concerned about "X" or they are pregnant or "standard triggers" about a condition that might require treatment for an extended period of time. Exh. E, Taylor, at 62-63.

Taylor did not often have FMLA leave issue because employers' personal leave and extended medical leave usually covered most situations. Exh. E, Taylor, at 63. Most employees combined personal and medical leave and the College's extended medical leave policy permitted paid leave time as opposed to FMLA leave. *Id.* at 44-48. In Wade's case her leave was paid leave and came from her personal leave bank. Exh. C, Wade V. II, at 321. She suffered no prejudice since she retained her twelve weeks of unpaid FMLA leave and she took FMLA the next semester. In fact, she was absent on FMLA leave for 5 weeks.

Wade argues that Taylor set up a scenario wherein no employee could obtain FMLA leave. Wade Motion at 29. However, this statement is not accurate. FMLA leave was approved to Ilisagvik College employees where it was appropriate, including Jay St. Vincent, an Assistant Professor of English, in November 2003. Attached Exh. AW, Jay St. Vincent 11/13/03 Request For Leave. The College requested St. Vincent to prove her leave could not wait until the semester break also. Dr. Tuthill and Taylor found that the written certification provided by St. Vincent was acceptable because it stated that she needed "timely" diagnosis procedures, just as Wade's medical certification stating "somewhat urgent" was sufficient, and approved St. Vincent's paid medical leave request. *Id.* at 1; attached Exh. D, Tuthill, at 161, 168.

Wade argues "an employer may not assert incompleteness of a medical certification as grounds for disciplining an employee where the employer never notified the employee of the

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 17 of 48

problem or gave her an opportunity to cure it." Wade Motion at 12. However, the record shows that defendants did not discipline Wade for not complying with the medical certification requirements. Rather, as shown below, defendants stood on their right to deny Wade's requested leave where her leave was foreseeable and she failed to give 30 days' notice or to schedule her leave in a manner not disruptive to the employer. *See* 29 C.F.R. § 825.302(a), § 825.302(e).

Wade alleges that defendants deprived Wade of the opportunity to correct any defects in the leave documentation, but does not set forth with specific facts how defendants deprived Wade of that opportunity. Wade Motion at 14. The record shows that Wade was given multiple opportunities to correct defects in the leave documentation, and that she refused to do so, and at a minimum agreed to delay her leave. Exh. C, Wade V. I, at 252-53, 260. Wade's conclusory allegation, standing alone, does not support summary judgment. *Tovar*, 3 F.3d at 1279.

Wade claims that Dr. Tuthill did not ask for "medical certification" from Wade as his attorney advised. Wade Motion at 8. Wade admits that Dr. Tuthill requested "written notification from a licensed physician . . . to the effect that your medical treatment cannot wait until the December break." *Id.* Written notification and written certification are the same thing. Notification is defined as "the act or an instance of notifying." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 808 (9th ed. 1991). Notify is defined as "to give notice of or report the occurrence of." *Id.* Certification is defined as "the act of certifying." *Id.* at 223. Certify is defined as "to inform with certainty." *Id.* Inform is a synonym for notify. *Id.* at 620. This is a distinction without a difference, and the Court should reject any assertion by Wade that Dr. Tuthill did not comply with the advice of counsel.

Further, the § 825.301(c) notice was not required under the circumstances. Because Wade did not present written certification that her medical treatment could not wait until the

ELANEY WILES, INC.
007 WEST 3ʀᴅ AVENUE
SUITE 400
NCHORAGE. ALASKA
(907) 279-3581

December break, thus showing she had a serious health condition, the College had no obligation to comply with 29 C.F.R. § 825.301(c). *See* below, at 21-22.

In addition, Wade has not shown that she was prejudiced by failure of the College to give her special notice. 29 U.S.C. § 2617, which requires an employee to prove the employee interfered with or denied her exercise of FMLA rights, does not benefit the employee unless the employee has been prejudiced by the violation. *Ragsdale*, 535 U.S. at 89; *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 17 F.Supp.2d 271, 275 (S.D.N.Y.1998), *aff'd*, 183 F.3d 155, 162 (2d Cir.1999); *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir.2001). All of the leave days Wade requested were granted by the College. Exh. C, Wade V. II, at 321; Exh. KK, Wade 11/4/03 Leave Request. It is undisputed that she continued to receive her health insurance benefits and was reinstated to the classes she was assigned to teach. Exh. AF, Wade Earnings Statements; Exh. AG, Wade Fall 2003 Course Schedule, at 14. Wade has not proved she was prejudiced.

