## VII.    Defendants Did Not Interfere With Wade's Leave Or Discriminate Against Her.

Wade argues that defendants are liable under either or both of the FMLA interference and discrimination theories. Wade Motion at 34. She claims she was terminated for taking FMLA-protected leave and for opposing defendants' failure to follow the law and properly reinstate her. *Id.* Wade states that in the Ninth Circuit the proper standard to judge an interference with FMLA rights claim is: (1) she took FMLA-protected leave; (2) she suffered adverse employment actions; and (3) the adverse actions were causally related to her FMLA leave. Wade Motion at 35 (citing *Bachelder* and *Xin Liu*). As set out above Wade must establish by a preponderance of the evidence that taking leave constituted a negative factor in the decision not to renew her contract. 259 F.3d at 1125.[9]

In addition she must prove all of the following elements by a preponderance of the evidence: (1) she was eligible for FMLA leave; (2) she had a serious health condition; (3) she gave the College appropriate notice of her need to be absent from work; and (4) Wade's FMLA leave was a negative factor in the College's decision to terminate her. *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1096 (9th Cir.2007). This is the same test as *Price v. Multnomah County*, 132 F.Supp.2d at 1297.

Wade claims that she suffered multiple adverse actions, including that defendants refused to properly reinstate her to teach Module C and penalized her for taking medical leave by refusing to pay her $3,000 for extra duty contracts that she had already worked, and by terminating her contract after she protested the refusal to properly reinstate her. Wade Motion at

---

LANEY WILES, INC.
17 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

[9] An unpublished Ninth Circuit opinion analyzing an FMLA retaliation claim has cited *Conoshenti*. *Zsenyuk v. City of Carson*, 99 Fed.Appx. 794, 796 (9th Cir.2004). Unpublished Ninth Circuit opinions are not precedent. U.S. Ct. of App. 9th Cir. Rule 36-3(a).

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 31 of 48

35. Defendants do not dispute that Wade took FMLA-protected leave in November 2003. Nor do defendants dispute that Wade suffered an "adverse employment action" when her contract was non-renewed. However, defendants dispute that the failure to reinstate Wade to the Module C classes was an adverse employment action because Wade never taught any portion of those modules. *See* below, at 44-47. Wade was not denied any benefits or salary to which she was entitled, and therefore she did not suffer an adverse employment action. *Id.*

A.    **Timing Alone Does Not Establish Causation.**

Wade argues that temporal proximity alone or alternatively, temporal proximity along with other proof, satisfies Wade's burden to establish causation. Wade Motion at 35-38. However temporal proximity generally is insufficient to establish a causal connection. *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1079 (8th Cir.2005). *Smith v. Allen Health System, Inc.*, 302 F.3d 827, 832 (8th Cir.2002). Temporal proximity between the defendant's knowledge of the protected activity and an adverse employment action can constitute sufficient evidence of causality sufficient to uphold a prima facie case of retaliation, but only if the temporal proximity is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Wade relies heavily on *Xin Liu*, 347 F.3d 1125. Wade's Motion at page 36. However, in *Xin Liu*, the temporal proximity between the leave and the employee's termination was approximately one week or less. The employee went on leave on October 17, and the decision to terminate her was made during the third week of October. *Xin Liu*, 347 F.3d at 1131. By contrast, Wade took paid leave, which commenced on November 12, 2003, and the decision to non-renew her contract was made on January 28, 2004, and then only because her contract required notification of non-renewal by that date. Exh. KK, Request For Leave Dated 11/4/03; attached Exh. C, Wade V. I, at 273-74; Wade Motion at 38. Therefore, the temporal gap

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

between Wade's departure on leave and the decision to non-renew her contract was 11 weeks. Further, *Xin Liu* does not stand for the proposition that timing alone will be sufficient for a finding of causation. Rather, the court held that proximity in time "provides supporting evidence of a connection between the two events." *Xin Liu*, 347 F.3d at 1137.[10]

Wade does not cite any cases which support a finding of causation based on timing of 11 weeks alone. *See* Wade Motion at 35-37. *Yartzoff v. Thomas*, 809 F2d 1371, 1376 (9th Cir.1987), held that sufficient causation existed based on circumstantial evidence, such as (a) the employer's knowledge that that plaintiff engaged in protected activity, and (b) the proximity in time between the protected activity and the allegedly retaliatory employment decision (a temporal gap of less than 3 months). In other words, the proximity in time was only one part of the circumstantial evidence, and the *Yartzoff* court did not hold that the proximity in time was sufficient alone to support a finding of causation. *Id.* The temporal gap of 11 weeks between Wade's commencement of leave and the non-renewal of Wade's contract, by itself, is insufficient to support a finding of causation on summary judgment.

