Linda J. Johnson
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, AK 99501-3454
(907) 272-9272
(907) 272-9586 fax
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BOBBI WADE,<br><br>               Plaintiff,<br><br>v.<br><br>ILISAGVIK COLLEGE; JOHN TUTHILL,<br>individually; and PAMELA TAYLOR,<br>individually,<br><br>               Defendants. | Case No. 3:05-cv-086-TMB |

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff Bobbi Wade opposes the motion for summary judgment filed by Defendants Ilisagvik College, John Tuthill and Pamela Taylor.  When deciding summary judgment, the court is required to construe the facts stated by Defendants in the light most favorable to Ms. Wade.  *Genzler v. Longanbach,* 410 F.3d 630, 637 (9th Cir. 2005).  Defendants ask the court to construe all facts in their favor in order to find for the Defendants.  The court cannot enter summary judgment because Defendants cannot prove that there is no genuine issue of material fact on Plaintiff's claims of violation of FMLA, Whistleblower, & 42 U.S.C. §1983 for Due Process and FMLA, and punitive damages.  The motion must be denied.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 1 of 43

## I. MATERIAL FACTS ASSERTED BY DEFENDANTS ARE NOT UNDISPUTED, AND WHEN THE COURT DRAWS REASONABLE INFERENCES OF FACT IN FAVOR OF PLAINTIFF, DEFENDANTS' MOTION MUST BE DENIED.

Defendants refer to facts as "undisputed" but have no basis upon which do to so.  Defendants use the word "undisputed" 32 times in their brief.  Defendants' use of the term undisputed means that Defendants want the court should draw the inferences in their favor.  This would be improper.

For example, Defendants allege that: "It is undisputed that the College accepted Wade's December 11 'Formal Grievance.'"  Memorandum at 31.  This is untrue.  In an e-mail to Ms. Wade, Taylor stated:

> Status of Written Complaint [dated 12/11/03]
> As per the Grievance qualification criteria outlined in the Employee Handbook [pp.46-47], your written complaint does not qualify as a Grievance because it failed to
> a.) Specify which College policies have allegedly been violated.
> b.) Specify any requested remedy(ies.)

Ex. 1, set out as originally written.  Taylor also states: "I explained to you this morning why a Grievance situation does not currently exist."  *Id.*  Therefore it is disputed that the College accepted Ms. Wade's December 11, 2003 formal grievance; in fact, the College denied the grievance.

Given the space limitation of this brief, Ms. Wade cannot take the time to prove that all 32 uses of the term "undisputed" are incorrect.  But based on the unreliability of the Defendants use of the term, the court should not accept Defendants' characterization in any context.  Plaintiff therefore denies all of the Defendants' facts as stated by them, unless specifically noted otherwise.  All inferences from facts stated by Defendants must be drawn in Ms. Wade's favor.  When that is done, the court cannot grant summary judgment.

## II. THE FMLA CLAIMS SHOULD NOT BE DISMISSED.

Defendants use an improper standard for proof of interference with a claim of the Family and Medical Leave Act.  Defendants cite to a 2001 district court case

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 2 of 43

from Oregon, which relies upon a case from New York for their test.  See Memo at 19.

The Ninth Circuit has clearly stated that the standard is: (1) the employee attempted to exercise her rights under the Act; (2) her employer subsequently engaged in activity that tends to chill the exercise of her rights; and (3) her employer's activity was motivated by the exercise of her rights. *See Bachelder v America West Airlines, Inc.,* 259 F.3d 1112, 1124-26 (9th Cir. 2001).  The Ninth Circuit recently affirmed this test in an unpublished opinion*: Rexwinkel v. Parsons*, 162 Fed.Appx. 698 (9th Cir. 2006).  This is the test that should be applied.

### A.  Ms. Wade Gave Proper Notice of Intent To Take Leave.

It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act.  *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1131 (9th Cir. 2001).  In order to obtain leave under the FMLA, a qualified employee must first give an employer notice of her intent to take leave.  29 U.S.C. §§2612, 2629; 29 C.F.R. §825.303.  The notice, however, does not need to be in any particular format, nor particularly detailed.  The notice only has to notify an employer of circumstances <u>suggesting</u> that the FMLA might apply.  *Bachelder v America West Airlines, Inc.,* 259 F.3d 1112, 1130 (9th Cir. 2001).  The employee does not need to mention the FMLA by name.  29 C.F.R. §825.303.

Defendants agree that Ms. Wade asked for medical leave the last week of September 2003 and assume for the resolution of the motion[1] that Ms. Wade presented the note from Dr. Church.  Memo at 10.  Defendants also agree that Ms. Wade obtained a follow up medical note from Dr. Snyder in Barrow, but they argue about its clarity.  Memo at 11.  Defendants do not dispute that Ms. Wade presented the second doctor's note.

---

[1] To assume otherwise would not only be contrary to the evidence, but would also not construe the evidence in the light most favorable to Ms. Wade.

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 3 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

With the submission of two doctors notes,[2] Ms. Wade clearly gave sufficient information to "reasonably apprise [an employer] of the employee's request to take time off for a serious health condition." *Mora v. Chem-Tronics, Inc.,* 16 F.Supp.2d 1192 (S.D.Cal. 1998) – see Defendants' Memo at 20.[3]    Notice of leave does not need to be elaborate.  In fact, *Mora* found that: "Defendant's argument that as a matter of law a mere statement that a family member is ill does not provide sufficient notice to the employer that the employee's absence is FMLA or CFRA qualifying is erroneous. "  *Mora,* 16 F.Supp.2d at 1210.   Indeed, Ms. Wade's submission of two doctor's notes went above and beyond the actions upheld by the very cases that Defendants rely upon.  The cases that Defendants rely upon do not support their arguments that Ms. Wade's notice of leave was inadequate.

Defendants argue that Ms. Wade should have given 30 days advance notice because the medical leave was "foreseeable" and that her failure to do so invalidates her notice of need for medical leave.   Defendants merge the legal arguments on notice with the legal arguments on foreseeable leave.   The two are separate and distinct.   Compare 29 U.S.C. §§2612, 2629; 29 C.F.R. §825.303 (laws discussing notice) and 29 U.S.C. §2612(e)(2)(B), and 29 C.F.R. §825.304(a). The differences in the two do not justify summary judgment for Defendants.

Sufficient notice was given.  Defendants were required to ascertain whether medical leave was requested and then grant the leave within the next 30 days, if the notice was for foreseeable leave. 29 C.F.R. §825.304.   Instead, they just denied it.  The jury should determine whether Defendants actions were proper.

---

[2]  It is of no consequence that Ms. Wade checked personal leave on her form. Defendants were on notice that her leave might qualify under FMLA.  That is all that is required from Ms. Wade.

[3]  *Mora* stated: "Generally, whether the notice is adequate is a question of fact. *See, e.g., Hopson v. Quitman County Hosp. & Nursing Home, Inc.,* 126 F.3d 635 (5th Cir. 1997) ("[s]uch determinations are question of fact and better left to the jury with its traditional function of assessing human behavior and expectations")." 16 F.Supp.2d at 1209.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 4 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

**1. Defendants Did Not Properly Invoke A Right To Certification.**

Defendants argue that it was Ms. Wade's sua sponte obligation to submit a medical certification prior to leave. Defendants assert that it is "undisputed" that she was required to provide the certification 30 days prior to her leave, but did not do so. Memo at 23.[4] The assertion is an incorrect interpretation of the law. Defendants did not make a proper request for certification.

As set forth above, it takes very little for an employee to establish proper notice of a need and intent to take medical leave under the FMLA, which then triggers the employer's duty to inquire further, if necessary. In contrast, certification comes after notice. 29 C.F.R. §305(a) gives an employer the right to request a certification from a medical provider, but the employer must give notice of the requirement each time a certification is required. The law makes it clear that in order to invoke FMLA, the employee is not required to voluntarily provide certification; instead certification is an option that employers may invoke.

Additionally, 29 C.F.R. §305(d) makes it clear that the burden is on the employer:

> At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification. The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency

Defendants never required certification. Instead, Defendants required that Ms. Wade obtain "written notification from a licensed physician … to the effect that your medical treatment cannot wait until the December break …" Ex. 5, December 9, 2003 e-mail. Notably, the regulation does not allow an employer to verify

---

[4] On page 23 of their Memo, Defendants again improperly use the word "undisputed." They claim that it is "undisputed Wade cannot prove . . . that she gave proper notice of her intention to take leave." *Id.* The statement ignores the two doctors' notes, Tuthill's own e-mail communication about "medical leave", the phone call that Defendants Tuthill and Taylor made to the College's attorney inquiring about FMLA, etc.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 5 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

whether their medical leave can wait.  Defendants' request for notification was <u>not</u> a request for certification and did not tell Ms. Wade what would happen if she did not provide it.  Therefore, Defendants did not invoke their right to certification and were not entitled to deny her leave based on their failure to properly request a certification.

The court should not grant summary judgment on Defendants' failure to properly request certification.

**2. Foreseeable Leave Does Not Allow An Employer To Deny Leave.**

When medical leave is foreseeable, the federal statutes require that Ms. Wade make a "reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider . . ."  29 U.S.C. §2612(e)(A).  The statute only allows the employer to delay FMLA leave for 30 days if sufficient notice is not provided, but only if the need for leave is foreseeable. 29 U.S.C. §2612(e)(2)(B), and 29 C.F.R. §825.304(a).  Notably, the law does NOT say that an employer may delay the leave interminably or deny the leave based on its foreseeability.  The law does not allow an employer to require an employee to prove their leave can't wait until it's more convenient for the employer.  (See below.)  If an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave. 29 C.F.R. §825.304(a).

