Linda J. Johnson
Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, AK 99501-3454
(907) 272-9272
(907) 272-9586 fax
usdc-anch-ntc@cplawak.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BOBBI WADE,

                  Plaintiff,

v.

ILISAGVIK COLLEGE; NORTH SLOPE
BOROUGH; JOHN TUTHILL,
individually; and PAMELA TAYLOR,
individually,

                  Defendants.        Case No. 3:05-cv-086-TMB

## REPLY TO OPPOSITION TO MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON FMLA

Plaintiff Bobbi Wade moved for partial summary judgment on her Family and

Medical Leave Act claims. Defendants have opposed that motion but have not

raised genuine issues of material fact. The motion should be granted.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## I.    AS A MATTER OF LAW, PLAINTIFF HAD A SERIOUS HEALTH CONDITION.

### A.    Defendants Agree, in November 2003 Ms. Wade Had a Serious Health Condition and Was Entitled to FMLA Leave.

Ms. Wade moved for summary judgment on serious health condition at two points: one was when she first asked for time off in late September and October of 2003.  Defendants have opposed that motion. The other point at which Ms. Wade contends she had a serious health condition was when she took time off in November 2003 in order to seek treatment for her newly diagnosed skin cancer. Defendants have not opposed that contention.  Defendants agree that Wade took FMLA protected leave in November 2003.  Opp. at 32.  As a matter of law summary judgment should issue for Plaintiff on the fact that Ms. Wade had a serious health condition in November 2003 and was entitled to FMLA protection for that leave, because there is no genuine issue of material fact in dispute and Plaintiff is entitled to summary judgment as a matter of law.

### B.    Wade's Combined Medical Condition Qualified as a Serious Health Condition in September and October 2003.

Defendants deny that Ms. Wade had a combined medical condition that qualified as a serious health condition when she first asked for medical leave in September and October of 2003.

Defendants argue that Ms. Wade's medical conditions in October 2003 were: her high blood pressure, her stomach problems, and a problem with her left foot.  Opposition at 5.  Defendants overlook that Ms. Wade asked her Doctor about

pain in her right hip as well.  See Defendants' Ex. AN at 1.  Therefore she had four ailments that combined to create a greater medical condition than they otherwise would have separately.

Defendants argue that the conditions did not result in combined treatment, nor did they combine to incapacitate her.  But incongruously, Defendants agree on some basic facts and have recited in their Opposition at 8 that Ms. Wade sought out and received treatment for the four medical conditions she alleged:

1. Ms. Wade received medical treatment for her right hip on October 24, 2003 with Dr. Snyder in Barrow.  Ms. Wade had also consulted Dr. Snyder for her hop pain on October 6, 2003.
2. Ms. Wade was treated for high blood pressure on October 24, 2003, January 12, 2004, and January 27, 2004.
3. Ms. Wade was treated for her bladder problem in January 21, 2004.

Ms. Wade also received treatment for her foot pain in April 12, 2004, but Defendants have not listed this as a fact.  Exhibit 1A, attached hereto.

The recitation of medical problems and treatments proves that the ailments Ms. Wade complained of in August 2003 were all real and required follow up.  In fact, even though Defendants refused to allow Ms. Wade to receive combined treatment for her hip, foot, blood pressure and bladder, Ms. Wade did obtain medical treatment for those medical problems as she was able.

Simply because Defendants did not allow Ms. Wade to address her medical conditions in a combined fashion, does not mean she did not have them.  In fact, her Tennessee doctor on August 2003 noted multiple conditions and recommended that Ms. Wade be granted time off "for further medical workup with

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

possible surgical treatment." See, Ex. 1 filed with Plaintiff's Memo. Similarly, Ms. Wade's doctor in Barrow recommended that "she **see a specialist for multiple medical problems**." See, Ex. 7 filed with Plaintiff's Memo. Therefore, two doctors opined that Ms. Wade indeed had multiple medical problems that required medical attention.

Because Defendants did not allow Ms. Wade the time off to have these medical issues treated, they did not result in combined treatment. Instead, Ms. Wade had to get treatment for her medical problems piecemeal. However, both the Tennessee doctor and the Barrow doctor believed that Ms. Wade had a combination of medical issues and recommended she receive medical attention.

