```
 1                    IN THE UNITED DISTRICT COURT

 2                      FOR THE DISTRICT OF ALASKA

 3   BOBBI WADE,                    )
                                    )
 4                  Plaintiff,      )
                                    )
 5   vs.                            )
                                    )
 6   ILISAGVIK COLLEGE; NORTH SLOPE,)
     BOROUGH; JOHN TUTHILL,         )
 7   individually; and PAMELA TAYLOR,)
     individually,                  )  Case No. 3:05-cv-086-TMB
 8                  Defendants.     )
                                    )
 9
                   VIDEOTAPED DEPOSITION OF PAM TAYLOR
10                           May 4, 2006

11   APPEARANCES:

12        FOR THE PLAINTIFF:        MS. LINDA J. JOHNSON
                                    Clapp Peterson & Stowers
13                                  711 H Street, Suite 620
                                    Anchorage, Alaska 99501
14                                  (907) 272-9272

15        FOR THE DEFENDANT
          NORTH SLOPE BOROUGH:      MR. PETER C. GAMACHE
16                                  Attorney at Law
                                    405 West 36th Avenue
17                                    Suite 201
                                    Anchorage, Alaska 99503
18                                  (907) 563-6969

19        FOR THE DEFENDANTS
          ILISAGVIK COLLEGE,
20        PAMELA TAYLOR and
          JOHN TUTHILL:             MS. CYNTHIA L. DUCEY
21                                  Delaney, Wiles, Hayes, Gerety,
                                      Ellis & Young, Inc.
22                                  1007 West Third Avenue
                                      Suite 400
23                                  Anchorage, Alaska 99501
                                    (907) 279-3581
24
          ALSO PRESENT:             MS. BOBBI WADE
25
                              * * * *
```

LIZ D'AMOUR & ASSOCIATES, INC.
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678


EXHIBIT E
Page 1 of 5

63

```
 1        to say to you that would trigger you to say, oh, family
 2        medical leave?
 3   A    I have a serious medical condition I'm concerned about;
 4        I'm worried about something, X; I might be pregnant; I
 5        have -- those are the kinds of things.  I mean, those
 6        would be standard triggers and unless I hear something
 7        like that, I'm not going to just jump to conclusions
 8        and -- and hand an FMLA form every time, because very
 9        rarely do we need those.  The occasion for FMLA is rare
10        compared to the occasion for going off slope to get
11        your teeth cleaned or not even teeth cleaned, but teeth
12        filled.  I, myself, went one time to get a bone graft
13        put in my maxillary arch.  That wasn't a serious
14        medical condition, but I had to go off slope to get it.
15   Q    Okay.  If you saw something like exhibit 20, if this
16        was handed to you, would this be enough for you to say,
17        here's the form for FMLA?
18   A    Not necessarily.
19   Q    Why not?
20   A    Again, it doesn't tell me -- had I seen it, it's
21        conjecture.  I mean, I don't know what I would have
22        done.
23   Q    Okay.
24   A    I mean it depends.  I -- I don't want to have to look
25        at hypotheticals because we're trying to talk about
```

*LIZ D'AMOUR & ASSOCIATES, INC.*
*330 Wendell Street, Suite A*
*Fairbanks, Alaska 99701*
*(907) 452-3678*


EXHIBIT E
Page 2 of 5

```
 1              Okay.
 2    Q         That's right.  You get the official copy.
 3    A         I get the special one.
 4    Q         Did you have a chance to read that?
 5    A         Oh, yeah.
 6    Q         Okay.  Do you recall getting this particular.....
 7    A         Yes, I actually do.  Uh-huh.
 8    Q         Okay.
 9    A         I do.
10    Q         And do you recall getting it October 1st?
11    A         Not offhand, but I'm sure -- I -- I try to read my --
12              my e-mail within the day or two of getting them.  I get
13              a lot, so I can't say when I read it, but I do recall
14              getting this.  Certainly, if it came on 10/1, I -- I
15              certainly got it soon after I read it -- soon after.
16    Q         I haven't seen a response to this.  Do you call
17              responding to this, like, you know, turning an e-mail
18              around and sending a written response back?
19    A         Not always.  No.  I'm pretty informal.  Again, I'm --
20              Bobbi is a friend -- at the time, cer- -- I probably
21              called her back.  I remember talking to her about it,
22              but not -- not e-mailing her.  I don't have an e-mail
23              record of it either.
24    Q         You do have a recollection of talking to her about it?
25    A         Yes, I do.
```

*LIZ D'AMOUR & ASSOCIATES, INC.*
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678



EXHIBIT E
Page 3 of 5

1  Q    And what do you recall saying to her?
2  A    I said, there's no specific guidelines for faculty that
3       would cover leave anyway. It's in the over-arching
4       employee handbook would be the one that is applying.
5  Q    Okay.
6  A    And I referred her to that handbook. I said, take a
7       look at that. It's -- this, you know -- it's -- it's
8       in the general handbook is our policy on all faculty
9       and non-faculty leave. And, of course, how are -- how
10      much leave you have available from your contract.
11 Q    Okay. So you told her that there was no faculty
12      handbook. Is that correct?
13 A    No. I said, the leave would not be affected by any
14      faculty handbook, because I don't -- the instruction
15      office handles the faculty handbook from year to year.
16      The -- every aspect of our leave is covered in -- in
17      the over-arching general employee handbook, which it
18      covers -- it applies to all faculty and non-faculty,
19      all those policies.
20 Q    Okay. Do you recall if there is a specific faculty
21      handbook?
22 A    There was years ago. Don't -- there hasn't been for
23      some time and afraid there hasn't been even in those
24      days, there wasn't one. It was hit and miss with the
25      instruction department.


EXHIBIT E
Page 4 of 5

1  Q       Okay.
2  A       I don't guarantee it was in even one then, because I
3          agree, she -- there -- Bobbi was looking for a faculty
4          handbook and I don't think there was one existing at
5          that time.
6  Q       Okay.  So you told her to look at the general handbook.
7          Did you point out any specific -- I'm sorry.  Maybe I
8          wasn't paying enough attention when you talked -- did
9          you point out a specific policy to her?
10 A       No, because it was a vague question and/or medical
11         leave -- and personal leave.  I just said that the --
12         the leaves are discussed in that handbook.  And I --
13         knowing me, I often called Bobbi because she worked in
14         the hut across the way.  It was a long walk to go back
15         and forth and I liked talking with her, you know, on
16         the phone.
17 Q       Let's see.  Exhibit number 8, do you recall having
18         employees sign for their leaves and tell them that you
19         would give them their updates at a later time?
20 A       No, I don't recall that.
21 Q       Was that a common practice for you at that time?
22 A       It wouldn't have been.
23 Q       It wouldn't have been?
24 A       No.  To do what again?
25 Q       To have them sign a form like this and then tell

*LIZ D'AMOUR & ASSOCIATES, INC.*
330 Wendell Street, Suite A
Fairbanks, Alaska 99701
(907) 452-3678



EXHIBIT E
Page 5 of 5