Even if Wade had a serious health condition, it does not estop the College from asserting its right to delay leave for 30 days when 30 days' notice was not given by Wade violating 29 C.F.R. § 825.302(a) and she breached her duty under 29 C.F.R. § 825.302(e) to minimize disruption to her employer, and therefore the employer could wait for her to cooperate. Exh. AA, English, at 168. Wade's expert Debra English conceded that Wade had no causally related damages for failure to immediately designate her leave as FMLA leave. *Id.* at 192, 247.

Finally, the court should find § 825.208 to be invalid because it grants entitlements beyond those of the statute and inconsistent with the purpose of the statute. *Ragsdale*, 535 U.S. at 88-90; *McGregor*, 180 F.3d at 1308 (same). Further, § 825.301 does not grant Wade a right to sue the College for failure to give notice . *Sarno*, 183 F.3d at 162.

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Wade's motion for partial summary judgment should be denied because Wade has failed in her burden of proving that the College failed to give her special notice of the FMLA. *Celotex*, 477 U.S. at 322. Alternatively, at a minimum there is a disputed issue of fact regarding whether Taylor gave Wade sufficient notice of FMLA.

## V. Wade Did Not Give Proper Notice Of Her Need For Medical Leave.

Wade argues that she satisfied her obligation under FMLA to give proper notice of her need for medical leave. *See* Wade Motion at 14-19. As set forth in Ilisagvik's Memorandum In Support Of Motion For Summary Judgment at 22-28, Wade cannot establish that she gave proper notice of her need for leave, and the Court should deny Wade's motion for partial summary judgment on FMLA.

Wade concedes that "to invoke the protection of the FMLA, an employee must provide notice ***and a qualifying reason for requesting the leave***." *See* Wade Motion at 15 (citing *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998))(emphasis added)). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.1995)).

Wade misapprehends the notice requirements placed upon employees by the FMLA. The employee does not merely have to give notice to the employee of a need for some type of leave. Rather, "it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir.1998)(citing *Price v. City of Ft. Wayne*, 117 F.3d 1022, 1025-26 (7th Cir.1997); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.1995)). "The regulations require that when an employee provides notice of the need for

ƎLANEY WILES, INC.
ƆO7 WEST 3ʀᴅ AVENUE
SUITE 400
ᴎCHORAGE, ALASKA
(907) 279-3581

unpaid FMLA leave, 'the employee would need to state a ***qualifying reason*** for the needed leave.'" *Stoops*, 141 F.3d at 313 (citing 29 C.F.R. § 825.208(a)(2)(emphasis in original)). 29 C.F.R. § 825.208(a)(1) states that an employee must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act, or the employer can deny the leave. Wade concedes that the employer may delay FMLA leave for 30 days if sufficient notice is not provided for foreseeable leave. Wade Motion at 26. Despite multiple requests by Dr. Tuthill, Wade repeatedly failed to state a FMLA qualifying reason for the needed leave until she provided medical certification showing urgency from Dr. Snyder on November 5.

Wade argues she provided notice of her need for leave with a doctor's note, just as the employee did in *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1121 (9th Cir.2001). Wade Motion at 15. The employee in *Bachelder* provided two doctor's notes to her employer in a timely manner that indicated her diagnosis and when she could return to work. *Bachelder*, 259 F.3d at 1121. In contrast, Wade did not provide a timely, nonstale doctor's note to the College in support of her leave requests until November 5, 2003. Exh. LL, Dr. Snyder 11/5/03 Note; Exh. C, Wade V. I, at 276-77. The College immediately approved her November 4 leave request upon receiving the Dr. Snyder note stating that Wade's followup should occur in a "somewhat urgent" time frame. Exh. C, Wade V. I, at 232, 277-78.

Wade claims that when she presented the October 6 note from Dr. Snyder she did all that was required of her. Wade Motion at 17. Yet Wade admits that as of October 9 she kept the details regarding her shoulder secret, and "nobody knew the condition of my shoulder except me." Exh. C, Wade V. I, at 254. 29 C.F.R. § 825.208(a)(1) requires that an employee must state a qualifying reason for the needed leave. As of October 6, the College was waiting for certification from a physician that Wade needed medical treatment that could not wait, and Wade

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 21 of 48

still had not provided that.  Exh. E, Taylor, at 127; Exh. D, Tuthill, at 211-12.  Indeed, Wade never bothered to ask any of her physicians for written certification that her medical treatment could not wait until the December break when she could have treatment without conflict of her teaching duties, most likely because she knew Dr Snyder would not certify an urgent need before October 30th.  Exh. C, Wade V. II, at 291.