**B.    Wade Has Not Shown That Temporal Proximity Along With Other Proof Satisfies Her Burden To Show Causation.**

Wade argues that other evidence supports a finding of causation. Wade Motion at 38-47. Wade argues that Wade was qualified for the job for 3 ½ years. Wade Motion at 39. However,

---

[10]  The other cases cited by Wade are distinguishable since they involved temporal gaps of "less than one month" and less than one day, respectively. *Hodgens*, 144 F.3d at 168 (citing *Donnelon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir.1986)(finding retaliatory pretext based, inter alia, upon employer's having discharged employee less than one month after her filing a discrimination charge); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir.1997)("Morgan has established a prima facie case of FMLA retaliation, in that Hilti sent her a letter of discipline concerning attendance problems on the day she returned from the leave.")). In contrast, a six month gap is too long, standing alone, to establish a prima facie case of retaliation. *Foraker*, 427 F.Supp.2d at 943.

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE. ALASKA
(907) 279-3581

the undisputed evidence is that Wade was not qualified for her position. It is undisputed that Wade signed a series of one-year contracts with the College, and that there was no possibility of tenure. Exh. C, Wade V. I, at 90-99. The Employee Handbook states that Ilisagvik College faculty were "not tenured, and have no expectation of continued employment." Exh. I, Handbook, at 12. Wade was not qualified for her position. Wade was an assistant professor of business management at the College. Exh. C, Wade V. I, at 41. Wade's job description states that her position required a master's degree in business management, information technology or a related field. Exh. H, 2003 Contract, at 6. Further, she was required to have a working knowledge and minimum of two years' teaching experience beyond formal education in the appropriate field. *Id.*; Exh. I, Handbook, at 13.

The College was required to follow the accreditation standards promulgated by the Northwest Commission on Colleges and Universities and therefore its instructors had to be properly qualified for the positions they held. Exh. G, NWCCU Website Documents, at 1. The College faculty was required to be "professionally qualified,""representative of each field or program in which [the College] offers major work," and a competent faculty. *Id.* at 4, 6.

Wade did not have a degree in business, business management, information technology, finance, economics, mathematics, or statistics. Exh. C, Wade V. I, at 60. Instead she had a bachelor's degree in secondary education with a minor in English and a master's degree in art education. *Id.* at 55-56; Exh. F, Wade Transcripts, at 5. Prior to teaching at the College, Wade never taught any business courses, apart from Business English. Exh. C, Wade V. I, at 60-61. In fact, Wade initially applied for an office technology position with Ilisagvik College because she "felt more comfortable applying for that job." *Id.* at 46. Wade's transcripts from MTSU, UAA, and Troy State University contain all of her post-high school classes that she completed, other

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE. ALASKA
(907) 279-3581

than library science at Auburn University. *Id.* at 57-58; Exh. F, Wade Transcripts. Wade took a course in Public School Finance while obtaining a principal's certificate. Exh. F, Wade Transcripts, at 2. Wade took no post secondary business classes or advanced business classes. Exh. C, Wade V. I, at 42, 58.

It is undisputed that Dr. Tuthill, the new dean of instruction in 2003, had the qualifications to determine whether an instructor was qualified to teach certain courses at the College. Exh. D, Tuthill, at 58; Wade Motion at 39. Dr. Tuthill recognized early on that Wade was not qualified to teach business courses. On his first day as dean, he reviewed the faculty's personnel files. *Id.* at 14-15. At the latest, he became aware of Wade's lack of qualifications by August 2003, before he met Wade. *Id.* at 54, 56. Because the College had recently become a fully accredited institution, it was required to have appropriately qualified instructors. *Id.* at 56-58. Dr. Tuthill was aware that Wade's "education was in English, that her graduate degree was in educational administration, and that these degrees were not directly connected to much of the content area of what she was teaching at the College." *Id.* at 56.