Even if the court determines that the leave was foreseeable, the regulations do not allow an employer to simply deny the leave.  They must choose one of the two options set forth in 29 C.F.R. §825.304(a), neither of which is deny the leave.

Ms. Wade gave notice during the last week of September that she needed medical leave.  As acknowledged by Defendants, Ms. Wade asked for leave 18 days in advance.  Memo at 10.  If the medical leave was considered foreseeable, Defendants should have, but did not, tell Ms. Wade that she could obtain leave in

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 6 of 43

30 days.  Their failure to do so was a violation of the FMLA and no summary judgment should be granted to Defendants.

**b. College Violated The FMLA By Forcing Ms. Wade To Prove Her Leave Could Not Wait Until Christmas break, 2 months away.**

John Tuthill acknowledged Ms. Wade's request for time off was medically related in an e-mail addressed to her on October 3, 2003, but denied Ms. Wade's leave unless and until she obtained a medical opinion that Ms. Wade "require[d] immediate medical treatment".  Ex. 3.  Tuthill did not refer to a medical certification, instead he put a burden upon Ms. Wade to establish that her medical could not wait.[5]

Then, despite receiving another doctor's note dated October 6, 2003, John Tuthill wrote to Ms. Wade on October 9, 2003 and told her that:

> If you are planning to take the medical leave later this month, I need written notification from a licensed physician, preferably by fax and as soon as possible to the effect that your medical treatment cannot wait until the December break, when you could have the treatment without conflict with your regular teaching duties.  As soon as I have received such a notification, I can begin to process the request for medical leave.

Ex. 2, emphasis added.  Tuthill's requests are **not** for medical certification, as that term is used in the FMLA laws and regulations.  See argument above.  Instead, Tuthill required Ms. Wade to prove that she can't wait for medical treatment.  Defendants' insistence (not merely a suggestion) that Ms. Wade provide proof that her leave could not wait until the December break constituted interference with her federal rights.

Why would Tuthill do this?  His motivation is clear from Defendants' brief.  Defendants state that Tuthill was attempting to change the amount of contractual leave time that professors were granted at Ilisagvik College, because as an administrator he had never encountered so much available leave.  Memo at 5.  He

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

---

[5] Plaintiffs cite to Bobbi Wade's deposition testimony as proof of the requirement for certification, but all the testimony states is that she received the e-mail.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 7 of 43

wanted his professors to only take a day or two leave, despite their contractual rights. *Id.* Therefore, when Ms. Wade asked for medical leave, Tuthill was intent upon denying her leave request, so as to fit her into his new mold, despite her legal, and not just contractual right to take leave.[6]

29 U.S.C. §2615(a) (1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of" any right provided by the FMLA. 29 C.F.R. §825.220(b) states that interference includes "discouraging an employee" from taking FMLA leave. An employee may bring a claim of FMLA interference "for actions that could 'chill' [the] desire to take FMLA leave." *Sherrod v. Philadelphia Gas Works*, 57 Fed.Appx. 68, 73 n. 6 (3d Cir. 2003). Other courts have found interference when an employer merely asks an employee to delay their FMLA leave. See *Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F.Supp.2d 255 (D.N.J. 2001); *Williams v. Shenango, Inc.,* 986 F.Supp. 309, 313 (W.D.Pa. 1997); *Butler v. IntraCare Hospital North, et al.,* 2006 WL 2868942 *4 (S.D.Tex. Oct. 4, 2006); *Grosso v. Federal Exp. Corp.*, 467 F.Supp.2d 449, 465 (E.D.Pa. 2006).

Defendants' actions had the very effect that the law was intended to prevent: Ms. Wade was forced to choose between her job and her medical needs. She chose her job. See October 9, 2003 e-mail, Ex. 2. The FMLA prevents an individual from having to choose between her livelihood and treatment for her serious health condition. *Scamihorn v. General Truck Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002).

FMLA rights are to be exercised when an employee needs medical care, not when a supervisor determines that leave is "convenient". The FMLA was enacted to respond to the " 'serious problem with the discretionary nature of family leave' " that occurs "when 'the authority to grant leave and to arrange the length of that leave rests with individual supervisors.'" *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 538 U.S. 721 (2003). John Tuthill refused to authorize FMLA

---

[6] Tuthill's zeal to restrict leave also accounts for his anger after Ms. Wade did take medical leave to deal with her skin cancer.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 8 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

leave to Ms. Wade and discouraged her from using such leave by requiring yet another medical note and by requiring her to schedule her leave for the "December break" 70 days later, so that her leave would not conflict with her classes. Defendants' actions are prohibited by the FMLA.  29 C.F.R. §825.220.  *Xin Liu v Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) held that "it follows that an employer had discouraged an employee from taking FMLA leave when his or her supervisor interferes with the length and dates of leave, including denying leave out right."  *Id.* at 1134.  The Ninth Circuit found "a clear interference" with the employee's right to take FMLA leave based on the supervisor's testimony that he believed that he had discretion on the matter of the leave and so refused to grant her extensions repeatedly, and he pressured the employee to reduce her leave time.  *Liu*, at 1134.

Ms. Wade's supervisor continually pressured Ms. Wade to wait to seek medical treatment until the December break.  This is not the same as requiring medical certification as allowable under 29 C.F.R. §825.305.  John Tuthill required Ms. Wade to certify why she could not wait.  Defendants violated Ms. Wade's FMLA rights.  Their insistence that Ms. Wade prove that her leave could not wait constituted interference with her FMLA claim. The motion for summary judgment should be denied.

**c.  Ms. Wade Was Intimidated Into Stating Her Leave Could Wait Until Christmas, She Did Not Withdraw Her Leave Request.**

Defendants violated Bobbi Wade's rights to FMLA leave when they denied her leave requests and demanded she schedule her leave at a time that did not "unduly interfere" with the College's business.  Defendants freely admit that they required (not merely a suggestion) Ms. Wade to provide proof that her leave could not wait until the December break.  Their actions were not only chilling, but constituted interference as a matter of law.

And in fact, Defendants' actions had the very effect that the law was intended to prevent: after Ms. Wade presented two doctors' notes that indicated that she needed medical leave but Defendants still insisted upon further

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 9 of 43

documentation to prove she could not wait until December for her medical attention, Ms. Wade was forced to choose between her job and her medical needs. Defendants rejected her second doctor's note, refused to allow her to adjust her teaching schedule, and demanded she prove that her leave could wait until the December break." She chose her job.

Defendants contend that Ms. Wade "withdrew" her leave request on October 9, 2003 and therefore Defendants had no further duty under the FMLA. Defendants' state that "A reasonable employer would have considered the October 9th e-mail as a withdrawal of her leave request." Memo at 12.    Credibility determinations, weighing of evidence and drawing legitimate inferences from the facts are jury functions, and not proper during consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Therefore, the court cannot weigh the evidence to determine what a "reasonable employer" would have thought.

Nevertheless, the evidence is contrary to Defendants' assertion.  During her 4 days of deposition which took 23 on-record hours, Ms. Wade consistently stated that she did not withdraw her leave request:

> Q.  So you withdraw it as of --
> A.  That's not a withdrawal.
> Q.  Well, what is it, ma'am?
> A.  I never said I was withdrawing my request.
> Q.  Well, maybe it's --
> A.  I was just going along with his idea and agreeing that it -- it would
>     be better for me to wait until the Christmas holidays because he would
>     not let me change my class schedule.

Ex. 4, Wade Depo. Vol. I at 260.  Again in Wade Depo. Vol. II at 300, Ms. Wade stated in response to the same question that "I did not withdraw anything."  Ex. 5.

In fact, the Ms. Wade agreed only after Tuthill had rejected her second doctor's note, refused to allow her to adjust her teaching schedule, and demanded she prove that her leave "cannot wait until the December break."  E-mail at 2.  Ms. Wade made a choice at this point.  It was clear to her that if she took the medical

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 10 of 43

leave, her job would be in jeopardy; therefore, Ms. Wade chose her job.  This was not a "withdrawal" but an acknowledgement of defeat.[7]

Defendants' assertion that Ms. Wade withdrew her leave request is contradicted by the facts. The motion should be denied.

**d. Defendants were not "entitled" to demand information from an employee to establish that a leave will not be "disruptive."**

Defendants contend that they were "entitled" to demand information from Ms. Wade to establish that her medical leave would not be "disruptive."  In support of that contention they cite to another jurisdiction's decision in *Bauer v. Varity Dayton-Walther Corp.,* 118 F.3d 1109, 1118 at n. 5 (6th Cir. 1997).  The case does not support their argument.  Instead *Bauer* states that for foreseeable leave, an employee is required "to consult with the employer in scheduling the leave so as to minimize any disruption to the employer's operations."  *Id.* at n. 5.  Despite Defendants' claim, the case does not "entitle" them to demand an employee prove that her medical leave will not be "disruptive."  Defendants cannot rely solely on the isolated language they cite to support their failure to follow the FMLA.

**d. October 20th Leave Request Was Still Medical; the Request Demonstrates Ms. Wade's Intimidation Stemming From The October 9, 2003 E-mail from Tuthill Threatening To Not Approve Added Duty Contracts If Ms. Wade Took Medical Leave.**

Defendants argue that they were under no obligation to view Ms. Wade's "October 20" leave request as anything other than a request for personal leave because Ms. Wade did not submit yet another doctor's note to support her need for medical leave.