*Marchisheck v. San Mateo County*, 199 F.3d 1068 (9th Cir. 1999) is the only Ninth Circuit case to address a combination of medical conditions in the FMLA context. It did not criticize or deny that a combined condition could be found. Instead, the Ninth Circuit found that there was insufficient evidence to prove in that case the conditions combined to incapacitate the plaintiff's son under that particular set of facts.

Ms. Wade's combined medical condition qualified as a serious health condition. Defendants were required to inquire further into the combined condition before denying her leave. *Bachelder v America West Airlines, Inc.,* 259 F.3d 1112, 1131 (9th Cir. 2001). It is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act. *Id.* at 1130.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Defendants failed to perform their obligations under the FMLA and now use that failure to defeat Ms. Wade's request for summary judgment.  Wade had a combination of medical conditions for which her doctors twice advised her that she needed treatment.  Defendants claim that the medical conditions, to a lay person, do not "suggest" a combination that would prevent Ms. Wade from performing her job duties.  However, that is not the standard.  Ms. Wade's doctor stated that she had a combination of medical issues that required treatment.[1]  It's the doctors' opinions that counts.

Because Defendants did not provide Ms. Wade with medical leave they now argue that she was not incapacitated nor did she get combined medical treatment. As a matter of law, the court should determine that Defendants cannot rely upon their own violation.  The court should find that Ms. Wade did have a serious health condition in September and October 2003 and should grant summary judgment on that issue.

## C.   Incapacity Includes Travel.

Defendants deny, without legal authority, that travel for medical leave is not included in the time calculated for incapacity.  Opp. at 10.  29 CFR §825.115 clearly states that: "An employee who <u>must be absent from work</u> to receive medical treatment for a serious health condition is considered to be unable to perform the

---

[1] Defendants erroneously rely on Dr. Snyder's testimony that Ms. Wade was able to perform her job duties despite the combination of medical conditions. See Opp. at 7. Dr. Snyder never testifies to that.

REPLY TO OPPOSITION TO MPSJ ON FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 5 of 22

essential functions of the position during the absence for treatment." (Emphasis added.)

Ms. Wade was told by her Barrow doctor on October 6, 2003 that she needed to see a specialist for her multiple medical conditions. Defendant Taylor agreed that no specialists were available in Barrow. See Ex. 8, Taylor Depo, at 111, attached to Plaintiff's Memo. Defendants have not refuted Plaintiff's legal or factual assertions that she was incapacitated by her need to travel off the North Slope for treatment in October 2003. Ms. Wade was entitled to FMLA leave as a matter of law and the court should grant summary judgment.

## II.    MS. WADE PROVIDED PROPER NOTICE OF HER NEED FOR MEDICAL LEAVE.

Ms. Wade provided her employer with two doctor's notes and asked for medical leave. One of the two notes stated that Ms. Wade required further medical workup and possible surgery. See, Ex. 1 filed with Plaintiff's Memo. Ms. Wade certainly provided the qualifying reason for her leave as required by the FMLA.[2]

Defendants acknowledged on October 3, 2003 that Ms. Wade had asked for medical leave in their e-mail communications to her. See Ex. 5 to Plaintiff's Memo. Further, Defendants were on notice that Ms. Wade asked for medical leave that was potentially FMLA qualifying no later than October 9, 2003, when they called

[2] Marking personal on the leave form is of no relevance to whether Ms. Wade had a qualifying condition that required FMLA leave. Defendants' reliance on the leave form is misplaced. When an employee needs FMLA leave, the employee may use paid leave to cover the absence. 29 C.F.R. §825.207.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

their attorney and asked them what to do in a FMLA leave situation. See Ex. 9, McKay Deposition at 18, attached to Plaintiff's Memo.

If Defendants believed that the leave was foreseeable and required 30 days notice, they were free to tell Ms. Wade that she would be granted leave, but only after 30 days.  They did not do so.  Instead, Defendants made the ability to obtain leave so hard that Ms. Wade had to choose between her job and her medical leave.  She chose her job.

As a matter of law, the court should determine that Ms. Wade gave proper notice of her need for medical leave as required by the FMLA.