Wade argues that the College was required to inquire further into the reasons underlying the leave request to determine whether the absences were likely to qualify for FMLA protection. Wade Motion at 15-16.  That is precisely what the College did.  The College inquired further into the reasons underlying Wade's leave requests by requesting a doctor's note stating that Wade required immediate medical treatment or that Wade's medical treatment could not wait until the December break.  *See* Exh. CC, Dr. Tuthill e-mail dated 10/3/03; Exh. GG, Dr. Tuthill e-mail dated 10/9/03; Exh. C, Wade V. I, at 235, 249.  Wade presented leave requests on November 3 and November 4th but did not provide any medical information until November 5 and she still did not give an FMLA qualifying reason, i.e., her diagnosis and dates of absence. 29 U.S.C. § 2613(b).  However, Tuthill viewed Dr. Snyder's November 5 as requesting prompt care that could not be dealt with locally, and approved the leave. Attached Exh. D, Tuthill, at 221.  The undisputed facts show that Wade did not provide a FMLA qualifying reason for requesting leave until she presented the November 5, 2003 note from Dr. Snyder.  Upon receipt of that note, the College immediately approved Wade's November 4, 2003 leave request in accordance with the FMLA.  It was not unreasonable to delay acting upon the request for leave for 48 hours.  Exh. AA, English, at 175; 29 C.F.R. § 825.301(c).  As a result Wade has failed in her burden of proving with admissible evidence that she gave proper notice of her intention to take leave to her employer.  *Price v. Multnomah County,* 132 F.Supp.2d 1290, 1297

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                              Page 22 of 48

(D.Or.2001); 29 U.S.C. § 2612(e); Fed. R. Civ. P. 56(c).  The court should therefore deny Wade's motion for summary judgment on Wade's FMLA interference claim.  *Celotex*, 477 U.S. at 322.  Alternatively, there is a disputed issue of fact regarding the notice Wade gave to Dr. Tuthill and Taylor prior to October 30 for her foreseeable leave.  *Celotex*, 477 U.S. at 322.

### VI. Defendants Acted In Accordance With FMLA When They Denied Wade's Leave Requests in October 2003 And Did Not Interfere With Wade's FMLA Rights.

Wade argues that to establish an interference claim under the FMLA, she must show that: (1) she attempted to exercise her rights under the Act; (2) her employer subsequently engaged in activity that tends to chill the exercise of her rights; and (3) her employer's activity was motivated by the exercise of her rights.  Wade Motion at 20 (citing *Bachelder*, 259 F.3d at 1124-26).  However, in *Bachelder* the court held that an interference claim under 29 USC § 2615 and 20 CFR 825.220 is a substantive statutory right, and proves her claim of interference by termination with proof, by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."  *Bachelder*, 259 F.3d at 1125.  Wade still must prove her entitlement to leave including that: (1) she is an eligible employee; (2) the employer is an employer per 29 U.S.C. § 2611(4); she was entitled to take leave; (4) she gave notice of her intention to take leave; and (5) the employer denied her benefits under the FMLA.  *Price*, 132 F.Supp.2d at 1297; *Bachelder*, 259 F.3d at 1126.  She must also prove that any interference caused her damages.  Thus, Wade must establish for interference resulting in nonrenewal of a contract that the exercise of FMLA motivated the nonrenewal.  If Ilisagvik establishes that the same decision would have been made even without the exercise of FMLA, she has no causally related damages.

ELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
NCHORAGE, ALASKA
(907) 279-3581

Wade's authority for activities that chill exercise of her rights do not warrant summary judgment. Wade cites an unpublished opinion for the proposition that an employee may bring a claim of FMLA interference for actions that could "chill" the desire to take FMLA leave. Wade Motion at 20 (citing *Sherrod v. Philadelphia Gas Works*, 57 Fed.Appx. 68, 73 n.6 (3d Cir.2003). Unpublished opinions of the Third Circuit have no precedential value and should not be cited as authority in a subsequent case. *Edge v. Schweiker*, 814 F.2d 125, 127 n.1 (3d Cir.1987); *see also* 3rd Circuit Local Appellate Rules, Appendix I Internal Operating Procedures 5.3, 5.7.