At the College, Wade taught courses that included accounting, marketing, finance, and economics. *Id.* at 60; Exh. AG, Wade's Added Duty Contracts, Course Schedules and Syllabi.[11] Dr. Tuthill determined Wade was not qualified to teach business courses at the College because she had not taken advanced courses in finance, marketing, economics, business management, and organizational behavior. Exh. D, Tuthill, at 105. Ideally, a business instructor has a Master's in Business Administration (M.B.A.) degree, and has taken graduate courses in each of those fields.

---

[11] Specifically, Wade taught: Economic History of the North Slope in 2001; Introduction to Business, Principles of Accounting, Principles of Economics, Introduction to Organizational Management, and Financial Management in 2002; Personal Finance, Principles of Marketing, Principles of Economics, and Financial Management in 2003. Exh. AG, Wade Contracts and Schedules, at 1-2, 5, 9-11, 13-14, 16-17.

LANEY WILES, INC.
07 WEST 3rd AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                Page 35 of 48

*Id.* at 106.  "[A]t the community college level, it is appropriate for an instructor to have a master's degree in the field in which they are teaching, or a closely related field." *Id.* at 57.  As dean of instruction, Dr. Tuthill was entitled to set standards for the faculty.  *Id.* at 56, 58.  Wade did not have a master's degree in business management or information technology, or a "related field."  Exh. C, Wade V. I, at 46, 60; Exh. H, 2003 Contract, at 6.  Wade never received a degree in business, finance, economics, mathematics, or statistics.  Exh. C, Wade V. I, at 60.  It is undisputed that Dr. Tuthill determined that she did not have a degree in a related field.  Thus, Wade cannot meet the basic qualification requirements for her position according to her job description.  Exh. H, 2003 Contract, at 6.

Further, she was required to have a working knowledge and a minimum of two years' teaching experience beyond formal education in the appropriate field.  *Id.*; Exh. I, Handbook, at 13.  Wade admitted she had no experience teaching any business classes, other than Business English, before she began teaching at the College.  Exh. C, Wade V. I, at 60-61.  Because Wade cannot establish that: (1) she held a master's degree in business management or information technology or a related field; and (2) she had a working knowledge and a minimum of two years' teaching experience beyond formal education in the appropriate field, Wade has failed to meet her burden of proof that she was qualified for her position.  Exh. H, 2003 Contract, at 6.

Wade argues that Tuthill's claim that Wade was suddenly not qualified was a pretext to terminate her employment.  Wade Motion at 41.  It is unclear if Wade is asserting a FMLA discrimination claim here.  However, Tuthill was in his first year at the College and Wade was already in place when he arrived.  Exh. C, Wade V. I, at 147-48.  It is unknown what the prior deans of instruction may have thought of Wade's qualifications, but it is undisputed that she did

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

not have the qualifications to be a Business Professor.[12]  At least one of the deans prior to Dr. Tuthill was an acting dean.  Attached Exh. C, Wade V. III, at 452.

Wade has failed in her burden of proving she was qualified by a preponderance of the evidence.  Her conclusory allegation that she was qualified is not sufficient to support summary judgment.  *Tovar*, 3 F.3d at 1279.  Alternatively, whether the exercise of FMLA was a negative factor in the decision not to renew her contract and whether she had damages as a result is a disputed issue of fact.