First, there is no indication of when the leave request was made, only when Tuthill denied it, but it was close in time to her other requests for medical leave.  Ex. 7, e-mail dated October 20, 2003.

_____

[7] That Ms. Wade did not withdraw her request is further supported by the next e-mail she sent to Pam Taylor on October 14, 2003 asking about the status of her medical leave request.  Ex. 6.  Ms. Taylor's response was to throw Ms. Wade back to Tuthill, who had twice denied her medical leave.  The response was disheartening.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 11 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Second, Tuthill characterizes the leave as "personal" in his e-mail, but in the past he has willfully refused to characterize Ms. Wade's medical leave request as FMLA, so it is possible he mischaracterized this request too.  Even if the request was submitted as "personal" it came so quickly on the back of her other requests, within 11 days of Tuthill's last written communication on the topic, which Tuthill should have suspected that it was related to Ms. Wade's prior medical leave requests.  The reasonable inference is that the request was probably for medical leave.  A jury should decide.

Third, it should not surprise anyone if Ms. Wade purposely characterized her leave as personal, since on October 9, 2003, Tuthill threatened to withdraw her classes if she took medical leave.  He stated:

> As for OT 104 – Filing and Record Management: if you want to take it on, you are more than welcome. . . . But I don't see how we can do that if you are expecting to go on medical leave later this month.  If that is likely to happen, then I need to find a substitute instructor for your Business English and Business Math classes, and an alternate instructor for OT 104.

Ex. 8.  This statement is a clear threat: don't go on medical leave or I will take your extra duty classes from you.[8]   Therefore, in the face of such a threat, it was reasonable for Ms. Wade to characterize her leave as "personal."

Finally, as demonstrated above, the College never requested medical certification, and therefore withholding leave after the October 20th request was indeed still violative.   There is no basis for the College to receive summary judgment on this issue.

**e. Nov. 3 And Nov. 4 2003 Leave Requests Were Approved But The Leave Was Not Designated FMLA Protected, As Required.**

Ms. Wade agrees that Defendants granted her time off in November 2003.  However, Defendants failed to properly designate the leave as FMLA, as required under federal law.

---

[8] Subsequently, Tuthill made good on this threat, refusing to reinstate Ms. Wade to the very classes he said he would strip from her if she took medical leave.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 12 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Defendants ask the court to excuse their failure to designate the medical leave as FMLA protected based on the fact that they granted the leave.  But their failure had real life consequences.  By not designating the medical leave as FMLA, Ms. Wade did not recognize that she was covered by federal law and entitled to protections.  Defendants' failure to provide her this information further prevented Ms. Wade from obtaining any specific documentation from her doctor to support her claims.  Defendants' failure to designate the leave as FMLA also prevented Ms. Wade from notifying her doctors that she was on protected leave.  If she had, the doctors might have made more detailed notes in their charts about her treatment. If Ms. Wade was aware of her FMLA status, she could have researched her rights both before and after her leave and been able to articulate her needs more forcefully.  Defendants deprived Ms. Wade of more than status, they deprived her of her rights.  Defendants should not receive summary judgment on this issue.

## B. As A Matter Of Law, Ms. Wade Was Not Properly Reinstated.

Ms. Wade returned from medical leave and was not properly reinstated as required by the FMLA.  Ms. Wade was scheduled to teach Business English Module C and Business Math Module C starting in November 2003 as part of her regular duty teaching credits. John Tuthill confirmed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C.  That was the plan at that time." Ex. 9, Tuthill Depo. at 187.  "But for her leave [Ms. Wade] would have been teaching Module C."  *Id.*  But because Ms. Wade took FMLA protected leave, John Tuthill replaced Ms. Wade with other instructors in each of those classes and refused to reinstate Ms. Wade to those classes when she returned from FMLA leave.  Defendants compounded their violation by determining that Ms. Wade had not met her contractual amount of hours, and then further penalized her by refusing to pay for extra duty classes that she had already performed.  Ex. 10 at 3.  The egregiousness of the violations certainly prevents Defendants from obtaining summary judgment.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 13 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

### 1.    The Law Requires Reinstatement To A "Virtually Equivalent" Position.

The FMLA entitles employees who have returned from family medical leave to be reinstated to the position they held before leave, or to a position with "equivalent employment benefits, pay, and other terms and conditions of employment."  29 U.S.C. §2614(a)(1)(A) and (B).  An employee is entitled to the same rights, benefits and position of employment that she would have been entitled to had the employee not taken the leave. 29 U.S.C. §2614(a)(3)(B).

29 C.F.R. §825.215 answers the question "What is an equivalent position?"

> (a) An equivalent position is one that is <u>virtually identical</u> to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. . .

*Id.* emphasis added.

An employee's right to job restoration applies even if the employer has found a replacement for the employee during her leave.  29 C.F.R. §825.214(a) ("An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.")

### 2. As a Matter of Law, Ms. Wade Was Not Properly Reinstated To Her Position.

Ms. Wade was required to teach a total of 12 hours during the Fall semester. Ex. 11  Ms. Wade accepted "added duty" contracts and was therefore engaged to teach a total of 17 credit hours, including four classes that were "on-line" computer classes (referred to as Blackboard courses) and to teach in-class courses.  The classroom courses were "modular", taught in 3-parts over one semester.

Business English 109 C and Business Math 105 C were part of Ms. Wade's regular 12 hour classes.[9]  Ex. 10. Several of Ms. Wade's courses had already

---

[9] Defendants mistakenly argue that the courses were part of Ms. Wade's added duty contracts.  Memo at 30. Their own documents prove that the classes were not added duty, but a part of her regular 12 hours.  Ex. __.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 14 of 43

finished prior to her November 2003 leave.  Those were extra duty classes that were ready to be paid.  *Id.*

During the fall 2003 semester, Bobbi Wade was on medical leave from November 12, 2003 until November 26, 2003.  Ex.  12.  She was on leave for 11 work days, but was only absent for about 7 classes, because the classes did not meet every day.  Because Ms. Wade would not be present for two of her in-class courses while she was away from Barrow, John Tuthill hired two other teachers for just her two in-class courses: Business English, Module C and Business Math, Module C.  Ex. 9, Tuthill Depo. at 36-37. These were Ms. Wade's only remaining in-class courses.

Ms. Wade was scheduled and expected to teach the module classes.  John Tuthill confirmed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C.  That was the plan at that time." Ex. 9, Tuthill Depo. at 187.  "But for her leave [Ms. Wade] would have been teaching Module C."  *Id.* When Ms. Wade returned from leave, John Tuthill refused to reinstate Ms. Wade to teach her regular courses, Business English, Module C and Business Math, Module C.  Defendants admit that they did not place Ms. Wade back into the two Module C courses.  Ex. 13, Answer to Request for Admission No. 4, First Discovery Request To Defendant Ilisagvik College.  The rationale for not reinstating Ms. Wade to the classes was: in one class she would have missed three out of eight classes and in the other, she would have missed four out of ten classes.  *Id.,* and Ex. 9, Tuthill Depo. at 37.

Defendants decided that because Ms. Wade did not teach her scheduled 12 hours of courses, that they would withhold payment from two extra duty contracts that she had already performed.  Ex. 10.  Rather than paying Ms. Wade for the extra duty classes, the College applied the extra duty credits as part of her 12 regular duty hours.  The differences between the position she should have had and the one she was reinstated to are not de minimus, intangible or unmeasurable, since the change was accompanied by a measurable loss in pay.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 15 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Further proof of the violation is memorialized by Tuthill's assistant in notes she took during a meeting on December 19, 2003 when Tuthill told Ms. Wade that her 12 hours were not met "<u>because Bobbi had to take medical leave</u>."   Ex. 14. Therefore, clearly, Ms. Wade was penalized $4500 for taking FMLA leave and was not properly reinstated because she took medical leave.   No reasonable person can maintain that a loss of $4500 pay solely because Ms. Wade took medical leave was not a violation.   As a matter of law, this court cannot grant summary judgment to Defendants on the issue of reinstatement

Further, it would be improper for the court to determine as a matter of law the amount of damages Ms. Wade is entitled to based on Defendants' violation. Defendants have not taken into account the diminishment of Ms. Wade's PERS retirement account for their failure to pay her the money to which she was entitled. $4500 is not the full amount of lost compensation and damages should be heard by a jury.  Summary judgment for Defendants is improper.

## C.  Ms. Wade's Interference Claim

Defendants summarize their arguments and claim that they are entitled to summary judgment on the interference claim.    However, as noted above, Defendants refused to grant Ms. Wade leave, required that she prove her leave could not wait, failed to notify her that she was entitled to FMLA protection, and failed to properly reinstate her, all of which are interference claims.  Ms. Wade has established more than enough evidence to proceed to a jury on her interference claim.  Summary judgment for Defendants must be denied.

## D.    Defendants Were Required To Provide Ms. Wade With Written Notice Of Her FMLA Rights, and They Did Not.

The College violated Bobbi Wade's rights when it failed to provide her with a written request for medical certification.  It violated her rights again when it failed to notify her in writing of the consequences of failing to provide proper certification.

In the effort to determine whether the leave is FMLA qualifying, an employer must notify the employee in writing of his/her rights detailing the "specific

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 16 of 43

**Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

expectations and obligations of the employee and explaining any consequence of a failure to meeting these obligations." 29 C.F.R. §825.301(b).  Written notice is in addition to any posted notice or notice in an employee handbook, indicated by the word "also" in 29 C.F.R. §825.301(b).   The FMLA's implementing regulations require that an employer provide notice "within a reasonable time after notice of the need for leave is given by the employee-within one or two business days if feasible." 29 C.F.R. § 825.301(c).   If the employer fails to provide adequate and timely notice, it "may not take action against an employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. §825.301(f).