**III.    IT WAS A VIOLATION TO FORCE MS. WADE TO PROVE HER LEAVE COULD NOT WAIT UNTIL DECEMBER.**

Defendants do not deny that they required Ms. Wade to provide "written notification from a licensed physician … to the effect that your medical treatment cannot wait until the December break.…"  See Ex. 10, e-mail dated October 9, 2003 attached to Plaintiff's Memo.  Instead they claim that they were "standing on their rights" to require that Ms. Wade to schedule her leave so it did not "unduly disrupt their operations.  Opp. at 27.  The regulation they rely upon states:

> When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations, subject to the approval of the health care provider.  Employees are ordinarily expected to consult with their employers prior to the scheduling of treatment in order to work out a treatment schedule which best suits the needs of both the employer and the employee

**Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

29 CFR §825.302(e).  Significantly, this regulation does not state that an employer may indefinitely deny medical leave, which is what Defendants did.  Further, it does not state that an employer may demand that an employee prove that her leave cannot wait for more than 60 days.

The Ninth Circuit has stated that

> As a general matter, then, the established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute "interference" or "restraint" with the employees' exercise of their rights. Under the FMLA as under the NLRA, attaching negative consequences to the exercise of protected rights surely "tends to chill" an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so.

*Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

The discouragement by Defendants in October 2003 from taking medical leave at all during the next 60 days of classes was certainly actions intended to deter Ms. Wade from engaging in a protected activity, and constituted an interference with Ms. Wade's right to FMLA protected leave and was undeniably "chilling".

As a matter of law, this court should find that Defendants interfered with Ms. Wade's right to FMLA and should grant summary judgment to Plaintiff on this issue.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## IV.    DEFENDANTS DID NOT PROVIDE THE REQUIRED WRITTEN NOTICE OF FMLA RIGHTS.

Defendants claim that Ms. Wade did not provide the required notice of her need for leave, and therefore they were under no obligation to provide her notice of her FMLA rights.  They assert a Catch-22 that is not found in the FMLA.

There was nothing "special" about the notice of rights that Defendants should have provided.  A written notice of FMLA rights is in addition to any posted notice or notice in an employee handbook, indicated by the word "also" in 29 C.F.R. §825.301(b).  Likewise, written notice "must be provided to the employee no less often than the first time in each six-month period that an employee gives notice of the need for FMLA leave. . . "  *Id.* at 301(c).  See e.g. *Conoshenti v. Public Service Elec. & Gas Co.,* 364 F.3d 135, 142 (3rd Cir. 2004) an illustrative case construing the FMLA regulation.

In this case, Defendants clearly understood as of early October 2003 that Ms. Wade was giving notice of a medical leave request that was FMLA qualifying, since they contacted their corporate lawyer to ask what they needed to do to comply with FMLA.  Ex. 9, McKay Depo. at 18, attached to Plaintiff's Memo.

An illustrative District Court case explained the FMLA's overarching reason for notice.  In *Nusbaum v. CB Richard Ellis, Inc.,* 171 F.Supp.2d 377, 379-80 (D.N.J. 2001), the plaintiff took the leave required for her surgery, and was discharged during her absence. Nusbaum then brought suit, alleging that her employer's failure to notify her of her right to twelve weeks of FMLA-protected

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

leave, and her subsequent termination, interfered with her FMLA rights in violation

of 26 U.S.C. §2615(a)(1). The District Court denied the employer's motion to

dismiss, holding as follows:

> [T]he purpose of the regulations enacted by the DOL ... is to ensure that employers allow their employees to make informed decisions about leave.... The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

*Id.* at 385-86. The court concluded that Nusbaum was "not given the proper

information that would have allowed her to structure her leave in a way that would

have left her protected by the FMLA." *Id.* at 386.

The reasoning of the *Nusbaum* Court is persuasive: Ms. Wade never

received the notice of her rights and therefore, when Defendants demanded that

she prove her leave could not wait until December break, she did not have the

information to argue that she was not required to do so.  Ms. Wade was not aware

that Defendants were required to work with her to schedule leave within 30 days of

her request, at a time which was mutually convenient, assuming the leave was

foreseeable.  Ms. Wade was not aware that she had specific reinstatement rights.

The lack of notice prevented Ms. Wade from forcing her employer to properly

reinstate her.  Ms. Wade was unable to articulate in her grievance exactly why

Defendants' actions were illegal, which resulted in Defendants being angry with her

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

for not simply accepting their wrongful actions.  They subsequently terminated Ms. Wade based upon the snowball effect of their failure to provide notice of rights.

*Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81 (2002) did not invalidate the notice regulation. The Supreme Court invalidated FMLA regulation 29 C.F.R. §825.700(a) which penalized an employer who did not properly designate FMLA leave.  The regulation would have allowed much more than the 12 weeks of FMLA protected leave based solely upon a technical violation by an employer.  The Supreme Court expressly declined to rule on the validity of the notice provision in 29 C.F.R. §825.301.  The Ninth Circuit has not taken the position that the notice provision is invalid.

Ms. Wade only wanted notice of her rights, an action an experienced HR Director like Taylor should have performed automatically.  Instead, Ms. Wade received stonewalling, interference, discrimination, retaliation and termination.

Defendants claim that Ms. Wade and Jay St. Vincent, another professor at Ilisagvik College, each received FMLA leave.  However, in neither case, was the leave designated as FMLA nor were FMLA rights provided.  Taylor Deposition at 115-116, attached hereto as Exhibit 2A.  This is a pattern that exists with Ilisagvik College.  Until a court tell Defendants that they were wrong, it does not appear that Defendants are willing to change.

FMLA is not a separate paid leave bank.  It is a right to time off that runs concurrent to any other type of paid leave.  Therefore, Ms. Wade's personal (paid) leave ran concurrently with what should have been FMLA leave.  Additionally, any

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

"extended medical leave" would likewise run concurrently with any FMLA leave. Therefore whether Ms. Wade marked "personal" leave on her form is immaterial to whether Defendants knew it should be medical leave covered by the FMLA.

Defendants were required to provide Ms. Wade notice of her FMLA rights. They admit they did not. Summary judgment should be granted to Ms. Wade finding that Defendants' failure to do so was wrongful.

## V.    CERTIFICATION WAS NOT REQUESTED BY DEFENDANTS.

Defendants argue that Tuthill's demand for "written notification from a licensed physician … to the effect that your medical treatment cannot wait until the December break …" was a request for medical certification under the FMLA. See Ex. 10 to Plaintiff's Memo.   However, the regulation allowing an employer to request certification does not allow an employer to make such a demand. 29 C.F.R. §825.306(b) specifies what information may be requested.  Requests for dates of leave are allowed.  But a specific statement that the medical treatment cannot wait for 60 more days is not on the list of acceptable inquiries.

Defendants unquestionably interfered with Ms. Wade's FMLA rights when Tuthill denied Ms. Wade's October FMLA requests based upon the fact that she did not provide the information he stipulated.

Defendants failed to request medical certification under the FMLA and summary judgment should be granted to Plaintiff on this issue.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

## VI.  AS A MATTER OF LAW, MS. WADE WAS NOT PROPERLY REINSTATED TO HER POSITION WHEN SHE RETURNED FROM HER FMLA LEAVE.

Bobbi Wade was not properly reinstated to her position when she returned from her FMLA leave.  Defendants do not dispute that Wade took FMLA protected leave in November 2003.  Opp. at 32.  Therefore, Defendants were required to restore Ms. Wade to her position as set forth in the FMLA.

Defendants fail to acknowledge the e-mail they produced which shows that Ms. Wade was scheduled to teach the two Module C courses as part of her regular 12 contractual hours.  Ex. 22, package of e-mails attached to Plaintiff's Memo.  They also fail to acknowledge John Tuthill's testimony where he agreed that Ms. Wade had "every reason to anticipate that she would be the instructor of Module C.  That was the plan at that time."  See Ex. 14, Tuthill Depo. at 187, attached to Plaintiff's Memo.  "But for her leave [Ms. Wade] would have been teaching Module C."  *Id.*

Defendants claim that because Ms. Wade did not sign an extra duty contract prior to her leave for the two Module C classes, they were not required to reinstate her to them.  But Defendants' refuse to acknowledge that she was not required to sign extra duty contracts for those courses, because they were not "extra duty" but part of her regular 12 hours of credits.  In an e-mail, Ilisagvik College's Purchasing Department said:

> Bobbi taught 2 credits less than normal schedule (12 credits). Payment should be 2 credits less.

Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

See Ex. 22, notation dated 11-14-03. The document shows that two of Ms. Wade's completed extra duty classes were crossed off and she was not paid for those two extra duty classes that she had already taught. This notation was made just days after Ms. Wade left for her FMLA leave, indicating that Defendants had no intention of reinstating Ms. Wade to her classes upon her return from leave.