Wade also cites *Shtab v. Great Bay Hotel & Casino, Inc.*, 173 F.Supp.2d 255 (D.N.J. 2001) and *Williams v. Shenango, Inc.*, 986 F.Supp. 309, 313 (W.D.Pa. 1997) for the proposition that it is FMLA interference for an employer to ask an employee to delay FMLA leave until after a holiday weekend. Wade Motion at 20-21. *Shtab* is distinguishable because the employee gave proper notice of their FMLA leave. *Shtab*, 173 F.Supp.2d at 259. By contrast, Wade violated her duty to give proper notice of her foreseeable leave 30 days in advance, and the College acted appropriately in denying her leave requests. *See* above, at pp. 20-23. *Williams* is inapplicable because the employee requested leave under circumstances suggesting that FMLA leave may be required, and the employer subsequently failed to inquire further in order to ascertain the specific details. *Williams*, 986 F.Supp. at 320. However, Wade did not request leave under circumstances suggesting that FMLA leave may be required. *See* above, at pp. 21-22; Exh. CC, Dr. Tuthill e-mail dated 10/3/03; Exh. GG, Dr. Tuthill e-mail dated 10/9/03; Exh. C, Wade V. I, at 235, 249; Exh. E, Taylor, at 58-63.

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Wade cites *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F.Supp.2d 311, 330 (N.D.Cal.2004).[8] Wade Motion at 20. However, in *Sabbrese*, the employer was aware that the employee had diabetes. Additionally, the employee informed company officials why he went on a break in compliance with the requirements of 29 C.F.R. § 825.303 regarding notification of ***unforeseeable*** leave. *Sabbrese*, 320 F.Supp.2d at 330. Here Wade failed to give proper notice of her need for foreseeable FMLA leave. *See* above, at pp. 20-23. She refused to give her supervisor timely medical certification that she needed immediate medical care before the end of the semester, even when repeatedly asked to provide it. *See* above, at pp. 21-22.

Wade cites *Blohm v. Dillard's, Inc.*, 95 F.Supp.2d 473, 478-79 (E.D.N.C. 2000) in support of her argument that defendants violated her FMLA rights when they denied her leave requests and demanded she schedule her leave at a time that did not "unduly interfere" with the College's business. Wade Motion at 21. However, *Blohm* is inapposite because it concerns an employee who took leave under 29 U.S.C. § 2612(a)(1)(A) based on the birth of a child. *Blohm*, 95 F.Supp.2d at 478-79. The *Xin Liu* court cited *Blohm* as support for its conclusion that "FMLA leave for baby bonding time is not contingent upon an employer's needs." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir.2003). *Xin Liu* does not bolster Wade's claim that an employee with an itchy patch on her shoulder may schedule leave at an inconvenient time for her employer in an extremely remote town in which replacement workers are difficult to locate without making any attempt to minimize disruption to her employer's operations. Wade repeatedly failed to present a doctor's certification that her leave was FMLA qualifying and could not wait until the December break, and required medical care off-Slope. Wade later

---

[8] Wade incorrectly refers to this case as *Stabbers v. Lowe's Home Centers, Inc.*, 320 F.Supp.2d 311 (N.D.2004). Wade Motion at 20.

LANEY WILES, INC.
37 WEST 3RD AVENUE
SUITE 400
 CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 25 of 48

withdrew her leave request on October 9, which plaintiff does not acknowledge in this portion of her motion. Defendants have established that her leave was not FMLA-qualifying until October 30th at the earliest when she was given a diagnosis of in situ squamous cell carcinoma. Exh. DD, Snyder, at 37-38.