**C.    Wade's FMLA Discrimination Claim Fails.**

**1.    Wade's Prima Facie FMLA Discrimination Claim Fails.**

In order to establish a prima facie case of FMLA discrimination, the *McDonnell Douglas* burden shifting test applies.[13]   Wade Motion at 48.  Thus, the plaintiff must establish a prima facie case of discrimination as follows: 1) she exercised rights protected under the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York, 365 F.3d 165, 168* (2d Cir.2004)(citing *McDonnell Douglas Corp.*

---

[12] Although the College may have acceded in prior years to her lack of qualifications, there is no evidence they agreed to intentionally relinquish their rights upon expiration of the contract term to have qualified professors, particularly after gaining accreditation.  *In re United Marine Shipbuilding, Inc.*, 158 F.3d 997, 1001 (9th Cir.1998)(waiver is the intentional relinquishment of a known right); *Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003)(same). The College did not waive its right to review her qualifications on renewal of each year of her contract.

[13] The Ninth Circuit has never considered an FMLA discrimination claim, and thus it has explicitly reserved judgment on whether the *McDonnell Douglas* analysis would apply in an anti-discrimination action under 29 U.S.C. § 2615(a)(2).  *Xin Liu*, 347 F.3d at 1136 n.10 (citing *Bachelder*, 259 F.3d at 1125).  However, the Ninth Circuit would apply the *McDonnell Douglas* analysis to an FMLA discrimination claim since it is clearly the overwhelming majority view.  See *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998); *Sista v. CDC Ixis North America*, 445 F.3d 161, 176 (2d Cir.2006); *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir.2001); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir.2005); *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir.2006);  *King v. Preferred Technical Group*, 166 F.3d 887, 891-92 (7th Cir.1999); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051-52 (8th Cir.2006); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290 (10th Cir.2007); *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006); *Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1367 (D.C. Cir.2000).

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

*v. Green*, 411 U.S. 792 (1973)).  The burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection.  *McDonnell Douglas*, 411 U.S. at 802.  If the defendant can express a legitimate nondiscriminatory reason for the rejection, the burden then shifts back to the plaintiff to produce evidence that the reason articulated by the employer is a pretext for the retaliatory reason.  *Id.* at 804.  At all times throughout, the plaintiff carries the ultimate burden of persuasion.  *King*, 166 F.3d at 892.

> **2.    There Were Legitimate And Non-discriminatory Reasons For The Non-renewal Of Wade's Contract.**

Defendants have articulated legitimate, non-discriminatory reasons for the non-renewal of Wade's contract.  *See* Exh. AJ, Dr. Tuthill Response to December 11, 2003 Grievance, at 3, 8; Exh. AK, Dr. Tuthill Response to February 29, 2004 Grievance, at 2-4; Exh. RR, Dr. Tuthill Memorandum; Exh. YY, Step 3 Transcript, at 7-11, 15, 20; Exh. ZZ, Decision, at 3-7.  There were a high number of student complaints regarding Wade's teaching.  Exh. YY, Step 3 Transcript, at 15.  Wade did not turn in her grades in on time, which caused grading problems for students at the end of the Fall 2003 semester.  *Id.*  The student success rate in her classes was deficient and declined to 23% in the Fall 2003 semester.  *Id.*  Wade's academic credentials did not meet the standard set by the College administration to fulfill the accreditation standards.  *Id.*  The College had recently obtained accreditation with the Northwest Commission of Colleges and Universities in 2002, and was now accountable to be a crediting body of the Commission.  *Id.* at 9-10.  The College administration was entitled to set standards for the faculty.  Exh. D, Tuthill, at 56, 58.  Finally, Wade showed poor professional judgment in advising students not to take Aimee Valenti's classes, in requesting approval to teach independent study classes to her granddaughter, in promising Amy a grade of DF (deferred), and in helping Amy receive more

LANEY WILES, INC.
07 WEST 3RD AVENUE
SUITE 400
CHORAGE. ALASKA
(907) 279-3581

than $2,000 in tuition waivers from the College.  Exh. YY, Step 3 Transcript, at 15; Exh. R, Dr. Tuthill 1/20/04 E-mail, at 2; attached Exh. C, Wade V. IV, at 780-83; *see also* the College Memorandum in Support of Summary Judgment, pp. 40-42.