Because Defendants failed to provide the proper notice of rights, Defendants were precluded from taking any action against Ms. Wade and should have granted her leave request based upon the documentation she provided.   The College violated Bobbi Wade's rights when it actually denied Bobbi Wade's request because she did not provide the "proper" certification even though it had not given her the required written notices.  29 C.F.R. §825.301(1).

Compounding the notice problem was Ms. Taylor's refusal to help an employee as required by the FMLA.  Taylor did not just hand out notification unless an employee said that the right words.  Ex. 15 Taylor Depo. at 156.  Contrary to the FMLA, Taylor expected the employee to affirmatively state that they had a "serious health condition" in order for her to provide a notice of rights.  *Id.*  Taylor thereby set up a scenario wherein only a very sophisticated employee could obtain FMLA leave.

It is undisputed that defendants did not ever tell Ms. Wade her FMLA rights, did not tell her that her leave might qualify for FMLA protection, nor did they tell her what might happen if she failed to provide them with the proper medical certification.  Pam Taylor stated that she never provided notice of FMLA rights. As a matter of law, Defendants violated Ms. Wade's rights and Defendants are not entitled to summary judgment.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 17 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

**E.  Defendants Have Not Proven The FMLA Definition Of Good Faith and Liquidated Damages Are Mandatory.**

Defendants ask the court to determine that their actions were in good faith. However, they have focused their attention on one small aspect of the case only. Good faith is dependent on Defendants' overall actions, which were not in good faith.

The FMLA provides that a court **shall** award liquidated damages, doubling the amount of lost compensation plus interest, for violation of the FMLA.  29 U.S.C. §2617(a)(1)(A)(iii).   The award is mandatory unless the employer can come forward to prove good faith and that they acted with reasonable grounds for their actions order to avoid liquidated damages.  The employer has the burden of proof and must prove both independently.  *Cooper v. Fulton County, Ga.,* 458 F.3d 1282 (11th Cir. 2006) ("In other words, if, as here, the employer subjectively acted in good faith but its conduct was objectively unreasonable, then it is not an abuse of discretion to award liquidated damages.").  See also *Wilkerson v. Autozone, Inc.,* 152 Fed.Appx. 444, 450 (6th Cir. 2005) ("In the case at bar the jury did not find that AutoZone acted in good faith and with reasonable grounds for believing that it was not in violation of the statute. We are not persuaded that AutoZone succeeded in establishing its good faith as a matter of law.")

In fact, the Ninth Circuit has determined that actions like those taken by Defendants in this case are relevant in determining good faith.  *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1133 n.6 (9th Cir. 2003) stated:

> Further, the repeated interference with and mischaracterization of her FMLA leave will likely be relevant when determining liquidated damages should Liu prevail on her claim. *See generally Bachelder,* 259 F.3d at 1130 (explaining that an employer may be liable for liquidated damages, "unless it can prove that it undertook in good faith the conduct that violated the Act and that it had reasonable grounds for believing that [its action] was not a violation of the Act" (internal quotations omitted)). Liu's repeated leave requests and involvement of the Human Resources Department weigh against arguments of good faith by Amway.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 18 of 43

In this case, Defendants' repeated denial of Ms. Wade's medical leave and insistence upon her obtaining proof that her medical leave could not wait until Christmas is not good faith.  Even if the court finds that Defendants subjectively acted in good faith, their conduct was objectively unreasonable and therefore cannot be "good faith" as used in the FMLA.

Defendants claim that they consulted an attorney and therefore their actions were in good faith, relying upon a very thin line of cases, none of which are Ninth Circuit cases nor even in a district court in a state under the Ninth Circuit's jurisdiction.  In fact, the two cases cited by Defendants were published just after the FMLA was first established.  The cases cited by Defendants require a two step process: 1) the employer take active steps to ascertain the law; and 2) the employer must move to comply with the law.  **

In this case, Defendants can only prove that prior to denying Ms. Wade's leave in October, Taylor and Tuthill called their general counsel, Cheryl McKay, and asked her for advice.  However, once they were told what to do by their attorney, neither defendant actually followed her advice.  For example, McKay told them to reinstate Ms. Wade to a "reasonably equivalent" position.  Ex. 16, McKay Depo. at 31.  Defendants did not merely make a mistake in carrying out McKay's advice.  Instead, they actively failed to abide by her advice.

Taylor stated that both she and Tuthill heard Ms. McKay's advice, and so Taylor did not discuss the details of Ms. Wade's reinstatement with Tuthill.  Ex. 15, Taylor Depo. at 167-168.  Therefore, Tuthill did not even consult with the Human Resources Director before refusing to fully reinstate Ms. Wade.  There was no demonstration of good faith.

Worse, Taylor refused to process Ms. Wade's grievance regarding Defendants' failure to properly reinstate her.  Ex. 1.  This does not demonstrate good faith.

Even worse, Tuthill, with Taylor's approval, fired Ms. Wade a month and a half after she returned from medical leave, after he refused to properly reinstate

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 19 of 43

her, just one month after she field a grievance directly against Tuthill based upon his refusal to reinstate her.   Defendants, especially Taylor, the HR director with more than 8 years experience, never consulted the FMLA or its implementing regulations when reinstating Ms. Wade.   Tuthill agreed that he had not read the FMLA statute or regulations. Ex. 9, Tuthill Depo. at 222.   Neither Taylor nor Tuthill contacted the Department of Labor ("DOL"), or reviewed any of the DOL's advisory opinions before terminating Ms. Wade.   Neither called Cheryl McKay, the College's general counsel, for advice.[10]   There was no reasonable basis for terminating Ms. Wade after she had successfully taught at the College for 3½ years with good yearly evaluations.

In short, the decision to terminate Ms. Wade was not objectively reasonable and is outside the boundaries of good faith and the Defendants should be subject to liquidated damages on that basis as well.

**F. Individuals May Be Sued Under FMLA.**

Taylor and Tuthill may be individually sued under the FMLA, despite Defendants' assertion otherwise.   The law says that an employer is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. §2611(4)(A)(ii)(I). are individually liable for any violations of the requirements of the FMLA.

Although Defendants did not acknowledge it, the Ninth Circuit has briefly addressed the issue in *Hibbs v. Nevada, Dept of Human Resources*, 273 F.3d 844 (9th Cir. 2001), affirmed 123 S.Ct. 1972 (2003).   It stated briefly:

> While we agree with the other circuits that **some supervisory employees can be sued as employers under the FMLA**, determining which supervisors qualify is not a straightforward matter, and it has not been briefed by the parties.

---

[10] If Defendants did consult with an attorney, they have refused to disclose that fact and therefore it should be construed that they did not consult an attorney.   Ex. 16 McKay Depo. at 32.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 20 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

*Id.* at 872 (emphasis added).  The Ninth Circuit has not again addressed the issue to clarify which supervisors may qualify.  However, the weight of the case law in other jurisdictions or in District Courts within the Ninth Circuit indicates that the Ninth Circuit will eventually find individual liability, even against governmental supervisors.

The relevant cases are: *Morrow v. Putnam,* 142 F.Supp.2d 1271, 1275-76 (D.Nev. 2001) (holding that individual liability exists for postal supervisors (**government supervisors**) under the FMLA); *Cantley v. Simmons,* 179 F.Supp.2d 654, 655-58 (S.D.W.Va. 2002) ("[I]ndividual liability is permitted under the FMLA."); *Brunelle v. Cytec Plastics,* 225 F.Supp.2d 67, 82 (D.Me. 2002) (holding that individual liability under the FMLA arises from a similar definition of employer under the FLSA); *Richardson v. CVS Corp.,* 207 F.Supp.2d 733, 741-44 (E.D.Tenn. 2001) (finding that the majority of the courts have found "that individuals can be subject to liability under the FMLA"); *Longstreth v. Copple,* 101 F.Supp.2d 776, 780 (N.D.Iowa 2000) (same); *Carpenter v. Refrigeration Sales Corp.,* 49 F.Supp.2d 1028, 1030 (N.D.Ohio 1999) (same); *Meara v. Bennett,* 27 F.Supp.2d 288, 290-291 (D.Mass. 1998) (Allowing suit against **district attorney**.); *Bryant v. Delbar Prods., Inc.,* 18 F.Supp.2d 799, 807-09 (M.D.Tenn. 1998) (noting that "the majority of courts have determined that the FMLA extends individual liability to those who control a plaintiff's ability to take a leave of absence"); *Mercer v. Borden,* 11 F.Supp.2d 1190, 1190 (C.D.Cal. 1998) ("Since the definition of 'employer' in the FMLA is identical to the definition of 'employer' in the [Fair Labor Standards Act], the Court holds that individuals are potentially subject to liability under the FMLA. The plain language of the FMLA compels this result."); *Rupnow v. TRC, Inc.,* 999 F.Supp. 1047, 1048 (N.D.Ohio 1998) ("[T]he weight of authority favors individual liability for a supervisor where the 'supervisor exercise[s] sufficient control over the plaintiff's ability to take protected leave.' "); *Stubl v. T.A. Systems, Inc.,* 984 F.Supp. 1075, 1083 (E.D.Mich. 1997) the plain language of the FMLA statute and the regulations mandate liability.); *Waters v. Baldwin County,* 936 F.Supp. 860, 863

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 21 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

(S.D.Ala. 1996) (finding that "employer" as used in the FMLA parallels "employer" in the FLSA; therefore, individual liability exists under the FMLA); *Johnson v. A.P. Prod., Ltd.,* 934 F.Supp. 625 (S.D.N.Y. 1996) (same); *Freemon v. Foley,* 911 F.Supp. 326 (N.D.Ill. 1991) (same); *Knussman v. Maryland,* 935 F.Supp. 659, 664 (D.Md. 1996) ("Liability of individual defendants in their individual capacities is not foreclosed under the FMLA." Allowed suit against **state highway patrol officers**.); *Kilvitis v. County of Luzerne,* 52 F.Supp.2d 403, 412 (M.D.Pa. 1999) (allowing FMLA suit against **district justice** in individual capacity). The sheer weight of the authority finding supervisor liability, even for governmental supervisors, indicates that the Ninth Circuit will, eventually, find that an individual supervisor may be sued under the FMLA, even against government supervisors.