The e-mail is supplemented by notes taken by Dianna Kennedy during Ms. Wade's meeting on December 19, 2003 in which she writes:

> John said the contracts were not pay [sic] . . . because the 12 credit teaching load had not been met because Bobbi had to take medical leave.

Exhibit 3A, attached hereto. John Tuthill agreed with the notes and said that

> Miss Wade was not paid for the two C modules that she did not teach, so her added duties had to be adjusted by two credits. So she was paid for six credit equivalents of added duties instead of for eight, is what this suggests.

Tuthill Depo. at 263, attached hereto as Exhibit 4A.

Defendant did have a duty to reinstate Ms. Wade to the Module C classes. They were a part of her regular contract classes. They were not extra duty. Ms. Wade was monetarily injured when Defendants withdrew payment from two of her completed classes in order to "cover" for the classes she was regularly scheduled to teach.

Without any authority, Defendants allege that they were not required to reinstate Ms. Wade to a class that she did not begin teaching before she went on leave. The statement flies in the face of the FMLA laws which requires "An

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

<u>employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence."</u>    29 C.F.R. § 825.214(a) (emphasis added).    The FMLA absolutely required that Ms. Wade be reinstated to teach the two Module C classes and Defendants' protestations to the contrary are opposite the applicable law.

Finally, although Ms. Wade has not moved for summary judgment upon damages and therefore not briefed the issue, Defendants ask that the court limit her recovery to the amount of money Defendants took from her when they improperly reinstated her: $3000.    Plaintiff does not agree that this is the proper amount of money, since it does not account for all her damages, including, but not limited to, the loss to her PERS retirement account, PERS figures its ultimate retirement payout on an employee's 3 highest years of compensation.    Obviously, the failure to pay Ms. Wade $3000 diminished her PERS retirement calculation and therefore an evidentiary hearing on the proper amount of damages must be held.

## VII.    TERMINATION WAS IMPROPER.

### A.    Defendants Set Forth the Wrong Standard for an Interference Claim.

In their opposition at 31, Defendants set forth two standards Ms. Wade must meet to prove interference.    They agree with Plaintiff's assertion that the proper test is articulated in both *Bachelder v America West Airlines, Inc.,* 259 F.3d 1112, 1131 (9th Cir. 2001) and *Xin Liu v Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003). That test is: (1) Ms. Wade took FMLA-protected leave; (2) she suffered

REPLY TO OPPOSITION TO MPSJ ON FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 15 of 22

**Clapp, Peterson, Van Flein,**
**Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

adverse employment actions; and (3) the adverse actions were causally related to her FMLA leave.

But in addition to the test set out by the Ninth Circuit, Defendants want to add another layer to the standard. Defendants ask the court to force Ms. Wade to prove that: 1) she was eligible for FMLA leave; 2) she had a serious health condition; 3) she gave the College appropriate notice of her need for leave; and 4) the FMLA leave was a negative factor in Defendants' decision to terminate her.[3] They copy this test from *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir. 1997).[4] This test in incorrect, as the two Ninth Circuit cases cited above have definitively set forth the requirements for interference claims. In fact, the Ninth Circuit was rather obstreperous in setting the standard and announcing that it was indeed different from other circuit court's findings.

### B. Ms. Wade Has Met the Ninth Circuit Test for Proving Her Interference Claims.

Defendants agree that Ms. Wade has met the first two elements of the Ninth Circuit's standard for her interference claim. Defendants disagree with the third

---

[3] Even if the court applied the second test, Ms. Wade meets its standards. 1) Defendants admitted Ms. Wade was eligible for FMLA leave. 2) Ms. Wade had a serious health condition: skin cancer and was told by her doctor she needed further treatment. 3) Ms. Wade told Defendants of her need for medical to address her cancer and she took leave that Defendants agree was protected by FMLA. 4) Defendants used Ms. Wade's leave, the effects from their failure to reinstate her, and her grievance thereon as negative factors in her termination. Even under *Price*, Ms. Wade is entitled to summary judgment.

[4] Despite Defendants argument to the contrary, *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087 (9th Cir. 2007) the Ninth Circuit did not articulate a new set of

element: whether the adverse actions were causally related to her FMLA leave. Plaintiff offered proof of causation: 1) the close temporal proximity between her protected activities and her termination; and 2) that the causes Defendants cite for Ms. Wade's termination were known long before her termination and only became an issue after her FMLA leave.  Indeed, the reasons articulated for Ms. Wade's termination were created in January by Defendants in order to justify the termination decision they had already made.