Wade argues that Tuthill continually pressured Wade to wait to seek medical treatment until the December break, but provides no factual support for this assertion. Wade Motion at 23-24 (citing *Xin Liu*, 347 F.3d at 1135. Bare assertions or unsupported conclusions insufficient to support summary judgment. *Tovar*, 3 F.3d at 1279. Pressure cannot, as a matter of law, include the employer asking for information they are entitled to have, such as the immediacy of the need for leave when a long break will disrupt teaching duties. 29 CRF § 825.302(e)

Further, the cases cited by Wade at pages 20-22 of her motion for partial summary judgment on FMLA (*Sabbrese, Sherrod, Shtab, Williams, Butler, Grosso, Blohm,* and *Xin Liu*) are each distinguishable from the instant case because they do not discuss or analyze the employee's duty under 29 C.F.R. § 825.302(e) to consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations. *See Sabbrese*, 320 F.Supp.2d 311; *Sherrod*, 57 Fed.Appx. 68; *Shtab*, 173 F.Supp.2d 255; *Williams*, 986 F.Supp. 309; *Butler v. IntraCare Hospital North, et al.*, 2006 WL 2868942 (S.D.Tex. Oct. 4, 2006); *Grosso v. Federal Express Corp.*, 467 F.Supp.2d 449; *Xin Liu*, 347 F.3d 1125.

Wade claims that it was a violation to request her to schedule leave when it did not interfere with the College's business. Wade Motion at 21. She further claims that the College applied the contractual leave requirements, not FMLA requirements, and violated her rights by applying the personal leave standard in her contract. Wade Motion at 24-25. Wade is incorrect.

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                                    Page 26 of 48

The FMLA requirements were incorporated into Wade's contract via the Handbook. *See* Exh. H, 2003 Contract, at 2; Exh. I, Handbook, at 5-7.

It is undisputed that Wade did not comply with her duty per 29 C.F.R. § 825.302(e) to confer with the College or attempt to schedule the leave in a manner not to disrupt operations. *See* above, at pp. 19, 20-23. Further, the College's policy as stated in her contract explicitly stated that personal leave was allowed when "taking it does not unduly interfere with the delivery of the College's program of instruction." Exh. H, Wade 2003 Contract, at 4. This is virtually identical to § 825.302(e), which states, "When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations, subject to the approval of the health care provider." There is no material difference between the College policy, which mentions interference with instruction, and the regulation, which mentions disruption of operations. Thus, Dr. Tuthill's inquiry about scheduling leave at the end of the semester was legal and reasonable. Wade ignores 29 C.F.R. § 825.302(e) because it is so troublesome to her claim. As a matter of law, when an employer stands on their right to schedule foreseeable leave in a nondisruptive manner it cannot constitute interference.

Wade claims that she was forced to choose between her leave and her job. Wade Motion at 22. The undisputed evidence shows that she did not ask her doctor if she could schedule her leave later because she knew the doctor would say that Wade could take her leave later, and she wanted to leave Barrow for reasons that were personal to her. The employer's request for information was lawful and not intrusive or burdensome. When an employer stands on their right to schedule foreseeable leave in a nondisruptive manner it cannot be interference.

:LANEY WILES, INC.
:07 WEST 3RD AVENUE
SUITE 400
ICHORAGE, ALASKA
(907) 279-3581

Wade argues that the mischaracterization of her FMLA leave as personal rather than FMLA leave qualifies as "interference." Wade Motion at 24 (citing *Xin Liu*, 347 F.3d at 1135). Yet Wade was required to show that her leave was FMLA-qualifying, and she requested personal leave rather than FMLA leave. *Xin Liu* is distinguishable because Liu "duly informed [her supervisor] of the reasons for her leave." *Xin Liu*, 347 F.3d at 1134. Wade did not do so. *See* above, at pp. 20-23. Wade claims if the leave had been properly designated as FMLA leave Dr. Tuthill would not have had the discretion to deny her leave. Wade Motion at 24. But Dr. Tuthill did have that discretion where Wade asked for foreseeable leave and did not give 30 days' notice, where she did not consult with her employer and try to schedule leave to minimize disruption to her employer's business, and where she refused to work interactively to provide her employer with the single piece of information he was seeking: whether leave could wait until a time when it would not be disruptive.

Wade states the College designated Wade's leave as personal leave. Wade Motion at 25 (citing Exh. 13). Yet Wade's Exhibit 13 shows that Pam Taylor designated Wade's 11/4/03 leave request as personal leave but that it would be designated extended medical leave once the required medical documentation was obtained. Exh. E, Taylor, at 143. Wade claims that Dr. Tuthill denied three of her leave requests during the semester. Wade Motion at 25. Dr. Tuthill did not deny them outright. Rather, he asked for additional information and said they would be granted once the information sought was received. Exh. CC, 10/3/03 Tuthill E-mail; Exh. GG, 10/9/03 Tuthill E-mail. Dr. Tuthill had oral conversations with Wade regarding her leave requests. Attached Exh. D, Tuthill, at 199-201.