### 3.    Wade Has Not Shown Pretext.

Wade argues that the College's proffered reasons for the termination of Wade were created after Wade exercised her FMLA rights and after she was not properly reinstated.  Wade Motion at 39, 47.  However, even if she could prove this claim, it would not warrant summary judgment.  Moreover, while the College knew that Wade was not qualified before she took her leave, the bulk of the remaining issues regarding Wade's performance only became apparent after November 5, 2003.  The primary reason for her non-renewal, Wade's lack of qualifications, was a reason that Dr. Tuthill discovered when he came to the College.  Dr. Tuthill considered it but did not act until it was time to make a decision about the non-renewal.  Dr. Tuthill learned over the Christmas holidays that Wade did not turn in her grades on time and that she had promised her granddaughter a grade of DF, and tried to change that grade.  Exh. D, Tuthill, at 34-35.  The "grade fiasco" was caused by Wade's own actions after she went on leave.  Dr. Tuthill had no control over those events.

In January 2004 Dr. Tuthill noted that Wade's student success rate was 23%.  *Id.* at 93; Exh. RR, Dr. Tuthill Memorandum; Exh. R, Dr. Tuthill 1/15/04 E-mail, at 1.  On January 20, in response to an independent study request for Wade's granddaughter, Dr. Tuthill observed that Wade had taught her granddaughter's last 23 credits at Ilisagvik College.  Exh. R, Dr. Tuthill 1/20/04 E-mail, at 2.  Therefore he rejected Wade's request for her granddaughter, Amy Conyer, to take an additional independent study course to be taught by Wade.  *Id.*  Further, Wade had claimed Conyer as a dependent, although Conyer lived in Tennessee.  *Id.*  Finally, on November

LANEY WILES, INC.
37 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

5, Sonya Abu wrote Dr. Tuthill a detailed memorandum describing student complaints against Wade. Exh. B, Abu, at 49-53; Exh. Q, Abu Memorandums, at 24-25. The Blackboard problems were problems that occurred during the Fall semester, which was the first opportunity Dr. Tuthill had to evaluate Wade's work since it was his first semester at the College. Because these issues concerning Wade's performance arose after Wade took her medical leave in November 2003, the College's decision to not renew Wade's contract on January 30, 2004, cannot be pretext.

Wade claims that the vast majority of the student complaints came from one student. Wade Motion at 42. However, Sonya Abu testified that there was one spokesperson for the students because a lot of the students were shy and there were concerns about confidentiality. Exh. B, Abu, at 19. Further, Tuthill had

> multiple student complaints from a variety of sources that Miss Wade was disinterested, unhelpful, judgmental, rude. They felt intimidated, they felt humiliated, they felt confused.

Exh. D, Tuthill, at 230.

Wade argues that Tuthill did not take Wade's prior good student evaluations into consideration. Wade Motion at 42. In fact Dr. Tuthill reviewed her personnel file and all other faculty files when he first came to the College. Exh. D, Tuthill, at 14-15. Wade does not provide any factual support for this assertion. Bare assertions or unsupported conclusions are not facts sufficient to support a summary judgment. *Tovar*, 3 F.3d at 1279.

Wade argues that the success rate for all the classes combined in Fall 2003 was a success rate of 90.65%, not 26% as Tuthill claimed. Wade Motion at 43 (citing Exh. 34). Wade's Exhibit 34 does not include Wade's Business Math or Business English classes in its calculations. Nor is it clear what this report actually means. At the top of the page it states "Percentage of Student Credit Hours Delivered via Blackboard." At the bottom it states

LANEY WILES, INC.
37 WEST 3RD AVENUE
SUITE 400
CHORAGE, ALASKA
(907) 279-3581

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                              Page 40 of 48

"Retention rate for Blackboard courses – Fall 2003 semester." The College requests that the court strike this exhibit because it does not have a qualifying foundation. Documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773-74 (9th Cir.2002)(citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1987)).

Wade argues that she complied with two "direct orders" in Tuthill's January 15, 2004, email to Wade. Wade Motion at 44. However, she misreads Tuthill's testimony. Tuthill testified that when he wrote his memorandum regarding Wade's performance issues, she had not complied at that time. Subsequently she did comply with the two direct orders. Exh. D, Tuthill, at 93-95. Further, at the same time Dr. Tuthill notified another faculty member, Courtneay Bartholomew, that there were problems with his performance. Exh. D, Tuthill at 130-31. Bartholomew responded promptly and made the requested corrections. *Id.* Wade's assertion that this reason for her termination is "simply false" is mistaken. Wade does not dispute that she was hostile to Aimee Valenti. Wade Motion at 45. Even if Wade took issue with another instructor teaching Business English Module C, it does not excuse her behavior towards Valenti, which was unacceptable.