*Hibbs*, 273 F.3d at 872 indicated that in weighing its liability decision, it was concerned with the "extent of Crawford's or Firpo's supervisory authority over Welfare Division employees." There is no question that Tuthill's supervisory authority over Ms. Wade was absolute. Taylor testified over and over that she required Tuthill's signature on a leave request prior to granting it. Ex. 15, Taylor Depo. at 136. However, the leave request was then processed and approved by Taylor. *Id.* There is no question that Taylor played an equally direct role in approving medical leave for Ms. Wade. *Id.* at 109-110.

Ms. Wade was subject to the whims of her direct supervisor, Tuthill, and the HR director, Taylor. These individuals should be held accountable for the FMLA violations. Individual liability should be upheld.

### G. FMLA and Punitive Damages.

Defendants move for an order from the court asking it to declare that punitive damages may not be awarded for a violation of the FMLA.

Plaintiff is aware that the existing dicta in the Ninth Circuit says "FMLA only provides for compensatory damages and not punitive damages." *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1133 n. 6 (9th Cir. 2003). Although the existing case law

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 22 of 43

dicta currently seems to preclude a punitive damages claim based upon the FMLA, Plaintiff reserves the right to bring this claim if the law changes.

### H.  Ms. Wade Was Qualified[11] For Her Job And Defendants' Reliance Upon This Is Pretextual.

Tuthill has maintained that his reason for terminating Ms. Wade was primarily based upon Ms. Wade's lack of qualification for the job because although she did have a Masters degree, she did not have a Master's degree in Business. Ex. 9, Tuthill Depo. at 56-58.  Tuthill claimed that Ms. Wade's qualifications did not meet the accreditation standards.  *Id.* at 56.  But, Tuthill agreed that there was no precise definition of the accreditation standard.  *Id.* at 57.  In fact, Tuthill has stated that the need for a masters degree in business is only "ideal."  *Id.* at 106.  The decision that Ms. Wade was not qualified was solely his.  *Id.* at 58.

Tuthill told Dr. O'Rourke, the College's paid expert consultant on accreditation issues, prior to Ms. Wade's termination, that Tuthill thought Ms. Wade had competency and qualification issues.  *Id.* at 52-53.  In all the years O'Rourke worked for the College, he had never expressed any qualms about Ms. Wade's qualifications.  In reaction to Tuthill's statement, O'Rourke only said that he hoped Tuthill could find a way to reinstate Ms. Wade.  *Id.*  The College's own expert did not have a problem with Ms. Wade's qualifications.  The qualification decision was entirely Tuthill's.

In the prior year, the College had obtained accreditation from the Northwest Commission on Colleges and Universities.  President McLean stated that an accreditation team had come up to the Barrow college and looked at all of the professor's resumes. Ex. 17, McLean Depo. at 93-94.  The accreditation team did not single out any person as unqualified, and indeed, passed Ms. Wade as well.  *Id.*  The very entity responsible for accreditation did not express any problem with

---

[11]  Again, Defendants frivolously use the word "undisputed" when they claim that "it is undisputed that Ms. Wade was not qualified for her position."  Memo at 38.  The fact is not only disputed, it the opposite of Defendants assertion.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 23 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ms. Wade's qualifications when they had the chance.   The qualification decision was entirely Tuthill's.

Ms. Wade declared her qualifications when she first began teaching at Ilisagvik.  She was hired for the position based upon those qualifications.  In fact, Defendants acknowledge that Taylor, the HR Director, was one of the persons involved in the original hiring decision.  Memo at 3.  Presumably the HR Director would know the qualifications necessary to teach classes at the College.   Ms. Wade's qualifications did not diminish during the 3½ years she taught in Barrow.

For the first 3½ years that Ms. Wade taught at the College, her performance evaluations from her supervisor(s) were all very good. Ex. 9, Tuthill Depo at 237.  Indeed, Ms. Wade's evaluations from the students she taught were also good.  *Id.* In the fall of 2002, the President of the College complemented Ms. Wade on "the dedication and care you put into your teaching and your student."  Ex. 29.

In *Xin Liu v Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003), the court found it significant that the supervisor's subjective evaluation was the "central, if not sole, factor in her termination."  *Id.* at 1136.  The court warned:

> Where termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted because such evaluations are particularly "susceptible of abuse and more likely to mask pretext."

*Id.* at 1136, citing *Weldon v. Kraft Inc.*, 896 F.2d 793, 798 (3rd Cir. 1990) and *Lujan v. Walters*, 813 F.2d 1051, 1057 (10th Cir. 1987).  In *Xin Lui*, the Ninth Court found a 19% drop in overall ratings to be significant and stated that the evaluation may have been tainted with the supervisor's attitude toward the employee's leave.  *Id.* at 1137.

Although Ms. Wade had been hired and successfully taught for 3½ years with her qualifications, although the HR Director herself had been one of the people who approved Ms. Wade's qualifications for her job, although the College's accreditation expert had no problem with her qualification, although the Northwest Commission on Colleges and Universities had no problem with her qualifications,

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 24 of 43

although Ms. Wade's employment evaluations had always been above average, suddenly Tuthill could no longer tolerate Ms. Wade's lack of a master's degree in Business and claimed that her qualifications did not meet accreditation requirements. The <u>only</u> change in the 3½ years was that Ms. Wade insisted on medical leave, was not properly reinstated, and opposed that violation. Tuthill's justification that Ms. Wade was suddenly not qualified was a pretext to terminate her employment.

The evidence clearly demonstrates that Ms. Wade was qualified for her position. Defendants are not entitled to summary judgment.

**1. Defendants Cannot Establish Their Alternative Reasons For Non Renewal Are Legitimate or Undisputed.**

**a The Student Complaints Were Immaterial.**

Tuthill based part of his decision on student complaints against Ms. Wade. The vast majority of those complaints came from one student. Ex. 18, Sonya Abu Depo, redacted for student privacy pursuant to protective order, at 18-21. The complaints were not just about Ms. Wade, but also about two other professors, neither of whom was terminated. Ex. 9, Tuthill Depo. at 126-128. Ms. Wade had the most students in the school. It is no surprise that she received the most complaints. The complaints consisted of minor issues. Tuthill stated that he would not have fired Ms. Wade for just the student complaints alone. *Id.* at 228-230. The student complaints were insignificant and a red herring.

**b. Low Success Rate Was Not Statistically Significant.**

On January 15, 2004, for the first time ever, Ms. Wade was criticized for her "low" student success rates in her computer based classes. Ex. 19. The e-mail in which John Tuthill delivered the criticism claimed that the overall success rate for computer based classes was 26%, but that Ms. Wade's success rate was only 23%. *Id.* Even John Tuthill had to agree that the difference in percentage was not statistically significant. Ex. 9, Tuthill Depo. at 85-86.

**Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 25 of 43

Actually, there were only two Blackboard instructors in the Fall of 2003: Ms. Wade and Courtney Bartholomew. Courtney Bartholomew was not terminated for his low student success rate (or the student complaints about him – see above). In fact, there is no evidence that Mr. Bartholomew was even reprimanded for it as Ms. Wade was. The success rate was nothing more than Tuthill's attempt to build a case for terminating Ms. Wade. It is a pretextual reason.

### c. Tuthill Critiqued Ms. Wade's Computer Classes less Than 2 Weeks Before Terminating Her.

On January 15, 2004, for the first time since she began teaching, Tuthill critiqued Ms. Wade's use of the "Blackboard" system, which is the delivery platform for computer based classes. Ex. 19. Two weeks later, Tuthill used the criticism of Ms. Wade's Blackboard performance as a rationale for her termination:

> Bobbi has been resistant to changing her style of teaching on Blackboard. At the beginning of this semester, I gave her a series of specific directions for what she needed to do differently in order to support our students better. She is doing some of what I directed; most she is not.

Ex. 20. The statement, however, was not true. In fact, on January 15, 2004, Tuthill gave Ms. Wade three directions: two were direct orders; one was a "fairly strong urging." Ex. 9, Tuthill Depo at 71. But Tuthill agreed that Ms. Wade complied with the two direct orders. *Id.* at 94-95. He was not aware of whether Ms. Wade complied with the "urging". *Id.* at 95-96. She did.

The e-mail was written on January 15, 2004 and Tuthill signed the termination paperwork on January 28, 2004. There were only 2 weeks in which Ms. Wade could comply with his orders, which he agreed she did. Therefore, this reason for her termination was simply false.