Plaintiff has proven her interference claim as a matter of law and summary judgment should be entered.

### C. Temporal Proximity Was So Close to the Protected Activity That the First Part of the Burden Is Established.

Defendants claim that Ms. Wade cannot assert that the temporal proximity between Defendants' knowledge of Ms. Wade's protected activity (undeniably known to Defendants) and her termination was close.  Defendants erroneously use the date that Ms. Wade <u>began</u> her medical leave and then count the weeks to her termination.  However, the proximity is actually much, much closer.  Ms. Wade began her FMLA leave November 12, 2003.  She returned to work December 2, 2003 and was not properly reinstated.  She filed a complaint directly against Tuthill dated December 12, 2003 (another protected activity).  She supplemented her complaint December 19, 2003.

---

elements, nor did it affirm the *Price* test.  It merely stated that if the jury instruction stated the wrong test, it was harmless error.

REPLY TO OPPOSITION TO MPSJ ON FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 17 of 22

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Christmas break was from December 20 to January 5, 2004.  Ten days later, Tuthill began setting the stage to fire Ms. Wade for her protected activity, with an e-mail that he claimed she ignored, but upon deposition admitted she fully complied with.

There are many protected activities from which to count:

It was 11 weeks[5] from the beginning of Ms. Wade's leave to her termination.
It was 8 weeks from her return to work from leave to her termination.
It was 7 weeks from her complaint to her termination.

7 weeks (or 5 working weeks) is the correct date from which to calculate the temporal proximity.

Temporal proximity is not the only evidence of animus that Ms. Wade has. First, is the continued insistence by Defendants for Ms. Wade to prove her leave could not wait for 60 days, an interference with her rights.  During this time, Defendants willfully refused to provide Ms. Wade with written notice of her rights. When Ms. Wade was finally allowed to take leave, Defendants refused to reinstate her and even took $3000 from her that she had already earned.  Then, Ms. Wade filed a complaint to protest the violation.  The complaint was not accepted by Defendants.  Tuthill criticized Ms. Wade's performance for the first time less than two weeks before he fired her and then used that last minute criticism of her in his rationale for her termination.  Finally, Ms. Wade was terminated.

---

[5] Each of the numbers should be reduced by the intervening 2 weeks of Christmas holiday break.

REPLY TO OPPOSITION TO MPSJ ON FMLA
Wade v. Ilisagvik, Case No. 3:05-cv-086-TMB
Page 18 of 22

1

2

3

4

Plaintiff does not need to rely upon temporal proximity alone to establish her case.  There were multiple and flagrant other interferences with her FMLA rights that led up to her termination.  Temporal proximity, however, was so close that it could, if necessary, establish causation by itself.

5

6

**D.   The Causes Cited for Ms. Wade's Termination Were Known Prior to January 2004, and Only Became an Issue After Her FMLA Leave.**

7

8

9

10

11

12

13

14

Defendants reiterate their defenses to Ms. Wade's termination, claiming on page after page that the reasons given were justifiable because Tuthill was new to the College or Defendants rely upon problems created by their own violation of the FMLA. For example, Defendants claim the termination was justified based on their refusal to restore Ms. Wade to two regularly scheduled classes, creating problems with grades that would otherwise have been insignificant.   Neither of these defenses is adequate to prevent summary judgment.

15

16

17

18

19

20

21

22

23

24

25

Defendants knew and did not protest or dispute for many years that: 1) Ms. Wade did not have a Masters Degree in Business Administration; 2) that Amy Conyer, her granddaughter, received tuition waivers for classes taken; 3) that as the only instructor in the department, Ms. Wade taught her granddaughter's Business Administration classes; 4) that Module grades were not turned in until the end of the semester, even if the classes ended mid-semester; 5) that DF grades were routinely promised by all professors, and that they were encouraged to do so; and 6) that the College in general had a low student retention rate.  These are not disputed facts.   But they are issues upon which Defendants relied upon to

26

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

terminate Ms. Wade.  Defendants cannot dredge up stale issues which they never told Ms. Wade were material and justify their wrongful act upon those stale issues.