Wade claims she worked with the defendants to schedule leave at a time that met the needs of the College and the students. Wade Motion at 26. Yet she provides no evidence to

DELANEY WILES, INC.
007 WEST 3RD AVENUE
SUITE 400
ANCHORAGE. ALASKA
(907) 279-3581

support this assertion, and her conclusory allegation cannot support summary judgment. *Tovar*, 3 F.3d at 1279. She cites Wade's Exhibit 20, a course schedule change form, which related to her October 2 leave request. It is undisputed that the College immediately and properly rejected her proposed course schedule change. Exh. C, Wade V. I, at 207-14; Exh. CC, 10/03/03 e-mail from Tuthill to Wade and response. Wade fails to mention that she withdrew or agreed to delay the October 2 leave request on October 9. Exh. C, Wade V. I, at 252-53, 260. Because Wade agreed to either withdraw or delay her leave, the College had no further duty to act upon her prior leave request and it was reasonable for the College to construe her request as withdrawn. Exh. AA, English, at 119, 130. Wade's October 14 e-mail from Wade to Taylor requesting a status update regarding her October 2 leave request was sent only because she wanted a written response to her October 2 leave request even though she admitted it was then moot. Exh. C, Wade V. I, at 261. Taylor responded that it was her understanding that Wade and Dr. Tuthill had communicated and that Wade had agreed to wait until the semester's classes had ended before going off-Slope and to follow up with Dr. Tuthill. Wade's Exh. 21. Wade's Exhibit 18 is her October 20 "request" for personal leave, which Dr. Tuthill properly denied because it interfered with the delivery of the College's program of instruction and since Wade still had provided no medical verification that leave was needed before the semester's end. Exh. C, Wade V. I, at 265-66; Exh. II, 10/20/03 Dr. Tuthill E-mail.

Wade did not even bother to contact health care providers to see how treatment could be scheduled with a minimum amount of time. 29 C.F.R. § 825.302(e). Wade's argument that she attempted to minimize disruption to her employer fails because she has no proof she conferred with Dr. Tuthill and cannot establish she even tried to schedule the appointments using a

:LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
:CHORAGE. ALASKA
(907) 279-3581

minimal amount of time, that she tried to schedule during the holiday break, and then conferred with Dr. Tuthill regarding the results of her efforts. 29 C.F.R. § 825.302(e).

Further, Wade has not established that she was prejudiced by the College's failure to designate her leave as FMLA leave after she returned from leave. 29 U.S.C. § 2617, which requires that an employee prove the employee interfered with, restrained, or denied her exercise of FMLA rights, does not benefit the employee unless the employee has been prejudiced by the violation. *Ragsdale*, 535 U.S. at 89; *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 17 F.Supp.2d 271, 275 (S.D.N.Y.1998), *aff'd*, 183 F.3d 155, 162 (2nd Cir.1999); *LaCoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 220-22 (S.D.N.Y.1997), *overruled on other grounds by Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 724 (2nd Cir.2001); *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir.2001); *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 565 (D.S.C.1997); *Summers v. Middleton & Reutlinger, P.S.C.*, 214 F.Supp.2d 751, 757 (W.D.Ky.2002); *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1056-57 (D.Ariz. 2003); *Jeremy v. Northwest Ohio Development Center*, 33 F.Supp.2d 635, 639 (N.D.Ohio 1999); *Geromanos v. Columbia University*, 322 F.Supp.2d 420, 430-31 (S.D.N.Y. 2004). All of the leave days Wade requested were granted by the College. Exh. C, Wade V. II, at 321; Exh. KK, 11/4/03 Leave Request. It is undisputed that she continued to receive her health insurance benefits and was reinstated to the classes that she was assigned to teach. Exh. AF, Wade Earnings Statements for October to December 2003; Exh. AG, Wade Fall 2003 Course Schedule, at 14. Therefore, Wade has failed in her burden of proving with admissible evidence the fifth element of her prima facie claim, i.e., that her employer denied her the benefits to which she was entitled under the FMLA. *Price*, 132 F.Supp.2d at 1297. Summary judgment for Wade should be denied on this basis. Fed. R. Civ. P. 56(c).

ELANEY WILES, INC.
307 WEST 3RD AVENUE
SUITE 400
ANCHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 30 of 48