Wade argues that Dr. Tuthill did not give Wade time to cure her performance issues. Wade Motion at 44. However, Dr. Tuthill was bound by the terms of Wade's contract to give her notice of non-renewal when he did, and he waited until the last day to do so. Exh. A, Trustees Policy Manual, at 5. Wade claims that but for the leave she would have been teaching. Wade Motion at 45. Defendants do not dispute this, but Wade's motion also cites to 29 C.F.R. § 825.214(a). Wade Motion at 30. 29 C.F.R. § 825.214(a) grants the employer the discretion to replace the person on FMLA leave.

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB          Page 41 of 48

Wade defends her granddaughter's independent study request and argues that she did not violate any policy on tuition waivers. Wade Motion at 46. Yet Wade fails to mention that her granddaughter Amy Underwood took her last 23 credits from her grandmother despite the fact that she was living in Tennessee and attending school in Tennessee. Exh. C, Wade V. IV, at 969-70. Underwood did not attend the in person classes in Barrow. Exh. T, Conyer, at 66-68. She was promised a grade of DF (deferred) in Business English, which was against College policy, and Wade attempted to change the grade after Aimee Valenti submitted it. Exh. C, Wade V. IV, at 780-83; Exh. D, Tuthill, at 186-87. The tuition waiver policy should have been clear but Wade was not penalized for this. Wade caused a "grade fiasco" in the Business English and Business Math Module C classes. Exh. D, Tuthill, at 34-35, 169. Even Amy Underwood recognized that it was an appearance of a conflict for her grandmother to grade her in all of her classes that would lead to a degree. Exh. T, Conyer, at 130. Underwood's grades at Middle Tennessee State University compared to her grades at Ilisagvik reflect this. *Compare* Exh. V, Conyer MTSU Transcript; Exh. U, Ilisagvik College Transcript. Dr. Tuthill had reasonable grounds to use this as a factor in the decision not to renew Wade's contract.

Wade raises irrelevant arguments that Tuthill's wife worked in the Registrar's office and was within his normal chain of command. Wade Motion at 46. Likewise, Pam Taylor's life partner was an adjunct teacher. *Id.* at 47. Wade ignores the reality that Barrow is a small town in a very remote location, which sometimes requires that relatives of College employees be hired in order to meet job requirements. Dr. Tuthill's wife's employment at the College was not a violation of the policy however. Wade's Exhibit 38, at 2.

The evidence demonstrates that even if there was an inference of discriminatory motive, the College would have made the same decision to not renew Wade's contract, and therefore

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 42 of 48

Wade cannot recover for this claim. *See Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 333 (5th Cir.2005)(mixed-motive test).  Mixed motive cases present a greater burden of proof for plaintiffs, and the plaintiff must be able to produce a "smoking gun" to support her allegation of discriminatory treatment. *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 177 (2d Cir.2006).

In summary, Wade has not established that the adverse employment action of her contract non-renewal was causally related to Wade's FMLA leave.  Timing alone is not sufficient here to establish causation.  At best for Wade, there are disputed issues of material fact which prevent summary judgment for Wade on her FMLA interference or discrimination theories.  Wade cannot establish a prima facie claim of FMLA discrimination because she was not qualified for her position.  Further, Wade has not established pretext in support of her FMLA discrimination claim.  Therefore, the court should dismiss her FMLA discrimination claim. *Stallings*, 447 F.3d at 1052.