### d. Ms. Wade Resisted Defendants' Violations Of the FMLA.

Tuthill stated he used as a reason to terminate her, that Ms. Wade "resisted his efforts" to recruit and use adjunct professor for Module C, Business English. Ex. 20. That was the class that Ms. Wade was supposed to teach as part of her

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 26 of 43

regular duties.  Her "hostility" to Tuthill's failure to properly reinstate her was based on her expectation that she would be legally and properly reinstated under the FMLA.

The Module classes were given to other instructors when Ms. Wade went on medical leave and were not returned to her.  "But for" Ms. Wade's medical leave, John Tuthill agreed that Ms. Wade would have been teaching the classes.  Ex. 9, Tuthill Depo. at 187.  Her "resistance" was nothing more than a protest of the violation of her statutory rights.  Ms. Wade's protest over the violations should not be accepted as a reason to terminate her.

### e.  Tuition Waivers Were Known and Accepted By the College.

Tuthill used as a reason to terminate Ms. Wade the fact that her granddaughter obtained tuition waivers. It is undisputed that the College had no standards regarding when a tuition waiver could be granted to a relative of a professor.  Ex. 9, Tuthill Depo. at 102.  Tuthill himself checked with the registrar about Bobbi Wade's granddaughter, who confirmed that fact to him.  *Id.*  See also *Id.* at 102.  The waivers had been applied for and granted by the College for multiple semesters.  The issue was not a new one.

Ms. Wade had not violated any policy on tuition waivers, but, Tuthill claimed that the tuition waivers, while not improper, were instead a "perception of conflict" and therefore unprofessional.  He claimed this knowing that the College had approved the waivers.  In deeming the tuition waivers unprofessional, Tuthill ignored the fact that the College had for years knowingly approved the tuition waivers.  In using the prior waivers against Ms. Wade, Tuthill knowingly punished her for actions that the College had always approved of.  The reason is pretextual.

Defendants attack Ms. Wade's integrity and that of her granddaughter in their effort to support the termination.  Defendants accuse Ms. Wade of favoritism toward her granddaughter because her granddaughter took many classes from her.  However, Ms. Wade was the only professor in the Business Department.  Ex. 9 Tuthill Depo at 105.  Other than taking classes and getting a decent grade, there is

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 27 of 43

no evidence that Ms. Wade's granddaughter did not earn the grade.  In fact, her granddaughter stated that Ms. Wade "was harder on me than anybody else.  I believe she expected more out of me."  Ex. 21, Conyer Depo at 115.

Defendants allegations are without foundation and do not constitute a basis to terminate her.   All the reasons provided by Defendants for Ms. Wade's termination are an attempt to construct a legitimate reason to terminate her.  Ms. Wade has proven a prima facie case and a jury should decide the issue.

### III.  MS. WADE'S 42 U.S.C. §1983 CLAIM FOR VIOLATION OF DUE PROCESS IS A QUESTION FOR THE JURY.

For Ms. Wade to maintain a due process claim, she must show a protected interest in her job as a professor.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-570 (1972) (*Roth*).   There are two theories under which the Court can decide whether Ms. Wade was entitled to due process, each of which is applicable to Ms. Wade.

The first is that **her contract provided her with due process rights.**  The Supreme Court stated that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source . . ." *Roth,* 408 U.S. at 570.

The second is that the Barrow community college provided Ms. Wade with **de facto tenure** and she was therefore entitled to due process before her protected property interest was revoked.   Absence of an explicit contractual provision does not always foreclose the possibility that a teacher has a property interest in reemployment, if there is evidence of rules that support the claim of entitlement.  *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699 (1972) overruled on other grounds in *Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759 (1991).

Under any of these reasons, Ms. Wade had a property interest and was entitled to a due process hearing.  Defendants knowingly and intentionally refused

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 28 of 43

to provide Ms. Wade with her due process rights.  Liability should be imposed as a matter of law.

**A.  Wade's Property Interest Was Created By Contract, Defined By The Contract; An Attachment To The Contract, The Employee Handbook; And The Policies And Regulations Of The Board Of Trustees.**

Bobbi Wade's property interest in her job was created and defined by her employment contract.  Bobbi Wade was an associate professor of Business Management at Ilisagvik College, in Barrow, from September 2000 until June 2004, constituting 4 school years.  Ms. Wade received her fourth employment contract with Ilisagvik College May 2003, to teach Business Administration classes. Ex. 11.

Ms. McLean drafted and approved the 2003-2004 faculty contract.  *Id.* at 126. The College amended the 2003-2004 employment contract to make the Ilisagvik College Employee Handbook and the Policy and Regulations of the Board of Trustees specific terms and conditions of employment.  Ex. 17, MacLean Depo. at 129-130.  Ilisagvik College Employee Handbook and the Policy and Regulations of the Board of Trustees set forth language that promised that "regular faculty" like Bobbi Wade would be retained from year to year.  Ex. 22.

The terms of the 2003-2004 contract, however, were different than the previous 3 contracts she signed.  The 2003-2004 contract explicitly stated that:

> The terms and conditions of your employment with Ilisagvik College are in accordance with this letter of appointment including Attachment A, the Ilisagvik College Employee Handbook and the Policy and Regulations of the Board of Trustees as they exist today and as they may be duly amended from time to time.  Of course, all employees are also expected to abide by state and federal law. . . .
> This letter of employment with its references encompassed herein constitutes the full and complete contract agreement between yourself and Ilisagvik College. . . .
> The terms and conditions of your employment with Ilisagvik College are in accordance with this letter of appointment including Attachment A, the Ilisagvik College Employee Handbook and the policy and the regulations of the Board of Trustees as they exist today and as they may be amended from time to time.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 29 of 43

Ex. 11, at 2.  The contract, therefore, created Ms. Wade's property interest, and then the dimensions were defined by the contract, an attachment to the contract, the Employee Handbook, and the policy and regulations of the Board of Trustees.

The College Handbook stated that "Regular Faculty" was: "an employee who delivers full- or part-time academic or vocational instruction pursuant to an employment contract."  Ex. 22 at 20556.  The policy manual specifically states:

> Except as otherwise noted in this Handbook, or as specifically included in a written contract for employment, faculty are employees of Ilisagvik College and are subject to terms and provisions of this Employee Handbook.

*Id.* at 20586.  Edna McLean, President of Ilisagvik College, affirmed that the 2003-2004 faculty contract's integration clause, which she drafted and approved, indeed encompassed more than just the words in the written contract.  She agreed that the contract included "Attachment A, the Ilisagvik College Employee Handbook and the policy and the regulations of the Board of Trustees." Ex. 17, McLean Depo., at 129-130.  The inclusion comported with Ms. Wade's understanding as well.  Ex. 23, Wade Depo. III, at 470.  The integration clause in Ms. Wade's contract indicates that the parties intended to be bound by the terms therein.  *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007). ("The integration clause is not dispositive but it certainly suggests that Jarvis and K2 intended the contracts to be fully integrated.").

**1.    The College Employee Handbook Promises Expectations Of Job Security.**

Ms. Wade **did** have an expectation of job security which was more than a mere subjective hope.  Her expectation was created by the promises made in the Ilisagvik College Employee Handbook.

Alaska courts have found that an employee manual can modify an employment agreement.  Employment agreements are governed by state law.  In *Jones v. Central Peninsula General Hospital*, 779 P.2d 783 (Alaska 1989), an employment manual modified the at-will employment of a nurse, making her terminable only for cause.  The court found that the employee manual created the impression that the employee was to be provided with certain job protections.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 30 of 43

"Employers should not be allowed to 'instill . . . reasonable expectations of job security' in employees, and then withdraw the basis for those expectations when the employee's performance is no longer desired." *Id.* at 788 (ellipses in original). In *Parker v. Mat-Su Council on Prevention of Alcoholism & Drug Abuse*, 813 P.2d 665 (Alaska 1991) the Alaska Supreme Court again held that an employment manual could create a reasonable expectation that the employee had been granted certain rights.  Compare, *Holland v. Union Oil Company of California, Inc.*, 993 P.2d 1026 (Alaska 2000) (Memo did not modify employment at will; it did not create a binding obligation because it did not set out any specific procedural safeguards or job security promises.).

There are specific promises in the College Handbook that Ms. Wade was entitled to rely upon.  The totality of these promises created a property interest. The College Handbook contained a letter from the President stating, "I hope your employment with our College will be pleasant and long lasting." Ex. 22, at 20535. Next there is a section entitled "You're part of our team." *Id.* at 20542.  Both of these statements indicate that the College intended to hire and keep long term employees.  This comports with Ms. Wade's understanding that the job was hers for as long as she wanted it.

The College has a mandatory policy addressing the standards to be applied for renewal of a faculty contract.[12]   The policy manual promises regular faculty performance reviews annually.  *Id.* at 20562.  "The purpose of an evaluation is to monitor employee performance and improvement." *Id.*  The policy promises that **"*Evaluations shall be considered in employment retention . . .*"** *Id*[13]  This promise created a binding obligation because it did set out specific procedural

---

[12] The college has a standard that it has set for itself in renewals, unlike the employer in *Roth*, where the Supreme Court found that there were no restrictions on the employer because there were no statutory or administrative standards defining eligibility for re-employment. *Roth*, 408 U.S. at 567.

[13] Tuthill confuses employee performance evaluations with hearsay from students complaining about Ms. Wade.  The two are separate and Tuthill only relied upon the latter.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 31 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

safeguards for Ms. Wade.  Ms. Wade always had exemplary evaluations.  Tuthill stated that he knew Ms. Wade's past performance evaluations and formal student evaluations had been good.  Ex. 9, Tuthill Depo. at 234-236, 257.