The remaining reasons Defendants use to defend termination were, by Defendants' own admission, insufficient to terminate Ms. Wade.[6]  Ex. 14, Tuthill Depo. at 228, attached to Plaintiff's Memo.  Defendants created issues where none existed in order to justify their termination.  For example: Less than two weeks prior to terminating Ms. Wade, Tuthill critiqued her computer-based classes.  Ex. 33 to Plaintiff's Memo.  He relied on this critique when he summed up his reasons, claiming Ms. Wade had "resisted" him.  See Ex. 28 to Plaintiff's Memo.  But he admits that she did actually comply.  Ex. 14, Tuthill Depo at 71, 94-96, attached to Plaintiff's Memo.  Therefore he created an issue where none existed.

Another example is that less than two weeks prior to terminating Ms. Wade, Tuthill created his own "success rate" for her computer-based classes.  They differed significantly from the official success rate published by Ilisagvik College.  Incredibly, although Plaintiff relies upon documents that Defendants' produced, Defendants challenge the authenticity of those documents.  See Opp. at 41 and compare to Plaintiff's Ex. 34 attached to her Memo.  The documents bear a Bates Stamp that was undeniably generated by the College.  Presumably they have produced authentic documents and Plaintiff is entitled to rely upon them.

---

[6] The student complaints were very limited.  Tuthill received reports from Sonya Abu (and only Ms. Abu) from one student, about Ms. Wade.  Ex. 31, Sonya Abu, attached to Plaintiff's Memo; Ex. 4A hereto, Tuthill Depo. at 47-48, 200.

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Defendants argue that their termination decision was not based on Ms. Wade's FMLA leave.  But all the reasons they give for her termination are pretextual.  Summary judgment should issue on termination.

### E.  Defendants Retaliated Against Ms. Wade and Terminated Her for Her Involvement in FMLA Protected Activities.

Defendants retaliated[7] and discriminated against Ms. Wade.  Ms. Wade cited the *McDonnell Douglas* anti-discrimination burden shifting standard in her motion to prove her claim for summary judgment.  The Ninth Circuit has reserved the question of what standard will apply to FMLA retaliation and discrimination claims. *Bachelder*, 259 F.3d at 1125 n. 11 ("Whether or not the *McDonnell Douglas* anti-discrimination approach is applicable in cases involving the "anti-retaliation" provisions of FMLA, is a matter we need not consider here.")  However, the *McDonnell Douglas* standard is a well accepted standard in employment cases and therefore applicable here.

Ms. Wade opposed Defendants failure to properly reinstate her pursuant to her right under the FMLA.  As established in facts in the motion, Ms. Wade opposed the violation both verbally and by filing a grievance.  Her actions fall squarely within the protections afforded by 29 U.S.C. §2615(a)(2).

---

[7] The "anti-retaliation" provisions of FMLA prohibit "[discrimination] against any individual for opposing any practice made unlawful by this subchapter," (a)(2), and discrimination against any individual for instituting or participating in FMLA proceedings.  29 U.S.C. §2615(a)(2).

REPLY TO OPPOSITION TO MPSJ ON FMLA
<u>Wade v. Ilisagvik</u>, Case No. 3:05-cv-086-TMB
Page 21 of 22

**Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC**
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586

Ms. Wade was terminated because she opposed the violation of her FMLA rights. The court should enter summary judgment for Ms. Wade on retaliation and discrimination.

## VIII.    CONCLUSION.

For all the above stated reasons, the motion for partial summary judgment on FMLA claims should be granted.

DATED AT Anchorage, Alaska this ____17th____ day of August 2007.

> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORNSESS, LLC
> Attorneys for Plaintiff
>
> s/ Linda J. Johnson
> CLAPP, PETERSON, VAN FLEIN,
> TIEMESSEN & THORSNESS LLC
> 711 H Street, Suite 620
> Anchorage, AK  99501-3454
> Phone:  (907) 272-9631
> Fax:  (907) 272-9586
> Direct email:  ljj@cplawak.com
> Alaska Bar No. 8911070

Certificate of Service

I hereby certify that on August 17, 2007, a copy of the foregoing document was served electronically on Cynthia Ducey, Esq.

s/ Linda J. Johnson

Clapp, Peterson, Van Flein,
Tiemessen & Thorsness, LLC
711 H Street, Suite 620
Anchorage, Alaska 99501-3454
(907) 272-9272 fax (907) 272-9586