## VIII. Defendants Did Not Retaliate Against Wade.

Wade claims that defendants retaliated against her "for insisting upon use of FMLA protected medical leave during the school year and then protesting the defendants (sic) failure to properly reinstate her to her job upon her return."  Wade Motion at 47.  There is no "retaliation" claim under the FMLA; rather, it is called a discrimination claim. *Xin Liu*, 347 F.3d 1125, 1136 (9th Cir.2003).  Wade has properly cited the test to apply.  Wade Motion at 48.  Wade must prove that she was qualified, which she cannot do. *See* above, at pp. 34-37.  Even if she establishes a prima facie case of FMLA retaliation, defendants have articulated several legitimate, non-discriminatory reasons for the non-renewal of Wade's contract. *See* above, at pp. 38-39.  Because many of these issues concerning Wade's performance arose after Wade took her

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 43 of 48



medical leave in November 2003, the College's decision to not renew Wade's contract cannot be pretext. *See* above, at pp. 39-43. Therefore, the Court should dismiss Wade's FMLA discrimination claim. *Stallings*, 447 F.3d at 1052. Alternatively, with a mixed motive claim such as this it is a complete defense that the employer would have taken the same action even with the discriminatory motive. *Richardson*, 434 F.3d at 333. As set out above and in the College's motion for summary judgment, the College would not have renewed Wade's contract even if there was an inference of discriminatory motive.[14]

### IX.    Defendants Did Not Fail To Properly Reinstate Wade When She Returned From Her Leave.

Wade claims that she was not properly reinstated back to her Business Math C and Business English C classes. Wade Motion at 29-33. However, Wade never taught any portion of those modules. They were assigned to other instructors before she went on leave and were halfway completed by the time she returned from leave. Exh. C, Wade V. I, at 330-31; Exh. MM, Business English Syllabus, at 1; Exh. D, Tuthill, at 119. Because Wade never signed contracts to teach the Module C courses, assigning other instructors did not violate 29 U.S.C. § 2614. Dr. Tuthill had the authority to assign instructors or reassign instructors. He had general supervisory authority over all instructional and student service programs. Exh. D, Tuthill, at 8. 29 U.S.C. § 2614(a)(1) states that upon return from FMLA leave, an employee shall be restored by the employer to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits and pay.

---

[14] Wade claims that her grievance angered Dr. Tuthill. Wade Motion at 49 (citing her Exhibit 24). Wade's Exhibit 24 contains no suggestion or inference of anger. Disagreement or different view points do not connote anger. Wade has fabricated this issue.

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 44 of 48

Moreover, the College had discretion to reassign her duties. 29 CFR 825.214(a); *see* above at 41.

Wade took paid leave from November 12-26, 2003, and returned to work on December 1. Exh. C, Wade V. II, at 321; Exh. KK, 11/4/03 Leave Request. When Wade commenced her leave in November 2003, she was an assistant professor of business management. Exh. C, Wade V. I, at 41; Exh. H, Wade 2003 Contract. When she returned from leave, she was reinstated to her position of assistant professor of business management. Her base pay and other benefits, including insurance, remained the same. Exh. AF, Wade Earnings Statements for October to December 2003. In each earnings statement, she received $2,902.96 for her base salary.[15]   *Id.* Thus, her base pay remained the same as before she took leave.

At the beginning of the semester Wade was obligated to teach 12 credits, in addition to "overload" credits. Exh. D, Tuthill, at 252. Faculty were paid their base pay for 12 credits of instruction and three credit equivalents of service. *Id.* Any credits above the base teaching load were normally compensated at the rate of $1,500 per credit. *Id.* Near the end of the semester, the practice of the Business Office was to calculate the faculty member's teaching load, make a list of 12 credits, and assign the other credits to an added duty contract. *Id.* Wade's course schedule in the Fall 2003 semester shows that she taught 18 credits. Exh. AG, Wade Fall 2003 Course Schedule, at 14. This schedule does not include Business Math Module C or Business English Module C because Wade did not teach those modules. *Id.* Because she did not teach Business English Module C or Business Math Module C, her base load was only 10 credits. However, she had 8 added duty credits, which brought her total load to 18 credits. Wade was

---

[15] The earnings statements dated November 21 and December 4 break Wade's base salary down into two categories: "FACLEA" and "SALARY." Nevertheless, when the two figures are added, they total $2,902.96.