Based upon this policy, the College obligated itself to consider an employee's evaluation in the retention process.  The wording, as created by the employer, is not permissive, it's mandatory.  The College bound itself in its process to this obligation.  Therefore, the College does not have unfettered discretion when determining which faculty it will renew.   The promise of the policy is clear: if evaluations are positive, the employee will be retained.  Ms. Wade was entitled to rely upon the procedural safeguard that her positive evaluations would be considered when the retention decision was made.

John Tuthill, when making his decision to terminate Ms. Wade, did not consider her prior employment evaluations.  Although he said that he read them, he did not give them any weight.  Instead he focused upon her "qualifications" for the job; the same qualifications she had been hired with and had been teaching with for the last 3½ years.  Ex. 9, Tuthill Depo. at 231. Tuthill did not give any consideration to the previous good evaluations that Ms. Wade had from prior Deans of Instruction, a violation of the College's policy manual.

Another College policy, Discipline and Termination of Employment, discusses employees generically, and does not distinguish between regular employees and faculty.  Therefore, since it is not noted, the policy applies to faculty.  See Ex. 2, at 20586 of the policy.  The discipline and termination policy was specifically made part of Ms. Wade's contract via the language that the College drafted, which included the Employee Handbook as part of the contract.

The discipline and termination policy states that an employee may be dismissed from employment "for cause".  *Id.* at 20581.  There are no other criteria set forth in the Employee Handbook for reappointment as faculty.  Therefore, once a person was appointed as faculty, it was assumed, and indeed it was the practice, that the person would be re-appointed so long as that person wished to remain in

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 32 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

the job unless a determination of "just cause" was made under the Discipline and Termination policy was made.

Seventeen causes for termination are set forth in the Discipline and Termination policy. Ex. 22. There is no language in the policy or in the Employee Handbook itself that would lead a faculty member to believe that she was not protected by the "for cause" policy. No exception is named for employees who may have a contract for a specific period of time. The expectation of any employee reading the Ilisagvik Employee Handbook is that the employee may only be terminated "for cause." The expectation that an employee would only be terminated for cause created a property interest in the job, and job termination therefore requires due process.

The college revised the employment handbook in 2004 which <u>added more</u> procedural safeguards for faculty, none of which were provided to Ms. Wade. Ex. 15, Taylor Depo at 271. The faculty contract, however, states that it is subject to the Employee Handbook and any revisions thereto. The enhanced safeguards should have applied.

Bobbi Wade was told that the Employee Handbook applied to her employment at the College and indeed was a term and condition of her continued employment. A property interest was created by the promises made in her contract, via the Employment Handbook. Summary judgment is in appropriate.

**B. The Board Of Trustee Policies Create a De Facto Tenure Program.**

De facto tenure is tenure by informal means. The Supreme Court addressed the termination of an untenured professor in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) overruled on other grounds in *Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). In that case, the Supreme Court acknowledged that a professor might obtain "de facto tenure" even though tenure has never been formally conferred. This result is possible under a theory of implied contracts whereby "[e]xplicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 33 of 43

the surrounding circumstances.· The meaning of [the promisor's] words and acts is found by relating them to the usage of the past."

Ilisagvik College has no formal policy to obtain tenure.  The existence of a formal code governing the granting of tenure precludes a reasonable expectation of continued employment absent extraordinary circumstances." *Haimowitz v. University of Nevada,* 579 F.2d 526, 528 (9th Cir. 1978).

*Perry v. Sindermann* holds that de facto tenure is particularly likely at a junior college that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice.  408 U.S. at 602.

> A teacher, like the respondent, who has held his position for a number of years might be able to show from the circumstances of this service- and from other relevant facts – that he has a legitimate claim of entitlement to job tenure.

*Id.*

De facto tenure is evident in the College's retention policy.  The College's mandatory policy addressing the standards to be applied for renewal of a faculty contract created de facto tenure.  The policy manual promises regular faculty performance reviews annually.  The policy promises that ***"Evaluations shall be considered in employment retention . . ."*** *Id*  The existence of the policy is sufficient to create a prima facie case of de facto tenure and a jury should decide if it existed.  Summary judgment would be inappropriate..

**C.  Due Process Rights Were Not Provided To Ms. Wade.**

It is undisputed that Ms. Wade did not receive basic due process rights.  She was not told the reasons why her job was terminated, she was not provided with any document prior to the hearing, and the hearing officer was a paid consultant to the college who had participated in the decision to terminate her job.

Ms. Wade had no idea why her employment was terminated.  A basic tenet of due process is the right to be informed of the reasons for terminating or taking a protected interest.  Employees who have a property interest in their employment

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 34 of 43

are entitled to certain minimum process before being fired. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill,* the U.S. Supreme Court held that an employee discharged for just cause is entitled to "oral written notice of the charges against him, and explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546.

John Tuthill agreed that he knew the reasons for which he allegedly terminated Ms. Wade, but he did not tell her those reasons prior to the hearing. Ex. 9, Tuthill Depo. at 238. The College or its employees could have rectified their failure to inform Ms. Wade of the reasons for the termination by giving her time before the administrative hearing to review the rationale. Instead they compounded the problem. Prior to the hearing, Ilisagvik College and its attorney made no attempt to supply Ms. Wade with a copy of the exhibits it intended to rely upon, which included the alleged reasons underlying the termination. Ex. 16, McKay Depo. at 50-51.

The policy and procedures in the Employee Handbook were revised by the College in May 2004. Ex. 15, Taylor Depo. at 271. There is no indication that any participant stated which policy applied to the hearing; if it was the old policy or the new policy. College President Edna MacLean stated that it was the old policy. Ex. 17 MacLean Depo. at 82. The College's attorney who conducted the hearing for the College said they used the new policy. Ex. 16, McKay Depo. at 46. The College's experienced HR director, Pam Taylor, stated she didn't know which policy should be used and no one asked her. Ex. 15, Taylor Depo. at 272-273. MS. Wade certainly had no indication.

As is normal in arbitrations, the burden of proof was on the College to uphold its termination decision. Cheryl McKay confirmed that it was incumbent upon the College to prove that the termination decision was "supported". Ex. 16, McKay Depo. at 52-53. Ms. Wade was then responsible at the hearing for proving the reasons that she was terminated were pretextual. *Id.* But it was only at the hearing that Ms. Wade was finally told the reasons for her termination.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 35 of 43

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ms. Wade was not allowed to call witnesses or cross examine witnesses at the hearing.  Ex. 24.  The hearing officer appointed by the President of the College was a paid consultant, not an unbiased person.  *Id.*  Further, the hearing officer had been consulted by Ms. Wade's supervisor about the grounds for her termination, a fact that was not disclosed to Ms. Wade.  Ex. 9, Tuthill Depo. at 52-53.

When the issue of failure of due process was raised at the hearing, Ms. McKay argued for the College that Ms. Wade *should have already deduced* the reasons for her termination.  In so stating, however, she admitted that the reasons underlying Tuthill's decision to terminate were not timely provided.

> **Ms. McKay:**  Um, I would, I would just clarify that the vast majority of these 35 documents are either from Ms. Wade's personnel file, which she has a copy of, they are E-mails directly between Ms. Wade and the Dean of Instruction.  There are, or are, copies of internal college policies which she also has a copy of.  The documents that have been not shared with her were the confidential student reports from the retention officer, the compilation of faculty ages, which was prepared for this hearing, and a copy of Dean Tuthill's notes that he prepared in preparation for his meeting with President McLain summarizing those reasons. There may be odd, other documents in there that are directly from students but I'd submit that the majority of the documents have already been seen in one form or another.

Ex. 25 Transcript at 20.  Despite Ms. Wade's protest that she had only seen the reasons for her termination at the hearing, O'Rourke told Ms. Wade that she her sole opportunity to respond to the College's case was during the hearing.  *Id.* at 19.  Ms. McKay allegedly offered to allow the record to stay open so Ms. Wade could supplement, but the offer was sent to Ms. Wade on the same date that the hearing officer made his decision.  Ex. 26.  Without giving Ms. Wade an opportunity to prepare, call witnesses, or even challenge the reasons set forth by the College, the hearing officer upheld the non-renewal.  Ex. 27, Hearing Officer Decision, dated July 6, 2004, at 2.

Ms. Wade has made a prima facie case, and due process should be left for the jury to decide.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 36 of 43

## IV. CURRENT LAW SUPPORTS A 42 U.S.C. §1983 CLAIM BASED UPON A VIOLATION OF FMLA LAWS.

Plaintiff allege a 42 U.S.C. §1983 claim based upon a violation of FMLA laws. The Ninth Circuit has not ruled on this issue, but one federal district court has. In *Price v. Multnomah County*, 132 F.Supp.2d 1290, 1298 (D.Or. 2001) the court found that a plaintiff <u>may</u> allege that defendants violated his 42 U.S.C. §1983 rights "by harassing, suspending, and ultimately terminating him because he pursued his rights under the FMLA."

Defendants argue that Title VII claims cannot be the statutory basis for a §1983 claim. However, FMLA is not a Title VII claim and the argument is inapplicable. Defendants' argument should be rejected.

## IV. INDIVIDUAL DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY.

Ms. Wade brought a 42 U.S.C. §1983 claim for violation of her due process rights, against two individual defendants and the College. Pam Taylor and John Tuthill claim that they are protected by qualified immunity but they have not established their immunity as a matter of law.