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 45 of 48

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

therefore paid in full.  Wade was paid $4,500 for added duty classes on November 21, and was paid another $4,500 for added duty classes on December 4.  Exh. AF, Wade Earning Statements, at 3, 4.  Thus Wade was paid the correct and full amount due to her for added duty classes, although the College may have been more artful about the process.

Wade claims she was not reinstated to the same position she held prior to her leave because she was not reinstated to teach Business English Module C and Business Math Module C.  Wade Motion at 32.  Instead Dr. Tuthill hired two other instructors to teach Module C of both classes.  Exh. D, Tuthill, at 119.  The decision to hire Aimee Valenti was made before Wade took her leave.  Id. at 114.  Wade admitted she became aware that Valenti would teach the class on November 12.  Attached Exh. C, Wade V. IV, at 807-08.  Wade never signed added duty contracts for Business English Module C or Business Math Module C.  Id. at 119.  Rather, Valenti and Tim Carlson signed added duty contracts for those modules.  Exh. AH, Valenti Adjunct Faculty Employment Contract; Exh. AI, Carlson Added Duties Agreement.  Module C had not begun when her leave was approved and Tuthill had advised Wade that if she took leave he did not see how she could teach Module C.  Moreover, each module, i.e., Module A, Module B and Module C was a discrete class with a final grade at the end of each module.  Exh. C, Wade V. I, at 153-54.

Wade did not teach the Module C classes, which were halfway completed by the time she returned from leave, and both courses were taught by adjunct instructors.  Exh. C, Wade, V. II, at 330-31; Exh. MM, Business English Syllabus, at 1; Exh. D, Tuthill, at 119.  The FMLA does not require an employee to be reinstated into a class that she has not started teaching prior to when the leave began, and was not scheduled to be taught until after the leave began.  Further, it is undisputed Wade continued to teach the semester-long courses she was scheduled to teach.

Delaney Wiles, Inc.
Suite 400
1007 West 3rd Avenue
Anchorage, Alaska
99501
(907) 279-3581
Fax (907) 277-1331

Opposition to Plaintiff's Motion for Partial Summary Judgment on FMLA
*Wade v. Ilisagvik, et al.*, Case No. 3:05-cv-00086-TMB                    Page 46 of 48

Because the contracts were not signed, assigning other instructors did not violate 29 U.S.C. § 2614. Wade's motion for partial summary judgment should be denied on this basis.

Alternatively, the sum of damages owed regarding reinstatement is $3,000. Wade's Motion at 33. Ilisagvik College could have satisfied its obligation to Wade by simply paying her $3,000. The court is requested to limit Wade's FMLA compensatory damages, if any, to $3,000.

### XI. CONCLUSION

Wade has failed to meet her burden of proof that there is no genuine issue as to any material fact and that Wade is entitled to judgment as a matter of law. Wade's argument fails as a matter of law because: (1) Wade has failed in her burden of proving any combined medical condition was a serious health condition before October 30; (2) Wade did not give proper notice of her need for medical leave; (3) defendants acted in accordance with FMLA when they denied Wade's leave requests in October 2003 and did not interfere with Wade's FMLA rights; (4) defendants did not interfere with Wade's leave or discriminate against her; (5) defendants did not retaliate against Wade; and (6) defendants did not fail to properly reinstate Wade when she returned from her leave. The Court should therefore deny Wade's Motion For Partial Summary Judgment On FMLA.

DELANEY WILES, INC.
Attorneys for Defendants Ilisagvik College,
John Tuthill, and Pamela Taylor

Dated: 8-3-07          __s/Cynthia L. Ducey_____
                       Cynthia L. Ducey, ASBA # 8310161
                       Delaney Wiles, Inc.
                       1007 West 3rd Avenue, Suite 400
                       Anchorage, AK 99501
                       (907) 279-3581
                       (907) 277-1331 Fax
                       cld@delaneywiles.com

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331

Certificate of service

I certify that a true and correct
copy of this document has
been served by electronic service
on the 3rd day of August, 2007 upon:

Linda Johnson

By:  Cynthia L. Ducey_____
133402

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
99501
(907) 279-3581
FAX (907) 277-1331