Qualified immunity shields officials from liability under 42 U.S.C. § 1983 as long as the official's acts do not contravene clearly established federal law. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

*Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151 (2001) states that the doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Ms. Wade alleged a violation of her due process rights, a right that is clearly established and one which any reasonable person should have known. Tuthill refused to tell Ms. Wade why he terminated her. Ex. 9, Tuthill Depo. at 238. This

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 37 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

flies in the face of every known employment law and general fairness, a central tenet of due process. His due process violation is one which a reasonable person would not have made, given the clearly established right to notice. A jury should decide whether a reasonable person would believe his actions were fair.

Tuthill testified that Taylor, an experienced HR Director, instructed him not to tell Ms. Wade why he terminated her. Ex. 9, Tuthill Depo. at 238. Taylor's position as HR Director required her to know basic laws like due process, and apply them to employees like Ms. Wade. No reasonable HR Director would have violated due process with such impunity. A jury should decide whether Taylor is liable.

## V. THE COLLEGE IS LIABLE FOR THE DUE PROCESS VIOLATION.

The College is also liable for the due process violation. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978), states that liability can be prosecuted against a governmental entity under 42 U.S.C. §1983 when an "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690-691. A plaintiff must prove that a policy or custom was the "moving force [behind] the constitutional violation." *Mabe v. San Bernardino County, Dept. of Pub. Soc. Serv.*, 237 F.3d 1101, 1111 (9th Cir. 2001).

The first step in evaluating a §1983 claim is to determine whether the plaintiff has alleged a deprivation of an actual constitutional right. *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1696-97 (1999). The deprivation in this case is the failure to provide Ms. Wade with her due process right, when her property interest in her continued employment was violated. Ms. Wade should have had notice of the reasons for her termination, then had the right to challenge the termination decision before a neutral arbitrator. Further, she should have had the right to call and cross examine witnesses, present evidence and the right to review the College's evidence prior to the hearing. Ms. Wade was not afforded these rights, and therefore her constitutional rights were violated.

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 38 of 43

The College's grievance policy failed to provide for due process rights.  The policy did not set out what procedures were to be followed, allowing the College to apply its policy on an *ad hoc* basis.

> Q  The appeal -- the grievance process does not appear to set out any procedures for the actual hearing itself.
> A  I would -- I would agree just from basic recollection. . . .
> Q  Okay.  So what polic- -- what procedures are followed for a hearing, do you know?
> A  Well, it's sort of unchartered [sic] territory in some ways perhaps, and that would have to be determined by the president.

Ex. 15 Taylor Depo. at 270-271. The College's attorney agreed the policy was *ad hoc.* Ex. 16 McKay Depo. at 51-52 ("It's an internal, informal hearing and the college determines those procedures on a case-by-case basis.")

Three factors are to be considered in determining whether a particular procedure satisfies due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992)

First, an employee's interest in keeping her job is substantial. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494 ("the significance of the private interest in retaining employment cannot be gainsaid").  Ms. Wade's private interest in her job was affected by the deprivation of due process.

Second, the policy causes a very real and serious risk of erroneous deprivation of employment based upon the incomplete and subjective process that the College uses.  The probable value of such simple due process safeguards such as notice of termination, the right to call and cross examine witnesses, discovery, a and neutral arbitrator should be self evident.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 39 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Finally, these due process provisions were not burdensome or expensive to the College and should have been provided.  The College provided a non-due process hearing. It would not have cost any more time or money for the College to have provided the procedural safeguards that due process required.

The College policy caused Ms. Wade's injury.  The policy did not grant her the necessary due process protections, and thereby was deliberately indifferent to her protected right.  The President of the College, via her "cabinet", approved the policy.  Ex. 15 Taylor Depo. at 69-70.  The President had the opportunity to remedy the due process problem when the policies were updated in 2004, prior to Ms. Wade's due process hearing.  *Id.* at 272.  She did not do so.

The officers and employees of the College applied the policy when processing Ms. Wade's grievance.  The President, who should have rectified the due process problem, appointed a biased hearing officer.  Ex. 24.  She also delegated all the responsibility to others, even though she heard about the problems.  Ex. 17, MacLean Depo. at 63-68.  She purposely took herself out of the employment review process, thereby intentionally avoiding any knowledge that Ms. Wade had been terminated illegally.  The College should not be rewarded for her willful neglect of employment matters.

The College policy caused the violation of Ms. Wade's due process rights and the College is independently liable for that violation.

## VI.  PLAINTIFF DID NOT PLEAD PUNITIVE DAMAGES AGAINST ILISAGVIK COLLEGE.

Defendants move for an order from the court asking it to declare that punitive damages may not be awarded against the College because it is a governmental entity.  Ms. Wade did not plead her punitive damages claim against the College.  Instead she asked for:

> For an award of punitive damages in favor of Plaintiff against Defendants Tuthill and Taylor in an amount according to proof at trial sufficient to punish and deter those Defendants

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 40 of 43

There is no claim for punitive damages pending against the College. Defendants' request is moot.

## VII.    WADE HAS MADE A PRIMA FACIE CASE FOR HER STATE WHISTLEBLOWER ACT CLAIM.

Ms. Wade brought a claim under Alaska Statutes for violation of the Alaska Whistleblower Act.    Bobbi Wade reported a matter of public concern to the President of Ilisagvik College.  Her claims are valid and should not be dismissed on summary judgment.  The relevant statutes are:

AS 39.90.100. **Persons protected**.
   (a) A public employer may not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because
   (1) the employee, or a person acting on behalf of the employee, reports to a public body or is about to report to a public body a matter of public concern; . . .

AS 39.90.110. **Limitation to protections**.
(a) A person is not entitled to the protections under AS 39.90.100 - 39.90.150 unless the person:
   (1) reasonably believes that the information reported is or is about to become a matter of public concern; and
   (2) reports the information in good faith.
(b) A person is entitled to the protections under AS 39.90.100 - 39.90.150 only if the matter of public concern
   (1) is not the result of conduct by the person seeking protection; or
   (2) is the result of conduct by the person that was required by the person's employer.

AS 39.90.140. **Definitions**.
In AS 39.90.100 - 39.90.150, . . .
   (3) "matter of public concern" means
      (A) a violation of a state, federal, or municipal law, regulation, or ordinance;
    (4) "public body" includes an officer or agency of . . .
      (C) a political subdivision of the state including
         (i) a municipality; . . .
      (D) a public or quasi-public corporation or authority established by state law including the Alaska Railroad Corporation;  . . .

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 41 of 43

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants acknowledge that the College was "established by North Slope Borough Municipal Code 8.02.020 as a public, non-profit corporation", memo at 35, thereby constituting a public body as set out in AS 39.90.140(4).

The matter of public concern was the violation of Bobbi Wade's FMLA rights, which was not a result of her own conduct, but the illegal actions of the College through her direct supervisor and the College HR director.  This was not merely a matter of personal concern, but a violation of federal law.

Bobbi Wade filed a grievance in December 11, 2003 against John Tuthill in good faith for a violation of her reinstatement rights and addressed the grievance to, among others, Edna MacLean, Ilisagvik College President, and Human Resources director Taylor.  Ex. 28.

*Lincoln v. Interior Regional Housing Authority,* 30 P.3d 582, 585 (Alaska 2001) found that a prima facie case under the Act consists of two elements: an employee must show that (1) she has engaged in protected activity and (2) the activity was a "substantial" or "motivating factor" in her termination.  An employer may rebut a prima facie case by demonstrating that the employee would have been discharged even had she not engaged in the protected activity.  The employee may then identify evidence that raises an inference that the reasons offered by the employer for terminating her were pretextual. *Id.* at 588

Ms. Wade took medical leave that should have been FMLA protected and then was not properly reinstated.  Ms. Wade filed a grievance, reporting to the President and HR Director the violation of federal law, thereby engaging in protected activity.

Ms. Wade's termination, a mere month after she returned from protected leave and filed her grievance against Tuthill for his illegal actions, was retaliation for engaging in a protected activity.  In response to her grievance, a protected activity, Tuthill terminated Ms. Wade, with the concurrence of the HR director and the College President, a violation of AS 39.90.100.  The reasons set forth by

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 42 of 43

Defendants for her termination are, as demonstrated above, all pretext. Ms. Wade has articulated a prima facie case under applicable Alaska law.

Plaintiffs quote *Methvin v. Bartholomew,* 971 P.2d 151 (Alaska 1998) for the proposition that Whistleblower claims must be a matter of political, social or other concern to the community. However, *Methvin* is discussing First Amendment Free Speech issues, not Whistleblower issues. The quotation, taken out of context, is not applicable to Whistleblower claims.

Ms. Wade reported a violation of the FMLA, a protected activity. She was fired therefore. The jury should determine whether the reasons articulated by Defendant are pretextual. Summary judgment would be inappropriate.

## VIII. CONCLUSION

For all the above named reasons, Defendants motion for summary judgment should be denied.

DATED AT Anchorage, Alaska this 3rd day of August 2007.

> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORNSESS, LLC
> Attorneys for Plaintiff
>
>
> s/ Linda J. Johnson
> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS LLC
> 711 H Street, Suite 620
> Anchorage, AK  99501-3454
> Phone:  (907) 272-9631
> Fax:  (907) 272-9586
> Direct email:  ljj@cplawak.com
> Alaska Bar No. 8911070

Certificate of Service

I hereby certify that on August 3, 2007, a copy of the foregoing *Plaintiff's Motion to Compel, Affidavit of Linda Johnson, and attached Exhibits,* were served electronically on Cynthia Ducey, Esq.

s/ Linda J. Johnson

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Plaintiff's Opposition to Defendant's MSJ
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 43 of 43